UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EPIC SYSTEMS CORPORATION, a
Wisconsin Corporation,

        Plaintiff,

        Case No. 14-CV-748

v.

TATA CONSULTANCY SERVICES
LIMITED, an Indian Corporation; and TATA
AMERICA INTERNATIONAL
CORPORATION (dba TCS AMERICA), a
New York Corporation,

        Defendants.

## DECLARATION OF STIRLING MARTIN

1.     I, STIRLING MARTIN, am a senior vice president for Epic Systems Corporation. I make this declaration in support of Epic's motion for expedited discovery. Except as otherwise stated, I have personal knowledge of the contents of this declaration, and I can testify competently to them if called upon to do so.

2.     Epic develops and sells an integrated suite of software used by hospitals, medical groups, and healthcare organizations. Epic's software is recognized in the industry as a market leader because of our high quality, innovative software that meets our customers' requirements and desires. At Epic, we continually work with our customers in order to improve our products to meet their needs.

3.  Epic utilizes a web portal called the UserWeb. The UserWeb provides access to information on training, setup, support, and operation of Epic's software and details the features and configuration of Epic's software. Epic provides access to the UserWeb to customers who then utilize information from the UserWeb in order to install, maintain, and support the Epic software implemented at that particular customer. The UserWeb contains product materials, update documentation, training materials, and other documents detailing Epic's software and its data model. Kaiser Permanente ("Kaiser"), as an Epic customer, has access to the UserWeb.

4.  In its agreement with customers for licensing of Epic's software, Epic includes protections requiring the customer to maintain confidentiality of Epic's software and information. For instance, per a 2003 agreement between Epic and Kaiser, any Epic materials made available to Kaiser may only be viewed by Kaiser's employees with a "need to know" the information to fulfill the agreement, such as managing the use of the software for which the employee is responsible.

5.  Some Epic customers hire consultants to assist with implementation, maintenance, and support of Epic's software. Consulting companies, and their consultants who wish to access the UserWeb, are first required to execute agreements with Epic to protect the information on Epic's UserWeb before they are granted UserWeb access. The agreements are intended to protect Epic's information from improper access, use or disclosure.

6.  Epic allows those consultants who have a then-current customer engagement and who have entered the agreements to access the UserWeb, but the available documents and materials are more limited than the customer-level access.

7.  When a user registers to gain UserWeb login credentials, the user is prompted to identify himself or herself as either an employee of an Epic customer or as a consultant. If a user

identifies himself or herself as a consultant, in addition to identifying the Epic customer with whom he or she has an engagement, the user is provided a copy of the UserWeb Access Agreement to sign and return to Epic. Before granting access to the UserWeb, Epic reviews the registration information to confirm that the user has an email address associated with the applicable consulting firm, the consulting firm has a signed consulting agreement, the user properly completed the UserWeb Access Agreement, and there are no other issues granting UserWeb access.

8. I understand that Kaiser uses TCS to provide consulting services with respect to Epic's software. I understand that TCS employed a consultant named Ramesh Gajaram and Mr. Gajaram registered for a UserWeb account.

9. After learning from Phillipe Guionnet that TCS consultants at Kaiser were downloading documents from the UserWeb without proper authorization, Epic opened an investigation into UserWeb access by TCS employees working for Kaiser. The investigation revealed that the account of Mr. Gajaram, who worked at a Kaiser facility in Portland, Oregon, had downloaded 6,477 documents accounting for 1,687 unique files. Epic also determined that the UserWeb was accessed with Mr. Gajaram's login credentials from IP addresses outside of Oregon, including some in India.

10. Epic also learned through its investigation that Mr. Gajaram concealed his status as a TCS consultant—representing himself during the UserWeb registration process as a Kaiser employee—in order to obtain access to the broader UserWeb intended for Epic customer employees. I also understand that Mr. Gajaram shared his login credentials with TCS employees Aswin Kumar Anandhan and Sankari Gunasekaram. Neither Mr. Anandhan nor Mr.

Gunasekaram had registered for UserWeb access or were authorized to access Epic documents on the UserWeb.

11. I have reviewed the list of documents downloaded from Mr. Gajaram's account. The downloaded documents contain detailed information on the features and functionalities of Epic's software and database systems developed over thirty years. They detail the work of Epic's engineers and programmers and are highly sensitive to Epic and would allow a competitor to reverse engineer the functionality of Epic. For example, the documents describe programming approaches and processes developed to produce optimal functionality of Epic's software. Other documents provide detailed data model and source code information. Additional documents detail the system capabilities and functions of Epic's software, such as procedures for transferring data, rules related to information collection, methods for limiting access to patient records and data, and processes for converting customer data. A significant number of the documents downloaded from Mr. Gajaram's account would not be required for him to perform consulting services for Kaiser with respect to implementation and maintenance of Epic's software. Many of the documents downloaded from Mr. Gajaram's account are not relevant to TCS' ability to perform consulting services for Kaiser.

12. The documents TCS downloaded from the UserWeb evidence years of development work to determine customer needs and desires so that Epic may provide the best solutions to customers. Those documents are not intended to be put in the hands of our competition. Having these documents to develop competing software will enable the holder to short-cut years of development and investment. A competitor in possession of the Epic documents will be at a drastic competitive advantage because it will be able to develop a competing product with many of the advantages contained in Epic's software, do so cheaply

4

without years of time and monetary investment, and then sell that software to customers at a lower price than would otherwise be available if the software was developed without Epic's information.

    I declare and affirm under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed this 5th day of November, 2014, in Verona, Wisconsin.

                                                                  _____
                                                                    Stirling Martin