UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

EPIC SYSTEMS CORPORATION, a
Wisconsin Corporation,

        Plaintiff,

    v.                                                          Case No. 14-CV-748

TATA CONSULTANCY SERVICES
LIMITED, an Indian Corporation;
and TATA AMERICA INTERNATIONAL
CORPORATION (dba TCS AMERICA), a
New York Corporation,

        Defendants.

---

DEFENDANTS' BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

---

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    ADDITIONAL BACKGROUND ...........................................................................3

     A.     The TCS Med Mantra Software ................................................................3

     B.     Epic Authorized TCS to Access The Information At Issue Here .........................4

     C.     TCS Employee Mr. Ramesh Gajaram .................................................................6

     D.     TCS Employee Mr. Phillipe Guionnet .................................................................8

III.   ARGUMENT ........................................................................................................10

     A.     Standard For Considering Expedited Discovery ................................................10

     B.     Epic Has Not Shown It Will Suffer Immediate Irreparable Injury Absent
         Expedited Discovery ...........................................................................................12

     C.     Epic Has Not Shown a Probability Of Success On The Merits ...........................14

     D.     Epic's Proposed Expedited Discovery Is A Burdensome Fishing
         Expedition Not Limited To The Purpose Of The Expedited Discovery .............17

     E.     The Burdens Of Expedited Discovery on TCS Outweigh The Purpose For
         Epic Requesting It ...............................................................................................19

IV.    CONCLUSION .....................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Adamszewski v. Local Lodge 1487*,
   496 F.2d 777 (7th Cir. 1974) ........................................................................... 13

*Ayyash v. Bank Al-Madina*,
   233 F.R.D. 325 (S.D.N.Y. 2005) .................................................................... 12

*Borzych v. Frank*,
   No. 04-C-632-C, 2005 WL 318820 (W.D. Wis. Feb. 8, 2005) ......................... 14

*Boucher v. School Bd. of Greenfield*,
   134 F.3d 821 (7th Cir. 1998) ........................................................................... 14

*Centrifugal Acquisition Corp. v. Moon*,
   No. 09-C-327, 2009 WL 1249294 (E.D. Wis. May 6, 2009) ........................10, 12

*Dallas Buyers Club LLC v. Does 1-26*,
   No. 14-C-360, 2014 WL 1612251 (E.D. Wis. Apr. 22, 2014) .....................11, 12

*Edgenet, Inc. v. Home Depot U.S.A., Inc*.,
   259 F.R.D. 385 (E.D. Wis. 2009).............................................................passim

*Ellsworth Associates, Inc. v. United States*,
   917 F. Supp. 841 (D.D.C. 1996) ..................................................................... 12

*First Option Mortgage, LLC v. Tabbert*,
   No. 2:12-CV-00600-KJD, 2012 WL 1669430 (D. Nev. May 11, 2012) ........... 12

*Ibarra v. City of Chicago*,
   816 F. Supp. 2d 541 (N.D. Ill. 2011)............................................................... 12

*In re Petition of Boehringer Ingelheim Pharm., Inc., & Boehringer Ingelheim Int'l
   GmbH, in Pradaxa (Dabigatran Etexilate) Products Liab. Litig.*,
   745 F.3d 216 (7th Cir. 2014) ........................................................................... 17

*Interserve, Inc. v. Fusion Garage PTE, Ltd.*,
   No. C 09-05812 JW PVT, 2010 WL 143665 (N.D. Cal. Jan. 7, 2010)............. 12

*Kone Corp. v. ThyssenKrupp USA, Inc.*,
   No. CIV.A. 11-465-LPS, 2011 WL 4478477 (D. Del. Sept. 26, 2011) ............. 12

*Lands' End, Inc. v. Genesys Software Sys., Inc.*,
   No. 13-CV-38-BBC, 2014 WL 266630, (W.D. Wis. Jan. 24, 2014) ................. 15

*Light Salt Investments, LP v. Fisher*,
No. 13CV1158-MMA DHB, 2013 WL 3205918 (S.D. Cal. June 24, 2013) ..................... 12

*Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*,
194 F.R.D. 618 (N.D. Ill. 2000) ...................................................................................15, 17, 18

*New York v. Mountain Tobacco Co.*,
953 F. Supp. 2d 385 (E.D.N.Y. 2013) ............................................................................ 12

*NobelBiz, Inc. v. Wesson*,
No. 14CV0832 W JLB, 2014 WL 1588715 (S.D. Cal. Apr. 18, 2014) ............................ 12

*Notaro v. Koch*,
95 F.R.D. 403 (S.D.N.Y. 1982) ............................................................................3, 10, 20

*Oglala Sioux Tribe v. Van Hunnik*,
298 F.R.D. 453 (D.S.D. 2014) ....................................................................................... 12

*Outboard Marine Corp. v. Liberty Mutual Insurance Co.*,
536 F.2d 730 (7th Cir. 1976) ......................................................................................... 13

*Relational, LLC v. Hodges*,
627 F.3d 668 (7th Cir. 2010) ......................................................................................... 17

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
208 F.R.D. 273 (N.D. Cal. 2002) ................................................................................... 12

*Share Corp. v. Momar, Inc.*,
No. 10-CV-109, 2010 WL 724321 (E.D. Wis. Feb. 26, 2010).......................................... 15

*Sheridan v. Oak St. Mortgage, LLC*,
244 F.R.D. 520 (E.D. Wis. 2007)................................................................................... 12

*Singer Co. v. P. R. Mallory & Co.*,
671 F.2d 232 (7th Cir. 1982) ......................................................................................... 13

*St. Louis Grp., Inc. v. Metals & Additives Corp.*,
275 F.R.D. 236 (S.D. Tex. 2011) ................................................................................... 10

*Suzhou Parson Power Machine Co., Ltd. v. W. Import Mfg. Distribution Grp. Ltd.*,
No. 10-398, 2010 WL 2925894 (E.D. Wis. July 20, 2010).............................................. 11

*Tracfone Wireless, Inc. v. King Trading, Inc.*,
No. 3-08-CV-0398-B, 2008 WL 918243 (N.D. Tex. Mar. 13, 2008)................................ 12

**RULES**

Federal Rules of Civil Procedure 26(d)(1) ................................................................... 1

## I.      INTRODUCTION

Defendants, Tata Consultancy Services Limited and Tata America International Corporation (referred to collectively herein as "TCS", for this opposition only), respectfully oppose Epic's motion for expedited discovery because Epic failed to show these circumstances justify deviating from a normal—and presumptively proper—case schedule where balanced, mutual discovery follows a Rule 26(f) conference.[1]

TCS is a leading international software services provider and innovator in its own right. TCS is a good corporate citizen that respects intellectual property rights.  TCS has neither the need, nor inclination, to misappropriate trade secrets.  Thus TCS is disappointed that Epic chose to file this lawsuit without first approaching TCS to jointly investigate and resolve the matter.

According to TCS' investigation to date, the claims in this action have no merit and appear premised on unreliable statements by a disgruntled TCS employee.  This is not a case where TCS is a stranger to Epic or Epic's confidential information.  Rather, Epic agreed that TCS would have access to detailed information about Epic's software so that TCS consultants could assist Epic customers (like Kaiser) to use the software.  And many TCS consultants on the Kaiser project worked from India.  Thus, there is no *per se* concern about TCS consultants in India being privy to Epic's software information.  Epic's concern arises from misinformation from a disgruntled TCS employee who claimed that no one in India worked on the Kaiser project, but Epic's information was accessed from India to develop allegedly competing software.  That's just not true.

---

[1] Fed. R. Civ. P. 26(d)(1) ("[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except ... when authorized by ... court order.").

Even putting aside the substantive merits, Epic's motion for expedited discovery should be denied for failing to make a *prima facie* showing the expedited discovery is justified here.

First, Epic seeks expedited discovery to determine whether preliminary injunctive relief would avoid immediate irreparable injury from competing software. But Epic failed to show that the TCS Med Mantra hospital software—developed and deployed over seven years ago almost exclusively in India for India hospitals and surrounding regions—competes with Epic's software in the United States.

Second, Epic failed to make a *prima facie* showing that TCS misappropriated any trade secret. Epic did not present a single exemplar document (1) that TCS downloaded, (2) that allegedly was not required to perform the Kaiser work and (3) that contained specific trade secrets. Epic's bare "trade secret" assertions cannot support this extraordinary relief: They do not provide TCS a fair rebuttal opportunity (*e.g.*, show the document was required for Kaiser work or had no trade secret) and do not provide a basis for the Court to weigh the merits of Epic's position.

Third, Epic's overbroad discovery requests are not targeted to the specific purpose of expedition. For example, Epic seeks production of all documents relating to Epic's software, but TCS properly was privy to Epic's software; the documents at issue here concern only downloaded documents containing trade secrets that were not necessary for the Kaiser work.

In sum, expedited discovery is not the norm and courts only allow it in limited circumstances not applicable here. The Court should deny Epic's expedited discovery request.

## II.     ADDITIONAL BACKGROUND

The instant motion was filed only a few days after Epic filed the Complaint, providing little time for TCS to retain counsel and for counsel to perform diligence and respond to the motion.[2]  Presented below, based on information and belief, is additional background not found in Epic's opening motion papers that the Court should consider in ruling on Epic's motion.

### A.     The TCS Med Mantra Software

1.      TCS started developing the Med Mantra software in India in 2007, over seven years ago, focused on hospital management solutions for India hospitals.  Thus the fundamental structure and operation of this complex software was long-established and set well before the alleged misconduct alleged here.

2.      Further, the Med Mantra software was developed under the specific regulatory and hospital requirements found in India.  Any change to this important, complex medical services software would be on an incremental basis after thorough review and testing to ensure operation with the long-established software structure as well as the regulatory and hospital scheme in which the software is deployed.[3]  Indeed, it is highly unlikely that the entrenched Med Mantra software structure and operation could have been revamped and deployed to incorporate whatever trade secrets Epic believes were downloaded during the recent time frame at issue here.

---

[2] *Notaro v. Koch*, 95 F.R.D. 403, 404 (S.D.N.Y. 1982) (the rules preclude discovery at the outset of the case to "protect[] defendants from unwarily incriminating themselves before they have a chance to review the facts of the case and to retain counsel.").

[3] *See also* Forbes Article at 3 (Long Dec., Ex. B) (Epic CEO describes "safety problems" if software not incorporated properly in hospital software).

- 3 -

3.      To be clear: No Epic confidential information was considered in developing the Med Mantra software.  And there are no circumstances in which this complex Med Mantra hospital management software—developed over many years—feasibly could be wholly revised and transformed within "one year" from an alleged "elementary" system to a "sophisticated" system (as Epic's "key witness" Mr. Phillipe Guionnet speculates).  Not surprisingly, there was no such substantial transformation.

4.      Further, the Med Mantra software currently is not in competition with Epic's software in the U.S. or any other market.[4]  Med Mantra was specifically designed for use in India and around the Indian subcontinent. Given differences in regulatory and hospital requirements in other jurisdictions, the Med Mantra software so far has not been focused on the U.S. market.

## B.      Epic Authorized TCS to Access The Information At Issue Here

5.      This is not a case where TCS was a stranger to Epic with no reason for accessing Epic information.  Rather, there is no dispute that Epic anticipated and authorized TCS and other consultants to access the precise type of information at issue here.  Epic acknowledges that Kaiser and other companies "often hire third-party software analysts and test engineers to assist in the configuration and operation of their network."[5]  Kaiser hired TCS software consultants to

---

[4] Epic's own statements show that Epic does not consider Med Mantra in competition with Epic's product. In May 2013, Forbes magazine featured an interview with Epic's CEO, Judith Faulkner. Ms. Faulkner listed major competitors in the electronic medical records—EMR—marketplace. She called them the "CHEESI group": Cerner, HBOC (now McKesson), Eclipsys (now Allscripts), Epic, Siemens, and IDX (now part of General Electric). (Long Decl., Ex. B at 2.)  And Epic's Internet homepage "epic.com" prominently covers nearly two-thirds of the page with an article touting Epic's performance in a survey about the interoperability of EMR software solutions. The survey names all of the CHEESI group members, plus several more companies, but not Med Mantra. (Long Decl., Ex. A.)

[5] Epic Br. at 3.

analyze, test and configure Epic's software, and frequent revisions thereof, for operation in Kaiser's computer network, which includes testing the interoperability of Epic software revisions with the many other third-party software products and custom software on Kaiser's network.[6] Epic also acknowledges that it agreed to provide TCS with access to Epic's software information "in the context of TCS supplying certain consultancy services to Kaiser."[7]

6.    To perform their responsibilities under the Kaiser contract, TCS consultants needed broad access and extensive understanding of the Epic software and functionality in order to implement the software and understand how it interacted with the other software running on Kaiser's computer network.  And this was a continuing task because Epic software, or vendors of software that interacted with Epic's software, routinely released new software versions, patches, and other revisions.

7.    Thus Epic knew about, anticipated and expressly agreed that TCS would need and have extensive access to its software information.  For example, the very contract on which Epic relies here[8] expressly acknowledges that, in order for TCS to provide services to customers like Kaiser, Epic may provide TCS the precise information at issue here, including training, users manuals and even source code for understanding the Epic software:

BACKGROUND
***
A    Epic's customers [*e.g.*, Kaiser] may be interested in hiring qualified third parties [*e.g.*, TCS America] to provide certain services relating to the implementation of Epic's Program Property;

---

[6] *See also* Forbes Article at 3 (Long Dec., Ex B) (Epic's CEO states that Epic software "interface[s] with speech recognition, imaging, medical devices, lab, patient education content, user authentication, and hundreds of different vendor systems.").

[7] Epic Br. at 5.

[8] Epic Agreement (Epic Br., Ex. H).

B      **You are interested in providing certain services to Epic's customers** and You wish to receive training from Epic relating to the Program Property;

C      **Epic may provide** You [TCS America] with **training** on Epic **Program Property** [defined below];

D      **Epic may provide** You with **access to** some of the **Documentation** [defined below], the **Program Property**, and certain third party data or software; and

                                    ***

1.     DEFINITIONS
                                    ***

c      **"Documentation"** means any **instructions, manuals or other materials** created by Epic, in any format, relating to the **implementation, operation or Code** of the Program Property

d      **"Program Property"** means the **computer program object and source code** and the Documentation for all of Epic's computer programs.[9]

**C.     TCS Employee Mr. Ramesh Gajaram**

8.     Epic's motion relies on alleged misconduct by Mr. Ramesh Gajaram being a TCS employee when he originally enrolled for UserWeb access and allegedly represented himself to be a Kaiser employee to "conceal[] his consultant status when he first registered for UserWeb access."[10]  But Mr. Gajaram first started consulting with Kaiser and accessed Epic's UserWeb starting around 2008 when he worked at another unrelated company called CSC.

9.     As is common in the industry for such consultancy arrangements, Mr. Gajaram and other CSC consultants were assigned a Kaiser email address and Kaiser identification number to be used for all their work for Kaiser.  Consultants' use of on-site customer email

---

[9] Epic Agreement at 1 (Epic Br., Ex. H) (emphasis added).

[10] *See* Epic Br. at 6, 9.

address and credentials arises in part from customer's network security lockdown measures that preclude use of other email systems, the requirement that consultants use the customer credentials to login to the customer's network as well as other practical considerations.  Thus, while employed by CSC to do consultant work at Kaiser, Mr. Gajaram was assigned Kaiser credentials that include a Kaiser email address and a Kaiser unique identification number.

10.     Like other CSC consultants working for Kaiser, Mr. Gajaram used his Kaiser email address and identification number to access Kaiser's network and Epic's UserWeb for doing the Kaiser work.  Mr. Gajaram, and we understand other CSC consultants as well, also downloaded Epic documents as required to perform the work for Kaiser.  Mr. Gajaram lived and worked from India exclusively during this entire time (except for a few months in or around the end of 2009), so his Epic UserWeb account would indicate downloads from India as part of his Kaiser work while employed at CSC.

11.     In 2011, TCS replaced CSC in performing the consulting work for Kaiser.  Kaiser specifically recommended that TCS hire Mr. Gajaram so that he could continue as a consultant on the project because Kaiser was very pleased with his work, and he had valuable institutional knowledge concerning the work that TCS would now be doing for Kaiser.  Mr. Gajaram thus continued to do the same work in the same way that he had been doing for years for Kaiser before he was hired by TCS.  After Mr. Gajaram joined TCS, Kaiser gave him the exact same Kaiser email address and credentials he had when employed by CSC to do this same consulting work.  He thus continued using the same Kaiser credentials when accessing Epic's UserWeb as a TCS employee as he had done when doing the same work for his prior employer CSC.

- 7 -

12.     After joining TCS in 2011, Mr. Gajaram continued to live and work in India as did many other TCS employees doing this same consulting work for Kaiser.  Mr. Gajaram temporarily moved to Oregon in March 2014, where he continued to work on the Kaiser project, but he returned home to India a few months later. Thus, since he was performing the same work with TCS that he previously performed while at CSC, one would expect that much of Mr. Gajaram's access to Epic's UserWeb would be from India, where Mr. Gajaram worked and lived the entire time except for a few months in 2014 (and a few months in 2009 while at CSC).

13.     TSC consultants working on the Kaiser account with Mr. Gajaram included Mr. Aswin Kumar Anandham and Mr. Sankari Gunasekaram.  Like Mr. Gajaram, neither Mr. Anandham nor Mr. Gunasekaram were part of the Med Mantra software development team.

14.     Epic itself may be a reason consultants working on customer projects may identify themselves with customer credentials when registering for Epic's UserWeb.  For example, Epic acknowledges that it provides training to employees of consultants like TCS.[11] Those trainers have been known to instruct consultants accessing Epic's UserWeb to use their customer credentials and identify themselves as customer employees rather than consultants.

**D.     TCS Employee Mr. Phillipe Guionnet**

15.     Mr. Phillipe Guionnet is Epic's "key witness" and only basis for alleging that Epic software trade secrets were used in developing Med Mantra.[12]  Mr. Guionnet was hired by TCS in 2012 as a manager for the Kaiser work.[13]

---

[11] Epic Br. at 5.

[12] Epic Br. at 8, 13.

[13] Epic Br. at 7.

16.     Mr. Guionnet was transitioned from those responsibilities in 2013 and he has not been given any responsibilities at TCS beyond the Kaiser project and transitioning from it. Disappointed, Mr. Guionnet has since occupied his time raising a laundry list of various allegations against TCS, making him essentially a professional "whistleblower", including allegations giving rise to the instant matter.

17.     Moreover, Mr. Guionnet was not involved in any of the Med Mantra work he makes allegations about.  Mr. Guionnet's job responsibilities had nothing to do with the India-focused Med Mantra software.  Mr. Guionnet never was on the Med Mantra team, never participated in Med Mantra development, and was never given access to Med Mantra development documents.  Indeed, Mr. Guionnet has lived and worked in California throughout his tenor with TCS, entirely removed from the Med Mantra team located in India.  Further, the Med Mantra software is complex software that had been under development since 2007, long before Mr. Guionnet was hired by TCS in 2012.

18.     In sum, Mr. Guionnet has no working understanding of the Med Mantra software and is not a reliable source about whether, how and when any alleged Epic trade secrets could be implemented in Med Mantra software.  They were not.  Further, Mr. Guionnet refuses to provide documents, purportedly in his possession, that supposedly support his contentions; TCS is not aware of any such documents.

19.     Mr. Guionnet's statements to Epic's counsel are self-evidently unreliable.  For example, Mr. Guionnet told Epic's counsel that "an Epic access credential was being used in India, even though no Kaiser personnel worked in India" and thus speculated that "the use of Epic's access credentials in India related to TCS's improvements to its Med Mantra software

- 9 -

product."[14]  Epic relied on that statement to assume that a number of files allegedly downloaded

from India must have been downloaded for some reason other than work for Kaiser.[15]  But

Mr. Guionnet was flat wrong: Many TCS personnel working on the Kaiser matter lived and

worked in India, including Mr. Gajaram who had the precise Epic access credentials at issue.

## III.   ARGUMENT

### A.   Standard For Considering Expedited Discovery

"[C]ourts must protect defendants from unfairly expedited discovery."[16]  Thus, Epic has

the burden here to justify the expedited discovery.[17]  Epic seeks "expedited discovery to

determine whether it will file for preliminary injunctive relief."[18]  In these circumstances, courts

apply the factors articulated in *Notaro v. Koch:*[19]

> (1) irreparable injury, (2) some probability of success on the merits, (3) some
> connection between the expedited discovery and the avoidance of the irreparable
> injury, and (4) some evidence that the injury will result without expedited
> discovery looms greater than the injury that the defendant will suffer if the
> expedited relief is granted.[20]

---

[14] Epic's Saros Decl. ¶18.

[15] Epic. Br. at 8.

[16] *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).

[17] *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 259 F.R.D. 385, 387 (E.D. Wis. 2009); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011).

[18] Epic Br. at 11 (from heading with formatting omitted); *see also id.* at 14 (discovery is for "a potential motion for a preliminary injunction."), 16 ("expedited discovery is sought in relation to a preliminary injunction motion"), 18 (expedited discovery sought here to "evaluate the scope of any preliminary injunctive relief to prevent further irreparable harm").

[19] *Notaro*, 95 F.R.D. at 403.

[20] *Centrifugal Acquisition Corp. v. Moon*, No. 09-C-327, 2009 WL 1249294, at *1 (E.D. Wis. May 6, 2009) (citing *Notaro*, 95 F.R.D. at 405); *see also Edgenet*, 259 F.R.D. at 387.

Because Epic cannot establish irreparable injury or other relevant *Notaro* factors, Epic

erroneously argues that the Court should apply a general "good cause" standard and simply

ignore the stated purpose of the discovery—that is, a potential application for a preliminary

injunction based on irreparable injury.  Epic is wrong.

Indeed, Epic concedes that the general "good cause" standard itself requires the Court to

consider "(1) whether a preliminary injunction is pending" and "(3) the purpose for requesting

the expedited discovery,"[21] stating:

> (1) whether a preliminary injunction is pending; (2) the breadth of discovery
> requests; (3) the purpose for requesting the expedited discovery; (4) the burden on
> the defendants to comply with the requests; and (5) how far in advance of the
> typical discovery process the request was made. [22]

The general "good cause" standard requires the Court to consider "the entirety of the record to

date and the reasonableness of the request in light of all the surrounding circumstances."[23]  So

the Court plainly would not ignore that the premise of Epic's motion is avoiding irreparable

injury.

Further, in the cases on which Epic relies, the only times a showing of irreparable injury

was not required were when: (1) irreparable injury was not the purpose of the discovery (e.g.,

named defendant defaulted and could not be found so limited discovery permitted to identify

unnamed DOES before a Rule 26(f) conference, because that conference would never occur

---

[21] Epic Br. at 11 (quoting *Suzhou Parson Power Machine Co., Ltd. v. W. Import Mfg. Distribution Grp. Ltd*., No. 10-398, 2010 WL 2925894, at *1 (E.D. Wis. July 20, 2010)).

[22] *Suzhou*, No. 10-C-398, 2010 WL 2925894, at *1 (denying plaintiff's motion for expedited discovery).

[23] Epic Br. at 10 (quoting *Dallas Buyers Club LLC v. Does 1-26*, No. 14-C-360, 2014 WL 1612251, at *1 (E.D. Wis. Apr. 22, 2014)).

- 11 -

without a named defendant and there was no other means to identify one)[24] or (2) irreparable injury was the purpose of the discovery and the discovery was needed to establish—and reasonably could establish—irreparable injury.[25]

In this case, irreparable injury is the purpose of Epic seeking expedited discovery.  Under any standard, Epic's motion should be denied.

### B.   Epic Has Not Shown It Will Suffer Immediate Irreparable Injury Absent Expedited Discovery

As discussed above, Epic must show that it will suffer actual immediate, irreparable injury absent expedited discovery.[26]  Courts will grant expedited discovery requests where movants provide concrete evidence of immediate irreparable harm.[27]  But Epic fails to establish an actual immediate injury for several reasons.

---

[24] *Dallas Buyers Club*, No. 14-C-360, 2014 WL 1612251 (E.D. Wis. Apr. 22, 2014); *see also Ibarra v. City of Chicago*, 816 F. Supp. 2d 541 (N.D. Ill. 2011); *Tracfone Wireless, Inc. v. King Trading, Inc.*, No. 3-08-CV-0398-B, 2008 WL 918243, at *1 (N.D. Tex. Mar. 13, 2008); *Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841 (D.D.C. 1996); *New York v. Mountain Tobacco Co.*, 953 F. Supp. 2d 385 (E.D.N.Y. 2013); *First Option Mortgage, LLC v. Tabbert*, No. 2:12-CV-00600-KJD, 2012 WL 1669430 (D. Nev. May 11, 2012); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002); *Sheridan v. Oak St. Mortgage, LLC*, 244 F.R.D. 520 (E.D. Wis. 2007).

[25] *Interserve, Inc. v. Fusion Garage PTE, Ltd.*, No. C 09-05812 JW PVT, 2010 WL 143665, (N.D. Cal. Jan. 7, 2010); *NobelBiz, Inc. v. Wesson*, No. 14CV0832 W JLB, 2014 WL 1588715 (S.D. Cal. Apr. 18, 2014); *Light Salt Investments, LP v. Fisher*, No. 13CV1158-MMA DHB, 2013 WL 3205918 (S.D. Cal. June 24, 2013); *Oglala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453, 459 (D.S.D. 2014); *Kone Corp. v. ThyssenKrupp USA, Inc.*, No. CIV.A. 11-465-LPS, 2011 WL 4478477 (D. Del. Sept. 26, 2011); *Centrifugal Acquisition Corp. v. Moon*, No. 09-C-327, 2009 WL 1249294 (E.D. Wis. May 6, 2009).

[26] *Centrifugal*, No. 09-C-327, 2009 WL 1249294 at *1.

[27] *See Interserve Inc. v. Fusion Garage PTE, Ltd.*, No. C 09-05812 JW PVT, 2010 WL 143665, at *2 (N.D. Cal. Jan. 7, 2010) (granting plaintiff's request where plaintiff showed the possibility for irreparable harm given that defendant had, *inter alia*, already announced the production and sale of the disputed product); *See Tracfone Wireless, Inc. v. King Trading, Inc.*,

First, as discussed above, Epic has not shown that its software and the India-focused Med Mantra software currently compete in the U.S. market or elsewhere.[28]  Even though TCS has offered Med Mantra since 2007, nowhere does Epic show that it is a competing product, something the Epic readily could have done here through many available sources, whether through its sales force encountering Med Mantra in the market place, lost sales, competitive analysis or otherwise.[29]  Even the declaration's Epic submitted, which are prone to conclusory statements, do not assert that Med Mantra competes with Epic's software.[30]  Epic's failure to make this *prima facie* showing of actual competition to cause the alleged irreparable injury is telling given how important it is to this motion.  Such actual imminent injury—not speculative injury—is required for the very purpose Epic seeks expedited discovery—a potential preliminary injunctive relief: "[C]ourts have repeatedly held that a 'speculative' injury does not constitute an irreparable injury justifying injunctive relief."[31]

Second, Epic's proposed expedited discovery does not cure this deficiency.  Epic's discovery is not directed to determining whether TCS and Epic's software compete in any market.  The expedited discovery will not cure Epic's failure to show that the Med Mantra software is a competitive market concern causing actual, imminent irreparable injury.  Thus, this

---

No. 3-08-CV-0398-B, 2008 WL 918243, at *1 (N.D. Tex. Mar. 13, 2008) (granting plaintiff's request where plaintiff's investigator confirmed defendant's unlawful conduct  and pattern of destroying evidence in a trafficking of counterfeit trade goods case).

[28] *See* Additional Background ¶4, *supra*.

[29] *See* Additional Background ¶1, *supra*.

[30] *See, e.g.*, Martin Dec. (Epic Ex. 4.3) (declaration from Epic senior vice president).

[31] *Singer Co. v. P. R. Mallory & Co.*, 671 F.2d 232, 235 (7th Cir. 1982) (citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 536 F.2d 730, 736 (7th Cir. 1976)); *Adamszewski v. Local Lodge 1487*, 496 F.2d 777, 786 (7th Cir. 1974).

is not a "cart before the horse" problem, as Epic asserts, in which Epic would need the expedited discovery to establish irreparable injury required for expedited discovery.[32]

### C.    Epic Has Not Shown a Probability Of Success On The Merits.

Again: The stated purpose of Epic's motion is to determine whether to bring a preliminary injunction motion to prevent immediate irreparable injury.  "A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant carries the burden of persuasion by a clear showing."[33]  Epic has failed to make a clear *prima facie* showing here for several reasons.

First, for all the reasons discussed above, Epic has failed to show immediate, irreparable injury as required for preliminary injunctive relief—the premise for expedited discovery in the first instance—and Epic's proposed expedited discovery will not cure that deficiency.

Second, Epic failed to show that any actual trade secrets were misappropriated.  Epic concedes that it already has identified all of the allegedly improperly downloaded documents, including documents that Epic alleges TCS consultants did not require to perform their work for Kaiser.[34]  But—even though Epic states it has been investigating this for months—Epic failed to present a single document, and failed to describe any specific "trade secret" therein, that TCS allegedly misappropriated.[35]  At a minimum, Epic should have submitted a few exemplar documents and explain for each (1) why Epic believes a TCS consultant downloaded the

---

[32] Epic Br. at 16.

[33] *Borzych v. Frank*, No. 04-C-632-C, 2005 WL 318820, at *1 (W.D. Wis. Feb. 8, 2005) (citing *Boucher v. School Bd. of Greenfield*, 134 F.3d 821 (7th Cir. 1998)).

[34] Epic Br. at 7.

[35] Epic Br. at 7.

document; (2) why Epic believes the document was not required for TCS to perform the Kaiser work, and (3) what trade secrets Epic believes are disclosed in the document.[36] This was all information Epic claimed to already have and, importantly, part of Epic's burden to make a *prima facie* showing that expedited discovery is warranted here.[37]  Epic's failure here denies TCS a fair opportunity to rebut Epic's allegations by showing there was no trade secret misappropriation because (1) an identified exemplar document was not downloaded by TCS, (2) the document was required for TCS to perform the Kaiser work or (3) the document did not disclose trade secrets.  Epic's bare assertions do not provide TCS or the Court a reasoned basis for weighing the merits of Epic's claim, as required for the expedited discovery Epic seeks.[38]

Third, even if Epic had shown it was losing sales to the Med Mantra software in competing markets and that TCS improperly obtained Epic trade secrets, Epic has not shown that any trade secrets likely were incorporated into the currently marketed Med Mantra software during the short time period in which the alleged misconduct occurred.[39]  It is highly unlikely that the entrenched Med Mantra software structure and operation could have been revamped

---

[36] *Lands' End, Inc. v. Genesys Software Sys., Inc.*, No. 13-CV-38-BBC, 2014 WL 266630, at *4 (W.D. Wis. Jan. 24, 2014) ("The Court of Appeals for the Seventh Circuit has held that a party must identify with specificity the trade secrets that it accuses another of misappropriating.").

[37] *See Share Corp. v. Momar, Inc.*, No. 10-CV-109, 2010 WL 724321, at *2 (E.D. Wis. Feb. 26, 2010) ("As expedited discovery is 'not the norm,' the plaintiff must make 'some prima facie showing of the need for the expedited discovery.'") (quoting *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000)).

[38] *Edgenet* at 388 (denying expedited discovery where "the remaining Notaro element— 'some probability of success on the merits'—was discussed only in the most broad terms by the plaintiff in the present motion").

[39] *See* Additional Background ¶¶1-3, *supra*.

from an "elementary" to a "sophisticated" program in "one year" (as Epic's key witness claims) to incorporate whatever trade secrets Epic alleges were improperly downloaded.[40]  At most, Epic's concern is an inchoate one—*i.e.*, that trade secrets **might** appear in a **future** version of Med Mantra—but such speculative future concern serves no basis for expedited discovery **now**, which must be premised on actual, immediate irreparable injury.[41]

Fourth, Epic erroneously relies on an interview its litigation counsel had with Mr. Guionnet to infer that Epic alleged trade secrets were implemented into the Med Mantra software.[42]  But Epic failed to show that Mr. Guionnet would have any understanding of the Med Mantra software structure, much less any reliable knowledge about whether, how and when alleged Epic trade secrets could be implemented in the Med Mantra software.  He would not, as explained above.[43]  Further, other erroneous assertions by Mr. Guionnet show that his statements are unreliable and a product of ulterior motives.[44]

In sum, Epic has not presented a *prima facie* case of a likelihood success in obtaining the potential preliminary injunctive relief that serves the basis for the expedited discovery.

---

[40] *See* Additional Background ¶¶1-3, *supra*.

[41] *Edgenet*, 259 F.R.D. at 387.

[42] Mr. Guionnet has been a TCS employee since 2012, including during the time that Epic's counsel had a secret interview with him seeking admissions and confidential TCS information without TCS's knowledge or consent.  TCS currently is investigating the propriety of the interview and reserves all rights accordingly.

[43] *See* Additional Background ¶¶17-18, *supra*.

[44] *See* Additional Background ¶¶16, 19, *supra*.

**D.  Epic's Proposed Expedited Discovery Is A Burdensome Fishing Expedition Not Limited To The Purpose Of The Expedited Discovery**

Both the *Notaro* and "good cause" standards take into account the burden that granting an expedited discovery request would have on the party from whom the information is sought.  Both standards also require the discovery to be narrowly tailored to achieve the purpose of that expedited discovery.[45]  In this case, Epic's proposed discovery is an overbroad and burdensome fishing expedition that should be denied.

First, Epic seeks the deposition of three TCS employees—Ramesh Gajaram, Aswin Kumar Anandhan, and Sakari Gunasekaram—all of whom live and work in India.  "[F]oreigners who are not in the United States are beyond the subpoena power of our courts even if their testimony can't be obtained in admissible form otherwise."[46] Thus, any depositions of these employees must be in India following proper service under international law.  Conducting such international depositions on an "expedited" basis will be problematic and burdensome.  Further, such individuals should not be subject to depositions now on an expedited basis, and then later during regular discovery.  The Court should deny expedited discovery as to a deposition of these three foreign individuals.  If the Court does grant such discovery, and Epic deposes these individuals, then Epic should be precluded from deposing them again in this case.

---

[45] *See generally Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618 (N.D. Ill. 2000) (denying motion for expedited discovery based on good cause standard); *Edgenet*, 259 F.R.D. 385 (denying motion for expedited discovery based on *Notaro* standard).

[46] *In re Petition of Boehringer Ingelheim Pharm., Inc., & Boehringer Ingelheim Int'l GmbH, in Pradaxa (Dabigatran Etexilate) Products Liab. Litig.*, 745 F.3d 216, 218 (7th Cir. 2014) (citing *Relational, LLC v. Hodges*, 627 F.3d 668, 673 (7th Cir. 2010) ("foreign nationals are beyond the court's subpoena power")).

Second, Epic seeks to depose and obtain documents from Mr. Guionnet, still a TCS employee, seeking documents in his possession that allegedly show misconduct by TCS. But— assuming those documents even exist—those would be TCS documents that may contain TCS confidential or privileged information. The Court should deny this discovery. If the Court grants this discovery, then Mr. Guionnet should produce those documents directly to TCS' counsel to review, such as for privilege, and TCS' counsel may then produce those documents to Epic's counsel on an Outside Counsel Eyes Only basis. Further, Epic should be precluded from deposing Mr. Guionnet again later in the case.

Third, Epic's proposed document requests to TCS are overbroad and not suited for the expedited purpose here. Epic claims to have identified specific documents containing trade secrets that TCS consultant's downloaded even though the documents allegedly were not necessary for TCS to perform consulting work for Kaiser. As discussed above, and Epic acknowledges, TCS consultants required and Epic granted access to Epic's documents to perform the Kaiser work and, thus, TCS legitimately would have Epic information beyond the limited set of allegedly problematic documents identified by Epic. [47] But Epic's proposed document requests broadly go well beyond that small set of identified documents and would mainly capture documents not at issue here. The document request thus should be denied. Courts will deny requests to expedite discovery where "no effort whatsoever is made to tailor the discovery sought."[48] Epic made no such attempt here. Similarly, a judge of the Eastern District

_____

[47] *See* Additional Background ¶¶5-7, *supra*; *see also id*. ¶¶10-12; Epic Br. at 5 ("Epic agreed to allow TCS America personnel access to Epic's training programs and information for purposes of providing consulting services … related to the implementation of Epic software").

[48] *Merrill Lynch*, 194 F.R.D. at 621 (N.D. Ill. 2000).

of Wisconsin denied a motion for expedited discovery because, *inter alia*, "[movant's] first proposed request for documents asks for nearly every document related to the claim at hand" in an unreasonably shortened time frame.[49]  If Epic's motion is granted, the document requests Epic is permitted to propound should be limited to the specific documents that Epic identified in its investigation as being documents that (1) were downloaded by a TCS consultant, (2) were not necessary for TCS to perform consulting work for Kaiser and (3) that disclosed Epic trade secrets.

In sum, the Court should deny Epic's expedited discovery request given its unreasonable scope.  Such a denial is particularly appropriate here, because the Court has "an obligation to protect defendants from unfairly expedited discovery" especially where "the injury resulting from expedited relief outweighs any benefits received from the process."[50]

### E.    The Burdens Of Expedited Discovery on TCS Outweigh The Purpose For Epic Requesting It

The burdens of complying with the expedited discovery that Epic seeks outweigh the purpose for Epic seeking it.  As discussed above, Epic has not shown that the requested expedited discovery is warranted at all – e.g., no showing of irreparable injury and failing to make a prima facie showing of trade secret misappropriation.  On the other hand, Epic proposes broad, burdensome discovery, such as depositions of foreign individuals and document requests not limited to the specific problematic documents at issue.  The discovery should be denied.

---

[49] *Edgenet*, 259 F.R.D. at 388.

[50] *Edgenet* at 388.

Epic seeks to justify the broad discovery by arguing that TCS will have to collect the requested documents whether or not expedited discovery is granted and the burden would be "largely the same, only on a shorter time schedule."[51]  But that's not the case—e.g., Epic's discovery seeks documents that are not relevant to Epic's claim because both parties agree TCS would be privy to those documents to perform the Kaiser work.  Moreover, Epic misses the point. The question is not what discovery TCS **ultimately** may produce in this case.  Rather, the question here is what limited expedited discovery is justified **now** given the burden to TCS in complying on an expedited basis.  It is not.

Finally, Epic proposes one-sided expedited discovery.  This has several practical, harmful consequences.  First, the one-sided discovery gives Epic an unfair advantage in the litigation.  Second, one-sided discovery lacks the practical benefits that arise from mutual discovery obligations that tend to reign-in unreasonably broad demands because the party making a demand may need to respond in kind ("what's good for the goose is good for the gander"), limit disputes through mutual comprises ("horse-trading") and the many other efficiencies envisioned in the normal discovery process.  Third, the inevitable result of cramming into a space of weeks tasks that would normally play out over a course of months unjustifiably increases TCS litigation costs and the risk of prejudicial errors in rushing to comply with expedited discovery at the very outset of the case.  Indeed, the precise reason the rules preclude discovery at the outset of the case is to "protect[] defendants from unwarily incriminating themselves before they have a chance to review the facts of the case and to retain counsel."[52]

---

[51] Epic Br. at 15.

[52] *Notaro*, 95 F.R.D. at 404.

Accordingly, the Court should deny expedited discovery here.  If the Court is inclined to grant some expedited discovery, TCS respectfully requests an opportunity (1) to serve mutual expedited discovery on Epic directed to the subject matter of the expedited motion, (2) to serve formal objections to Epic's discovery and (3) to allow the parties to meet and confer on their respective discovery requests to provide some balance to this extraordinary expedited request.

## IV.    CONCLUSION

For the reasons stated above, the Court should deny Epic's motion for expedited discovery.

Dated:  November 26, 2014

                    /s/ David W. Long

David W. Long

KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, D.C. 20007
Email: DLong@KelleyDrye.com
Phone: (202) 342-8400
Fax: (202) 342-8451

STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, Wisconsin 53701-1784
Email: bneider@staffordlaw.com
Phone: 608.256.0226
Fax:  608.259.2600

Attorneys for Defendants
TATA CONSULTANCY LIMITED, and
TATA AMERICA INTERNATIONAL
CORPORATION