UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EPIC SYSTEMS CORPORATION, a
Wisconsin Corporation,

        Plaintiff,

        v.

TATA CONSULTANCY SERVICES
LIMITED, an Indian Corporation; and TATA
AMERICA INTERNATIONAL
CORPORATION (dba TCS AMERICA), a
New York Corporation,

        Defendants.

Case No. 14-CV-748-WMC

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO COMPEL COMPLIANCE WITH COURT ORDER**

This case began in October 2014 after Epic discovered that more than 6,000 electronic files had been downloaded from its computer network and pulled to multiple locations, including TCS IP addresses in India.  A whistleblower informed Epic that the misappropriated information was being incorporated into a competing TCS product, and a forensic investigation confirmed the apparent theft of Epic's information.

On November 6, 2014, Epic filed a motion for expedited discovery seeking certain limited discovery to find out the extent of the damage, including who at TCS was involved, why they took so many files, where those files were sent, and what was done with them.  The stated goal was to determine if a preliminary injunction would be necessary.  On December 8, 2014, the Court granted the expedited discovery motion in part, ordering the parties to work together in December to develop an early discovery plan.  The Court expressly recognized that "a lot of the

discovery that's requested [in Epic's motion] is probably appropriate." (Tr. at 5:6-9, December 8, 2014 Transcript, attached as Exhibit A to the Declaration of Nick G. Saros filed concurrently herewith).

After the motion was granted, however, TCS began manufacturing excuses to avoid any disclosure, taking deliberate steps to drag the case out and end the potential threat of a preliminary injunction. Indeed, to date, *Epic* is the only party to have produced documents. TCS has refused to produce even one single document, does not appear to have started collecting documents, has failed to provide any information regarding depositions of the key witnesses, and has made no progress gathering the files of Mr. Guionnet—the TCS whistleblower that provided key information regarding TCS's misconduct. TCS has not even produced the Guionnet emails in its possession. It has done almost nothing despite the Court's instruction.[1]

At the same time, Mr. Guionnet revealed last week in his subpoena objections that several of the key facts that TCS has represented to Epic and this Court may be false. His communications have only increased the urgency for expedited discovery.

Through this motion, Epic seeks an order (1) requiring TCS's immediate production of Mr. Guionnet's emails, (2) setting January 30 as the deadline by which TCS will complete its initial document production pursuant to the expedited discovery motion, and (3) requiring TCS to provide the current location and available deposition dates in the first half of February for TCS employees Rajesh Gajaram, Aswin Kumar Anandham, and Sankari Gunasekaram.

---

[1] After being informed that Epic would file this motion, TCS finally sent search terms and custodians only minutes before this filing, which TCS had promised 23 days ago on December 22. (Saros Decl., Ex. E). The search terms appear to have taken only a few minutes to compile, and TCS appears to have put little effort into identifying custodians. TCS should have conducted extensive interviews with witnesses to determine what happened to Epic's documents. Its cursory list of terms and merely six custodians shows otherwise. And TCS still fails to provide any information regarding the three witnesses to be deposed.

## I.   BACKGROUND AND ARGUMENT

### A.   The Court Grants In Part Epic's Motion for Expedited Discovery.

Epic's Motion for Expedited Discovery sought production of certain documents and depositions of three TCS employees.  TCS's opposition relied primarily on the contentions that "[n]o Epic confidential information was considered in developing the Med Mantra software" (Docket Entry ("D.E.") No. 19 at 9), that "the Med Mantra software currently is not in competition with Epic's software in the U.S. or any other market" (*id.*), and that "Epic's concern arises from misinformation from a disgruntled TCS employee" (*id.* at 6).  Yet TCS provided *no evidence* of these alleged "facts" other than the say-so of its attorneys.

The Court held a telephonic hearing on December 8, 2014.  During that hearing, the Court stated that "it may be necessary to get some early discovery so that we can line this up for either a injunctive motion or not" (Tr. at 4:14-16), and that "there's no good reason not to allow some front-end discovery along the lines requested and allow it perhaps even sooner than an answer comes in."  (Tr. at 5:6-9).  The Court encouraged "audio/visual deposition[s]" of the three TCS employees (Tr. at 8:17-23), and ordered an early Rule 26(f) conference so that the requested depositions could be taken in "late January" or "February."  (Tr. at 10:11-14).  In response to TCS's request for delay because of work on its motion to dismiss, the Court stated that it was not inclined to wait until after the holidays for the Rule 26(f) conference.  (Tr. at 18).  The Court then issued a written order in which it granted in-part and denied in-part the Motion for the reasons stated during the hearing.  (D.E. 21).  The Court's written order also pushed back TCS's answer date to January 5 to presumably give TCS more time to work on Rule 26(f) and discovery issues.

Epic's reading of the Court's statements is that the *depositions* were to occur in late January, and that the Court extended the responsive pleading deadline so TCS could tend to its

discovery obligations in December.  TCS took the Court's courtesy extension as permission to focus on writing a long motion to dismiss and draft its own discovery requests, while delaying its disclosure obligations.

**B.      TCS Immediately Builds Roadblocks to Providing Discovery.**

In the immediate weeks following the Court's December 8 Order, TCS delayed the expedited discovery process, and consequently Epic's ability to determine what TCS has done with the electronic data taken from Epic's computer network.  In short, TCS acted as if Epic's motion was simply denied in total.

TCS's position that the Court did not expect discovery to start in any fashion until late January or February (*see* Saros Decl., Ex. D, P. Robben email to N. Saros) is inconsistent with what occurred at the December 8 hearing.  The Court required an early Rule 26(f) conference, ordered the parties to discuss an early discovery plan, added an additional week TCS's responsive pleading deadline,  stated that "there's no good reason not to allow some front-end discovery … even sooner than the answer comes in" (Tr. at 5:6-9), and told the parties to "start that ball rolling down the hill" (Tr. at 20:11-14) .  Epic does not believe the Court took those actions and made those statements so that TCS would conduct zero discovery, or even begin its search for documents, until well over a month later in late January.  TCS latches on to the words "take discovery" in the transcript to mean provide documents or conduct any discovery.  Epic believes the only fair reading of that statement, and based on the events of the hearing itself and the Court's actions noted above, is that it meant "take depositions."  TCS's position that it need not produce documents until mid-February means that the expedited depositions of the three TCS witnesses would not likely occur until March, which is three months after the December 8 hearing and order allowing those depositions—thereby removing all meaning of "expedited."

This Court's ordinary discovery plan appears to move faster than this expedited matter under TCS's proposals.

TCS's obstructive tactics have prevented this case from moving forward. TCS waited to schedule the Rule 26(f) conference until the last possible moment, despite the Court's order that the conference occur "earlier if possible." (D.E. 21). On its own, this scheduling delay would not be an issue. But TCS's positions at the December 22 telephone meeting exhibited a strategy of total obstruction. TCS took the following extreme positions during the first day of the meeting:

- TCS insisted that no discovery was to occur until late January;

- TCS stated that no depositions of TCS witnesses would occur except through the proceedings required by the Hague convention;

- TCS did not know whether the three TCS witnesses requested by Epic were located in India or the United States, and although it promised to find out, it still has not disclosed that information;

- TCS demanded that Epic identify the TCS custodians relevant to Epic's document requests, despite the fact that Epic has little knowledge of who at TCS has access to or has used the stolen documents, and cannot interview TCS witnesses like TCS's counsel can to determine where documents may reside;

- TCS refused to discuss the specifics of the Epic document requests that were attached to the motion for expedited discovery;

- TCS demanded that Epic serve narrowed document requests, which TCS would then review before scheduling a meet-and-confer so the parties could later discuss how those requests should be further narrowed;

- TCS took the position that only trade secret documents were at issue in the expedited discovery period, and that even if TCS took Epic's confidential documents or information and incorporated that information into its Med Mantra software, such a situation would ***not*** be covered by the expedited discovery;[2] and

---

[2] TCS now takes the position that if the stolen documents were relevant to TCS's work for Kaiser in any fashion, then that fact "undercuts" Epic's need for expedited discovery in the first place. (Ex. D). TCS misses the point. Documents relevant to TCS's Kaiser-related work contain Epic confidential information. TCS may not take those documents, share then with

- TCS informed Epic that it has no ability to gather Mr. Guionnet's documents, but that it would subpoena Mr. Guionnet at some point in January 2015, and would send a draft subpoena to Epic's counsel the first week in January for a discussion (over two weeks after the Rule 26 conference and nearly a month after the Court had ordered expedited discovery).

(Saros Decl., ¶ 5). Epic's counsel disputed each of these points during the conference, and because Judge Crocker was ill that day, Epic was unable to seek his guidance to "call the balls and strikes" as offered by the Court during the December 8 hearing.  (Tr. at 20:22-23).

In a subsequent discussion on December 23, TCS appeared to back down from some of the positions it had taken the day before.  First, TCS agreed to subpoena Mr. Guionnet sooner than January 2015.  Second, TCS stated that it would send to Epic a list of proposed search terms and custodians for its document collection.  Epic agreed to review TCS's proposal, but stressed that the onus of the investigation is on TCS, that the search terms and custodians are outside Epic's knowledge or control, and that TCS's search should not be limited to an electronic search. Third, TCS also stated that it would provide the three TCS witnesses by video deposition if permitted under Indian law.  TCS agreed to confirm the location of each witness and whether the video depositions would be a problem.  (Saros Decl., ¶ 6).  It appeared that at least some discovery would progress.  Epic later discovered it would not.

On the other hand, Epic delivered to TCS (without receiving any discovery requests) two substantial documents:  (1) a spreadsheet listing information on every document downloaded by TCS employee Ramesh Gajaram's account, which allows TCS to see precisely which documents were taken from Epic by TCS personnel; and (2) a log of download dates, times, and IP addresses related to the more than 6,000 downloaded documents.  (Saros Decl,, ¶ 7).  Epic is also prepared to produce copies of the stolen documents to TCS's counsel, but requires a

others at TCS, or use them in the development of its competing Med Mantra software.  All of Epic's confidential documents, and what TCS did with them, are relevant to the expedited discovery.

confidentiality protective order in place before doing so.  Epic sent a draft protective order on December 22, and received no response until January 8, indicating TCS's lack of desire for copies of the stolen documents.[3]  Lastly, during the Rule 26(f) conference on December 22-23, Epic's counsel invited TCS's counsel to informally provide discovery requests to determine what TCS needs (if anything) with respect to expedited discovery.  TCS did not respond, and instead served broad requests and interrogatories on January 7.

### C.      TCS's Strategy of Delay Continues with No Disclosure By TCS.

Epic's substantial work, the Court's order, and TCS's promises have turned into nothing. It took TCS 17 days to respond to Epic's proposed protective order for confidential documents, only to suggest a few minor changes.  TCS's strategy for delay continued in the parties' Rule 26(f) report, where TCS proposed an initial document production deadline of February 13 – months after the Court ordered expedited discovery take place.  (D.E. 28 at 7).

What is more, it become clear that TCS had not started its search for documents.  In the Rule 26(f) report, TCS stated that an electronic search would be the most efficient means of collecting documents potentially relevant to Epic's expedited discovery requests, and proposed providing search terms to Epic for approval prior to beginning its search.  (D.E. 28 at 7).  It appears that TCS's search for documents has not yet even begun.  All the work put into Epic's motion for expedited discovery in October and November, and the Court's evaluation of the papers and Order in December, have resulted in nothing – not one single disclosure by TCS.

---

[3]  The fact that TCS did not respond to the draft confidentiality protective order for over two weeks, which could otherwise be handled in a matter of hours between the parties, shows that TCS has no intention of moving discovery forward.  Without it, no substantial documents can produced in this case, which is the precise reason for TCS's extensive delay.

**D.      Issues Raised by Mr. Guionnet in Response to TCS's Subpoena Warrant Immediate Action.**

Mr. Guionnet recently provided additional information that causes great concern to Epic, should concern this Court, and further supports immediate action regarding TCS documents.  In response to a subpoena served to Mr. Guionnet by TCS, Mr. Guionnet sent emails to the attorneys of record in this matter stating his objections, and providing additional facts relevant to the case.  Those facts, if true, paint a picture far different from what this Court has heard from TCS, and emphasize the importance and urgency of learning what has happened at TCS.[4]

Based on his emails, it appears that Mr. Guionnet read the briefing on the expedited discovery motion and then refuted several of the factual representations from TCS to the Court.

First, TCS argued to the Court in writing that Mr. Guionnet's job "had nothing to do with the India-focused Med Mantra software" (D.E. 19 at 2) and he was "entirely removed from the Med Mantra team located in India" (*id.* at 3).  But Mr. Guionnet directly refutes the arguments and provides facts showing the opposite:

- A member of the Med Mantra development and programming team was "embedded" in Mr. Guionnet's team at Kaiser, which was exclusively responsible for working on Epic's software for Kaiser.  Mr. Guionnet called this embedded Med Mantra employee "suspicious, questionable and questioned."  Mr. Guionnet states that he removed this person from his team, but was later told to reintegrate him;

- Mr. Guionnet was "exposed to various Med Mantra products and services multiple times";

- He was asked to identify if Med Mantra modules would fit in at Kaiser;

- A portion of his team at Kaiser was called "Care Delivery," and that team had a "substantial dotted line" to a global group also called "Care Delivery" that

---

[4]  It is important to remember that when TCS opposed Epic's motion for expedited discovery, it submitted no declarations from its employees, and no evidence whatsoever regarding the stolen documents.  Indeed, the whistleblower is the only person to supply evidence regarding what really happened, and TCS's only response is to try to discredit him.

included Med Mantra, and that ultimately people on both teams reported to the same person in charge of "Care Delivery"; and

- Mr. Guionnet "specifically reviewed some MedMantra functionalities and modules as an option to be implemented at Kaiser."  (Saros Decl., Ex. C).

Second, Mr. Guionnet refutes TCS's position that there is no competition between Med Mantra and Epic's software—a factual claim that TCS relied on extensively in its opposition to the expedited discovery motion.  (D.E. 19 at 4).  Mr. Guionnet states:

- He was asked to "share with Kaiser information from Apollo hospitals related to Med Mantra";

- He was asked if there would be a "pilot platform available to implement Med Mantra at Kaiser" in a smaller clinical environment;

- He participated in a Med Mantra presentation to Kaiser; and

- He traveled with Kaiser to India to visit an Indian hospital chain and attend technical and sales/marketing activities.  (Saros Decl., Ex. C).

Third, regarding TCS's statements that Med Mantra was "developed and deployed over seven years ago," "long-established and set well before the alleged misconduct," and could not possibly have implemented changes in a year's time (D.E. 19 at 2-4), Mr. Guionnet disagreed:

- He was able to verify that significant Med Mantra components (Ambulatory and Laboratory) were written and tested in 2013-14;

- He saw several comparisons between Med Mantra and Epic's software, including by the Med Mantra team; and

- He was exposed to another product called Med Mantra at a hospital in Kolkata, India, and that he understood the architecture, functionality and design were "drastically different from the Med Mantra publicized to be at Apollo Hospitals." (Saros Decl., Ex. C).

Fourth, Mr. Guionnet states that he was the client partner on the Kaiser account until May 2014 (Saros Decl., Exs. B, C), and not transitioned from the account in 2013 as stated by TCS. (D.E. 19 at p. 9).

9

Mr. Guionnet's additional statements further muddy what is unknown to Epic—what happened to Epic's documents?  Are they being used by a competitor in India to improve the functionality of a product that is apparently being marketed directly to one of Epic's largest clients, Kaiser?  Who else has been give access to Epic's confidential information?  Are TCS personnel in India misrepresenting what has happened to TCS's U.S. counsel and this Court?  None of the answers to these questions are clear.

What is clear is that TCS has produced nothing in this matter and Mr. Guionnet is unlikely to produce documents any time soon.  TCS agrees.  (D.E. 28 at 5 ("It is foreseeable that Mr. Guionnet's compliance with the subpoena will need to be compelled by court order.")).  Mr. Guionnet communicated that he will need to review his TCS email account for documents as a result of the subpoena, and believes that he has "hundreds (maybe thousands)" of documents related to this matter.  (Saros Decl., Ex. B).  Mr. Guionnet's important emails are in the possession of TCS—sitting on its server—and no excuse exists for TCS's failure to immediately produce those emails.  Indeed, Epic will accept *all* of Mr. Guionnet's email communications from May 2012 to the present without review by TCS to alleviate the anticipated complaints of burden that TCS will use to further delay the production of any information in this case.

## II.     REQUEST FOR RELIEF

Epic requests that this Court order TCS to comply with the December 8, 2014 Order on Epic's Motion for Expedited Discovery by requiring TCS to: (1) immediately produce all of Mr. Guionnet's emails in TCS's possession; (2) complete its document production in response to Epic's expedited requests by January 30; and (3) provide the locations of the three TCS witnesses and available deposition dates in the first half of February 2015.

Dated:  January 14, 2015

/s/ Nick G. Saros
Brent Caslin
bcaslin@jenner.com
Nick G. Saros
nsaros@jenner.com
Kate T. Spelman
kspelman@jenner.com
JENNER & BLOCK LLP
633 West 5th Street Suite 2600
Los Angeles, CA 90066
Tel:  213-239-5100
Fax:  213-230-5199

Anthony A. Tomaselli
aat@quarles.com
Kristin G. Noel
kristin.noel@quarles.com
Stacy A. Alexejun
stacy.alexejun@quarles.com
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: 608.251.5000
Fax: 608.251.9166

*Attorneys for Plaintiff Epic Systems Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2015, I caused a true and correct copy of the

foregoing Plaintiff's Memorandum in Support of its Motion to Compel Compliance with Court

Order to be served on all counsel of record via the Court's ECF filing system.

/s/ Nick G. Saros
By: Nick G. Saros