# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * *

EPIC SYSTEMS CORPORATION, a
Wisconsin Corporation,

       Plaintiff,

-vs-                     Case No. 14-CV-748-SLC

TATA CONSULTANCY SERVICES     Madison, Wisconsin
LIMITED, an Indian Corporation December 8, 2014
and TATA AMERICA INTERNATIONAL  2:00 p.m.
CORPORATION, d/b/a TCA America,

       Defendants.

* * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF TELEPHONIC MOTION HEARING
HELD BEFORE MAGISTRATE JUDGE STEPHEN L. CROCKER,


APPEARANCES:

For the Plaintiff:
               Jenner & Block
               BY:  NICK SAROS
                  BRENT CASLIN
                  KATE SPELMAN
               633 West 5th Street, Suite 3600
               Los Angeles, California  90071

               Quarles & Brady
               BY:  ANTHONY TOMASELLI
               33 East Main Street, Ste. 900
               Madison, Wisconsin  53703

Also present:    Mike Wokasch, in-house counsel


           Lynette Swenson   RMR, CRR, CBC
       U.S. District Court Federal Reporter
          United States District Court
        120 North Henry Street, Rm. 520
         Madison, Wisconsin  53703
            608-255-3821

APPEARANCES CONTINUED:

For the Defendants:
                         Kelley, Drye & Warren LLP
                         BY:  DAVID LONG
                         3050 K St. NW, Ste. 400
                         Washington, DC  20007




                         *  *  *  *  *

          THE COURT:  Good afternoon.  This is Magistrate
Judge Crocker.  I understand I have the attorneys for
the parties in the Epic Systems Corporation lawsuit
against Tata Consultancy Services Limited, Tata America
International Corporation.  I have a court reporter
here, which is why you're on speaker phone.  The case
number is 14-CV-748-SLC.
     Let's find out who is on line and then let's get to
the business at hand.  Who's appearing on behalf of the
plaintiff today, please?
          MR. SAROS:  Good afternoon, Your Honor.  It's
Nick Saros for Epic Systems.  Along with me is Brent
Caslin and Kate Spelman, and our client's in-house
counsel Mike Wokasch is present also.  And Tony
Tomaselli from Quarles & Brady as well.
          THE COURT:  All right.  Well, good afternoon to
all of you.  And who have we got on behalf of the
defendants today?

1        MR. LONG:  Good afternoon, Your Honor.  My name

2   is David Long.  I'm an intellectual property attorney

3   with Kelley, Drye & Warren.  And it will just be me

4   today for the defendants.

5        THE COURT:  Okay.  I think that makes it what?

6   Six against one.  But that's probably a fair fight.

7        All right.  Counsel, we're on line to discuss and

8   for the Court to give at least a preliminary, if not a

9   final ruling on the motion for early discovery.  That's

10  docketed as 5.  It's got some supporting documents,

11  including a brief and the declaration, and Exhibits 6

12  and 7.  The opposition is 19, followed by some exhibits

13  as well.

14      I've read everything you've sent in to the Court,

15  and as is my practice and as some of you have

16  experienced in other hearings in other cases, what I'm

17  going to do is start by giving you the Court's overview

18  of where I think we find ourselves and where we might be

19  headed and then invite input from each side in turn,

20  starting with the movant.

21      I'm using conditional verbs and adverbs

22  intentionally because this is one where I don't have a

23  real clear sense yet as to where this all will be

24  headed, but I do have some notions as to where I think

25  it ought to be headed, subject to input from each side.

1    Let's start with this notion:  As I think you

2  understand, but as is sometimes obscured by the way you

3  argued in your briefs, right now the only issue is

4  whether to allow this expedited discovery.  It's really

5  not within the Court's purview at this point to decide

6  the merits of any injunctive motion because one has not

7  been filed.  Perhaps one will never be filed.  I think

8  that's Epic's point, that it wants to explore further

9  whether there's even a basis for it.

10    Certainly the defendants' view is that this is just

11  a wild goose chase based on wild allegations by a

12  disgruntled -- I think you called him a professional

13  whistleblower, Mr. Guinnet, if I'm pronouncing it

14  correctly.  But the Court's view is it may be necessary

15  to get some early discovery so that we can line this up

16  for either a injunctive motion or not.

17    Now I understand there's some dispute over whether

18  *Notaro* applies or not and what standard the Court should

19  employ.  I would tend to gravitate toward the lower

20  standard, the good cause standard, but I also want to be

21  pragmatic and fair about this.  So I'm going to offer

22  some more comments, but so as not to keep anyone in

23  suspense while I monolog, to use the term from the

24  Incredibles, where I think we're headed here is that I'm

25  going to order an early 26(f) conference, as is the

1  Court's prerogative under 26(f)(1), and get you guys

2  talking about this early discovery.  And perhaps it will

3  go in both directions.  I think that's part of the

4  discussion you need to have, and that's certainly

5  something the defendants have asked for here, and narrow

6  it a bit.  And then from the Court's perspective,

7  there's no good reason not to allow some front-end

8  discovery along the lines requested and allow it perhaps

9  even sooner than an answer comes in.

10      And I'll just offer this as one of the reasons for

11  proceeding in this fashion, then I'll offer some more

12  general comments in response to the briefs that were

13  submitted by both sides.  As the record reflects and as

14  counsel all know, the case was filed on October 31.  The

15  motion to expedite came in on November 7.  The computer

16  here in the court set a seven-day response cycle.  We

17  realized pretty quickly that there was no one who had

18  appeared yet on behalf of the defendants even to

19  respond.  So we put sort of a conditional deadline on

20  that.

21      Well, service was proved as of November 6.  That

22  would have required a response or answer within about 20

23  days.  But then the parties stipulated on November 25 to

24  extend the answer/response deadline out to December 29,

25  which I think is very practical and very fair,

1   particularly given the holidays.  Although December 29

2   isn't a very nice date either.  But the point is you've

3   already got about a month-long extension past where the

4   26(f) conference would normally fall.  So from the

5   Court's perspective, there's no reason from a discovery

6   point of view not to get that 26(f) going now, get the

7   parties talking more specifically about the sorts of

8   discovery that might be needed here to frame the

9   injunctive issue that concerns Epic Systems, and then

10  get a little bit more meat on the bones of the motion.

11  So let's segue from there.

12      I also tend to agree with the defendants that the

13  Court will need a little bit more proof of these

14  contentions before it actually orders the sorts of

15  discovery that's been required here.  I surmise that

16  it's available.  For instance, there was talk in the

17  brief of a Kaiser investigator talking to Mr. Gajaram,

18  if I'm pronouncing that correctly, and I don't remember

19  the exact verbs used, but the proffer in the brief was

20  that Mr. Gajaram admitted to the Kaiser investigator

21  that he had misappropriated the 6,000 files and that he

22  had shared them with the other two employees,

23  Mr. Anandham and Mr. Gunasekaram, inferentially without

24  the permission of Epic and outside of his scope as a

25  consultant for Kaiser.  Well, I'd like to see that

1  report.  Under seal or whatever.  And I think if

2  defendants' attorney hasn't seen that yet, he and his

3  colleagues are entitled to see that report also.

4       To the extent that there is some concern about

5  what's in the 6,000 files and why that might lead to an

6  incorporation, an unfair incorporation into the Medic

7  Mantra software, it would not hurt and the Court may

8  direct that Epic follow up along those lines as well.

9  Just connect the dots here a little bit more.

10      Now along those same lines, the defendants in their

11 brief suggest that you can't get an injunction for

12 future harm that isn't imminent.  I'm not so sure that

13 it's not a good basis to get discovery now that there

14 has not been time yet for the defendants to incorporate

15 any misappropriated files into their software.  And

16 again, we're just speaking for the purpose of discovery.

17 I want to make clear to both sides right now that the

18 Court is not taking sides here.  I have no idea what

19 really happened.  That will all be proved up at the

20 appropriate time in the appropriate manner, whether

21 that's through an injunctive proceeding or simply the

22 lawsuit itself.  But right now the Court doesn't have

23 the information that would allow it to decide who's

24 right and who's wrong.  And I'm not picking sides here.

25      But if we were to assume for the purposes of

8

1  discovery that there were misappropriated files, then

2  the fact that they have not yet been incorporated into

3  software to the Court is not a very persuasive reason

4  not to allow the discovery and perhaps not to allow an

5  injunction.  But that's putting the cart ahead of the

6  horse.  The question now is what kind of discovery do we

7  need and how robust should it be and how quickly should

8  it occur.  Okay?

9      So I'm thinking a lot of the discovery that's

10  requested here is probably appropriate.  Frankly if the

11  three consultants who are in good standing with their

12  employer, with the defendants, were simply to

13  explanation what they were doing with their Kaiser IDs

14  and why, perhaps they could put the lie to Mr. Guinnet's

15  allegations very quickly and Epic would back off.  That

16  certainly would be the outcome if the defendants'

17  proffer is an accurate one.  So I'm not sure why some

18  sort of an audio/visual deposition or a Skype deposition

19  across the ocean would not be beneficial to both sides

20  here, setting aside all of the consular notification and

21  other diplomatic niceties that would attend flies

22  attorneys over to -- I'm not sure if it's Mumbai or New

23  Dehli that Mr. Gajaram is, but somewhere in India.  But

24  again, that would be part of the 26(f) conference.

25      Nobody really picked up on the Request No. 4, the

1  Rule 45 document subpoena to Kaiser.  Maybe that's the

2  800-pound gorilla sitting on the couch that nobody wants

3  to disturb.  I understand that.  But if that's part of

4  the mix, then I'm wondering who has -- who has talked to

5  Kaiser; who's asked them whether this is something

6  that's easy or hard to do; how they feel about this; do

7  they need to lawyer up here.  I think that needs to be

8  part of the discussion as well.  Because if the Court is

9  going to require early discovery and that involves

10  getting documents from Kaiser directly, well, they've

11  got a dog in this fight and they ought to be able to say

12  what they think as well.

13      As for the scope of the document requests, I think

14  both sides have some good points there.  I think maybe

15  some of these documents that the defendants have would

16  be very useful to the question or to answering the

17  question whether there's some need for injunctive relief

18  here.  I don't know that it all needs to be done.  I

19  think maybe Epic aimed broadly on purpose so that it

20  didn't miss something, but that's also something I think

21  could be sifted and winnowed down at a 26(f) conference.

22      I'm going to offer this in terms of the Court's

23  vision of timing here and then I'm going to stop talking

24  and turn the floor over to the plaintiff, the movant.

25  The Court generally tries not to jam up attorneys with

1   their families over the holidays. I'm not sure that we

2   can avoid that completely here. But the Court's view is

3   that if we have a 26(f) conference before the major

4   winter holidays, if you guys can meet-and-confer before,

5   say, the 19th, which is the Friday of the week before

6   Christmas or maybe even the 22nd or 23rd and get a

7   report to the Court, perhaps with a section or a couple

8   of sections about the expedited discovery, framing the

9   agreements in light of my direction and the

10  disagreements that might require the Court to referee

11  them, then we could maybe get this discovery taken in

12  January. But I'll tell you right now it's not going to

13  happen any earlier than late January. It might even be

14  February, at which point given the timing of the answer

15  here or the other response, we're going to be in regular

16  discovery anyway.

17      Now I acknowledge that we don't normally depose

18  percipient witnesses right out of the gate, so that

19  would be abnormal, but it would not be contrary to the

20  rules. So it wouldn't be something where *Notaro* or the

21  good cause standard would apply, it would just be a

22  matter of fairness and pragmatism. And of course along

23  those lines, to the extent the defendants want to

24  suggest immediate discovery that is genuinely necessary

25  for the Court to determine what ought to happen next in

1  terms of injunctive relief, that's part of the mix as

2  well.  All right?  A pretty long opening statement, but

3  I hope you find it helpful.

4      With that, let's turn the floor over to whoever is

5  the point person for the plaintiff today.

6      MR. SAROS:  Thank you, Your Honor.  This is

7  Nick Saros for Epic.  There are a lot of points, some of

8  which I have no comment to, so I'm only going to raise

9  the points where I have a comment.  The first one is

10  regarding the Kaiser Permanente relationship.  There was

11  a declaration provided from a Mr. MacLeod, and just for

12  the Court's clarification, he is the Kaiser investigator

13  and he interviewed Mr. Gajaram and it was his

14  declaration that described what he determined in that

15  interview where Mr. Gajaram initially denied downloading

16  or saving any documents and then -- and denied providing

17  his log-in credentials to other people.  And then --

18      THE COURT:  Right.  That's Docket 9.  I've got

19  that.  But is there a more robust report or is that it?

20      MR. SAROS:  I think that's all we got from

21  Kaiser.

22      THE COURT:  Okay.  Well, I will guess I'm used

23  to investigative reports by special agents.  This is

24  pretty vague, from the Court's perspective.  But that

25  said, if you did beef that up, that's what I'm looking

1  for.

2          MR. SAROS:  We have -- you know, so there has

3  been -- to answer your question, one of your later

4  questions about Kaiser and the subpoena to them, which

5  we did ask for, there has been communications with

6  Kaiser's lawyers.  They have been involved.  They are,

7  as you said, lawyered up.  So they've been involved in

8  this and they understand the problem.  And it was the

9  Kaiser lawyers that got the Kaiser investigator

10 involved.

11         THE COURT:  Well, I would have surmised that.

12 What's their response to your request to the Court for

13 an early subpoena?  Do they care?

14         MR. SAROS:  I think they want us to negotiate a

15 subpoena with them.  I mean our initial hope was that

16 Kaiser would just give us every bit of their

17 investigation and that hasn't proven to be the case.

18 And --

19         THE COURT:  Did they say why not?

20         MR. SAROS:  I don't -- no.

21         THE COURT:  Okay.  I keep interrupting you.

22 What else have you got?

23         MR. SAROS:  Okay.  No, that's okay, Your Honor.

24 I obviously don't mind that.  You mentioned another

25 proof of the contentions, you mentioned what's in the

1  6,000 files.  We have a list of the documents, the dates

2  of the download, and the IP addresses where they show

3  the downloads were from.  We would of course be happy to

4  provide that.

5          THE COURT:  Well, and let's be clear.  I have

6  no use for just a list of what the documents are.  That

7  would be meaningless to the Court.  It's more along the

8  analogy I offered of connecting the dots.  What is it

9  about these 6,000 files that arguably would have caused

10  Mr. Gajaram to download them illicitly and covertly for

11  the benefit of his employer?  What use could the

12  defendants make of these documents that they would have

13  gone to such lengths to obtain them improperly?  That's

14  the sort of proffer I need.

15          MR. SAROS:  Well, I think part of that, Your

16  Honor, is in the declaration of Stirling Martin, who is

17  one of the primary technical employees at Epic and he

18  describes the types of documents.  It's what we tried to

19  have him detail, give at least some evidence, and he

20  describes them as highly sensitive documents to Epic

21  that would allow someone to reverse engineer the

22  functionality of Epic software.

23          THE COURT:  Sure.  This is Docket -- just so

24  we're clear, this is Docket 8 in the file, and I've got

25  that and I've read that.  And again, this is a very good

1   headline version.  What I would suggest -- and again, I

2   want to be clear.  We're not going to make you prove

3   that you are entitled to injunctive relief before you

4   even do the discovery.  I think there's sort of that

5   bootstrapping problem that *Notaro* creates.  But

6   something a little bit more robust.  Again, I'm looking

7   at paragraph nine where he's talking about 6,477

8   documents accounting for 1,687 unique files.  You know,

9   a couple of examples of that.  You know, paragraph 11,

10  "The functionality would allow a competitor to reverse

11  engineer the functionality of Epic."  And he goes on to

12  explain why he says that.  If you could provide a little

13  bit more, just a couple of examples of that, not just

14  for the Court's benefit, but also for Mr. Long's benefit

15  and for his technical people so that if they dispute

16  that, they've got a basis for that.  So they know what

17  Mr. Martin is actually referring to as opposed to a

18  headline version.  Again, not everything, but just a

19  couple of concrete examples.  Does that make sense?

20          MR. SAROS:  Yeah, I think that does, Your

21  Honor.  I understand what you're saying and we'd be fine

22  with that.

23          THE COURT:  Okay.  Back to you.

24          MR. SAROS:  The one question I have, you talked

25  a little bit about setting an early 26(f) conference and

1  one of -- my only concern with that, I think that's a

2  good idea.  My only concern with that is that starts the

3  regular discovery process.  The depositions that we're

4  seeking of the three consultants, we think that they

5  should be initial expedited for the purpose of

6  determining what happened.  You know, we believe there's

7  been a wrongdoing, the evidence shows a wrongdoing, and

8  there's really no rebuttal of that.

9          THE COURT:  Sure.  Mr. Saros, let me interrupt

10  you again because maybe I can allay that concern for

11  both you and Mr. Long.  By having an early 26(f)

12  conference, I want that because of your motion, and I

13  understand that that is the trigger for everything else

14  that follows.  But to the extent that the parties would

15  not have agreed to this on their own, I would direct

16  both sides sequence this so that you focus, like I said,

17  in a section or a couple of sections on this preliminary

18  discovery that you're requesting and that perhaps

19  defendants will counter request, but then set forth your

20  notions, perhaps by agreement of the parties, perhaps on

21  two parallel tracks, of what ought to happen next with

22  the regular case.  In other words, maybe you stay

23  discovery until this issue is resolved, at least in

24  terms of discovery and a motion filed or not.  Then the

25  regular discovery begins.  Then you disclose regular

1  experts, and so forth, leading to a trial date at this

2  point in early 2016.

3      Now maybe you'll stick with me as the judge.  You

4  being both sides.  Nobody has asked you to consent or

5  decline yet.  Maybe you'll get a different judge.  But

6  I'm the calendaring judge for every civil lawsuit in

7  this court and I can tell you all that no judge here has

8  a trial date available before February of 2016.  It just

9  isn't going to happen any sooner than that.  And it can

10 be later if we need it.

11     So in other words, Mr. Saros, you all meet.  You

12 have your 26(f).  Topic Number 1 is what we are we going

13 to do about this early discovery.  And then Topics 2

14 through 8 or 2 through 12 are what about the rest of the

15 case?  What do you think we ought to do then?  I hope

16 that's helpful.  But back to you.

17          MR. SAROS:  Yes, that is helpful.  But my only

18 point was just because -- if we do go through that

19 process, just because we have a short targeted

20 deposition of those three, doesn't mean we're precluded

21 later, which I think was in the opposition brief.

22          THE COURT:  Well, that's something that we will

23 decide once the parties have had a chance to

24 meet-and-confer.  I'm not real keen on denying anyone a

25 second shot at these witnesses.  If we're going to

1    expedite it, I don't think either side will have a full

2    knowledge of what they might want to ask them this

3    early.  So from the Court's perspective, as justice and

4    fairness requires, we can always redepose any witness in

5    any lawsuit.  If we need an advance ruling on that,

6    you'll get one.  But we're not going to get that ruling

7    today.  But certainly the Court is not averse to

8    allowing that in this case.  It has not been averse to

9    allowing it in other cases either.  That's our track

10   record.  Back to you.

11        MR. SAROS:  Okay.  I think that's it, Your

12   Honor.  We just want to find out what happens to Epic

13   stuff and I think what you said, the procedure you're

14   outlining we would agree with.

15        THE COURT:  All right.  Well, thank you for

16   your input.  Mr. Long, to you then for any input you'd

17   like to offer, either on my comments or on those that

18   Mr. Saros offered.

19        MR. LONG:  Yes, Your Honor.  Thank you.  And

20   generally I agree with what you've set out as well.  And

21   we state in our brief what we believe has happened here

22   and what more things we need to find out to make clear,

23   just because clients seem to get drug through the mud a

24   bit by their motion.  It's actually a very good

25   corporate citizen, good client, respects intellectual

1   property rights, an innovator itself.  We don't think

2   there's any impropriety here and that will bear out as

3   we go forward.

4       I had a couple of questions on the timing of

5   things, and maybe that ends up being things that the

6   parties can work out in the Rule 26(f) conference, and

7   if we can't, we know where you're at.  One is that this

8   timing of the Rule 26(f) conference itself would be

9   right when we're in the middle of filing what will end

10  up being a motion to dismiss, I'm fairly certain, on the

11  Complaint itself.  I would prefer, just given the

12  holidays and such, if we'd push that off to at least the

13  29th, the day our brief was -- our response to the

14  Complaint would be due.

15      THE COURT:  I would prefer not to.  It sounds

16  like what you really are concerned about, Mr. Long,

17  although you're much too diplomatic to say so, is you've

18  got your team working on your dismissal motion and

19  that's taking all their time.  I get it, but Kelley,

20  Drye & Warren is a big firm.  I don't know how big the

21  team is here, but you've got a big client.  I'm not

22  inclined to wait until after the holidays.  So if you're

23  asking for a direct answer, the answer is no.

24      MR. LONG:  Okay.  Thank you, Your Honor.

25  Probably the next question I have, I think it will go

1  toward what the parties will discuss in the Rule 26(f)

2  conference, but that's that -- a couple things.  We have

3  not seen the Kaiser report.  We asked for it but hadn't

4  received it.  We have not seen any information that

5  plaintiff Epic has gathered as far as finding which

6  documents they believe were downloaded by a TCF

7  employee, when, where, what the document was.  So I

8  think when we look at that Rule 26(f) conference at

9  least anyhow, some of the focus will need to be getting

10  down to that information.  And when --

11        THE COURT:  I agree.  And let me interrupt.  As

12  I tried to make clear to Mr. Saros, and let me confirm

13  to you, you're entitled to this now.  Your view is that

14  we're doing something extraordinary here, and you're

15  right.  And before we embark on this extraordinary

16  adventure, both the Court and your client and your law

17  firm are entitled to a little bit more detail.  So

18  certainly that's something you can discuss at the 26(f)

19  conference.  Maybe you guys can work it out before you

20  even meet about certain things that they can send over

21  to you as PDFs or email, but I agree with you on that.

22  So back to you.

23        MR. LONG:  Thank you, Your Honor.  I believe in

24  looking through this, given that we wouldn't have the

25  opportunity to do mutual discovery, which I think

1  creates some of that practical balance we talked about

2  in our briefing papers, I don't think I really have any

3  more at the moment unless Your Honor has any questions

4  for me.

5          THE COURT:  No, not at this point.  And let me

6  just offer some direction, then Mr. Saros, it's your

7  motion, so I'll entertain a brief reply, although the

8  operative word here would be *brief*.  I really don't want

9  to micromanage this so that if the Epic team would just

10  as soon meet closer to the 29th or after, you may.  But

11  the Court's view is I want this to happen before

12  Christmas.  I want you guys to have this meeting sooner

13  rather than later because I want to start that ball

14  rolling down the hill.  Okay?

15      That said, I'm going to leave it to the parties in

16  the first instance to sort out what needs to happen; how

17  much needs to happen.  You guys are much better than

18  that than the Court is, so I'm going to try to stay out

19  of your way.  But as Mr. Long pointed, you know where to

20  find me and I don't want you to be shy.  If you need to

21  call me during the conference, it's just like calling

22  during a depo.  I would be happy to call the balls and

23  strikes over the phone if I can see them.  So that's

24  available to you.

25      Other than that, I'll leave it to you all to figure

1   out the nuances, the details and so forth as best you

2   can in terms of timing as well.  All right?  At this

3   juncture, I will stay the final decision on the motion

4   -- I guess it's more accurate to say I'm granting it in

5   part and denying it in part in the manner and for the

6   reasons stated.  I'll enter just a very brief text-only

7   order that refers back to this conference.  I'll

8   indicate that I've ordered an early 26(f) conference

9   pursuant to what the Rule allows and then just wait to

10   hear back from the parties.

11      I think that covers it at this point.  But

12   Mr. Long, I guess I'll check in with you.  Any questions

13   about the Court's last set of statements here before I

14   check in one last time with Mr. Saros?

15         MR. LONG:  No, Your Honor.  I think we'll have

16   access to the transcript.  It all seemed clear to me at

17   this point.

18         THE COURT:  Absolutely.  All right.  Thank you.

19   Mr. Saros, then it's your motion.  Any brief reply?  Any

20   addition questions in light of what Mr. Long said or

21   what the Court has now said?

22         MR. SAROS:  Yes.  One additional question we

23   haven't talked about is Mr. Guinnet's documents and

24   that's a point where it's kind of an odd situation which

25   we'd like to -- he said he has documents showing certain

1    things that we detailed in our brief and I don't believe

2    TCF has access to those either.

3         THE COURT:  Well, I think defendants raise a

4    valid point.  He's still employed by them and so they

5    own the documents right now.  He may be a whistleblower,

6    but you're not the FBI.  He can't just give them to you.

7    So I think that needs to be part of the 26(f)

8    conference.  If that's going to be AEO disclosures,

9    attorney's eyes only, fine.  I think you're entitled to

10   see the documents or at least some of them under some

11   level of confidentiality.  And the Court is prepared to

12   enter at least a placeholding confidentiality order if

13   the parties need that if you can't work out an

14   agreement.  But I don't think he can just give them to

15   you.  I don't think that would be appropriate under the

16   circumstances.  Does that help?

17        MR. SAROS:  I understand the point.  The reason

18   I say it's unusual is because TCS has said in their

19   brief that there don't have access to the documents

20   despite the fact that he's their employee.

21        THE COURT:  So I guess -- well, somebody's got

22   them.  I hope he's not just wandering around in a rented

23   car in the desert waiting for somebody to offer him

24   money.  But you guys sort that out.  He technically --

25   Tata has control over those documents.  Practically I

1   don't know if that's true or not, but I think that's up

2   to both sides to try to figure out in consultation with

3   Mr. Guinnet.

4         MR. SAROS:  I mean I don't know that he'll talk

5   to anybody.  That's the problem.  That's why we

6   suggested the subpoena route, to force him to show us

7   what he has.  I think whatever documents he has I assume

8   are sitting in his house somewhere.

9         THE COURT:  Well again, I don't want to beat

10  this to death over the phone today because none of us

11  knows exactly what's going to happen, but understanding

12  that at least from the defendants' proffer he doesn't

13  like them anymore, he's still employed by them, he still

14  answers to them, I think in the first instance it's up

15  to them to say Mr. Guinnet, answer your phone.  Tell us

16  where the documents are.  Make them available to our

17  attorneys so that we can take this to the next step, at

18  which you will either be vindicated or vilified.  If he

19  doesn't respond to that and you need a subpoena, fine.

20  If we have to take it to the next step and bring in the

21  FBI, that's not the Court's decision to make either.

22  Let's not look for trouble.  How does that sound?

23        MR. SAROS:  I agree with that.

24        THE COURT:  Okay.  We're still on your dime.

25  Anything else today?

1          MR. SAROS:  No.  Nothing else.

2          THE COURT:  All right.  Then we're done.  Thank

3   you all and please enjoy the rest of your afternoon.

4          MR. LONG:  Thank you, Your Honor.

5       (Proceedings concluded at 2:32 p.m.)

6

7                    *  *  *  *  *

8          I, LYNETTE SWENSON, Certified Realtime and

9   Merit Reporter in and for the State of Wisconsin,

10  certify that the foregoing is a true and accurate record

11  of the proceedings held on the 8th day of December 2014

12  before the Honorable Stephen L. Crocker, Magistrate

13  Judge for the Western District of Wisconsin, in my

14  presence and reduced to writing in accordance with my

15  stenographic notes made at said time and place.

16  Dated this 9th day of December 2014.

17

18

19                        /s/_____

20                        Lynette Swenson, RMR, CRR
                          Federal Court Reporter

21

22

23  The foregoing certification of this transcript does not
    apply to any reproduction of the same by any means
24  unless under the direct control and/or direction of the
    certifying court reporter.

25