# EXHIBIT C

**Spelman, Kate T.**

| | |
|---|---|
| **From:** | philippe guionnet [pguionnet@msn.com] |
| **Sent:** | Tuesday, January 06, 2015 5:05 PM |
| **To:** | p.guionnet@tcs.com; s.narasimhan@tcs.com; S Kant; Satya Hegde; R Gopinathan; Ajoy Mukherjee; Suprakash Mukhopadhyay; Robben, Philip; purplefeng@outlook.com; philippe guionnet; alexejun@quarles.com; mbyroade@kelleydrye.com; Caslin, Brent; dlong@kelleydrye.com; bneider@staffordlaw.com; kgn@quarles.com; Saros, Nick; mjahn@quarles.com; Spelman, Kate T.; aat@quarles.com; mvergeront@staffordlaw.com; abecker@kelleydrye.com |
| **Subject:** | RE: written objection (continued) |

I looked for some advice, I did not find any argument that prevent me to send that 2nd email either regards

---

Subject: Re: written objection (continued)
From: p.guionnet@tcs.com
Date: Mon, 5 Jan 2015 21:33:29 -0500
To: pguionnet@msn.com; s.narasimhan@tcs.com; s.kant@tcs.com; satya.hegde@tcs.com; r.gopinathan@tcs.com; ajoy.mukherjee@tcs.com; suprakash.mukhopadhyay@tcs.com

---

**From:** philippe guionnet [pguionnet@msn.com]
**Sent:** 01/05/2015 05:23 PM PST
**To:** philippe guionnet <pguionnet@msn.com>; P Guionnet
**Subject:** written objection (continued)


This document should be read in the following context:
- A continuation to the "written objection" set forth in Rule 45 of the Subpoena
- Comments about the Court documents (public) where my name is associated (implied, insinuated, etc.) and/or related (having connection, association, or concern with, or any relevance, relation, pertinence, or applicability to, or any implication for or bearing upon the subject matter of the request and is construed to include summarize, constitute, refer, reflect, pertain, contain, study, analyze, consider, involve, explain, evidence, mention, support, contradict, show, discuss, describe or comment upon) to derogatory terms, misrepresentation, untrue and that are damaging to me.
- Whistleblowers policies, in particular but not only, set forth in California Code SB 496 (and SB 666 and AB263).

<span style="color:red">It is my intent to send it to attorneys of both parties tomorrow.
Please respond by Tomorrow January 6th **no later** than 1 pm EST (10 am PST, end-of-day in India) if you think you have a valid legal objection that you can substantiate for not sending to Epic Attorneys or if you request some changes in this document; please be specific if you have specific concerns and itemize the items subject to objection and/or modification.

I can be reachable by phone, if needed, to TCS only (i.e. head of HR, Head of Legal, etc.), but not to external lawyers; if needed, please confirm by email a reasonable time (before 1 pm EST) and I will join the call.

**Attention EPIC ATTORNEYS**: as a precaution, you should treat this document first as "Outside Counsel Eyes Only"; remove the mention only after careful consideration if/when appropriate and coordinate with TCS attorneys if/when appropriate.</span>

1

1) **Subpoena**
   I am disappointed that you chose to send me a Christmas Subpoena and chose to antagonize the situation even further…
   You did not show a substantial need or urgency in the last 7 months and beyond, nor in October when the Lawsuit was filed.
   The request is malicious in its content and in its timing, in order to cause stress, intimidation, confusion, chaos, was ultimately designed to mislead the Court and was driven by ulterior motives.

   But Yes indeed, I believe I may have hundreds (maybe thousand) of documents related to your subpoena and I am ready to provide, as explained in my earlier response to the Subpoena.

2) **Court Documents**
   I received some Court documents (which apparently are public) and found my name associated with derogatory, damaging, untrue and negatives remarks but also deliberate misrepresentations;
   I am disappointed that you chose to antagonize the situation even further and forced me into a position where I have to defend myself, potentially publically, and respond to some damaging comments; my name is mentioned (and implied, insinuated, associated) throughout the document causing me to respond to a multitude of paragraphs.

3) **Reasonably-Based Suspicion ("RBS")**
   All my comments in this document (and in all of my documents on those matter) should be interpreted as "reasonably-based suspicion of" (even when not specifically itemized) as set forth (but no only) in California Code SB 496 (and SB 666 and AB 263).

4) **Response.**
   Even though some of those events are not fresh in my mind, I have provided below some comments that will hopefully help clear my name and substantiate my "RBS".
   Once the Court makes a decision on the Subpoena, I am comfortable that the Documents, Communication, Information, etc. I will provide will seriously substantiate my "RBS" even further.

a) I was the Client Partner on the Kaiser Account until **May 2014!**
   it is **NOT TRUE** that I was transitioned of my responsibilities in 2013; I fulfilled my Client Partner duties as usual and in some instances more than usual until at least May:
- I made decisions on the Account,
- held and attended regular staff meetings
- held and attended Client meetings,
- traveled with the Client to India and attended Technical, Sales and Marketing activities specific to the Kaiser Account,
- went with the client to visit an Indian hospital chain,
- visited the 3 Delivery Centers in 3 cities associated with the Kaiser Account,
- directed my team as usual (including getting involved in disciplinary matters, promotions and merit reviews),
- participated in multiple Budget meetings,
- met other business units in relation to the Kaiser Account,
- contacted 3r party for purpose of partnership with TCS and Kaiser, etc.
- prepared/was involved in/submitted proposal to Kaiser in multiple domains
- Performed Marketing activities
- Joined a multitude of leadership calls
- Submitted financial forecast on a weekly basis
- I was the **Key Official Contact** to Kaiser during a very significant and confidential matter (I signed at the time a specific confidential agreement).
- I discussed and proposed possible "Investments" to Kaiser
- I did not perform activities that could be reasonably interpreted as "transition" to my successor; actually I indicated multiple times I did not want to transition "illegal activities"; I specifically provided "opportunities to cure" before somebody else would b brought on the Account.
- I was asked to share with Kaiser information about Apollo Hospitals and MedMantra
- I was involved in Billing matters on a regular basis

- Several TCS employees, managers and above, Executives, HR showed in several document that my "official" situation was Client Partner at Kaiser at the time
- I was named as an "identified leader in the organization"

I believe the allegation is malicious and a deliberate attempt to not only to discredit me in order to weaken my testimony (but not only) but also a deliberate attempt to mislead the Court.

It appears that this is an attempt to disqualify documents that I had sent between October 2012 until May 2014 related to Fraud, "wrongdoings" in the EPIC situation, and other documents that I sent between May 2014 and December 2014 related to the same things; to my knowledge, none of these documents are privileged or include Trade Secrets.

**Request for sanctions**
As set forth in Rule 45, "the Court for the district where compliance is required must enforce this duty (undue burden) and impose an appropriate sanction-on a party or attorney who fails to comply".

I request the Court to enforce duty on TCS and impose sanctions for undue burden, misrepresentation and deliberate attempt to mislead the Court, and to give notice to TCS so that they do not attempt again.

I request the Court to enforce duty and impose sanctions on TCS attorneys Kelle Drye & Warren LLP, represented by Melissa Errine Byroade and David Long, who were negligent and did not take reasonable steps to avoid imposing burden and/or misrepresentations, attempted to intimidate what they called "a key witness" and did not perform a basic and required due diligence to validate the facts easily available to them, at the risk of misleading the Court;
Considering the caliber, reputation and amount of resources of the Law Firms retained by TCS, the Court should enforce this duty and impose an appropriate sanction on both the party and the attorneys.

b) I was a star employee, with exceptional performances, recognized and awarded as such for my yearly review as recently as **APRIL 2014!**
It is **NOT TRUE** that since 2013, I occupied my time essentially being a "professional whistleblower", I was clearly, without doubt and recognized by others, the Client Partner on the Kaiser Account.

I believe the allegation is malicious and a deliberate attempt to not only discredit me in order to weaken my testimony (but not only) but also a deliberate attempt to mislead the Court.

It appears that this is an attempt to disqualify documents that I had sent between October 2012 until May 2014 related to Fraud, "wrongdoings" and to the EPIC situation, and other documents that I sent between May 2014 and December 2014 related to the same things; to my knowledge, none of these documents are privileged or include Trade Secrets.

The term "professional whistleblower" is particularly unfair and damaging (in public documents) considering I had provided:
- multiple "opportunities to cure" to various layers of Management
- Requests to my Business Unit Head (Syama Sundar) to cure and to escalate ("person of authority as set forth in California Code SB 496 (and SB 666 and AB263).
- Requests to my Division President (Suresh Muthuswami) to cure, escalate, and put me in contact with the Audit Committee.
- Requests to the Head of HR in the USA (Narasim) to help cure, escalate, and several times to put me in contact with the Audit Committee.
- Request to the Chief Financial Officer, worldwide, to help cure, escalate, involve the external auditors, include the allegations into the TCS Annual Report as required, and put me in contact with the Audit Committee.
- Request to the Chief Financial Officer, worldwide, to help cure, escalate, involve the external auditors, include the allegations into the TCS Annual Report as required, and put me in contact with the Audit Committee.
- Request to the President of TCS Americas, Suri Kant, to cure, escalate, include external auditors, and put me in contact with the Audit Committee

- Request to Chief Legal Officer to help cure, escalate, report to the auditors, put me in contact with the Audit Committee
- Request to the Executive who's specific responsibility is to interact-inform the Audit Committee (for the same matters above)
- Successive requests to Executives to put me in contact with the Audit Committee.
- Multiple request, in writing, to communicate if TCS had any objection that I contact 3rd parties (including Epic) regarding in particular the Epic matters (which they failed to answer multiple times).
- Etc.

**Request for sanctions**
As set forth in Rule 45, "the Court for the district where compliance is required must enforce this duty (undue burden) and impose an appropriate sanction-on a party or attorney who fails to comply".

I request the Court to enforce duty on TCS and impose sanctions for undue burden, misrepresentation and deliberate attempt to mislead the Court, and to give notice to TCS so that they do not attempt again.

I request the Court to enforce duty and impose sanctions on TCS attorneys Kelle Drye & Warren LLP, represented by Melissa Errine Byroade and David Long, who were negligent and did not take reasonable steps to avoid imposing burden and/or misrepresentations, attempted to intimidate what they called "a key witness" and did not perform a basic and required due diligence to validate the facts easily available to them, at the risk of misleading the Court;
Considering the caliber, reputation and amount of resources of the Law Firms retained by TCS, the Court should enforce this duty and impose an appropriate sanction on both the party and the attorneys.

c) It is **NOT TRUE** that my job responsibility had nothing to do with MedMantra;
Once the Court decides on the Subpoena, I believe I will be able to produce some Information that seriously substantiate my "RBS" on this matter.

It is a misrepresentation and/or incomplete representation to talk about "the Medmantra Development Team"; Resources associated with MedMantra are identifiable in multiple teams spread throughout the organization and spread in multiple locations, either in development and programming, design, architecture, innovation, infrastructure, product development, security, operation, etc;

A large portion of my team was called Care Delivery (typically named for activities in Hospitals, clinical, lab, pharmacy, etc.); the scope included in particular the TCOE/Epic Testing, also the Clarity platform (Analytics off of Epic platform); that team had a substantial dotted line to a Global Group also called Care Delivery (typically including Hospitals i.e. **MedMantra**, lab, ambulatory, etc); Operation & Delivery for Kaiser (including Epic support from India) ultimately reported to the same person in charge of Care Delivery;
it is fair to say that this individual in charge globally of MedMantra, Care Delivery, Operations is intimately aware-and-involved inthe MedMantra situation, intimately aware-and-involved in the Care Delivery activities at Kaiser and his group, intimately aware-and-invloved of the Operation & Delivery activities at Kaiser and in his group and intimately aware-and-invloved of the Medmantra environment.
it is fair to say that there has been **thousands** of communications and information exchange between my teams and those teams mentioned above.

It is worth noting that a member of the MedMantra development and programming team was "embedded" in my team for a long time and that is presence was suspicious, questionable and questioned; it is worth noting that at some stage I was asked to reintegrate him after I had removed him from my Account.

As part of my job responsibility, I was exposed to various MedMantra products and services multiple times.

As part of my responsibility, I was asked to share with Kaiser information from Apollo hospitals and related to MedMantra; As part of my job responsibility I was asked to identify if there would be a partnership available with Kaiser and a pilot platform available to implement MedMantra at Kaiser (i.e. not in a typical hospital with critical risks but rather a small clinical environment).

4

As part of my job responsibility, I participated in a MedMantra presentation to Kaiser.

As part of my job responsibility, I was exposed to another product also called MedMantra, implemented at the Cancer Hospital in Kolkata; I met the person in charge of MedMantra there and was able to understand that the architecture, functionality, language, design, etc were drastically different from the MedMantra publicized to be at Apollo Hospitals.

As part of my job responsibility, I met the CIO (and several of his staff) at Apollo hospitals during a MedMantra presentation.

As part of my job responsibility, I met the person in charge at TCS of the MedMantra development & programming; that seemed to be, again, another version of MedMantra with a different content and different meaning as the other 2 above).

As part of my job responsibility, I was asked to identify if some MedMantra modules would fit at Kaiser.

As part of my job responsibility I specifically reviewed some MedMantra functionalities and modules as an option to be implemented at Kaiser.

As part of my job responsibility, I was able to identify that significant MedMantra components, including Ambulatory and Laboratory, were written/tested in 2013 and 2014.

As part of my job responsibility, I specifically reviewed at length some MedMantra functionalities and modules in Laboratory as an option to be implemented at Kaiser.

I saw, and/or suspected, and/or was aware of several comparisons between MedMantra and Epic softwares, including **by** the MedMantra team

Management clearly indicated the term "deep dive" as it realtes to my interaction with MedMantra.

Etc.

In summary (until the Court decides on the Subpoena), I can clearly say that it is false to pretend, insinuate or implied that I am totally clueless about MedMantra.

d) Your following paragraph is inaccurate when "TCS" means "TCS Health Care Unit":
*"TCS is a leading international software service provider and innovator…respects intellectual property…has neither the need nor inclination to misappropriate trade secrets"*
I will be able to elaborate further once the Court decides on the Subpoena and once I have a chance to research through my documents serenely.

e) Your following paragraph (and others on similar subject) is misrepresentative and inaccurate: *"there is no per se concern about consultants in India being privy to Epic…"*,
in particular as it related to EPIC **restricted** access, but not only, as it relates for example to misuse or misappropriation of information, data, intellectual property, computer theft violation, but not only, i.e. as it relates to other areas than TCOE and other areas than MedMantra.
As a precaution, I would advise the parties to investigate activities into the TAPESTRY area at Kaiser.
As a precaution, I would advise the parties to investigate activities into what was the Clarity project at Kaiser until recently.

f) Your following paragraph (and others on similar subject) is misrepresentative, grossly incomplete and inaccurate:
*"The TCS Medmantra software…fundamental structure and operation ..was long established";*

Significant events (i.e. changes, creations, transformation,etc.) in (but not only) Architecture, Data Model, functionalities, language, go2Market strategy, structure, fundamentals, operation…etc. can be more than reasonably categorized as "rewrites" , "reengineering", "revamped", "transformation" and can reasonably disqualify the term "*on an incremental basis*".

The MedMantra use of the name does not seem to be a stable nor static concept; different meanings are commonly used for different products/modules and vary based on the audience and the location.
The misuse and misappropriation of information, intellectual property and computer theft can be attributed to multitude of MedMantra meanings, and also to other TCS Health Care products, accelerators, integration engines and so forth.
Contrary as mentioned, there is substantial "RBS" that very significant "transformation" occurred in 2012, 2013, 2014.

g) Your following paragraph (and others on similar subject) is misrepresentative and inaccurate: "*MedMantra Software currently is not in competition with Epic software in the US or any other market*".

   MedMantra, and the various meanings it contains, including peripheral products and accelerators, is a modular entity:
   (*"Modular design: enables modules to be implemented in a selective and stand alone manner, providing for greater flexibility to meet your needs while protecting investment and minimizing the impact of change"…Robust & Scalable Architecture using latest technology…Conformance to International Standards: compliant with HL7, ICD10, ICD9CM, LOINC, HIPPA and many more…Business Intelligence and Performance Management…*),
   which goes "*beyond hospital automation*", including elements of "*transformation in patient care, resource management and information management*" and is available in a "*Global Network Delivery Model*".

   Specific efforts have been engaged at times by TCS around "regulatory and hospital requirements" in the US but also in Membership/Claims/Integration/Data Model…

   TCS and/or MedMantra (all its meaning and associated products and accelerators) potentially compete in several fashions, including but not only:
   - as a whole product,
   - as a trimmed version of the whole product (i.e. in a less-critical hospital environment)
   - at a module level (i.e. ambulatory)
   - at existing clients like Kaiser in integration and additional services,
   - at existing clients like Kaiser for future opportunities of new products/services (i.e. Claims integration, future Membership functionality already discussed)
   - in solution accelerators,
   - in clinical functionality,
   - in Ambulance/Ambulatory functionalities
   - etc.

   While it might not be a cause for imminent irreparable injury, it is clearly and without doubt a competitor in multiple aspects.

   Regulatory and Hospital requirements have been notoriously a source of obstacle, frustration and costs to MedMantra/TCS to enter the US market as a whole, they have been allegedly a "source of interest" and confidential information misuse on how they are handled at Kaiser in the Epic system…

h) Your comments regarding "access to Epic from India" (and others on similar subject) are grossly misrepresentative, grossly incomplete and inaccurate; it was well known, notorious, understood by the whole layer of programmers, managers, engagement managers, client partners, business unit heads, President, head of Delivery, head of MedMantra & Global Care Delivery, head of testing services (an ex-Kaiser employee), etc. that the **restricted** access to the Epic portal was **not** authorized; multiple contacts to Epic were made (i.e. to their onsite representative), including by our President, in order to negotiate with Epic some flexibility; some representation of "progress with the Epic relationship" were made to Kaiser who was growing uncomfortable.

   Several Several of my emails were very clear about that situation, to our President Suresh Muthuswami in particular (but not only), about the fraudulent aspect of the situation, about the opportunity to cure, about the potential risk to the Business Unit and potentially about the potential risk he was creating for TCS as a whole ("bringing the plague on TCS");
   I mentioned the CEO would "peal him alive" if he knew…

i) Mr Gajaram was caught with a fraudulent access but nevertheless attempted to obtain a fraudulent access afterwards, and was caught again. Besides Mr. Gajaram, another access was obtained fraudulently after I had left the Kaiser account, with full knowledge of Management.

j) There is a long list of people that knowledgeable about this matter; however I am hesitant at that stage to provide names considering the examples of retaliation and cover-up I have experienced for myself but also for others.

   The conditions don't seem to be met for me to disclose and for some people to testify truthfully: there is a strong "RBS" that TCS is not compliant with California's SB 496 (and SB 666 and AB 263) which expand California's Whistleblower Protection and expand Section 1102.5 of the California Labor Code (which prohibits employer from retaliating…"reasonably-based suspicion"……and now includes protections to whistleblowers who report illegal activities to somebody with Authority…).There seem to be similar provisions in other States and the Federal level too.

   Also, TCS does not seem to be compliant with its own Tata Corporation Whistleblower Policy in reflecting countries and State whistleblower laws, rules and regulations.

   > TCS was given multiple opportunities to cure these compliant defaults but decline to perform.
   > There is also suspicion of Anticipatory Retaliation in some instances.

   It is unclear if Whistleblower protections apply to employees that are in the US on employer-sponsored visas (i.e. L1) but it is unrealistic to believe that some or all of those people would take chances to testify truthfully against TCS with such potential consequences when policies and laws are not enforced.

   It seems even less realistic with people based in India.

   in those circumstances, it is self-evident that a lack of compliant whistleblower policy at State level, but also at Federal level and in the Tata Corporation is a major obstacle for people to testify.

k) Regarding access to Documents, Communication, Information and Deposition…
   I am aware of dealing with only 2 (two) privileged document in my entire tenure at TCS (out of potentially 45,000 documents).

   I seriously doubt that my documents included Trade Secrets.
   Besides the 2 privileged documents, I am not aware of any document that could not be seen on an Outside Counsel Eyes Only basis.

   I have expressed some concerns that some of the allegations and requests were Undue Burden, malicious and a deliberate attempt not only to discredit me (in order to weaken my testimony) but also a deliberate attempt to mislead the Court. Also, the TCS Attorneys were responsible for Undue Burden, did not take the necessary steps to avoid misrepresenting the facts, and given their numbers, size, caliber, reputation, etc. were negligent (or more) by not performing a required basic due diligence on those allegations, at the risk of misleading the Court, specifically in an attempt to disqualify some documents.

   It does not seem reliable to have TCS or its TCS attorneys alone decide which of my documents could be seen by Epic attorneys on an Outside Counsel Eyes Only basis.

l) It is not reliable nor realistic to expect Epic or TCS to depose me based on memory alone; the volume and magnitude of documents, communication and information is so vast and complex.

   It is likely that it will require multiple sessions and will require to allow me to take notes and research afterwards through a huge documentation before I can answer back conclusively.

   Regards
   PG

=====----=====----=====
Notice: The information contained in this e-mail message and/or attachments to it may contain confidential or privileged information. If you are not the intended recipient, any dissemination, use, review, distribution, printing or copying of the information contained in this e-mail message and/or attachments to it are strictly prohibited. If you have received this communication in error, please notify us by reply e-mail or telephone and immediately and permanently delete the message and any attachments. Thank you