UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * *

EPIC SYSTEMS CORPORATION,
a Wisconsin corporation,

      Plaintiff,

-vs-                      Case No. 14-CV-748-WMC

TATA CONSULTANCY SERVICES    Madison, Wisconsin
LIMITED, an Indian corporation  October 20, 2015
and TATA AMERICA INTERNATIONAL  2:30 p.m.
CORPORATION, d/b/a TCA America,
a New York corporation,

      Defendants.

* * * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF TELEPHONIC HEARING
HELD BEFORE MAGISTRATE JUDGE STEPHEN L. CROCKER,

APPEARANCES:

For the Plaintiff:
                Jenner & Block
                BY:  RICK RICHMOND
                    KELLY MORRISON
                    ANDREW SULLIVAN
                633 West 5th Street, Ste. 3600
                Los Angeles, California  90071

                Quarles & Brady
                BY:  STACY ALEXEJUN
                33 East Main Street, Ste. 900
                Madison, Wisconsin  53703

Lynette Swenson   RMR, CRR, CBC
U.S. District Court Federal Reporter
United States District Court
120 North Henry Street, Rm. 520
Madison, Wisconsin  53703
608-255-3821

APPEARANCES CONTINUED:

For the Defendants:
                    Kelley, Drye & Warren LLP
                    BY:  MELISSA BYROADE
                       ALISON MACGREGOR
                    101 Park Avenue
                    New York, New York 10178

                    Stafford Rosenbaum
                    BY:  BARBARA NEIDER
                    222 West Washington Avenue, Ste. 900
                    Madison, Wisconsin  53703


                    *  *  *  *  *

        THE COURT:  Good afternoon.  This is Magistrate

Judge Crocker.  I understand I have the attorneys for

both sides in the Epic Systems lawsuit against TCS or

Tata Consultancy Services.  There's a court reporter

here, so we're of record.

    The case number is 14-CV-748-WMC.  And let's get

the appearances, please.  First on behalf of plaintiff.

        MR. RICHMOND:  Thank you, Your Honor.  This is

Rick Richmond from Jenner Block.  And I also have Kelly

Morrison and Andrew Sullivan with me in case it's

necessary for them to chime in.

        THE COURT:  All right.  Good afternoon to all

of you.

        MR. RICHMOND:  Thank you.

        MS. ALEXEJUN:  And Stacy Alexejun from Quarles

& Brady is also here on behalf of the plaintiff.

1          THE COURT:  All right.  Good afternoon to you

2     as well, Counsel.  Let's check in with the defendant.

3     Who have we got on behalf of TCS today?

4          MS. BYROADE:  Good afternoon, Your Honor,

5     Melissa Byroade of Kelley Drye.  I'm also here with

6     Alison MacGregor of Kelley Drye.  And I believe Barbara

7     Neider is also on the phone.

8          MS. NEIDER:  Yes, I am, Your Honor.

9          THE COURT:  All right.  Well, Counsel, good

10    afternoon to you, all of you as well.  Let's set the

11    stage as best we can.  We've got a lot in the hopper

12    today, with more on the way next week.  We've got a

13    followup on the motion docketed as 93, which at the time

14    it was presented to Magistrate Judge Oppeneer, acting in

15    that capacity, was an emergency motion.  You held out or

16    he suggested you reserve for my consideration the

17    question of deposing Commander Kumar and Iyappan

18    Rathina.  I want to talk about that last.  I'd rather

19    deal with the two new motions first.

20         Docketed by the Court as 107 is the plaintiff's

21    motion to compel production of documents for which

22    attorney/client privilege has been claimed by the

23    defendant.  Separate from that, but also on the agenda

24    today, is the motion docketed as 112, the plaintiff's

25    motion to compel a continued and more robust 30(b)(6)

1  deposition.  And of course we've got briefs in support

2  and statements and exhibits in support and then briefs

3  and statements and exhibits in opposition to all of

4  these.

5      Let's start with the motion to compel production of

6  the documents for which privilege is claimed.  Starting

7  with the test here, the first thing that I looked at was

8  whether or not the Court should forgive the inadvertent

9  disclosure here.  And the Court in *Dellwood Farms*, the

10 128 F.3d 1122 case, I think articulated helpfully the

11 policy or philosophy around selective and inadvertent

12 waiver and the considerations the court should keep in

13 mind, and pointed out that there's three different ways

14 courts approach it and all three are accepted, which is

15 puzzling to me, but if it's a subjective approach, the

16 waiver is always forgiven.  If it's an objective

17 approach, the waiver is never forgiven or the disclosure

18 is never forgiven.  And then the third approach is the

19 balancing, which is between the two.

20     With the particular document at issue here, I'm not

21 going to apply an objective approach.  I don't think

22 that that adequately captures the reality of what goes

23 on in businesses in the world.  It's easier, that

24 certainly would cut through the Gordian Knot rather

25 decisively, but I don't think it's fair in either

1  direction.  So notwithstanding Kaiser Permanente's

2  written policy, my view is that Mr. Gupta's use of a

3  Kaiser computer does not constitute waiver.  So I'm not

4  going to use that as a basis to disclose it.

5       However, I don't think Ms. Byroade's proffer by

6  itself as to the attorney/client privilege suffices.

7  It's just Ms. Byroade's say-so.  She's not an actor.  So

8  what I'm prepared to do is give the defendant until

9  Thursday noon, October 22, actually to make the record.

10  The claim here is that Mr. Sundar prepared this

11  PowerPoint for Ms. Mukherji, if I'm pronouncing it

12  correctly, who then passed it along to in-house counsel,

13  Mr. Verghese, who apparently then passed it along to

14  Kelley, Drye & Warren after this litigation commenced.

15  If the email chain shows that this was actually prepared

16  at the direction of supervisors who wanted and then did

17  pass it along to in-house counsel, from this Court's

18  perspective that would suffice to maintain the privilege

19  here.  But we need more and I want it quickly.  I don't

20  want this to drag on endlessly.  That said, let's get

21  some additional input here and then we'll move on to the

22  next one.  But I don't really need to hear a lot.

23  You've both made your positions pretty clear.

24       On behalf of the movant, Mr. Richmond, I presume

25  that you'd like to offer your input at this point?

1          MR. RICHMOND:  Yes, Your Honor.  Thank you.  I

2    think what Ms. Byroade has claimed is not that

3    Mr. Sundar prepared this, but that Mr. Gupta did and put

4    it on the Kaiser hard drive; either he prepared it there

5    on that hard drive or he put it there.  But I think,

6    unless I misread her email, that she was saying it was

7    Mr. Gupta --

8          THE COURT:  Right.  I misspoke.  And I

9    apologize.  I'm looking at my notes.  It was Mr. Gupta

10   prepared it for TCS counsel and then they're claiming

11   work product and attorney/client privilege.  So you're

12   correct.

13         MR. RICHMOND:  Very good, Your Honor.  The

14   other thing, and it's not quite right, but if defendants

15   are going to have to give more back, they have said that

16   Kelley Drye received this purportedly privileged

17   PowerPoint "shortly after the complaint was filed" and I

18   think some precision on that would be good, Your Honor.

19   Because the complaint was filed on October 31st, 2014,

20   and nearly a month later with a report that says things

21   like "a TCS associate had access to Epic UserWeb

22   considering TCS does not have any teaming agreement with

23   Epic if access was unauthorized."  So that was in the

24   report that came into Kelley Drye's hands shortly after

25   the complaint was filed.

1    About a month after the complaint was filed, Kelley

2  Drye wrote you a brief saying "According to TCS's

3  investigation to date, the claims in this action have no

4  merit and appear premised on unreliable statements by a

5  disgruntled TCS employee."  And then even later than

6  that, on January 5, 2015, which was then another

7  month-and-a-half after that, so about two-and-a-half

8  months after the case was filed, they say in their

9  motion to dismiss "nor do Epic's allegations that TCS

10  access documents without authorization appear

11  plausible."

12    THE COURT:  It's hard to reconcile those

13  different strands of argument, isn't it?

14    MR. RICHMOND:  It certainly is, Your Honor.

15  And we've been asking for what investigations were done

16  by TCS from the very beginning of the case, Your Honor,

17  and we've just gotten stonewalling and silence.  It's

18  only in the last few weeks that we've now found out that

19  there were at least two different investigative reports

20  that have been around for a really long time.  They've

21  been around since the late summer of 2014.  One of those

22  reports is the one that you're looking at here, the

23  other was one that was actually delivered to Kaiser and

24  given to Kaiser with no claim at all of privilege.  That

25  was never produced to us.  And the only way we got it

1  was very recently when we were fighting over this

2  document that TCS said golly gee, that one is

3  privileged, but look what we have here.  We have a

4  nonprivileged investigative report that we gave to

5  Kaiser over a year ago and they just gave us that one.

6      So this isn't going to be the end of this issue,

7  Your Honor.  There's going to be, I think, lots of

8  additional issues and matters that are going to have to

9  be resolved with respect to the investigations by TCS.

10      THE COURT:  Mr. Richmond, why should the second

11  half of this case be any less contentious than the first

12  half.  I look forward avidly to the motions practice.

13      MR. RICHMOND:  Hope springs eternal, Your

14  Honor.

15      THE COURT:  That said, Ms. Byroade, is it clear

16  what I need from you and can you meet the deadline?

17      MS. BYROADE:  Yes, Your Honor, we can meet the

18  deadline.

19      THE COURT:  Okay.  We'll just leave it at that.

20  The burden is on the claimant of the privilege.  You

21  both cited back to me my own order in *America Family*

22  *Mutual* where I'm just quoting other Seventh Circuit

23  cases.  But it's a narrow privilege.  It's jealously

24  guarded.  Here it could be deserved.  It's not clear to

25  the Court at this point from first-hand actors that

1   that's the case, but I'm prepared to give TCS the

2   opportunity to prove that up.  Noon on October 22,

3   please.

4        All right.  Let's move on then to --

5           MS. BYROADE:  Your Honor, I'm sorry.  May I ask

6   for one clarification?

7           THE COURT:  Of course.

8           MS. BYROADE:  Can we submit the additional

9   evidence to you incamera?

10          THE COURT:  Yes, of course.

11          MS. BYROADE:  Okay.  Just wanted to make sure.

12   Thank you.

13          THE COURT:  That's fine.  If it's part of a

14   privilege, then that makes sense.  So let's approach it

15   that way.  And before we disclose anything into the

16   record, if we get there from here, this court's

17   practice, which I will follow here, is to let the party

18   who submitted the documents know that before they're

19   disclosed in case there has to be some sort of an

20   emergency request for reconsideration by the trial judge

21   or something like that.  But let's not worry about that

22   today.

23          MR. RICHMOND:  Your Honor, this is Rick

24   Richmond.  I have one final thing then to think about

25   with respect to this.  If they are going to try to prove

1   up their privilege with documents that I can't see, what

2   I can't have happen frankly is at the end of that

3   process to have somebody say well, I guess it's a

4   privileged document.  You can never use it for anything.

5   I've now seen it and I know that the TCS in-house

6   lawyers and their outside lawyers had this investigation

7   in their hands at the very time they've been resisting

8   discovery and telling the Court in motions to dismiss

9   that these claims aren't even plausible, that it's just

10  made up, that there was no unauthorized access when I

11  know that they knew differently.  So I'll need to use

12  that document no matter what in some further discovery

13  practice in front of Your Honor, whether it be for

14  sanctions under Rule 11 or whether it be for motions to

15  compel production of documents or whatever it be.  So I

16  just don't want to end this process and somehow the

17  document disappears.  We've all seen it and understand

18  its significance at this point.

19          THE COURT:  Sure.  Well, Mr. Richmond, the best

20  way I can respond to that is by offering a couple of

21  different observations.  First and most immediately, I'm

22  honoring Ms. Byroade's request to submit this

23  information incamera, but frankly it's hard for me to

24  envision why any statement by the actors is privileged.

25  I mean they're just basically telling me yeah, I'm the

1  one who asked Mr. Gupta to prepare this and I asked him

2  to do that so I could show it to in-house counsel.

3  There's nothing privileged about that.  To the same

4  extent if in-house counsel, Mr. Verghese, says I asked

5  for this, this was part of an in-house investigation,

6  again, that's not privileged.  The fact of the

7  investigation is not privileged.  But I will wait to

8  make that determination until I see what I actually get.

9  Again, and I'm repeating myself, but we are very wary of

10 granting the privilege and we don't do it any more

11 broadly than we have to.

12      So the next observation I think segues from that.

13 Mr. Richmond, you can't unring the bell here.  You know

14 what you know.  And without researching case law on

15 this, it's hard for the Court to offer anything with

16 precision, but I can tell you generally that we're not

17 going to let TCS use this privilege as a shield and a

18 sword.  If, in fact, they were claiming things through

19 counsel that turned out to be untrue and they knew it or

20 should have known it at the time, there should be, and

21 I'm certain there will be, consequences.  And we will

22 approach that at the appropriate time, as necessary, and

23 certainly you're entitled to ask for the Court to review

24 this and rule on a motion when you make it.  You're not

25 forbidden from doing that by anything that we're doing

today.  But there's really nothing else the Court can do

at this point other than to assure you that you do have

a say in what happens next.

    You're aware the document is out there.  If it is

privileged, you can't use it in the first instance.  But

if we transcend the normal concept of privilege here

because of other litigation practice in this lawsuit,

it's a whole new ballgame.  Does that help at all?

          MR. RICHMOND:  Yes, Your Honor.  Thank you.

          THE COURT:  Ms. Byroade, again I'm not looking

for trouble today, but does that generally make sense to

you as well?

          MS. BYROADE:  Yes.  Thank you, Your Honor.

          THE COURT:  All right.  Let's move on then.

112 is the motion to compel a more robust or more

complete 30(b)(6) deposition.  The motion as filed noted

three critical topics on which the designation Syama

Sundar was not well prepared.  In response, Ms. Byroade

indicates that notwithstanding the fact that TCS and

counsel feel a little bit sandbagged by this claim,

they're now prepared to put on a witness and we can go

forward in some fashion.

    Okay.  That's a good start.  But I don't want to

leave loose ends dangling here.  I know that there was

umbrage taken in both directions here because the

1   parties, through email, were negotiating with each
2   other.  I think they're planning hardball.  Fine.
3   That's not the Court's concern.
4        But timing is a concern now.  And I do want input
5   from each side.  But I'll tell you this right now:
6   Understanding that everybody's busy and you've got some
7   depositions that are looming, I'm sure you've already
8   taken some of them and others are ready to go soon,
9   against my better judgment I'm going to give you an
10  extra week on summary judgment and I'm going to try and
11  avoid hurting people too badly on dates.
12       So put this in the bank.  November 16 is the new
13  deadline for any sort of dispositive motion.  Responses
14  by December 7.  Reply by December 17.  That's past the
15  edge of the envelope and into the void, but that's
16  something that I'm willing to do in order to make sure
17  that the parties don't feel like they've been
18  disadvantaged by late discovery.  Okay?
19       I'll also tell you right now something I think that
20  you would surmise that although it's only an extra week,
21  there will be a ripple effect in Judge Conley's decision
22  process.  He's not known for turning these around
23  quickly in any event.  You just lost a week against that
24  normal submission time for the order.  You'll get
25  something before the trial date.  The trial date is

14

1    firm.  But to try to take some of the pressure off of

2    both sides at this point with all of the discovery that

3    has to take place, you get the extra week now.

4         Okay.  That said, I need some input as to where we

5    find ourselves now.  And Ms. Byroade, I think I'll start

6    with you because I want to make sure I understand what

7    you're offering in response to the motion.  Without

8    telling you what I think you said, why don't you tell me

9    where you and Mr. Richmond find yourselves today with

10   regard to the continued 30(b)(6), please.

11        MS. BYROADE:  Sure.  I think as I mentioned in

12   my brief, we don't agree with the release they're

13   seeking, and in a lot of cases, they're just complaining

14   because they don't the answers.  And a lot of the -- I

15   think maybe all the information is already in the record

16   through other fact witnesses, so they have the

17   information to make their motion.  But --

18        THE COURT:  Well, let me interrupt,

19   Ms. Byroade.  And I want to make sure that I'm clear on

20   this.  One of their complaints was that 30(b)(6) is

21   different because it is the defendant itself, the

22   company speaking, not a witness, and we don't want any

23   evasion later.  When you say that they have got it from

24   other witnesses, are those witnesses the corporation or

25   are they individual witnesses?

1          MS. BYROADE:  They're individual witnesses.

2     And I do understand that and that's frankly part of why

3     we've agreed to produce someone for the topic that they

4     identified, the same topics that Mr. Sundar was

5     designated for and we working on to identify the

6     witness -- I mean I think we agreed essentially to the

7     relief they're seeking, they're just pushing on location

8     and timing.

9          THE COURT:  Okay.  Does the extra week help at

10    all?

11         MS. BYROADE:  I think so.  We had told them in

12    the emails that we'll provide somebody as soon as we can

13    in the United States at a location that's convenient to

14    the witness and we think it can be done by mid-November,

15    so I think that that does help.

16         THE COURT:  Okay.  Well, it's got to be before

17    -- let's be clear, Ms. Byroade.  I'm not going to

18    micromanage this today, but I can micromanage it on 60

19    minutes notice if I have to.  It's got to be done in

20    time for at least a rough transcript to be available

21    before November 16.  Understood?

22         MS. BYROADE:  Understood, yes.

23         THE COURT:  Okay.  Now, without meaning to

24    delve into matters that are still ambiguous, you talk

25    about a place that's convenient for the witness in the

1    United States.  Can you narrow that down at all?  Are we

2    talking about your same witness, Mr. Sundar, in

3    Connecticut?  Are we talking about somebody in Kansas

4    City?  Somebody in Encino?  What can you tell us today

5    about who's in play?

6         MS. BYROADE:  So it's not going to be

7    Mr. Sundar, it will be a different witness.  We have not

8    -- we are still in the process of identifying who that

9    will be.  It's possible they're an executive that is

10   located here, in which case it will be in New York like

11   the other depositions.  If it's someone who has to come

12   from India, I think I would also say New York is more

13   convenient than Los Angeles.  There's just no real --

14   the depositions have been in New York so far.  Epic's

15   counsel has a office here and we think the standard is

16   (unintelligible) and so I don't really understand why

17   they're insisting on LA.

18        THE COURT:  Well, I'm not going to worry about

19   location today, but I'm prepared to shift costs of

20   travel if I have to.  But that's not the make or break.

21   The main thing is getting a witness named, getting the

22   appropriate documents disclosed if there are any

23   additional documents that need to be disclosed, and

24   getting the deposition in the can.  Okay?

25        Ms. Byroade, anything else on that before I check

1  in with Mr. Richmond?

2        MS. BYROADE:  No, that's it.  Thank you.

3        THE COURT:  All right.  Mr. Richmond, your

4  input, please.

5        MR. RICHMOND:  Thank you, Your Honor.  I do

6  appreciate your extending the dispositive motion

7  deadline by a week.  That does help.  And I appreciate

8  your comments about cost shifting, that may help.

9        But having said all that, when we issued these

10  30(b)(6) notices on April 10, so they've been out there

11  a good long time, on June 5 TCS confirmed that they

12  would provide a witness who would be prepared to testify

13  on those topics.  As we were lining up depositions to be

14  taken, one of the people to be deposed was Mr. Sundar,

15  who is a key player.  He's Mr. Guionnet's boss.  And in

16  trying to line that deposition up, we were told he lives

17  in Chini, India.  That's in writing in front of you;

18  that he was coming here on a special visa, and that we

19  could only have him on this one day.

20        THE COURT:  And lo and behold, he has been

21  living in Connecticut for the past ten years.  Imagine

22  that.

23        MR. RICHMOND:  Fifteen years, Your Honor.  And

24  even in the week before we were going to meet with him,

25  we were saying we need more than one day; that his

1   deposition was scheduled for Friday, August 28.  We

2   offered to continue it into Saturday, Sunday, Monday,

3   anything, because we believed he was in India and could

4   only be here for a short time and we knew, because he

5   had been designated for all three deposition notices,

6   that we needed more time.  They declined to do any of

7   that, said let's just see how it goes.

8       At his deposition on August 28, I showed him all

9   three 30(b)(6) notices and he said "I'm ready.  I'm the

10  guy.  I'm the designee to testify on these subjects."

11          THE COURT:  Well no, Mr. Richmond, let me

12  interrupt.  That's all in your papers to the Court.  And

13  I think your exasperation is merited, so I don't mean to

14  just split the baby here.  Tell me what you want to

15  happen next.  Apparently we don't have a witness named.

16  You want to wait and see who it is and where they want

17  it to occur and then let the Court know if that's

18  unacceptable and have the Court referee that?

19          MR. RICHMOND:  I guess we could do that, Your

20  Honor.  I don't know why they're not bringing

21  Mr. Sundar.  He said he was the man.  He was prepared.

22  They can bring another person, I suppose.  I do think

23  it's wrong for them to say somebody is prepared, bring

24  them, and then make us go to New York twice for this

25  man's deposition and then say well, golly gee, he's

1   really not prepared.  We'll try to find somebody else

2   and try to squeeze you and put it in right before

3   summary judgment.

4        What I'd really like, I'd like Mr. Sundar as fast

5   as we can get him, and if it's not him, somebody else as

6   fast as we can get him.  We'd prefer to have it here in

7   LA.  If they insist on New York, we'll do that and we'll

8   make a motion to be reimbursed for the cost shifting as

9   you've indicated.

10            THE COURT:  Well, when you say --

11            MR. RICHMOND:  But what I most want is for it

12  to go fast.

13            THE COURT:  That's the question I want to ask

14  you.  Tell me what that means to you.  Quantify that.

15            MR. RICHMOND:  I'm prepared to take that

16  deposition any day, Your Honor.  Any weekend.  Any day.

17  I'm ready to do it.

18            THE COURT:  Okay.  Ms. Byroade, today is the

19  20th.  I'll give you a week.  If you don't have somebody

20  ready to go in a week, you waive the privilege or you

21  waive the ability to put in evidence and the chips will

22  fall where they may.  Understood?

23            MS. BYROADE:  You mean to have the actual

24  deposition within a week?

25            THE COURT:  Yes.

1    MS. BYROADE:  If they have to come from India,
2  I don't know if that's possible.
3    THE COURT:  Why is it not Mr. Sundar?
4  Informational question, not rhetorical.  Why is he not
5  being reoffered?
6    MS. BYROADE:  I mean I think it's the
7  corporation's prerogative to have who they want and I
8  don't frankly understand why Mr. Richmond is insisting
9  that it is Mr. Sundar.
10    THE COURT:  Okay.  But you're not answering my
11  question.  Don't cross talk to Mr. Richmond's umbrage,
12  answer my question.  Why is he not being offered?  Is
13  that a decision because he's not a good witness?
14  Because he's not available?  Something else?  What's the
15  thought process here?
16    MS. BYROADE:  I mean we think that he did what
17  he was supposed to do and he testified for two days.
18  That wasn't sufficient for Epic.  So we're trying to
19  find another person who can be prepared and can testify
20  about the same topics.
21    THE COURT:  Let's be clear.  You keep saying
22  you thought he did okay, but you've already conceded to
23  me that he did not know the answers to questions that
24  the corporation needs to respond to.  And you've already
25  conceded that the other witnesses may have talked about

these things, but not bound the corporation.  So you
can't have it both ways.  You've got to put on a
30(b)(6) witness who can commit the corporation, the
defendant, to answers.

Now, if you're going to bring in someone from
India, fine.  We can do it by the end of October.  If
it's someone in the U.S., it's got to be within seven
days.  But October 31 is the drop-dead deadline.  That's
a Saturday.  If you don't meet it, there will be
consequences.  Is that clear enough?

MS. BYROADE:  Your Honor, I just want to -- I
did not say that -- I did not concede that he didn't
answer questions.  That's not what I meant to say.  We
thought we were working with them and agreed to provide
a witness, so we did not put in a substantive brief.  So
this is a little bit -- you know, I think this is sort
of going in a different direction.  But we're working to
identify someone and we will.  We have to coordinate
schedules.

There are four depositions in the next few weeks in
Wisconsin that affects the schedule.

THE COURT:  Well, I'll tell you what --

MS. BYROADE:  I don't know that --

THE COURT:  Ms. Byroade, you're right and I'm
going to back off on that.  Because one of the reasons

1  I'm giving everyone the extra time, until the 16th, is

2  because you have these other depositions.  What I want

3  you to do is get the name of your 30(b)(6) ASAP.  I want

4  that within a week.  I want that person identified to

5  Mr. Richmond and his colleagues and I want you to tell

6  him when it's going to be.  If he's got a problem with

7  that and you guys can't work it out, I will referee that

8  dispute.  But the thumb will be on the scale in favor of

9  the plaintiff at that point.  But I'll give you the

10 opportunity to figure out who it's going to be and when

11 it's going to be, taking into account the workload

12 you've got.  That's fair.  Does that make sense?

13          MS. BYROADE:  Yes.  Thank you.

14          THE COURT:  All right.  Mr. Richmond, can you

15 live with that today?

16          MR. RICHMOND:  I'll wait to see what they come

17 back with, Your Honor, but, you know, hope springs

18 eternal.  My guess is we'll be on the phone again.

19          THE COURT:  Well, we've got a hearing next week

20 already, maybe we can make it a two-fer.

21          MR. RICHMOND:  There you go, Your Honor.

22          THE COURT:  All right.  I think that's all we

23 need to do on that one.  Mr. Richmond, it's your motion.

24 Anything else today?

25          MR. RICHMOND:  Not until we get the name and

1    the date, Your Honor.

2            THE COURT:  Understood.  All right.  So let's

3    backtrack to 93.  And again, I'm sort of playing catch

4    up here.  But my understanding of where the parties find

5    themselves today is that defendant has agreed to provide

6    Kumar and Rathina for depositions.  And if I'm wrong,

7    correct me.  That's just my surmise at this point.  But

8    the question is the provision of documents in advance of

9    their depositions.  Maybe that's not a very accurate

10   portrayal of what's still outstanding.

11       Mr. Richmond, you're the one who asked for

12   consideration.  Why don't you give me your position on

13   where we find ourselves, and then Ms. Byroade, I'll get

14   the defendants' position.  Mr. Richmond, to you, please.

15           MR. RICHMOND:  Thank you, Your Honor.  As

16   you'll remember, Mr. Guionnet's deposition was awhile in

17   the making.  It finally got underway on August 4, 5, and

18   6.  During those first three days of his deposition, he

19   talked a lot about these two men, one that everybody

20   calls *Iyappan* and the other one everyone calls *Commander*

21   *Kumar*.  The Commander is a title or designation left

22   over from his military service, not his name.  But

23   that's what everyone calls them, Iyappan and Commander

24   Kumar.

25       At the conclusion of those three days, which was a

1    Thursday, the next Monday on August 10 we immediately

2    requested the depositions of Iyappan and Commander

3    Kumar.  We were met with a stony deaf silence for two

4    weeks.  On August 24 during a meet-and-confer session,

5    TCS finally opened its mouth and responded and said that

6    these two depositions would be tentatively scheduled for

7    September 19th in Chini, amidst a number of other

8    depositions that were going to be taken on what I'll

9    call now in hindsight the India field trip for

10   depositions.

11       We did not have documents for any of the deponents

12   that we were going to be taking on that field trip.  So

13   on August 31st, we filed this emergency motion to compel

14   production of documents so that the depositions could be

15   meaningful as possible.  That was heard in your absence

16   by Peter Oppeneer.  So that's what this takes off from.

17       On September 3rd in response to our emergency

18   motion, TCS refused to search for documents for Iyappan

19   and Commander Kumar saying "they're not likely to have

20   any relevant information" and even the request for their

21   documents "have no legitimate basis."

22       Well, that caught Mr. Gionnett's attention when he

23   pulled up his pacer on September 3, and he promptly on

24   September 7 sent a very lengthy email refuting that

25   notion and proved beyond any peradventure that both

1    Iyappan and Commander Kumar are extraordinarily

2    important witnesses and pointed with specificity to

3    documents that prove that.

4         The final day of Mr. Gionnett's deposition on

5    October 9th, we could hardly even find a way to extract

6    from his deposition what to give you in a supplemental

7    filing to show you how important these two men are to

8    the case.  Mr. Gionnett testified literally for hours

9    about those two men and their importance.

10        Boiling it down, Iyappan is somebody at TCS who has

11   responsibilities and visibility into and access to

12   everything that happens virtually within TCS.  He's a

13   software architecture specialist.  He has a horizontal

14   portfolio that allows him to be deeply involved among

15   others in the Kaiser account using Epic software and in

16   the Med Mantra development.  He's extraordinarily

17   important.

18        Commander Kumar is the head of security.  There is

19   quite a bit of indication that he himself was probably

20   either leading or a principal player in the internal

21   investigation at TCS about what happened with Epic's

22   downloaded documents, the very investigations that are

23   just coming to light in the last two or three weeks, and

24   so he's very important.

25        We have never been able to get dates for their

1  depositions until, I believe it just this morning we got

2  an email saying hey, how about if we give you these two

3  men on October 30 and 31.  We don't have any documents,

4  Your Honor.  That's ten days from now.  I'm not sure we

5  can even -- even if we were to get all their documents

6  today, that's really pinching it.  So where we're left

7  is there have been dates offered.  My guess is they

8  probably don't work.  I think the dates need to be

9  extended probably a couple -- a few days after that,

10  especially in light of your ruling earlier today on the

11  timing of dispositive motions.  But we need those

12  doggone documents and we need them right now, and that's

13  what I'm asking for.

14       THE COURT:  Okay.  And when you say you need

15  those documents, tell me what it is that you've

16  requested.  What's the universe here?  Any documents on

17  specific topics that were part of the deposition notice?

18       MR. RICHMOND:  Your Honor, this goes back to

19  all the document requests basically that we've had in

20  the case.  They've never to our knowledge designated

21  either of these two men to be "custodians" of documents.

22  So they haven't searched, in my view, as far as I know,

23  they might tell me differently, they haven't searched

24  for document one in either of these men's purview.  They

25  haven't looked at their emails, they haven't looked at

1  their hard drives, they haven't gone to the backup

2  servers.  They've done nothing to ask these two

3  gentlemen for anything related to the case, which would

4  cover all kinds of things like comparisons between

5  Epic's software and the competitive Med Mantra software.

6  It would cover things like what internal investigations

7  were done to find out what happened with Epic's

8  documents that were improperly downloaded.  It would

9  cover subjects such as what was Iyappan's role in terms

10  of getting information from the Kaiser account that

11  included all kinds of information about Epic software,

12  and what did or did he or did he not do with that

13  information with respect to Med Mantra.  And it

14  potentially could involve what in the world was TCS

15  doing when it downloaded documents from Epic's UserWeb

16  having to do with a laboratory module when Kaiser didn't

17  even use Epic's laboratory module.  They were stealing

18  laboratory documents, and in the same timeframe, they

19  were working with a U.S. --

20            THE COURT:  Mr. Richmond.

21            MR. RICHMOND:  -- company -- sorry.

22            THE COURT:  Mr. Richmond, let me interrupt you

23  there.  Now, you're giving your closing argument.  I

24  don't need that.

25            MR. RICHMOND:  It's the DaVita documents.

1  There's a laboratory in the U.S. that Med Mantra was

2  developing a laboratory solution.  By the way, I can

3  offer -- this is going to come up in more motion

4  practice.  For a long time TCS's position in this case

5  was why would we steal your documents.  There's nothing

6  we would ever use because we don't do anything in the

7  U.S.  It's now come to light that they very well do

8  things in the U.S.  They are developing a laboratory

9  module with a company called DaVita.

10         THE COURT:  Well, Mr. Richmond, now you're

11  digressing.  I'm sure we'll have many more hearings at

12  which you and Ms. Byroade can present your diametric

13  positions on what's going on here.  But let's focus on

14  what needs to happen before November 16.

15         MR. RICHMOND:  They need to respond to our

16  document demands that are already out there by searching

17  Iyappan and Commander Kumar as custodians.

18         THE COURT:  Okay.

19         MR. RICHMOND:  So include all those documents I

20  was just talking about.

21         THE COURT:  Understood.  And let me ask you

22  this:  Based on the current offer of October 30 and 31

23  for the depositions, where is the proposed location?

24         MR. RICHMOND:  They've proposed it by video.

25  I'd much prefer to take really important people in

1  person, but the real problem is we don't have any

2  documents and that's just ten days away.

3          THE COURT:  Okay.  Understood.  Ms. Byroade,

4  your input.  And you don't have to respond to

5  Mr. Richmond's accusations of improper conduct.  That's

6  not the point today.  The point is getting discovery

7  taken care of.  So what's your input on that, please?

8          MS. BYROADE:  So I just think -- I mean first

9  of all, both of the witnesses are in India and given the

10 deadlines, that's why we proposed video conference.

11     So I'm moving to the documents.  I think this is

12 like -- what Mr. Richmond just said and how rambling

13 that was about what documents he's looking for is a

14 perfect example of what the problem is with his request.

15 We've already searched 16 custodians.  It's not a

16 problem searching custodians, it's a problem that

17 there's absolutely no relevance here.  They're relying

18 entirely on Mr. Gionnett.  Mr. Gionnett could not point

19 to any facts showing any misconduct or any involvement

20 by either of these people.

21     And I think, you know, he mentioned that he showed

22 them a bunch of documents during his deposition.  What

23 actually happened is that during the course of the

24 deposition, Mr. Gionnett emailed those documents that he

25 believed are important.  That's not relevant for the

1   Rule 26.  I think you can look at documents, because

2   Mr. Richmond put them all in, it's like 25/30 documents.

3   Mr. Gionnett thinks that they're important, but

4   Mr. Richmond cannot point to anything in those documents

5   to make any coherent theory why these key witnesses are

6   likely to have relevant information.

7           THE COURT:  Sure.  Well, Ms. Byroade, let's cut

8   to the pragmatic aspect of this discussion.

9   Understanding your position, and I'm not going to take

10  sides here, but understanding your position that it's

11  all completely irrelevant and this is all going to be

12  smoke and mirrors and there will be no substance of this

13  claim later, and I get that.  I understand that the

14  parties have very different views of what actually

15  happened and what it means.  But how time consuming and

16  how difficult would it be to pull up the documents for

17  Commander Kumar and Iyappan Rathina regardless of how

18  irrelevant you think this process would be?

19          MS. BYROADE:  You know, we have to collect them

20  from the client.  Essentially the process is we get the

21  entire mail file from the client for the relevant time

22  period and then we'll have to put in our search terms,

23  and I can't really know -- I wouldn't be able to know

24  the extent of time for the review until I know how many

25  search term hits there are.

1          THE COURT:  Well, give me a ballpark estimate.

2    Just what's the range that we're talking about here?

3          MS. BYROADE:  I suppose it could probably be

4    collected and reviewed in the next two weeks.

5          THE COURT:  In two weeks?

6          MS. BYROADE:  Yeah.

7          THE COURT:  Okay.  Well, today is the 20th.  If

8    you put the request in yet this afternoon, and I assume

9    you guys are 24-7 until the motions get filed in

10   November, if you had all of that -- and I'm just

11   thinking out loud, so Mr. Richmond, I'm not committing

12   to anything here.  But I'm just looking at a calendar.

13   So that would be November 3.  And Mr. Richmond, I

14   presume that you would want some time to look at this

15   stuff.  We've got November 16 for the not-later-than

16   deadline.

17      If we put the depositions -- if the materials were

18   provided by the 3rd at the latest and the deposition

19   were on the 10th or the 11th, is that physically doable?

20   Ms. Byroade, I'll stick with you and then I'll check in

21   with Mr. Richmond.

22          MS. BYROADE:  I think that's doable.  There's

23   still the question of the location for the depositions,

24   I think, but --

25          THE COURT:  Well, you might be paying for

1  Mr. Richmond to fly to India, but I'm not going to look

2  for trouble today.  Let's just figure out what our time

3  frame is and then let you two meet-and-confer, hopefully

4  with more success than the past couple of email

5  exchanges.  But let's nail down some deadlines first.

6       And Ms. Byroade, to your knowledge, depending on

7  location, your client can make both Commander Kumar and

8  Mr. Rathina available in November.

9       MS. BYROADE:  Yes.  I had checked on next week

10 and that's why we offered next week, but I think

11 November will be fine.  I just -- if I can make one

12 point about the process of video conferencing.

13          THE COURT:  Sure.

14          MS. BYROADE:  I know when we were talking to

15 you on a different motion several months ago where Epic

16 are requested that we be required to bring all our

17 witnesses here and we were talking about the possible

18 scenario for depositions and I believe, unless I

19 misunderstood, that you actually -- it sounded to me

20 like the court was open to video conference depositions.

21 We haven't done any yet.  I mean we did seven

22 depositions in India and I think six depositions in the

23 U.S., so I just think that Epic should be required to

24 consider that as a possibility.

25          THE COURT:  Oh, absolutely.  They don't get

1  veto power over a video deposition.  I mean Rule

2  26(b)(3)(C) or (b)(1)(C)(iii) still matters.

3  Proportionality and cost haven't gone out the window,

4  notwithstanding the scope of this particular case.  But

5  what I'd like to do first is figure out timeline.

6        And Ms. Byroade, last question.  You're saying a

7  couple weeks.  If you had to, and understanding that

8  there's a lot going on right now, do you think that

9  could be tightened up?  Do you think that could be done

10  in eight to ten days?

11        MS. BYROADE:  It's possible.  It's just very

12  hard to say without seeing what the searches are.

13        THE COURT:  Understood.  All right.  Well,

14  thank you for your input.

15        MS. BYROADE:  It's a lot -- I'm dealing with a

16  lot.

17        THE COURT:  Sure.  The more the longer.  Yeah,

18  I get it.

19        MS. BYROADE:  Well, I wanted to make the point

20  that a lot of times with the search terms, Epic knows

21  what search terms we're running and we run them and we

22  get a huge number of hits that we look at that are false

23  hits.  And there end up being a handful of responsive

24  documents.  So even as we expect there won't be relevant

25  documents, but it still takes time to review.

1      THE COURT:  Understood.  Well, it's a sifting

2  and winnowing process, isn't it?  Mr. Richmond, your

3  input, please.

4      MR. RICHMOND:  Thank you, Your Honor.  First of

5  all, I heard Ms. Byroade say they were just going do

6  search for mail and it needs to be much broader than

7  that.  There can be PowerPoints and analyses and

8  spreadsheets that might not find their way on the

9  emails.  Those might be the most important documents in

10  the case for all I know.  So I want those.

11      Secondly in terms of timing, it's going to be

12  tough.  I mean obviously we're pinched here.  We will do

13  our level best to meet whatever deadlines the Court sets

14  and respond to that.

15      Finally with respect to searching for documents and

16  sifting through them, this is perhaps not the right

17  motion, but Your Honor, we just don't trust what's going

18  to happen, just so you know.  I mean the fact that these

19  investigative reports have not been produced to us for a

20  year, I don't have a good warm feeling in my heart that

21  after eight days of pawing around and, you know, by

22  already prediction Ms. Byroade is saying we're just

23  going to have a handful of documents for you.  It

24  doesn't make me feel good.

25      THE COURT:  Well, we don't look for trouble

1  here.  That's one of our mantras.  We have a lot of
2  them, but that's one we invoke frequently.  But you've
3  already mentioned Rule 11 during this telephone call.
4  That's a nuclear option.  But let's face it, in many
5  lawsuits that involve a lot of information on a global
6  scale, things happen that seem bad and are not bad.
7  Sometimes things happen that seem bad and are bad.  And
8  I don't know that this is all going to be shaken out and
9  in a position to put before the Court any time soon,
10 certainly not before dispositive motions.  It may be
11 that over the course of time between now and April
12 things come to light that cause extraordinary alarm for
13 Epic to the point that Epic files a Rule 11 motion or a
14 37(b) motion or something like that.  And we will deal
15 with that.  We've had those motions in other cases and
16 the judges here are not shy about punishing a party who
17 has broken the rules or misled counsel in an
18 inappropriate way or done something else that's
19 sanctionable.
20    So Mr. Richmond, I don't blame you for being
21 suspicion.  This is an adversary process.  You sound
22 like you don't trust what you've learned so far and
23 you've given some examples of why you feel that way.
24 The Court does not have enough information today to take
25 sides, so I'm just going to be completely neutral on

1  that.  But I just want to let you know and Ms. Byroade

2  for this matter, although she hasn't expressed the same

3  concerns, that if at any point you think that you have

4  been mistreated by opposing counsel or by the other side

5  in a way that requires court sanctions, file your motion

6  and we'll put you on the docket.  If necessary, Judge

7  Conley will hold an evidentiary hearing with witnesses

8  and oral argument and we will do what justice requires

9  at that point.

10      But I also want that to be an admonition to both

11  sides to be thorough, to be fair, and to make sure that

12  your clients get it.  Because if they don't, there will

13  be consequences.  Maybe not immediately, but in

14  hindsight if the Court has to act later, it will.

15  Again, we're not going to look for trouble.  I'd like to

16  think that this is all going to shake itself out in an

17  expedient and efficient way and that's certainly the

18  expectation today.  But Mr. Richmond, if it turns out

19  otherwise, you've got the opportunity then to make your

20  motion.  Understood?

21          MR. RICHMOND:  Yes, Your Honor.  Thank you.

22          THE COURT:  Okay.  That was a longer homily

23  than I intended, but I think the record will reflect

24  that we really do need to get the information out there.

25  So let's do this:  Ms. Byroade, I'll give you the full

1  two weeks, but it's not just emails.  I'm not going to
2  micromanage today, but you and Mr. Richmond have to at
3  least talk about the documents.  But understanding TCS's
4  position that this is all just a snipe hunt and that
5  nothing is ever going to show up, at this point you've
6  got to humor Epic and if they want the documents, you
7  get the documents and they have to go out within two
8  weeks by November 3.
9       When the deposition occurs after that, I'll let the
10 parties sort that out.  I'm not requiring it to be in
11 person.  It may just be the timing doesn't allow that,
12 notwithstanding Mr. Richmond's preferences.  If it has
13 to be by video because Mr. Richmond wants it before
14 summary judgment, that's fine.  If it's too important to
15 do by video but it can't be done by the 16th, then it
16 may have to be done later.  I'm not going to worry about
17 that today.  The presumption is, however, that it has to
18 occur by the 11th in some fashion if Epic wants it
19 available -- wants it, plural -- the depositions of
20 these two witnesses available to use for summary
21 judgment.  Beyond that, I'm not going to enter any
22 further order today.
23      I will allow the parties to ask for clarification
24 on this right now.  But I think that's really all I
25 should do until you've had a chance to check with your

1  clients, check with each other, and figure out how you

2  want to approach it next.

3       Mr. Richmond, it's your motion.  Is that clear

4  enough today?

5            MR. RICHMOND:  I'm clear on what you've

6  ordered, Your Honor.  Thank you.

7            THE COURT:  Okay.  Ms. Byroade, same questions

8  to you.  Is it clear enough today what has to happen on

9  this one?

10           MS. BYROADE:  Yes.  Thank you.

11           THE COURT:  I think we're done today.  I think

12  we're getting back on the phone on October 28 for

13  plaintiff's October 16 motion to compel, Docket 135.  I

14  don't think we've got a response to that yet.  Like I

15  said, I look forward avidly to the response and maybe

16  next week you guys can give me an update on where we

17  find ourselves.  With that --

18           MS. BYROADE:  Your Honor --

19           THE COURT:  -- I think we're done, but let me

20  check with each side.  Ms. Byroade, I think you want to

21  be heard?

22           MS. BYROADE:  Your Honor, I just wanted to

23  raise one issue, and part of this was addressed in the

24  papers that had been filed.  But it also affects the

25  motion that was filed on Friday.

1            THE COURT:  Yes.

2            MS. BYROADE:  That Epic is -- obviously the

3    parties are required to meet -- make a good faith

4    attempt to resolve issues and meet-and-confer before a

5    discovery motion is filed.  Epic has basically been

6    ignoring that.  Some of that we put in our declaration

7    about the 30(b)(6) motion, but also the motion that was

8    filed on Friday, just one example, they're asking for

9    documents that we actually produced to them earlier on

10   Friday that they didn't bother to look at before filing

11   the motion.  And they're also asking for things that

12   they've never asked for until filing the motion.

13       So I think they're trying to just get things more

14   quickly, but, you know, they should be required to

15   follow the pretrial order and the rules.

16            THE COURT:  That's a fair request.  And I'm not

17   going to ask Mr. Richmond to respond to it today.  But

18   Ms. Byroade, if part of your response you want to show

19   that they're basically cheating on that requirement,

20   please go ahead and do that.  Here's the problem we

21   often encounter, not just in this lawsuit but

22   historically, that the closer we get to a motions

23   deadline, the more urgent every discovery request

24   becomes.  The Court could just take a hard line and tell

25   you to work it out between yourselves.  That just

1   usually fails.  Sometimes it's easier just to get on the

2   phone and referee the disputes.  I'm not saying that

3   that's preferable, but it's sometimes more efficient and

4   more pragmatic.

5       But Ms. Byroade, you do have a dog in this fight.

6   If you think you're being abused, if you think

7   Mr. Richmond and his colleagues are filing motions too

8   soon and not checking for you and they've got no basis,

9   ask for relief and you're entitled to relief if it turns

10  out that this is a situation where more should have been

11  done before the motion was filed.  Does that help at

12  all?

13          MS. BYROADE:  Thank you, Your Honor.

14          THE COURT:  Mr. Richmond.

15          MR. RICHMOND:  Your Honor, people in glass

16  houses shouldn't throw stones.  So if Ms. Byroade wants

17  to make that argument, we'll prove it wrong and show

18  where she hasn't asked for meet-and-confers.  But we'll

19  leave that for next week.

20          THE COURT:  We get one or two cases every year

21  that are just the problem children of the court and I

22  think this case qualifies.  I think this is our seventh

23  or eighth hearing on discovery issues.  Next week will

24  be the ninth, I believe, maybe the tenth.  I'm not sure.

25  I don't expect it to get better.  Frankly I'm not sure

1  that ordering the parties to try to get along better

2  would have any effect here.

3       So we'll just muddle through one motion at a time.

4  All right?  Do the best you can.  We're done for today.

5       MR. RICHMOND:  Thank you, Your Honor.

6       (Proceedings concluded at 3:24 p.m.)

7

8                      *  *  *  *  *

9            I, LYNETTE SWENSON, Certified Realtime and
   Merit Reporter in and for the State of Wisconsin,
10 certify that the foregoing is a true and accurate record
   of the telephonic proceedings held on the 20th day of
11 October 2015 before the Honorable Stephen L. Crocker,
   Magistrate Judge for the Western District of Wisconsin,
12 in my presence and reduced to writing in accordance with
   my stenographic notes made at said time and place.
13 Dated this 23rd day of October 2015.

14

15                              /s/_____

16                              Lynette Swenson, RMR, CRR
                                Federal Court Reporter
17

18

19

20

21 The foregoing certification of this transcript does not
   apply to any reproduction of the same by any means
22 unless under the direct control and/or direction of the
   certifying court reporter.

23

24

25