IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EPIC SYSTEMS CORPORATION,

                              Plaintiff,                                    OPINION AND ORDER

    v.

                                                        14-cv-748-wmc

TATA CONSULTANCY SERVICES
LIMITED and TATA AMERICA
INTERNATIONAL CORPORATION d/b/a
TCA America,

                              Defendants.

---

On December 4, 2015, the court held an in-person hearing on three motions to compel discovery brought by plaintiff Epic Systems Corporation. In addition to counsel, knowledgeable representatives of both parties were required to attend personally. For reasons stated on the record, the court granted in part, denied in part and reserved in part with respect to Epic's motions. As to the latter, the court then held a follow up, telephonic hearing on December 7, 2015, at which the parties appeared by counsel, as did certain attorneys from the law firm of Loeb & Loeb, having been required to do so. During this follow up hearing, the court explored further those issues on which it had reserved regarding TCS's assertions of attorney-client or work product privileges with respect to its so-called "Human Resource" and "Audit Committee" investigations.

The purpose of this order is to memorialize the court's rulings. In addition to detailing its specific rulings in the order below, the court also includes a short opinion elaborating on its rulings with respect to TCS's assertions of privilege during the December 7 hearing.

BACKGROUND

As reflected by the now exceptionally detailed record before Magistrate Judge Crocker, the discovery in this case has been marked by many fits and starts, most due to TCS's disappointingly incomplete, at times obstructive, approach to written discovery and 30(b)(6) depositions.  This record prompted me to become directly involved in the present motions to compel.  In particular, Epic noted several purported internal investigations conducted by TCS for which it has to date received no or only partial discovery based on claims by TCS that the documents do not exit, have no relevance or were subject to blanket privilege.  Among these number the following:  (1) an HR investigation in the spring and early summer of 2014; (2) an audit committee investigation also in spring and early summer of 2014; (3) a security department investigation prompted at Kaiser Permanente's request in July 2014, with a report issued in September 2014;[1]  (4) the so-called "Kelley Drye" investigation performed by TCS's litigation counsel after this suit was filed; and (5) the "Pushpa Hegde" investigation.

Epic contends that all of these TCS investigations should have been disclosed in response to interrogatories served in April 2015 because each was responsive *and* concern what Epic characterizes as the three key liability questions in this case:  (1) who accessed and downloaded Epic's confidential information through UserWeb; (2) who received and reviewed that information once downloaded; and (3) how was Epic's information used by TCS?  Epic also asked for information concerning these investigations in its April 2015 Interrogatory No. 9.

---

[1] The Kaiser report prepared for third-party vendor Kaiser was finally, voluntarily produced in September 2015 despite defendants' earlier assertions of privilege.

After receiving some discovery suggesting (at least) that the investigations extended beyond what was disclosed in TCS's interrogatory responses, Epic served a 30(b)(6) deposition notice and document request on October 29, 2015, seeking information about all TCS investigations into any unauthorized access or use of Epic propriety software. Epic also noticed up Hegde's deposition based on her earlier interrogatory responses. During their meet-and-confer, Epic further maintains that TCS continued to represent that there was only one, privileged investigation led by Loeb & Loeb. Based on this (and apparently the assertion that Hegde had no first-hand knowledge on the subjects to which she attested on TCS's behalf in response to interrogatories), TCS's counsel refused to produce her for a deposition on this subject.

In its response, TCS unsurprisingly offers a different account of its investigation into Guionnet's allegations, although they continued to represent that a single, privileged investigation was conducted. TCS represents that in May 2014, it formally retained outside counsel at Loeb & Loeb to conduct an investigation into potentially serious complaints raised by its employee, Mr. Phillippe Guionnet.[2] In early July, Michelle La Mar of Loeb & Loeb asked TCS to assist in her investigation with respect to Guionnet's allegations of misuse of Epic's UserWeb during TCS's engagement by Kaiser. TCS then directed members of its corporate security team to investigate the underlying facts. That team then conducted interviews and reported its findings to La Mar in August 2014 by form of a written memorandum and attachments. The latter catalogue the "Teams/Individuals" interviewed and "Details of discussions with various teams." TCS maintained that while various

---

[2] The only written engagement letter for this work is apparently a general one for legal services on labor matters, dating back to September 20, 2004.

3

individuals in legal, human resources, and corporate security were involved in the preparation, all acted at La Mar's direction, not separately.

TCS continues to contend that because this investigation was requested by outside counsel in anticipation of litigation, it should be privileged or protected from disclosure as work product and an attorney-client communication. Moreover, TCS argues that it has consistently maintained that the investigation was privileged and has not waived its rights to withhold any information obtained. While indicating that it is working to produce a 30(b)(6) witness, therefore, TCS stated that the designated witness would *not* testify as to two topics:

> 1. "All persons or entities with whom facts learned from the Investigation were communicated or otherwise shared, directly or indirectly, as well as which facts were shared with which person or entity, and when the facts were shared with each person or entity."
>
> 2. "Whether the facts learned from the Investigation were shared with TCS's outside counsel, directly or indirectly, as well as which facts were shared with TCS's outside counsel, when the facts were shared with TCS's outside counsel, and with which member of TCS's outside counsel the respective facts were shared."

During the in-person hearing, TCS Chief Security Officer Ajit Menon acknowledged preparing the August 22, 2014, memorandum addressed to La Mar at Loeb & Loeb, along with others, and that it detailed "the company's investigation that she [La Mar] requested they do, the company's fact finding that she requested." (12/4/15 Rough Tr. 11.) Moreover, TCS represented that it had not produced this memo to date based on both attorney-client and work product privileges.

The court was provided a copy of the memo for review *in camera* during the Friday hearing. While the memo is erroneously dated August 22, 20*12*, all agree the correct year

was 20*14*.  The memo is formally titled "Assessment Report on the complaint raised by Mr. Phillippe Guionnet through Ms. Michelle La Mar," and states that it was prepared by Dr. Santhosh Mohanty, VP and Global Head -- IP [intellectual property] Cell.  In addition to Mr. Monanty, the assessment team is designated to include Mr. Menon and Mr. Paul Amalraj (Corporate Security Team).

At the follow up December 7th telephonic hearing, Attorney La Mar appeared to explain Loeb's engagement by defendants with respect to providing legal advice on any labor law claims Guionnet may have against TCS.  In particular, La Mar addressed the relevance of the firm's general engagement letter between Loeb and TCS for "legal services on labor matters," which she signed on September 20, 2004, and provided to the court for *in camera* inspection late on Friday, December 4, 2015.  La Mar explained that this engagement letter covered all of the firm's subsequent labor matters, including her investigation of Guionnet's allegations against TCS with an eye toward defending TCS in any employment-related litigation he may purse.  As such, La Mar operated in her role as an attorney exploring Guionnet's allegations.

During the hearing on December 7, the court learned that Attorney Curt Bajak, also of Loeb & Loeb, had been "walled off" from La Mar's privileged work as an attorney in order to conduct a *separate and independent fact investigation* into Guionnet's allegations of corporate fraud, including his allegations concerning the inappropriate access and use of Epic's UserWeb by TCS employees.  (12/7/15 Rough Tr. 9.)  Bajak explained that he was engaged for this work, having "done corporate fraud investigation before."  (*Id.* at 29.)

OPINION

In its first motion, Epic sought an order compelling TCS to:  (1) "immediately produce all relevant documents" about its investigations; (2) "provide a properly prepared Rule 30(b)(6) witness to talk in detail (without artificial limitations) about the TCS investigations and their findings and conclusions to date"; and (3) present for deposition Pushpa Hedge, who is identified as "General Manager" under her signature attesting to the accuracy of TCS's response to plaintiff's interrogatories.[3]

As La Mar explained, her engagement was limited to defending against any employment claims.  Therefore, the principal report at issue here -- prepared by various TCS employees for La Mar's review -- was *not* done for use in *this* litigation, although it does concern related questions as to Guionnet's possible assertion of protection as a "whistleblower," who (among many other things) pointed out "inappropriate usage of EPIC User Web Portal by TCS employees while serving Kaiser Permanente" and "adoption of EPIC IP into TCS Med Mantra product."  In addition, most of the report itself (though not all) was repackaged and provided nearly verbatim to Kaiser Permanente, given its interest in determining if inappropriate usage of Epic's User Web Portal by TCS employees had been gained as part of their work for Kaiser.  (Robben Decl., Ex. L (dkt. #269-12).)  Nevertheless, the Kaiser Report was only produced by TCS in September of 2015.

Moreover, despite TCS trial counsel's repeated representations that there was but a single Loeb & Loeb investigation, all of which was subject to the same assertions of privilege, both Attorney La Mar and Attorney Bajak indicated during Monday's telephonic hearing

---

[3] Those earlier interrogatory responses have become somewhat notorious for identifying only four TCS employees who had accessed and downloaded information from Epic's UserWeb, based on Hegde's review of files and discussions with personnel.  However, it now appears that many more than four individuals from TCS accessed the UserWeb.

that this was simply incorrect.  On the contrary, Attorney Bajak was *not* engaged to provide legal advice at all.  Rather, he was engaged to interview Guionnet and other individuals about Guionnet's allegations, conduct other fact finding, and provide his neutral, independent findings to TCS's audit committee.  (*See also* Richman Decl., Ex. 17 (dkt. #248) p.2. (Bajak email to Guionnet stating that he is "not acting as counsel either to TCS or to you with respect to this matter.").)  As importantly, both La Mar and Bajak confirmed there was never *any* expectation that Bajak's work product, fact finding or report to the audit committee would be subject to privilege.  On the contrary, it was anticipated that Bajak's work would be available through the audit committee to investors and others.  *See Wartell v. Purdue Univ.*, No. 1:13-CV-99-RLM-APR, 2014 WL 4261205, at *5, *8 (N.D. Ind. Aug. 28, 2014) (ordering production of investigation materials where the record did not reflect that the attorney "was giving legal advice by conducting the investigation and report").

While Bajak's fact finding was apparently cut short by the initiation of this lawsuit, he also explained at the December 7 hearing that he had submitted at least one interim report, and likely has other work notes and materials, none of which it appears TCS's trial counsel has even reviewed, apparently based on an unsubstantiated (and indeed highly unlikely) belief that it "was not relevant."  Certainly, Bajak's investigation may touch on matters not material to this lawsuit, but trial counsel's blanket refusal to produce his work is not only inexplicable, it has been withheld on the disingenuous assertion of a privilege that never had a basis in law or fact.  Accordingly, TCS has been ordered to review and produce Bajak's file immediately, and to work to make Attorney Bajak available for a deposition at a time and place that is convenient for plaintiff's counsel.  *Cf. In re Raytheon Securities Litigation*, 218

F.R.D. 354, 359 (2003) (work product privilege does not attach to materials prepared by corporation for audit team).[4]

This still leaves the question of the assertion of privilege with respect to Ms. La Mar's work as legal counsel for TCS.  Unlike Bajak, there is no question that La Mar was providing attorney-client services and had asked for an assessment by TCS employees of the merit of Guionnet's allegations of inappropriate usage of the Epic User Web Portal, albeit in the most general terms and in anticipation of possible litigation with Mr. Guionnet, not Epic.  Finally, having disclosed the bulk of the report to Kaiser, and more recently to Epic, the only viable, remaining privilege concerns the underlying facts that were gathered by TCS, most of which should have been produced to Epic in interrogatories and 30(b)(6) depositions already.

Work product materials are discoverable in federal courts upon a showing of substantial need where the party seeking discovery cannot obtain equivalent materials without undue hardship, Fed. R. Civ. P. 26(b)(3)(A), provided steps are taken to "protect against disclosure of mental impressions, conclusions, opinions or legal theories of a party's attorney or other representative concerning the litigation," Fed. R. Civ. P. 26(b)(3)(A).  Here, since TCS and its litigation counsel has generally obstructed other legitimate forms of discovery, and close of discovery is fast approaching, the court finds it a more than equitable that Epic be given access to TCS's report to La Mar, particularly with respect to the factual attachments.  (Given its arguable status as work product in a lawsuit with Guionnet, the production shall be made subject to the protective order in this case and filed under seal with

---

[4] Even if some arguable privilege attached to part of Bajak's work on this matter, TCS's failure to undertake required production in a timely manner justifies disclosure now for reasons discussed further below.

the court.)   Of course, this court expresses no opinion as to the admissibility of the assessment report or its attachments as evidence in this case.

TCS's claim of attorney-client privilege with respect to La Mar's investigation suffers from many of the same defects as its assertion of a work product privilege.  First, as noted, the report TCS prepared for La Mar was already largely disclosed to Kaiser and mainly contains factual information uncovered during TCS's investigation, as conceded during the hearing before this court.  (12/7/15 Rough Tr. 11.)   Second, the report contains *no* legal advice.  *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.").  Perhaps, the subject of the report -- that Attorney La Mar asked TCS to explore inappropriate usage of EPIC's UserWeb and inappropriate adoption of EPIC IP into TCS's Med Mantra product -- would be entitled to privilege, but TCS freely disclosed that Loeb & Loeb, and specifically Attorney La Mar, conducted an investigation into Guionnet's allegations, so that is no basis to claim privilege.

Even if the report itself could somehow still be subject to privilege -- perhaps Menon and others contributing to the report were more forthright knowing its audience was TCS's outside counsel -- Epic has the right to discover what factual information Menon and others at TCS learned during the investigation.  Given TCS's repeated, documented actions to frustrate that effort through ordinary discovery channels during the course of this lawsuit, disclosure of the attachments, along with the report, is again an appropriate step to fulfill Epic's substantial need to move discovery along.  Indeed, as the court explained during its December 7th telephonic hearing, counsel's failure to investigate carefully TCS's privilege claims, ensure their merit, and comply fully with Epic's legitimate discovery requests forms an

adequate basis for the court to compel production of this material as a sanction. Furthermore, at the upcoming depositions of Menon, Amalraj and Mohanty, the deponents cannot claim privilege with respect to their efforts to obtain information and the substance of their interactions with others in preparing the report and its attachments.

Finally, the court also reserved on privilege claims presented by a portion of Epic's second motion to compel, which seeks to compel certain documents and a third 30(b)(6) deposition. Specifically, plaintiff contends that defendants waived attorney client privilege associated with their litigation counsel's investigations by having TCS's president Muthuswami rely on summary documents during his 30(b)(6) deposition. The court found Muthuswami's reliance on summary documents to be routine, and did not constitute a waiver of the underlying attorney-client privilege, although counsel rightly disclosed the summary documents as an aid to Muthuswami's testimony. To the extent that the information in the summary documents came from Loeb & Loeb's earlier investigations, perhaps the production of those documents coupled with Muthuswami's testimony would have constituted waiver, but TCS's counsel at the hearing represented that she had independently prepared those summary documents and the court has no basis to find otherwise. While the court continues to find fault with the designation of Muthuswami as the sole 30(b)(6) designee given his limited knowledge on a variety of designated subjects, this, too, is no basis for stripping away at the attorney-client privilege between defendants and their trial counsel.

## ORDER

Consistent with the opinion above and the other rulings of the court during the December 4 and 7 hearings, IT IS ORDERED that:

1) Plaintiff Epic Systems Corporation's motion to compel discovery regarding TCS Investigation (dkt. #245) is:

    a. GRANTED IN PART AND DENIED IN PART with respect to plaintiff's request to immediately produce all relevant documents about its investigation. The court orders production of TCS's August 22, 201[4], report to Attorney Michelle LaMar and attachments to that report, as well as Attorney Curt Bajak's investigation files. In all other respects, the motion is denied.

    b. DENIED with respect to plaintiff's request to provide another 30(b)(6) witness. The relief plaintiff seeks is better addressed in the previously noticed depositions of Dr. Santosh Mohanty, Ajit Menon and Paul Amalraj.

    c. GRANTED with respect to plaintiff's request to depose Pushpa Hegde. Defendants are directed to produce Hegde for a brief deposition in New York concerning her signing of responses to plaintiff's interrogatories at a time convenient to plaintiff's counsel.

2) Plaintiff's motion to compel documents and a continued Rule 30(b)(6) deposition (dkt. #256) is:

    a. DENIED with respect to plaintiff's request to produce all documents from TCS's outside counsel's investigation related to the preparation of Muthuswami.

    b. DENIED with respect to plaintiff's request to provide another 30(b)(6) witness for reasons described in ¶1.b above.

3) Plaintiff's motion to compel information related to electronic health records products other than "Med Mantra" (dkt. #261) is GRANTED:

    a. with respect to plaintiff's request for discovery responses for all TCS EHR products, including, but not limited to, inspection of the TCS's software used in the British-American Hospital in Mauritius, the cancer institute in Chennai, and Apollo hospital in Kolkata; and

    b. with respect to plaintiff's request for production of release notes or development plans for these products, to be produced on an attorneys' and independent expert's eyes only basis within 14 days of the date of inspection of these software products.

4) Plaintiff is to designate an outside expert with no affiliation with Epic to discuss with TCS's Chief Security Officer, Ajit Menon, how best to accomplish electronic searching of TCS's data to identify all TCS employees who accessed Epic's UserWeb without proper authorization, the extent of their access, and whether and which documents were downloaded. Counsel from either side may not

participate in, or even listen in on, those direct discussions, although they may obviously discuss the substance of those discussions with their respective representatives after those discussions take place.

5) Plaintiff's request for further sanctions is RESERVED.

6) Plaintiff's reply in support of its motion for summary judgment is now due January 7, 2016.

Entered this 10th day of December, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge