UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EPIC SYSTEMS CORPORATION, a Wisconsin Corporation;<br><br>                                    Plaintiff,<br><br>v.<br><br>TATA CONSULTANCY SERVICES LIMITED, an Indian Corporation; and TATA AMERICA INTERNATIONAL CORPORATION (dba TCS America), a New York Corporation;<br><br>                                    Defendants. | Case No. 14-cv-748-wmc<br><br>**REDACTED** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SANCTIONS AND DISQUALIFICATION OF
JENNER & BLOCK LLP**

Defendants Tata America International ("Tata America") and Tata Consultancy Services Limited ("TCS India") (collectively, "TCS"), respectfully submit this memorandum in support of their motion for sanctions against Epic Systems Corporation ("Epic") and disqualification of Jenner & Block LLP ("Jenner & Block"), pursuant to this Court's inherent powers. TCS requests that this Court disqualify and remove Jenner & Block from any further involvement with this litigation on account of its violation of this Court's order and Wisconsin Supreme Court Rule 4.2, which prohibits *ex parte* contact with a represented party – in this case Ajit Menon, Chief Security Officer, Senior Consultant and Global Head of Information Security and Operational Risk Management at TCS. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. This

Court had ordered that the technical consultation occur without attorneys for either side present. Epic's misconduct also requires the surrender and exclusion of the improperly-garnered evidence, the imposition of monetary sanctions against Epic, an award of TCS's costs and fees incurred in filing this motion, and any such further relief as this Court finds just and proper.

## FACTUAL BACKGROUND

On December 4 and December 7, 2015, the Court held a hearing on three discovery motions brought by plaintiff Epic Systems Corp. ("Epic"). During the December 4 hearing, Epic's counsel, without any prior motion, sought an order from the Court permitting it to undertake a forensic investigation of the computers formerly in use in TCS's Kaiser-dedicated ODC, in particular the kiosk computers located in the ODC. The Court did not issue an order permitting a forensic examination. Rather, the Court ordered that TCS make Ajit Menon, its Chief of Corporate Security, available to an independent expert so that Mr. Menon and the expert could "discuss" what systems existed that might be subjected to the testing Epic sought. The Court clearly was envisioning a technical-level discussion, which is underscored by the fact that the Court prohibited lawyers—acting for either party—from participating in, or even listening to, the discussion between Mr. Menon and Epic' expert. Following these hearings, the Court entered a written order that provides, in relevant part:

> Plaintiff is to designate an outside expert with no affiliation with Epic to discuss with TCS's Chief Security Officer, Ajit Menon, how best to accomplish electronic searching of TCS's data to identify all TCS employees who accessed Epic's UserWeb without proper authorization, the extent of their access, and whether and which documents were downloaded. Counsel from either side may not participate in, or even listen in on, those direct discussions, although they may obviously discuss the substance of these discussions with their respective

2

representatives after those discussions take place.

Order dated Dec. 10, 2015, Dkt. 291, at 11-12.

On December 8, 2015, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Robben Decl., Ex. A.) At the time Epic designated it as its independent expert, Stroz was not a stranger to the case. Stroz was already working with Epic in connection with discovery logistics related to Epic's subpoena to non-party Kaiser Foundation Hospitals.



▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*Id.*) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Two of the three persons identified by Epic—Messrs. Rubin and Lynch—have technical backgrounds. Mr. Aquilina, however, does not appear to have a technical background. Rather, as revealed by his professional bio, he is a former Assistant U.S. Attorney in the Criminal Division of the U.S. Attorney's Office for the Central District of California and prior to that, was an associate at a law firm in New York. (Robben Decl., Ex. B.)



▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Because of the way they were conducted, and by whom, these telephone interrogations flagrantly violated the Court's Order and SCR 20:4.2 in numerous ways. Indeed, the cumulative effect of Stroz's conduct was to convert what the Court intended to be a technical discussion into a deposition-style interrogation of Mr. Menon without his counsel being present.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████

███ Ms. Wu, a Stroz Vice President, formerly an Assistant U.S. Attorney in the Criminal Division of the U.S. Attorney's Office for the Central District of California and, prior to that, a litigation associate at the law firm of Proskauer Rose. (Robben Decl., Ex. C.) ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████.

█████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

█████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

████████.

█████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

███████████████████████████. (Robben Decl., Ex. D.) ████████████

███████████████████████████████████████

4

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

████

      ████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

  The scope of the questions strayed far afield from the limited scope envisioned by the Court. Rather than sticking to "how best to accomplish electronic searching of TCS's data," █████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

5

██████████████████████████████████████████

████████████████████████████████

█████████████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████████████████████████

███████████████████████████████████

████████████████████████████████████

████████████████████

    ████████████████████████████

██████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

███████████████████████████████████

████████████████████████████████

███████████████████████████████

████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████

██████████████████████████████████

6

██████████████████████████████████ This questioning was clearly outside of the scope of the Court's Order, as it had nothing to do with how to search TCS's systems in an effort to determine which TCS personnel obtained access to Epic's systems and everything to do with Epic's allegations about TCS's subsequent alleged misuse of information about Epic's systems.

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

██████████████████████████████ These additional discovery requests should have been directed to TCS counsel, not to an unrepresented witness.

All of these maneuvers were made without prior notice to TCS. ████████ ████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████ TCS would have immediately sought a protective order from the Court.

The Court placed restrictions on the discussion between Epic's expert and Mr. Menon in its December 10 order. Counsel from both sides were not to participate. Notwithstanding the Court's Order, Epic intentionally employed a third party – Stroz – and had the Stroz lawyers do precisely what the Court said its regular lawyers could not do: question Mr. Menon outside the presence of TCS's counsel. As a result, Epic's regular counsel has learned information that it had no right to acquire and only obtained

7

by taking advantage of this Court's requirement that Mr. Menon cooperate with the technical discussion. Had Jenner & Block attorneys conducted *ex parte* interrogations of a senior manager of TCS, the firm clearly would be disqualified, and the use of proxy attorneys should not change that result in any way. Epic's conduct in violation of the Court's Order requires sanctions, including the disqualification of Epic's counsel to prevent further harm to TCS.

**ARGUMENT**

I.   **BOTH THE COURT'S ORDER AND RULE 4.2 PROHIBITED JENNER & BLOCK FROM USING THE STROZ LAWYERS TO QUESTION MR. MENON**

Ethical Rule SCR 20:4.2 prohibits *ex parte* communications by counsel with employees of represented parties. The Wisconsin Rules of Professional Conduct apply to attorneys handling cases in the United States District Court for the Western District of Wisconsin.[1] *Weber v. McDorman*, 2000 U.S. Dist. LEXIS 23231, at *2 (W.D. Wis. Aug. 11, 2000) ("The Wisconsin Supreme Court Rules of Professional Conduct for Attorneys govern in this court"). Ethical Rule 4.2(a) prohibits *ex parte* contact with a represented party, stating:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

SCR 20:4.2. In the case of a represented organization, Ethical Rule 4.2 "prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority

---

[1] Wisconsin's Rules of Professional Conduct, which are referred to here as "Ethical Rules", are embodied in Rule 20:4.2 of the Wisconsin Supreme Court Rules.

to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." ABA Commentary to SCR 20:4.2(7).

The prohibition against *ex parte* communications extends to Jenner & Block's agent, Stroz. *See Allen v. Int'l Truck & Engine*, 2006 U.S. Dist. LEXIS 63720, AT *20 (S.D. Ind. Sept. 6, 2006) ("As with Rule 4.2, an attorney's agent could not do what the attorney himself could not do").

The Court also made it clear that the technical discussion envisioned by the Court was to be conducted *without lawyers for either side in attendance, or even listening in*.

While Jenner & Block may claim that it did not violate the Court's order or Rule 4.2 because Jenner lawyers did not personally participate in the questioning of Mr. Menon, such an argument would be contrary to both the letter and spirit of the Court's ruling, and would ignore SCR 20:8.4 (a), which provides: "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, *or do so through the acts of another*." (Emphasis added).

B.   **TCS Will Be Irreparably Prejudiced by Stroz's Improper Interrogation of Mr. Menon**

As Jenner & Block is aware, Mr. Menon is significant to this litigation. Mr. Menon regularly consults with the TCS's lawyers concerning the subject matter of this case and has authority to obligate TCS with respect to the computer security matters. ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Because of their improper questioning, conducted by surrogate attorneys who are former criminal prosecutors in deposition format against an unrepresented witness, ▮▮▮▮▮▮

9

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████, which is why this unethical practice is so strictly prohibited. Even if Jenner & Block were forced to destroy the recordings Stroz made of the improper interview and were precluded from use of their contents for any purpose, its lawyers cannot unlearn what they have learned. Further, the psychological impact on Mr. Menon from having been subjected to this improper interrogation cannot be undone, and may condition his future testimony to the prejudice of TCS. The only solution that even partly addresses the prejudice to TCS is the disqualification of Jenner & Block as Epic counsel and its replacement by counsel that have never heard of the Menon interviews.

## II. JENNER & BLOCK SHOULD BE SANCTIONED FOR ITS VIOLATION OF ETHICAL RULE 4.2 AND THE COURT'S ORDER

This Court "possesses the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal and that the inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1011 (N.D. Ill. 2003). "Courts customarily apply a range of sanctions where ethical violations have occurred. Potential sanctions typically include exclusion of evidence, disqualification, dismissal, and imposition of costs and fees." *Kaiser v. AT&T*, 2002 U.S. Dist. LEXIS 25768, at *30-31 (D. Ariz. Apr. 1, 2002). *See also Weeks v. Independent Sch. Dist. No. I-89*, 230 F.3d 1201, 1211 (10th Cir. 2000) ("Disqualification may be considered as a remedy for a violation of Rule 4.2"); *Faison v. Thornton*, 863 F. Supp. 1204, 1216 (D. Nev. 1992) ("courts have elected to disqualify the

10

party's counsel who improperly engaged in *ex parte* communications with the represented party"). "Courts have wide discretion in determining whether disqualification is required in a particular case and any doubt is resolved in favor of disqualification." *Faison*, at 1216.

### A. The Court Should Disqualify Jenner & Block

Courts hold that "disqualification is appropriate when a lawyer's conduct might taint the case. In general, then, a district judge should disqualify the offending counsel when the integrity of the adversarial process is at stake." *Papanicolaou v. Chase Manhattan Bank, N.A*, 720 F. Supp. 1080, 1083 (S.D.N.Y. 1989) (disqualifying Milbank Tweed despite the fact that the responsible partner and four other attorneys were walled off from the case within days of the *ex parte* contact). "[E]ven if no confidential or privileged information is disclosed [during the improper *ex parte* communications], the appearance of impropriety taints the integrity of the judicial system." *Kaiser v. AT&T*, 2002 U.S. Dist. LEXIS 25768, at *20 (D. Ariz. Apr. 1, 2002).

The Court should disqualify Jenner & Block for its violation of SCR 20:4.2. As the information obtained during Jenner & Block's improper *ex parte* communications with Mr. Menon goes to the nub of the lawsuit, TCS would be irreparably prejudiced should this information be available to Epic and Jenner & Block. Thus, "to protect [TCS] from any unfair advantage [Jenner & Block] *may* have achieved by the improper meeting", Jenner & Block should be disqualified. *Id.* (emphasis in original).

Moreover, it is not enough to disqualify only the attorneys responsible for the *ex parte* communications – Jenner & Block must be disqualified as a whole from this action. The court's decision in *Papanicolaou*, is instructive. In disqualifying both the

11

responsible attorney and his law firm from participating in the action, the Court explained:

> The Court assumes, without so finding, that at their meeting, the plaintiff explicitly or implicitly disclosed to the partner privileged information on litigation strategy.
>
>      *   *   *
>
> [W]hen an individual lawyer learns privileged information, a court may presume that the attorney shares thoughts with his or her colleagues, consciously or unconsciously. Thus, when one attorney is infected with privileged information, the other attorneys at the firm are presumed to become contaminated and must also be disqualified. This presumption of shared knowledge among attorneys in a firm is rebuttable. However, courts have held that the sworn word of an infected attorney or his or her allegedly uninfected colleague that there was no cross-pollination between them is not a satisfactory rebuttal; courts have even gone so far as to state that even the most rigorous self-discipline on the part of the infected attorney might not prevent him or her from unconsciously exploiting confidential information.

720 F. Supp. 1080, 1085-86 (S.D.N.Y. 1989) (internal citations and quotations omitted). In that case, Plaintiff moved to disqualify both the responsible partner and his law firm from participating any further in the action after the partner who was in charge of the defense of the action discussed the merits of the case with the plaintiff for an hour and a half outside the presence of plaintiff's counsel. 720 F. Supp. at 1081.

Consistent with *Papanicolaou*, federal courts have repeatedly disqualified a responsible partner and its law firm from participating in an action where counsel engaged in *ex parte* communications with represented parties about the subject matter of the action in violation of professional conduct rules substantially similar to Ethical Rule 4.2. *Weeks v. Independent Sch. Dist. No. I-89*, 230 F.3d 1201 (10th Cir. 2000) (affirming trial court's disqualification of plaintiff's counsel where counsel had *ex parte* communications with two employees of defendant school district about the subject matter of the action in violation of Rule 4.2 of the Oklahoma Rules of Professional Conduct);

*Bedoya v. Aventura Limosine & Transp. Serv.*, 861 F. Supp. 2d 1346 (S.D. Fla. 2012) (disqualifying the Morgan & Morgan law firm from representation of plaintiff and holding that counsel's action, in violating Florida's rule prohibiting *ex parte* contact, "have so damaged the adversarial process that any trial may well be tainted" and noting that the Court was not convinced "that a Chinese wall – and removing solely [the responsible partners] from this case – would have any effectiveness"); *Kaiser v. AT&T*, 2002 U.S. Dist. LEXIS 25768, (D. Ariz. Apr. 1, 2002) ("balancing Kaiser's right and interest in having counsel of his choice against the nature and extent of the ethical violation, and with due regard for the integrity of the judicial system, this court concludes that disqualification of plaintiff's counsel is warranted under the circumstances of this case"); *Hammond v. Junction City*, 167 F. Supp. 2d 1271 (D. Kan. 2001) (disqualifying and removing plaintiff's counsel and their law firm where at least one of plaintiff's counsel had improper *ex parte* contacts about the subject of the action, in violation of Kansas Rule of Professional Conduct 4.2, with defendant's managerial employee); *Faison v. Thornton*, 862 F. Supp. 1204 (D. Nev. 1992) (disqualifying plaintiff's counsel where counsel engaged in a five hour *ex parte* meeting with defendant in violation of Nevada's professional conduct rule prohibiting *ex parte* communications regarding the subject matter of the litigation).

     As in these cases, Jenner & Block should be disqualified in order to protect TCS from the prejudice that will otherwise flow from the improper *ex parte* contact with, and interrogation of, Mr. Menon.

### B. The Court Should Award Monetary Sanctions to TCS

This Court is fully empowered to order whatever sanctions it deems just and appropriate in this case, including the imposition of monetary sanctions. *Blanchard v. Edgemark Fin. Corp.*, 175 F.R.D. 293, 303 (N.D. Ill. 1997). Accordingly, TCS requests that this Court impose a monetary sanction of $10,000, or such amount as the Court should find proper, upon Epic in order to punish Epic for its counsel's violation of Ethical Rule 4.2 and to deter future violations. *See Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1013 (N.D. Ill. 2003). As noted by the Court in *Parker*, "[t]his Court cannot condone … violations of our Rules of Professional Responsibility and Local Rules by turning a blind eye to practices that undermine the cases before us and the judicial system as a whole." *Id.*

### C. The Court Should Require Epic, Jenner & Block and Stroz to Surrender Mr. Menon's Statement and Prohibit Its Use

In addition to disqualification and monetary sanctions, Epic, Jenner & Block and Stroz should not be allowed to use Mr. Menon's recorded statement, or any other information or documentation gleaned from the improper *ex parte* communication. A violation of the Ethical Rules and any resulting appearance of impropriety demands exclusion. *Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006 (N.D. Ill. 2003) (barring defendant from using information obtained during *ex parte* communication with represented party and ordering that defendant and its counsel destroy any copies of the statement in any format, as well as any summaries or analyses).

Jenner & Block, Stroz and Epic should also be required to surrender the original and any copies of ▆▆▆▆▆▆▆▆▆▆ and any notes, memos, or other documents memorializing the *ex parte* communication to undersigned counsel. *Id.*

14

Finally, Jenner & Block, Stroz and Epic should be barred from disclosing to Epic's new counsel, either directly or indirectly, any information obtained from their *ex parte* contacts with Mr. Menon.

### D. The Court Should Award TCS its Fees and Costs Incurred in Investigating the *Ex Parte* Communications and in Preparing and Filing this Motion

TCS also requests that this Court award it its reasonable attorneys' fees and costs – to be paid by Epic – associated with investigating and responding to the inappropriate *ex parte* communication. TCS's counsel was forced to investigate and then prepare and file this motion to prevent Epic and Jenner & Block from further relying on information obtained in contravention of the Ethical Rules. Epic and Jenner & Block certainly knew that the communications with Mr. Menon were improper and, thus, it is appropriate to assess the fees against Epic. *See Hammond v. Junction City*, 167 F. Supp. 2d 1271, 1293-94 (D. Kan. 2001) (imposing sanctions against law firm, including but not limited to, the costs associated with defendants' filing of the subject motion); *Kaiser v. AT&T*, 2002 U.S. Dist. LEXIS 25768, at *31-32 (D. Ariz. Apr. 1. 2002) (granting Defendants' request for attorneys' fees and costs incurred in investigating the ethical violation).

## CONCLUSION

SCR 20:4.2 serves to protect against exploitation of witnesses and attorney-client privileged communications. *See Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1009 (N.D. Ill. 2003). Yet Jenner & Block, through surrogate attorneys from Stroz, engaged in *ex parte* communications with a management level employee of TCS for approximately five hours, questioned him extensively on issues integral to this matter and far outside the cooperative discovery discussion ordered by the Court, and obtained a

recorded statement from Mr. Menon, in violation of SCR 20:4.2. Jenner & Block also violated this Court's Order by participating in the interrogation of Mr. Menon indirectly, through surrogate counsel from Stroz.

To remedy this violation, TCS respectfully requests that this Court (1) disqualify Jenner & Block from further representation of Epic in this case; (2) impose monetary sanctions on Epic; (3) order that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and any related notes, summaries, or other documents be surrendered and precluded from use; and (4) award TCS its attorney's fees and costs associated with investigating and responding to the inappropriate *ex parte* communications.

Dated: December 29, 2015

By: s/Philip D. Robben
Paul F. Doyle
Philip D. Robben
Alison L. MacGregor
Melissa E. Byroade
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Email: pdoyle@kelleydrye.com
Email: probben@kelleydrye.com
Email: amacgregor@kelleydrye.com
Email: mbyroade@kelleydrye.com
Phone: (212) 808-7800
Fax: (212) 808-7897

and

s/Barbara A. Neider
Barbara A. Neider
Meg Vergeront
STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, Wisconsin 53701-1784
Email: bneider@staffordlaw.com

16

Email: mvergeront@staffordlaw.com
Phone: (608) 256-0226
Fax: (608) 259-2600
*Attorneys for Defendants Tata Consultancy Services Limited and Tata America International Corporation*