IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EPIC SYSTEMS CORPORATION,

                     Plaintiff,                          ORDER

v.

                                                  14-cv-748-wmc

TATA CONSULTANCY SERVICES
LIMITED and TATA AMERICA
INTERNATIONAL CORPORATION d/b/a
TCA America,

                   Defendants.

Consistent with the court's rulings during yesterday's telephonic hearing with counsel for the parties, defendants' motion for sanctions and disqualification of Jenner & Block, LLP (dkt. # 330) is GRANTED IN PART AND DENIED IN PART as set forth in the order below.

BACKGROUND

The TCS defendants' cooperation in discovery in this case has been far below the standard expected by this court and the Rules of Civil Procedure, in terms of timeliness, due diligence and scope of production. *See* Opinion and Order (dkt. #291). In response to Epic's most recent motions to compel discovery, therefore, the court fashioned extraordinary relief to permit Epic's counsel to complete the remaining discovery within the deadlines established by the scheduling order in this case. Among that relief was the following:

> Plaintiff is to designate an outside expert with no affiliation with Epic to discuss with TCS's Chief Security Officer, Ajit Menon, how best to accomplish electronic searching of TCS's data to identify all TCS employees who accessed Epic's UserWeb without proper authorization, the

>extent of their access, and whether and which documents were downloaded. Counsel from either side may not participate in, or even listen in on, those direct discussions, although they may obviously discuss the substance of those discussions with their respective representatives after those discussions take place.

(Dkt. #291: 11-12.)

The court purposefully chose Ajit Menon, a non-lawyer, to represent the TCS defendants in this discussion because of his technical expertise, knowledge of TCS data bases, prior searches and obvious candor and good faith in answering questions posed by the court during an in-person hearing on Epic's discovery motions held on December 4, 2015. Both the court and the TCS defendants understood that the intent of the discussions were to allow technical experts to discuss how best to accomplish any further electronic searching of TCS's data that may be necessary without the impediment of counsel from either side, something that had been prevalent in discussions between the parties to date, particularly by TCS's counsel.

Nevertheless, counsel for plaintiff claims to have understood that: (1) the designated outside expert would act as something of a "special master" for discovery, notwithstanding the court's refusal to make such an appointment; and (2) rather than limit discussions to how best to accomplish any needed, further electronic searches of TCS's data, that the expert was charged with determining the who, what, where and why of TCS's alleged unauthorized use of Epic proprietary information, as well as TCS's actions in investigating allegations regarding the improper access and use of that information.

Case: 3:14-cv-00748-wmc   Document #: 342   Filed: 12/31/15   Page 3 of 9

Toward that end, Epic retained Stroz Friedberg, LLC, a leading firm in electronic data breaches, cyber crime, information security, digital forensics and electronic discovery.  This firm had already done work in this matter for Epic with respect to discovery of the Kaiser Foundation Hospital, an entity that it alleges was used by TCS defendants to wrongfully obtain Epic's propitiatory information.

Consistent the court's order, Epic disclosed three persons from the Stroz firm who would speak with Ajit Menon, two of whom had technical backgrounds, Messrs. Ruben and Lynch.  The last individual, however, designated by Epic's counsel was James Aquilina, a former Assistant U.S. Attorney in the Criminal Division of the U.S. Attorney's Office for the Central District of California, who according to the Stroz website had "conducted and supervised investigations and prosecutions of computer intrusions, extortionate denial of service attacks, computer and internet fraud, criminal copyright infringement, theft of trade secrets, and other abuses involving the theft and use of personal identity."  Again, according to the Stroz website, Aquilina's background included the investigation and trial of numerous complex cases involving fraud, as well as a prior stint as an associate at the law firm of Richards, Spears, Kibbe & Orbe in New York, focused on white collar defense work in federal and state criminal regulatory matters.  Despite his legal background, TCS posed no objection to Mr. Aquilina's participation in the discussions with Mr. Menon, perhaps assuming that he in particular would be circumspect as to the scope of questioning as an experienced lawyer.

In the actual discussions that took place between Ajit Menon and Stroz personnel, only one individual with a technical background, Mr. Ruben, actually participated.

3

Instead, Mr. Aquilina was joined by Wendy Wu, yet another experienced Assistant U.S. Attorney from the Central District of California, whose background according to the Stroz website included serving in the Cyber and Intellectual Property Crime Section, as well as a stint as a litigation associate in White Collar Defense Investigations Group of Proskauer Rose in New York and Los Angelos.  Ms. Wu's participation appears not to have been disclosed at all to TCS in advance of her discussions with Menon.

Perhaps unsurprisingly, given the participation of two experienced, former lawyers in a call that was intended by the court to be between technical experts, the tenor of the discussions with Ajit Menon took on what TCS's counsel accurately describes as "a deposition," including an inordinate amount of time spent at the outset (approximately 30 minutes) on Menon's background and only less than an hour of technical discussion directly between Ruben and Menon over the kind of electronic data maintained by TCS. Of particular concern to the court, were brief discussions between Aquilina, Wu and Menon regarding (1) the substance of what appeared to have been privileged conversations between TCS's in-house counsel and others, (2) the details of Menon's investigation done at the direction of counsel, and (3) wide-ranging discussion of what was and was not done by TCS to discover both electronic data and other information relating to the unauthorized access to Epic's UserWeb that is the subject of this litigation.

Still, having now listened to the entirety of the discussions between Stroz personnel and Menon, for the most part the questioning appeared to be a good faith effort by Stroz to determine what might have been missed in terms of searching TCS's

4

electronic data that would be relevant to the current dispute, which after all was the ultimate intent of the court in granting relief to Epic in light of the TCS defendants' obstruction of discovery to date. The court is able to state this fairly confidently because the Stroz firm, with the consent of Ajit Menon, but not TCS or its counsel, elected to tape and then transcribe the entire conversation between the parties. What is also apparent is that Ajit Menon was in no way intimidated or confused by the questions posed to him and that the Stroz firm was under the (mis)impression that it had been retained and was authorized to conduct its own hands-on discovery, much as a special master might. So much so that the discussions ended with Aquilina making arrangements with Menon for the Stroz firm to visit TCS's facilities in India to conduct its own, independent forensic discovery.

OPINION

Certainly, defendants have come forward with sufficient information to call into question the scope of the discussion that took place between TCS' Chief Security Officer, Ajit Menon, and representatives from Stroz Friedberg, as well as the unauthorized recording of that conversation.[1] In particular, questions posed by former attorneys Aquilina and Wu appear to seek the substance of privileged conversations with in-house counsel and work product, as well as far reaching questions with regard to the substantive issues in this case, as opposed to how best to accomplish further electronic searches of TCS's data as contemplatd by the court's prior order. (Dkt. #291.) Even if both

---

[1] The notion that Ajit Menon could give informal consent to the recording, while perhaps legally accurate, is absurd given the fact that he was represented by counsel. Indeed, it was wholly outside the court's order, which prevented counsel from even "listening in" on the conversation.

individuals are no longer practicing law,[2] the court would have expected such well-credentialed, former attorneys to appreciate the possible unfairness of their questioning a represented individual without his counsel present, as well as the need to stick strictly within the parameters of subject as defined by the court, as should counsel for Epic.

Having said that, the sanction of disqualification of the Jenner & Block law firm from its representation of plaintiff is wholly disproportional to any prejudice actually caused defendants by this lapse in judgment. First, much of the questioning posed to Mr. Menon concerned information already known to the parties and the court because of TCS's past discovery abuses, including most, if not all, of the questions soliciting otherwise privileged information. Second, as best the court could tell in its review of the taped conversations, most of the other questioning by Aquilina and Wu may well have been deemed necessary by the Stroz firm to complete its legitimate charge, determining what electronic searches may yet be necessary of TCS's data to give Epic and its counsel confidence that they have now been given access to information that should already have been produced by TCS.

More importantly, TCS is not without responsibility for the ham-handed way in which the court-ordered interview of Ajit Menon proceeded. First, the ordered interview would not even had been necessary at all but for defendants' repeated failures to comply

---

[2] Epic's counsel represents that -- notwithstanding the State Bar of California's website, which lists both Aquilina and Wu as "active" members of its bar, and the failure of the Stroz website to disclose that neither are licensed to practice law -- neither are authorized to do so. Even if true, both former attorneys should have appreciated the ethical pitfalls under California Rule of Professional Responsibilities 2-100, which are made all the more disturbing in that the Jenner law firm was given both the recording and transcription of those conversations, apparently without the knowledge or consent of TCS or its counsel, even if they did not actively participate in the preparation of questions to be posed by Stroz.

6

with its discovery obligations in this case, and in particular the obstruction by TCS's counsel that prompted the court to exclude their participation in what was meant to be an off-the-record constructive discussion. Second, TCS was given advance notice of participation by Mr. Aquilina, including his background as an attorney, and yet failed to object to his participation. Third, except for general characterizations of the questions posed, TCS has wholly failed to offer a single, specific example of information being obtained through this informal interview process that will do any meaningful, much less unfair, prejudice to its clients' defense in this case.

For these reasons, the court is inclined to view much of TCS's expressed outrage at the questioning of Menon to be strategic. (Ironically, this also strikes the court as a smaller echo of Epic's own expressed outrage at TCS's apparent invasion of its proprietary information.) To the extent the goal of TCS's counsel was to paint opposing counsel in an equally bad light, they have sadly succeeded. To the extent they hoped to throw this entire case back to square one by disqualifying Epic's trial counsel, they have grossly overreached, at least on the record before the court.

If anything, the conduct of the Menon conversation has ameliorated the court's concerns that TCS has now disclosed the basic information necessary for Epic to complete its discovery in an orderly fashion. Sadly, Epic and its counsel have now sullied their own conduct in discovery in this case, making further sanctions against TCS less justified. In the end, the *only* individual that comes out looking good in this latest

discovery fiasco is Ajit Menon, whose candor and cooperation continues to impress this court.[3] Accordingly, the following sanctions will apply.

ORDER

IT IS ORDERED THAT:

1. All recordings of the communication between Ajit Menon and Stroz will be destroyed, except those in the possession of Stroz, counsel for TCS and the court.

2. All written transcripts and other summaries of those recordings shall also be destroyed, again except as in the possession of Stroz, counsel for TCS and the court.

3. The Jenner law firm shall destroy all outlines or questions prepared with use of these recordings, transcripts or summaries. Moreover, the Stroz firm may not refer to these materials, or notes made from them, in providing guidance to Epic or Jenner, although they may refer to any contemporaneous notes made during the conversations with Menon that bear solely on how best to complete electronic searches of TCS's data.

4. Epic and its counsel shall provide written confirmation of the destruction of all of these materials to the court.

5. This order is without prejudice to further sanctions being imposed, should TCS wish to renew its motion with a proffer of *specific* examples of disclosures during the Stroz/Menon discussions that actually unfairly prejudice its case.

---

[3] So much so that the court is now far less inclined to entertain further requests by Epic to enter default judgment against TCS on liability issues in this case.

6. Toward that end, TCS's counsel may seek paper discovery of Jenner & Block and Stroz, as well as pose follow up questions in a 30(b)(6) deposition of each firm, with regard to the substance of their communications leading up to the Ajit Menon discussion and what information, if any, has been relayed by Stroz to Epic or Jenner since those discussions.

7. The Jenner and Stroz firms shall promptly provide certification from the State Bar of California (or other appropriate government or quasi-government entity) that Aquilina and Wu did *not* maintain active status to practice law in California on the dates during which their discussions with Ajit Menon took place.

Entered this 31st day of December, 2015.

                        BY THE COURT:

                        /s/

                        _____
                        WILLIAM M. CONLEY
                        District Judge