UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EPIC SYSTEMS CORPORATION, a
Wisconsin Corporation,

        Plaintiff,

    v.

TATA CONSULTANCY SERVICES
LIMITED, an Indian Corporation; and TATA
AMERICA INTERNATIONAL
CORPORATION (dba TCS AMERICA), a
New York Corporation,

        Defendants.

Case No. 14-CV-748-WMC

**PLAINTIFF'S OPPOSITION TO TCS'S MOTION TO COMPEL COMPLIANCE
WITH DEFENDANTS' FOURTH SET OF DOCUMENT REQUESTS**

2409171

Epic has already produced nearly one hundred and fifty thousand technical documents that provide a detailed description of three released versions of its software products. TCS's motion now seeks an order compelling Epic to produce all of *Epic's* documents showing the countless changes made to the software during the programming of Epic's code, as well as a host of other categories of documents such as communications with Kaiser for which TCS cannot explain the relevance. TCS has failed to show: (1) that the entirety of Epic's programming documents are relevant to any comparison related to the theft of Epic's documents; (2) why, to the extent it is relevant, the thousands of Epic's technical documents already produced do not sufficiently provide a complete picture of Epic's software; or (3) how the unduly burdensome nature of the requests can be justified. For each of those reasons, TCS motion should be denied.

TCS argues that only Epic's documents showing changes to Epic's software will allow TCS to compare Epic's product to TCS's Med Mantra product to then show how TCS did not incorporate the stolen UserWeb documents into its software. TCS tries to justify its out of bounds request with a tit-for-tat argument that Epic has requested TCS's development documents and therefore reciprocal discovery is proper. But TCS ignores the critical fact that TCS and Epic *are not* similarly situated. It is TCS that improperly accessed Epic's UserWeb and downloaded over 6,000 confidential and trade secret documents. Thus the question is whether TCS took Epic's UserWeb documents and used or incorporated Epic's confidential and trade secret information into TCS's own EHR product. That question can be answered, in part, by reviewing TCS's development documents (including changes to its software) to determine if changes align with the dates and content of particular Epic documents.

The reciprocal argument is not correct. Epic's programming documents, including when particular features were incorporated into Epic's software or when changes were made to that software, are not relevant here. It is the UserWeb documents that were downloaded without authorization, and it is those documents that should be compared to TCS's EHR products to determine whether TCS improperly used the downloaded documents. Further, the documents Epic already produced reflect any changes made to Epic's software in the released versions of

the software. How Epic arrived at its final version does not bear on any comparison with TCS's software. Epic has already produced the universe of these documents for three versions of its software—not just the stolen documents and not just those necessarily installed or deployed by Kaiser. Those documents paint a complete picture of Epic's product. Those documents coupled with Epic allowing TCS's expert to conduct multiple inspections of Epic's EHR software is more than sufficient discovery for TCS to try to defend its case.

In addition to lacking relevance, Epic's response to TCS requests would require production of hundreds of thousands of pages of documents not necessary for this case, and at the same time place an incredible burden on Epic.

Because Epic has already produced the technical documentation relevant for this case, and TCS has failed to substantiate the need for Epic's programming documents and other document categories called for by its requests (such as software validation documents and information on hundreds of employees), and certainly cannot justify the extreme burden such a production would put on Epic, the Motion should be denied.

## I. BACKGROUND

TCS served discovery requests on Epic seeking documents that can generally be described as almost every piece of documentation related to the design, development, and testing of Epic's software. As an example, TCS sought:

> "All documents that refer or relate to system and user functional requirements, specification, and any other documentation describing the details of all modules, functions and operations of KP HealthConnect." Dkt. No. 367-1 at 5.

KP HealthConnect is what Kaiser Permanente calls its installation of Epic's software. Rehm Decl., ¶ 8. Kaiser Permanente has installed almost every module and so this request covers most of Epic's software. *Id.* TCS also served a request seeking "All documents that refer or relate to recommendations provided by Epic to Kaiser addressing methods, procedures, tools, and best practices for ongoing testing and validation of Epic system deployments …" (Dkt. No. 367-1 at

3

2409171

5), which would implicate nearly every communication to Kaiser. TCS also seeks an even more irrelevant and overbroad category of documents:

> "All documents that refer or relate to a description of various administrative roles and responsibilities in connection with the management of an Epic deployment by Kaiser's technical and administrative staff …" (Dkt. No. 367-1 at 5).

And TCS's requests seek countless document regarding the Epic employees working on the Kaiser engagement, which number in the hundreds. Rehm Decl., ¶ 11; *see also* Dkt. No. 367-1 at 6 (seeking documents to identify current or former Epic employees who worked on-site at Kaiser).

Epic received TCS's overly broad discovery requests on November 23, 2015, over a year after this case started. Well before any response was due, Epic reached out to TCS on December 7, 2015, and informed TCS that Epic would produce *all* of its formal documentation available on UserWeb, and at the same time noting the objectionable nature of the requests. Dkt. No. 367-3. The documents TCS downloaded from UserWeb that are at issue in this case, and the documents Epic agreed to produce comprise all of the formal documentation available to Epic customers. These documents are the same materials relied upon by customers to set-up, support, configure, and maintain Epic's software. They contain workflows, data models, detailed setup and support guides, implementation planning and support information, administrator and end user materials, detailed configuration instructions, training materials, and whitepapers, regulatory documents, interface materials, upgrade overviews and guides, and testing tools and toolkits. Rehm Decl., ¶¶ 3-6. Epic produced those documents as soon as an appropriate amendment was made to the Protective Order.

While TCS accepted production of the UserWeb documents, it still sought the "host documents that are used by software developers" and a wide swath of "development materials" such as "release notes, change logs, historical logs of developments, configuration management documents, version management documents, bug fix documentation, design documentation and

4

schematics, and module specifications." Dkt. No. 367-4.[1] Despite its overly broad requests, the best justification TCS could muster is that Epic has put its software at issue by filing this lawsuit, and the material is required to compare the two systems—meaning Med Mantra and Epic.

TCS now makes those same arguments to the Court in its Motion. But like its letter to Epic, TCS's Motion fails to substantiate the relevance of *Epic's* programming and other extraneous documents that TCS seeks, and cannot justify the extreme burden that producing documents responsive to TCS's overly broad requests would cause (which would amount to nothing short of a massive amount of materials).

## II. ARGUMENT

### A. TCS Has Not Shown That Epic's Development Documents Are Relevant to This Action.

TCS argues that "the developmental history of Epic's software is necessary to determine whether the Med Mantra software features that Epic alleges were misappropriated were present in Epic's software in the relevant period." Dkt. No. 365 at 6. Put simply, this argument makes little sense. The issues here are the stolen Epic UserWeb documents and confidential information, and whether the information contained in those documents was used to enhance the Med Mantra or TCS-HIS software. How Epic arrived at the various versions of its software releases through changes to its software have no bearing on whether or not TCS used the stolen documents. The correct comparison is TCS's software (and changes made to that software) against the downloaded UserWeb documents or final versions of Epic's software. Documents and materials for both have already been produced by Epic.

TCS relies on, and repeatedly trumpets, a claim that it needs the developer-facing, design documentation. It never explains why, or at least does not do so in convincing fashion. Indeed, TCS's brief succinctly identifies the correct issue in parts where it notes that Epic's allegations

---

[1] It is important to note that while TCS requests release notes and change logs from Epic, TCS has failed to provide a complete production of the change logs and release notes for its TCS-HIS EHR product it was ordered to produce those documents on October 28 after Epic successfully moved to compel their production. (Dkt. No. 135; Dkt. No. 151).

are "that TCS took documents from UserWeb" and that "these downloaded documents" were then used in the development of Med Mantra. Dkt. No. 365 at 2. But then TCS veers off course.

TCS's primary argument is that Epic asked TCS for the same type of development documents, so reciprocal discovery is warranted. But it ignores the fact that changes to TCS's software (and whether those changes incorporate Epic's information) are the crux of the case. Epic's changes to its software have no bearing on whether TCS copied Epic's information from UserWeb. Just because one party is entitled to discovery, does not mean the opposite is automatically true. The relevance standard still applies.

TCS also argues that it must be allowed to compare the "TCS software with the Epic software." Dkt. No. 365 at 7. TCS is almost right. The relevant comparison is between TCS's software with the stolen documents that describe the Epic software, not to the documents Epic used in its own design and programming of its software. But even giving it the benefit of the doubt, TCS is able to compare its software to Epic's software through the formal documentation already produced and the demonstrations. Documents reflecting Epic's changes to its software throughout time play no reasonable part in that analysis.

> **B.     Epic's Formal UserWeb Documentation and TCS's Inspections of Epic's Software Provide a Detailed Description of Epic's Software.**

TCS would have the Court believe the technical documents produced by Epic are a limited set of useless, customer-facing materials that fail to describe the product similar to a user manual for a recently-purchased toaster. That is wrong. The formal documentation includes everything a customer would need to maintain, install, support, and configure Epic's software. Rehm Decl., ¶ 3. It includes extensive training materials describing the operation of the software, data models, workflows, detailed setup and support guides, implementation planning and support information, administrator and end user materials, detailed configuration instructions, training materials, and whitepapers, regulatory documents, interface materials, upgrade overviews and guides, and testing tools and toolkits. Rehm Decl. ¶¶ 4-5. Those documents provide a complete picture of the software.

6

In addition to the formal documentation, Epic has allowed TCS's expert to conduct an inspection of Epic's software, and a follow-up inspection is being arranged in the near future. With those inspections and the thousands of highly-detailed and comprehensive technical documents from the UserWeb, TCS's expert has more than sufficient information to analyze TCS's EHR products and compare them to the stolen information. Epic has more than complied with its discovery obligations to provide information on how its software works, and the additional documents TCS now seeks so late in this matter are a distraction that should not be allowed.

### C. TCS Cannot Justify its Overbroad Requests or the Immense Burden TCS's Requests Will Place on Epic.

TCS's five requests for production at issue here, if responded to as written on their face, would require Epic to search for and produce most of the company's technical documents. Epic's Director of Technical Services, Brett Rehm, reviewed the requests and estimated that documents responsive to those requests would encompass hundreds of thousands of documents. Rehm Decl., ¶¶ 8-9. In addition, TCS's requests seek nearly every communication with its largest customer—Kaiser—since 2003. Rehm Decl., ¶ 10. Such a production would require significant resources to collect, process through a vendor, and then review—all at a tremendous cost in both manpower and actual dollars. In fact, Mr. Rehm estimates that a document collection responsive to those requests would require hundreds of man hours. Rehm Decl., ¶11. Given the limited or nonexistent relevance of these materials, Epic should not be burdened to conduct this wasteful exercise.

## III. CONCLUSION

TCS cannot show the relevance of the documents sought by its overbroad document requests, and certainly cannot justify the incredible burden responding to those requests would place on Epic. And TCS has more than sufficient technical documentation and inspections of Epic's software to compare the stolen UserWeb documents to TCS's EHR systems. For those reasons, TCS's motion should be denied.

2409171

| | |
|---|---|
| Dated:  January 14, 2016 | */s/ Nick Saros* |
| | Rick Richmond |
| | rrichmond@jenner.com |
| | Brent Caslin |
| | bcaslin@jenner.com |
| | Nick G. Saros |
| | nsaros@jenner.com |
| | Kate T. Spelman |
| | kspelman@jenner.com |
| | JENNER & BLOCK LLP |
| | 633 West 5th Street Suite 2600 |
| | Los Angeles, CA 90066 |
| | Tel:  213-239-5100 |
| | Fax:  213-230-5199 |
| | |
| | Anthony A. Tomaselli |
| | aat@quarles.com |
| | Kristin G. Noel |
| | kristin.noel@quarles.com |
| | Stacy A. Alexejun |
| | stacy.alexejun@quarles.com |
| | QUARLES & BRADY LLP |
| | 33 East Main Street, Suite 900 |
| | Madison, WI 53703 |
| | Tel.: 608.251.5000 |
| | Fax: 608.251.9166 |
| | |
| | *Attorneys for Plaintiff Epic Systems Corporation* |

8

2409171