# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

EPIC SYSTEMS CORPORATION, a
Wisconsin Corporation;

Plaintiff,

v.

TATA CONSULTANCY SERVICES
LIMITED, an Indian Corporation;
and TATA AMERICA INTERNATIONAL
CORPORATION (dba TATA AMERICA), a
New York Corporation;

Defendants.

Case No. 14-cv-748-wmc

**<u>REDACTED</u>**

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
## <u>RENEWED MOTION FOR SANCTIONS</u>

Defendants Tata Consultancy Services Limited and Tata America International

Corporation (collectively, "TCS" or "Defendants") by and through their counsel, Kelley Drye &

Warren LLP ("Kelley Drye"), hereby renew their motion for sanctions against Jenner & Block

and Stroz Friedberg LLC ("Stroz"). The purpose of this submission is to apprise the Court of

information learned during TCS's discovery of Jenner & Block and Stroz as authorized in the

Court's December 31, 2015 Order.[1] During this discovery, TCS learned that Jenner & Block and

Stroz intentionally committed the unethical conduct and violations of attorney privilege

identified by the Court in its December 31 Order; their actions were not merely incompetent or

careless. Further, in spite of the Court's December 31 Order's injunction against using the

tainted fruits of the improper ██████████████, Jenner & Block has used these fruits as

---

[1] In its December 31 Order, this Court stated that such order "is without prejudice to further sanctions being imposed, should TCS with to renew its motion with a proffer of specific examples of disclosures during the ████████████ that actually unfairly prejudice its case." (Dkt. No. 342 at 8.)

the basis for its own motion for sanctions filed February 26, 2016.  This constitutes specific

prejudice against TCS as a result of Jenner & Block and Stroz's improper conduct.

## I.     TCS'S DISCOVERY OF JENNER & BLOCK AND STROZ

The Court's December 31 Order authorized TCS to conduct limited discovery on Jenner

& Block and Stroz, which TCS counsel propounded in the form of document and Rule 30(b)(6)

deposition requests.  Jenner & Block produced 1,880 pages of documents.  Stroz produced 5,825

pages of documents.  ██████████████████████████████████████

██████████████████████████████████.  Both firms were

cooperative in their document productions and in the scheduling and conduct of the depositions.

The following is a summary of the information learned from both the documents and

depositions.

## A.     Jenner & Block and Stroz Planned and Executed an *Ex Parte* Deposition on the Merits of the Case

From the outset, Jenner told Stroz that the Court had ordered not just a technical

interview, but an immediate "electronic investigation" and Stroz understood that it was to

conduct a full, *ex parte* "adverse investigation" of TCS, including a trip to India, pursuant to the

Court's Order.  (*See* Declaration of August T. Horvath dated March 7, 2016 (the "Horvath

Decl."), Exhibit A.)





The issuance of the Court's Order of December 10, 2015, clearly limited the subject of Stroz's *ex parte* interactions with ████████ to discussions of "how best to accomplish electronic searching of TCS's data to identify all TCS employees who accessed Epic's UserWeb without proper authorization, the extent of their access, and whether and which documents were downloaded." Dkt. 291 at 11.



The communications and documents exchanged between Jenner & Block and Stroz were consistent with, and clearly used in the preparation of, the broad questioning that occurred during ████████████, including the invasions of privilege that occurred during those interviews.

The information learned during subsequent discovery establishes that this was not inadvertent or clumsy, but premeditated. Stroz was tasked by Jenner & Block with serving as surrogate counsel to elicit substantive admissions and, in some cases, privileged information from ▮▮▮▮▮▮▮, and it did so. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**B.**    **Jenner & Block and Stroz Were, At Best, Indifferent to TCS's Privilege**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮  However, no effort was made to avoid invading these issues.  ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED],

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

**C.     Jenner & Block and Stroz Did Not Notify TCS Counsel of Changes to their Interviewing Team**

Discovery has clarified the sequence of events by which Jenner & Block and Stroz replaced one of its [REDACTED], technical expert Spencer Lynch, with former criminal prosecutor Wendy Wu.  As noted in the Court's Order, while TCS counsel was aware of the original team of two technical experts and one former prosecutor with some apparent technical credentials, changing the team to two former prosecutors and one technical expert might have raised a flag that Jenner & Block and Stroz intended to overstep the proper course of [REDACTED].

5



▮▮▮ Between December 10 and the first interview of Mr. Menon on December 15, no notice was given to Kelley Drye that the interview team had changed and now consisted of two former federal prosecutors and one technical expert.

## II.    RELIEF REQUESTED

TCS again requests that this Court (1) disqualify Jenner & Block from further representation of Epic in this case; (2) impose monetary sanctions on Epic; and (3) award TCS its attorney's fees and costs associated with investigating and responding to Stroz and Jenner & Block's improper ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

This Court "possesses the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal and that the inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1011 (N.D. Ill. 2003).  "Courts customarily apply a range of sanctions where ethical

violations have occurred.  Potential sanctions typically include exclusion of evidence, disqualification, dismissal, and imposition of costs and fees."  *Kaiser v. AT&T*, 2002 U.S. Dist. LEXIS 25768, at *30-31 (D. Ariz. Apr. 1, 2002).  *See also Weeks v. Independent Sch. Dist. No. I-89*, 230 F.3d 1201, 1211 (10th Cir. 2000) ("Disqualification may be considered as a remedy for a violation of Rule 4.2"); *Faison v. Thornton*, 863 F. Supp. 1204, 1216 (D. Nev. 1992) ("courts have elected to disqualify the party's counsel who improperly engaged in *ex parte* communications with the represented party").  "Courts have wide discretion in determining whether disqualification is required in a particular case and any doubt is resolved in favor of disqualification."  *Faison*, 863 F. Supp. at 1216.

### A.   TCS Has Been Irreparably Prejudiced by Stroz's ███████████████ ███████████ and Jenner & Block Should Be Disqualified

In its December 31, 2015, order, the Court gave Jenner & Block the benefit of the doubt with regard to its conduct, noting that "for the most part the questioning appeared to be a good faith effort by Stroz to determine what might have been missed in terms of searching TCS's electronic data that would be relevant to the current dispute…" (Dkt. No. 342 at 4-5).  Epic's recent spoliation and sanctions motion, however, is clear evidence that Epic did not deserve this Court's confidence.  ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████

Courts hold that "disqualification is appropriate when a lawyer's conduct might taint the case.  In general, then, a district judge should disqualify the offending counsel when the integrity of the adversarial process is at stake."  *Papanicolaou v. Chase Manhattan Bank, N.*A, 720 F. Supp. 1080, 1083 (S.D.N.Y. 1989) (disqualifying Milbank Tweed despite the fact that the responsible partner and four other attorneys were walled off from the case within days of the *ex*

7

*parte* contact).  "[E]ven if no confidential or privileged information is disclosed [during the improper *ex parte* communications], the appearance of impropriety taints the integrity of the judicial system."  *Kaiser v. AT&T*, 2002 U.S. Dist. LEXIS 25768, at *20 (D. Ariz. Apr. 1, 2002).

Jenner & Block's conduct in engaging Stroz to conduct ██████████████████████ ████████ in order to build its spoliation claim has severely prejudiced TCS.  Jenner & Block intentionally set out on a course to retain Stroz as surrogate counsel to obtain information from an unrepresented party in direct violation of SCR 20:4.2.  *See* SCR 20:8.4(a) ("It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, *or do so through the acts of another.*" (emphasis added)); *Allen v. Int'l Truck & Engine*, 2006 U.S. Dist. LEXIS 63720, AT *20 (S.D. Ind. Sept. 6, 2006) ("As with Rule 4.2, an attorney's agent could not do what the attorney himself could not do").  This Court should not turn a blind eye to such conduct that undermines and taints the integrity of the judicial system and flagrantly disregards the Rules of Professional Responsibility.

To illustrate the prejudice to TCS from Jenner & Block and Stroz's improper conduct, Epic's February 26, 2016 motion for sanctions is explicitly based on the *ex parte* information improperly gathered by Stroz in its ██████████████████. ██████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ████████████ ██████████████████████ ██████████████████████████████████ ████████████ Information from the ██████████████ outside of the scope directed by the

Court, and indeed ordered by the Court not to be used by Jenner & Block and Stroz, is cited directly as the basis for Stroz's "investigative findings" supporting Epic's motion. *Id.* at ¶ 15.

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████  Indeed, assuming Jenner & Block has read its own papers, it has now explicitly violated the Court's order by reading and using work product from the ██████

████████████████████████████████████████.  The communications between Jenner & Block and Stroz leading up to the ███████████████ make clear that this was the plan all along. Jenner & Block instructed Stroz to serve as surrogate attorneys, taking an *ex parte* deposition to gather prejudicial evidence of investigative and discovery misconduct, trampling attorney privilege as they went.  Stroz happily assigned two experienced criminal prosecutors to stand in for Jenner & Block.  To the extent they believed they found prejudicial evidence, the Stroz attorneys boastfully reported on it to Jenner & Block and directly to Epic.  And now, in the face of the Court's order to destroy and not use this improperly obtained information, Jenner & Block and Stroz seek to use it to impose sanctions on TCS.  Obviously there is no remorse or even recognition by Jenner & Block or Stroz of the ethical violations causing the Court to sanction them in January.

> **B.**    **The Court Should Award Monetary Sanctions to TCS**

This Court is fully empowered to order whatever sanctions it deems just and appropriate in this case, including the imposition of monetary sanctions.  *Blanchard v. Edgemark Fin. Corp.*, 175 F.R.D. 293, 303 (N.D. Ill. 1997).  Accordingly, TCS requests that this Court impose a monetary sanction of $10,000, or such amount as the Court should find proper, upon Epic in

order to punish Epic for its counsel's violation of Ethical Rule 4.2 and to deter future violations.
*See Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1013 (N.D. Ill. 2003).  As
noted by the Court in *Parker*, "[t]his Court cannot condone … violations of our Rules of
Professional Responsibility and Local Rules by turning a blind eye to practices that undermine
the cases before us and the judicial system as a whole."  *Id.*

C.    **The Court Should Award TCS its Fees and Costs Incurred in Investigating the *Ex Parte* Communications and in Preparing and Filing this Motion**

TCS also requests that this Court award it its reasonable attorneys' fees and costs – to be
paid by Epic – associated with investigating and responding to the inappropriate *ex parte*
communication.  TCS's counsel was forced to investigate and then prepare and file its motion to
prevent Epic and Jenner & Block from further relying on information obtained in contravention
of the Ethical Rules, review thousands of pages of documents produced by Stroz and Jenner &
Block, fly to Los Angeles, California to depose representatives of both parties, and prepare and
file this response.  Assessing fees against Epic for its attorneys' improper conduct is appropriate.
*See Hammond v. Junction City*, 167 F. Supp. 2d 1271, 1293-94 (D. Kan. 2001) (imposing
sanctions against law firm, including but not limited to, the costs associated with defendants'
filing of the subject motion); *Kaiser v. AT&T*, 2002 U.S. Dist. LEXIS 25768, at *31-32 (D. Ariz.
Apr. 1. 2002) (granting Defendants' request for attorneys' fees and costs incurred in
investigating the ethical violation).

III.   **CONCLUSION**

For the foregoing reasons, TCS respectfully requests that this Court (1) disqualify Jenner
& Block from further representation of Epic in this case; (2) impose monetary sanctions on Epic;
(3) award TCS its attorney's fees and costs associated with investigating and responding to the

inappropriate *ex parte* communications; and grant such other and further relief as the Court

deems just and proper.

Dated: March 7, 2016

By:  s/ Paul F. Doyle
       Philip D. Robben
       Paul Doyle
       August T. Horvath
       Melissa E. Byroade
       KELLEY DRYE & WARREN LLP
       101 Park Avenue
       New York, NY  10178
       Email: probben@kelleydrye.com
       Email: pdoyle@kelleydrye.com
       Email: ahorvath@kelleydrye.com
       Email: mbyroade@kelleydrye.com
       Phone: (212) 808-7800
       Fax: (212) 808-7897

*Attorneys for Defendants Tata Consultancy Services Limited and Tata America International Corporation*

11