## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

EPIC SYSTEMS CORPORATION, a
Wisconsin Corporation;

                Plaintiff,

        v.

TATA CONSULTANCY SERVICES
LIMITED, an Indian Corporation;
and TATA AMERICA INTERNATIONAL
CORPORATION (dba TCS AMERICA), a
New York Corporation;

                Defendants.

Case No. 14-cv-748-wmc

## <u>REDACTED</u>

## DEFENDANTS' MEMORANDUM OF LAW IN
## <u>OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS</u>

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................. 1

ARGUMENT ......................................................................................... 13

I.  EPIC HAS NOT MET ITS BURDEN ............................................... 13

    A.  EPIC MUST PROVE BY CLEAR AND CONVINCING
        EVIDENCE THAT TCS WILLFULLY ABUSED THE
        JUDICIAL PROCESS OR OTHERWISE ACTED IN BAD
        FAITH TO WIN SANCTIONS UNDER THIS COURT'S
        INHERENT POWERS .......................................................... 15

    B.  RULE 37 SANCTIONS SIMILARLY REQUIRE BAD FAITH .......... 16

    C.  DEFAULT JUDGMENT IS APPROPRIATE ONLY IN
        EXTREME CASES .............................................................. 17

II.  TCS'S INVESTIGATION IS NOT A GROUND FOR SANCTIONS ............... 21

    A.  EPIC'S MOTION FOR SANCTIONS IS IN DIRECT
        CONTRAVENTION OF THE COURT'S DECEMBER 31
        ORDER AND MUST BE DENIED FOR THAT REASON
        ALONE ........................................................................... 21

        1.  Discovery Reveals that Jenner & Block and Stroz Planned
            and Executed an Ex Parte Deposition on the Merits of the
            Case Contrary to the Court's December 10 Order ...................... 23

        2.  Jenner & Block and Stroz Were, At Best, Indifferent to
            TCS's Privilege ........................................................ 25

        3.  Jenner & Block and Stroz Did Not Notify TCS Counsel of
            Changes to their Interviewing Team ...................................... 26

        4.  Rubin's Improper Contact with Mr. Menon is the Basis for
            His Declaration and the Claims in the Sanctions Motion ........... 27

    B.  AJIT MENON AND HIS TEAM PROMPTLY INVESTIGATED
        MR. GUIONNET'S ALLEGATIONS IN THE FACE OF
        CHALLENGES POSED BY ROGUE AND SELF-INTERESTED
        EMPLOYEES ................................................................... 30

        1.  Mr. Menon's Initial Investigation ...................................... 31

        2.  Mr. Menon's Investigation Expands the Investigative Team
            Learns Additional Information, But Faces Challenges from
            Self-Interested Employees ........................................... 33

        3.  Despite the Challenges Posed by Some Low Level
            Employees'' Lack of Candor, the Interviews Were the Best
            Tool the Investigators Had Available ..................................... 35

## TABLE OF CONTENTS (Cont.)

<strong>Page</strong>

|   |   |   |   |   |
|---|---|---|---|---|
| | 4. | | Epic's Reliance On Proxy Logs Ignores The Fact That The Vast Majority Of The Documents At Issue Were Downloaded Over Kaiser's Network | 36 |
| C. | | | TCS'S ACTIONS IN PRESERVING DOCUMENTS ARE NOT SANCTIONABLE | 37 |
| | 1. | | No Duty To Preserve Arose in April or August 2014 | 38 |
| | 2. | | TCS's Collection of Forensic Evidence Was Appropriate and Did Not Prejudice Epic | 43 |
| D. | | | THAT TCS TOOK FURTHER ACTIONS DURING THIS LITIGATION TO IDENTIFY ALL EMPLOYEES WHO ACCESSED USERWEB IS NOT A GROUND FOR SANCTIONS | 48 |
| | 1. | | TCS Faced Considerable Challenges in Identifying Employees Who Accessed UserWeb | 49 |
| | 2. | | As TCS Learned the Identities of Witnesses It Disclosed Them To Epic, Who Took their Depositions | 50 |
| E. | | | THE TIMING OF TCS'S PRODUCTION OF INVESTIGATION RELATED DOCUMENTS IS NOT A GROUND FOR SANCTIONS | 52 |
| F. | | | TCS MANAGEMENT DID NOT "SUPPRESS THE TRUTH" OR DEPRIVE EPIC OF AN OPPORTUNITY TO PREVENT MISUSE OF ITS INFORMATION | 59 |
| | 1. | | Mahendra Pandian Illustrates the Challenges TCS Faced in Getting to the Truth | 59 |
| | 2. | | TCS Did Not Engage in "Two Years of Silence" At Epic's Expense | 62 |
| III. | | | TCS'S DISCOVERY CONDUCT DOES NOT MERIT ADDITIONAL SANCTIONS | 64 |
| IV. | | | TCS HAS PRODUCED THE RELEVANT MED MANTRA INFORMATION AND EPIC SHOULD NOT BE ABLE TO AVOID ITS BURDEN TO SHOW THAT TCS ACTUALLY USED THE EPIC MATERIAL IN A COMPETING PRODUCT | 72 |
| V. | | | TCS DID NOT ENGAGE IN "ADDITIONAL MISCONDUCT" THAT WARRANTS DEFAULT JUDGMENT | 79 |
| | A. | | TCS's MOTION TO DISMISS | 79 |
| | B. | | TCS's RULE 30(B)(6) DEPOSITIONS | 80 |
| CONCLUSION | | | | 81 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldridge v. Lake Cnty. Sheriff's Office*,
No. 11 C 3041, 2012 U.S. Dist. LEXIS 102514 (N.D. Ill. July 24, 2012) ............................80

*American Family Mutual Insurance Co. v. Roth*,
No. 05 C 3839, 2009 U.S. Dist. LEXIS 32519 (N.D. Ill. Feb. 20, 2009)...................14, 17, 48

*Andrews v. Bowen*,
848 F.2d 98 (7th Cir. 1988) ............................................................................................77

*Banks v. Enova Fin.*,
No. 10 C 4060, 2012 U.S. Dist. LEXIS 173649 (N.D. Ill. July 10, 2012) ............................13

*Barnhill v. United States*,
11 F.3d 1360 (7th Cir. 1993) ..........................................................................................14

*Beck v. Am. Honda Fin. Corp.*,
No. 12-cv-3133, 2014 U.S. Dist. LEXIS 115456 (C.D. Ill. Aug. 20, 2014) .........................14

*Bracey v. Grondin*,
712 F.3d 1012 (7th Cir. 2013) ...............................................................................38, 43, 47

*Brandt v. Vulcan, Inc.*,
30 F.3d 752 (7th Cir. 1994) ............................................................................................16

*Breuer Elec. Mfg. Co. v. Tornado Sys. Of Am.*,
687 F.2d 182 (7th Cir. 1982) ..........................................................................................54

*Bryant v. Gardner*,
587 F.Supp.2d 951, 968 (N.D. Ill. 2008) ..........................................................................19

*Cent. States, Southeast & Southwest Areas Pension Fund v. Kabbes Trucking Co.*,
No. 02 C 1809, 2004 U.S. Dist. LEXIS 23558 (N.D. Ill. 2004)..............................................61

*Christou v. Beatport*,
LLC, No. 10-2912, 2013 WL 248058 (D. Colo. Jan 23, 2013)...............................................43

*CNA Fin. Corp. v. Brown*,
162 F.3d 1334 (11th Cir. 1998) .......................................................................................54

*Cohn v. Taco Bell Corp.*,
No. 92 C 5852, 1995 U.S. Dist. LEXIS 12645 (N.D. Ill. Aug. 30, 1995).........................18, 44

*Crown Life Ins. Co. v. Craig*,
   995 F.2d 1376 (7th Cir. 1993) ........................................................................20

*Danis v. USN Communs., Inc.*,
   No. 98 C 7432, 2000 U.S. Dist. LEXIS 16900 (N.D. Ill. Oct. 20, 200) ..................................17

*Domanus v. Lewicki*,
   742 F. 3d 290 (7th Cir. 2014) ...............................................................17, 19, 20

*Dotson v. Bravo*,
   321 F.3d 663 (7th Cir. 2003) ........................................................................20

*Eisenberg v. Univ. of New Mexico*,
   936 F.2d 1131 (10th Cir. 1991) ......................................................................54

*FTC v. Asia Pc. Telecom, Inc.*,
   788 F.Supp.2d 779 (N.D. Ill. May 25, 2011)................................................15

*Fultz v. Federal Sign*,
   No. 94 C 1931, 1995 WL 76874 (N.D. Ill. Feb. 17, 1995)......................................58

*In re Golant*,
   239 F.3d 931 (7th Cir. 2001) ........................................................................16

*Govas v. Chambers*,
   965 F.2d 298 (7th Cir. 1992) ........................................................................20

*Greviskes v. Universities Research Ass'n Inc.*,
   417 F.3d 752 (7th Cir. 2011) ........................................................................20

*GSI Group, Inc. v. Sukup Mfg. Co.*,
   No. 05-3011, 2008 U.S. Dist. LEXIS 120792 (C.D. Ill. Apr. 1, 2008) ..................................16

*Hal Commodity Cycles Mgmt. v. Kirsh*,
   825 F.2d 1136 (7th Cir. 1987) ......................................................................20

*Haynes v. Dart*,
   No. 08 C 4834, 2010 U.S. Dist. LEXIS 1901 (N.D. Ill. Jan. 11, 2010) ..................................14

*Hindmon v. Nat'l Ben Franklin Ins. Corp.*,
   677 F.2d 617 (7th Cir. 1982) ........................................................................20

*Hollinger Int'l Inc. v. Hollinger Inc.*,
   230 F.R.D. 508 (N.D. Ill. 2005)......................................................................57

*Johnson v. Bankers Life & Cas. Co.*,
   No. 13-cv-144-wmc, 2014 U.S. Dist. LEXIS 127802, at *11 (W.D. Wis. Sept.
   12, 2014) ......................................................................................15

*Kimberly-Clark Worldwide v. First Quality Baby Products*,
No. 09-C-0916, 2011 U.S. Dist. LEXIS 69037 (E.D. Wis. June 27, 2011) ...........................80

*Kraemer v. Hoffman*,
No. 13-cv-860-WMC, 2014 WL 4978225 (W.D. Wis. Sept. 6, 2014)...................................20

*Larson v. Bank One Corp.*,
No. 00 C 2100, 2005 U.S. Dist. LEXIS 42131 (N.D. Ill. Aug. 18, 2005).................13, 16, 17

*Malin v. Hospira, Inc.*,
No. 08 C 4393, 2010 WL 3781284 (N.D. Ill. Sept. 21, 2010)................................58

*Marroco v. General Motors Copr.*,
966 F.2d 220 (7th Cir. 1992) ................................................................17

*Mathur v. Hospitality Props. Trust*,
No. 13-cv-7206, 2016 U.S. Dist. LEXIS 16698 (N.D. Ill. Feb. 10, 2016) ............................42

*Maynard v. Nygren*,
332 F.3d 462 (7th Cir. 2003) ..........................................................16, 17

*Melendez v. Illinois Bell Telephone Co.*,
79 F.3d 661 (7th Cir. 1996) ................................................................21

*Newman v. Metro Pier & Expo. Auth.*,
962 F.2d 589 (7th Cir. 1991) ..............................................................20

*Patterson v. Coca-Cola Bottling Co.*,
852 F.2d 280 (7th Cir. 1988) ..............................................................20

*Philips Med. Sys. Int'l, B.V. v. Bruetman*,
982 F.2d 211 (7th Cir. 1992) ..............................................................20

*Pillay v. Millard Refrigerated Servs.*,
No. 09 C 5725, 2013 U.S. Dist. LEXIS 72350 (N.D. Ill. May 22, 2013) ...............................43

*Powers v. Chicago Transit Auth.*,
890 F.2d 1355 (7th Cir. 1989) ............................................................20

*In re Pradaxa Prods. Liab. Litig.*,
MDL No. 2385, 2013 U.S. Dist. LEXIS 137235 (S.D. Ill. Sept. 25, 2013) ............................16

*Profile Gear Corp. v. Foundry Allied Indus., Inc.*,
937 F.2d 351 (7th Cir. 1994) ............................................................20

*Robinson v. Morgan Stanley*,
No. 06 C 5158, 2010 WL 1050288 (N.D. Ill. Mar. 17, 2010) ................................57

*Rodgers v. Lowe's Home Ctrs., Inc.*,
No. 05 C 0502, 2007 U.S. Dist. LEXIS 7405 (N.D. Ill. Jan. 30, 2007) .....................15, 18, 19

*Roland v. Salem Contract Carriers, Inc.*,
811 F.2d 1175 (7th Cir. 1987) ......................................................................................20

*Salmeron v. Enterprise Recovery Systems*,
579 F.3d 787 (7th Cir. 2009) .................................................................................14, 15

*Secrease v. W & S Life Ins. Co.*,
800 F.3d 397 (7th Cir. 2015) ........................................................................................20

*Shepley v. I.E. Du Pont De Nemours & Co.*,
722 F. Supp 506 (N.D. Ill. 1989) ................................................................49, 54, 59, 61

*Singleton v. Lane*,
No. 12-cv-415-wmc, 2015 U.S. Dist. LEXIS 32939 (W.D. Wis. Mar. 17,
2015) .......................................................................................................................47, 48

*Smithfield Foods v. United States*,
No. 13-651, 2015 WL 6965213 (E.D. Wis. Nov. 10, 2015)...........................................43

*SmithKline Beecham Corp. v. Apotex Corp.*,
No. 98 C 3952, 2000 U.S. Dist. LEXIS 667 (N.D. Ill. Jan. 24, 2000) ...................................81

*Spear v. Commissioner*,
41 F.3d 103 (3d Cir. 1994).............................................................................................14

*Stevenson v. Union Pac. R. Co.*,
354 F.3d 739 (8th Cir. 2004) .........................................................................................47

*Teague v. Armstead*,
82 F. Supp. 3d 817, 827 (N.D. Ill. 2015) .......................................................................18

*Trask-Morton v. Motel 6 Operating L.P.*,
534 F.3d 672 (7th Cir. 2008) ............................................................................... *passim*

*Tucker v. Williams*,
682 F.3d 654 (7th Cir. 2012) .........................................................................................15

*Turner v. Rataczak*,
No. 13-cv-48, 2014 U.S. Dist. LEXIS 143434 (W.D. Wis. Oct. 8, 2014).............................37

*TY Inc. v. Softbelly's, Inc.*,
517 F.3d 494 (7th Cir. 2008) .........................................................................................16

*US v. Approximately $7,400 in U.S. Currency*,
276 F.R.D. 596 (E.D. Wis. 2011) ..................................................................................20

*Viramontes v. United States Bancorp*,
    No. 10 C 761, 2011 U.S. Dist. LEXIS 7850 (N.D. Ill. Jan. 27, 2011) ..............................39, 42

*Wade v. Soo Line R.R. Corp.*,
    500 F.3d 559 (7th Cir. 2007) ................................................................................................17

*Wanderer v. Johnston*,
    910 F.2d 652 (9th Cir. 1990) ................................................................................................15

*Wiginton v. CB Richard Ellis*,
    No. 02 C 6832, 2003 U.S. Dist. LEXIS 19128, at *23 (N.D. Ill. Oct. 27, 2003) ..............18, 47

*Williams v. Chicago Bd. of Educ.*,
    155 F.3d 853 (7th Cir. 1998) ................................................................................................21

*YCB Int'l, Inc. v. UCF Trading Co.*,
    No. 09-CV-7221, 2012 U.S. Dist. LEXIS 104887 (N.D. Ill. 2012) ...........................19, 42, 44

**Other Authorities**

FRCP 26 .................................................................................................................................43

FRCP 30 (b)(6) ............................................................................................................. *passim*

FRCP 37 ...................................................................................................13, 14, 16, 17, 46, 47

FRE 402 .................................................................................................................................54

FRE 408 .............................................................................................................................53, 54

Defendants Tata America International Corporation ("Tata America") and Tata

Consultancy Services Limited ("TCS Limited") (collectively, "TCS"), respectfully submit this

memorandum in opposition to Plaintiff Epic Systems Corporation's ("Epic")'s Motion for

Sanctions (Dkt. 531, the "Motion").

<u>**PRELIMINARY STATEMENT**</u>

At the heart of this lawsuit is Epic's claim that information TCS employees accessed or

downloaded from Epic's UserWeb was used by TCS to develop or enhance Med Mantra and

related TCS products. Instead of analyzing the evidence and drawing parallels between Epic's

EMR system and TCS's systems — which it cannot do — Epic brings this motion.  As explained

in detail below, Epic's motion for sanctions must be denied and the facts should be determined

by the jury.

Epic attempts to use a sanctions motion as a substitute for evidence that TCS misused

Epic's information because such evidence does not exist.  The reason the evidence does not exist

is not that TCS destroyed the evidence.  Rather, it is because the misuse of UserWeb information

that Epic must prove never occurred, as demonstrated by the wealth of discovery and the

investigation ordered allowed by this Court. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████

      ████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████ Contrary to its

Motion, Epic has been given the relevant material needed to compare Med Mantra and related

products to its own system.  Underlying Epic's Motion is an incorrect premise – Epic does not

need to know who accessed UserWeb in order to determine whether any Epic confidential

information (regardless of who accessed it) now appears in Med Mantra.

     A simple analogy illustrates this point.  Assume that Company A learns that Company B

has had access to its secret recipe for cookies—cookies that are better than anyone else's because

of a secret ingredient revealed in the recipe (chocolate chips).  Company A is concerned that

Company B is going to use the recipe to make or enhance its own cookies, so it wants to know

who accessed the recipe and who saw it at Company B.  Those records, unfortunately, are not

available, but Company B has let Company A see its cookie recipe and has even given Company

A some of the cookies it makes so that Company A can see whether they contain chocolate

chips.  If the cookies Company B makes do not contain chocolate chips, then the fact that

Company A was unable to follow the trail of chips within Company B does not matter.

Company A's inability to recreate the trail cannot be substituted for proof that Company B used

the recipe to make its own cookies.

----

1    ██████████████████████████████████████████████

A careful review of the evidence Epic says was destroyed or that it obtained only after considerable effort shows that the evidence all goes to Epic's notion that it needed to follow the trail of who downloaded what, and when, but it does not foreclose Epic from determining whether Med Mantra was developed or enhanced using Epic's confidential information.  For that reason, Epic has not been prejudiced and should not be granted the extraordinary relief it seeks.

**Investigation**:  The first category of evidence that Epic claims has prevented it from proving its case consists of claims that TCS did not act fast enough to preserve certain evidence, in particular internet proxy logs, and imaging of computers, and Epic's theory that TCS could have done more with respect to its investigation.  In particular, Epic takes issue with TCS's reliance on interviews of witnesses.  A review of the facts relating to these topics reveals that Epic's claims of foul play are grossly exaggerated – and that Epic's own conduct in this litigation should bar any relief.

██████████████████████████████████████████████

██████████████████████████████████████████████

**Timing of Production of Investigation Documents**:  The second category of claims

Epic includes in its motion has to do with the timing of the production of the investigative

reports.  TCS withheld the reports based on what it believed was a proper assertion of the

attorney-client privilege and work product doctrine.  But the Court rejected that position and

TCS immediately produced the reports to Epic.  So Epic has them.  More important, Epic has

conducted discovery on the basis of those reports, conducting numerous depositions of persons

identified in the reports; while perhaps not on the schedule Epic would have preferred, it

nevertheless has had the opportunity to use the reports to its advantage in discovery.

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████

      **<u>TCS Employees' Access to UserWeb</u>**:  The third category of information about which

Epic complains relates to the identity of the TCS employees who accessed UserWeb.  Epic

asserts the TCS was late in producing a list of all such employees and that it did not make an

effort sufficient to identify them.  However, the fact that some TCS employees accessed

UserWeb has never been disputed in this action.  ███████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████

████████████████████████████████

          ████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████



**Litigation Conduct:**  The fourth category of issues on which Epic bases its request for sanctions is comprised of the following:



Again, Epic overreaches.  TCS is a company with 318,000 employees in 42 countries. While it has taken time for TCS to locate some of the employees Epic wanted to question, but the bottom line remains the same – Epic obtained the discovery it sought, not just as soon as it wanted it.  ██████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████

**<u>Med Mantra Documents.</u>**  The fifth category of documents or information about which Epic complains has to do with TCS's production of documents relating to Med Mantra and what Epic claims is TCS's refusal to allow Court ordered inspections or turn over documents it was ordered to turn over.  Specifically, Epic complains:

- That TCS refused to identify and provide discovery about its Med Mantra products.

- That TCS violated the Court's order to produce technical Med Mantra documents.

- That TCS violated the Court's order to permit Med Mantra inspections.

Again, Epic tells only part of the story.  ████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

██████████████

**<u>Rule 30(b)(6) Depositions and Motion to Dismiss</u>:**  In the final category of issues Epic

raises, Epic complains that TCS should be sanctioned for moving to dismiss on the ground that

Epic's allegations were implausible and for delaying Rule 30(b)(6) depositions or producing

unprepared witnesses.  █████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

Throughout much of this case, Epic has been waiting for the opportunity to make an omnibus motion for sanctions.  Months ago, presumably once Epic realized there was no evidence that its information was used for Med Mantra, Epic began litigating a case about discovery.  No longer focused on what actually happened with Med Mantra, Epic has spent a tremendous amount of time (not to mention money) trying to lay the groundwork for a sanctions motion it could sandbag TCS with on the eve of trial.  The Court should not reward Epic for such gamesmanship.  Instead, the Court should make Epic try its case like any other litigant — based on actual evidence, not on inferences built on discovery disputes that have long since been resolved or that are tangential to the issues the jury needs to decide.

## ARGUMENT

## I.   EPIC HAS NOT MET ITS BURDEN

Epic seeks sanctions under both this Court's inherent powers and Rule 37.  The standards, and the high burden, for both are essentially the same.  *See Larson v. Bank One Corp.,* No. 00 C 2100, 2005 U.S. Dist. LEXIS 42131, at *24 (N.D. Ill. Aug. 18, 2005) ("under either Rule 37 or under the Court's inherent authority, the analysis for imposing sanctions is essentially the same."); *Banks v. Enova Fin.,* No. 10 C 4060, 2012 U.S. Dist. LEXIS 173649, at *8-9 (N.D. Ill. July 10, 2012) ("Under either Rule 37 or under the Court's inherent authority, the analysis for

imposing sanctions is essentially the same."); *Haynes v. Dart*, No. 08 C 4834, 2010 U.S. Dist. LEXIS 1901, at *7 (N.D. Ill. Jan. 11, 2010) ("Sanctions under Rule 37 are limited to circumstances in which a party violates a court order or discovery ruling.").

In both situations, the fact that Epic was not prejudiced weighs against the imposition of sanctions.[3]  "The choice of sanctions is a function of the prejudice served."  *American Family Mutual Insurance Co. v. Roth*, No. 05 C 3839, 2009 U.S. Dist. LEXIS 32519, at *44-45 (N.D. Ill. Feb. 20, 2009) (declining to enter default judgment.)  "The basic thrust of the Supreme Court jurisprudence is that sanctions that affect the outcome of the trial should only be imposed in order to compensate for violations that may plausibly be thought likely to affect the outcome of the trial." *Spear v. Commissioner*, 41 F.3d 103, 115-17 (3d Cir. 1994).  "Dismissal or judgment is such a serious sanction that it should not be invoked without first considering what effect--if any--the challenged conduct has had on the course of the litigation."  *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993); *see also Beck v. Am. Honda Fin. Corp.*, No. 12-cv-3133, 2014 U.S. Dist. LEXIS 115456 (C.D. Ill. Aug. 20, 2014) (where the court declined to impose any sanctions as it found that the plaintiff suffered no prejudice).  As the Ninth Circuit has framed it:

> We have found the element of prejudice to be essential, stating that sanctions which interfere with the litigants' claim or defenses violate due process when they are imposed merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.  Delay alone, without a focus on its effects, will not justify dismissal or default.

---

[3]     Though Epic cites *Salmeron v. Enterprise Recovery Systems*, 579 F.3d 787 (7th Cir. 2009) for its assertion that a finding of prejudice was not required to sanction a party, this position appears to be in the minority. There, the court's holding was based in large part on the need to "reprimand the offender and to deter future parties from trampling upon the integrity of the court."  *Id,* at 797  The plaintiff had disclosed documents that the parties agreed to treat as "attorney's eyes only" on three occasions, failed to appear at court-mandated status hearings, and repeatedly disregarded court ordered deadlines.  Such conduct by TCS is not present in this case and therefore *Salmeron* is inapplicable.

*Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990) (internal citation and quotation marks omitted).

A.   **EPIC MUST PROVE BY CLEAR AND CONVINCING EVIDENCE THAT TCS WILLFULLY ABUSED THE JUDICIAL PROCESS OR OTHERWISE ACTED IN BAD FAITH TO WIN SANCTIONS UNDER THIS COURT'S INHERENT POWERS**

The Seventh Circuit has held that "[s]anctions imposed pursuant to the district court's inherent power are appropriate where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Tucker v. Williams,* 682 F.3d 654, 662 (7th Cir. 2012).  In *Johnson v. Bankers Life & Cas. Co.,* this Court found that "[w]hile plaintiffs hint that the court could also rely on its inherent authority to sanction defendant, the court does not find that any arguable lack of candor by defendant rises to the level of willful abuse of the judicial process or bad faith in conducting litigation warranting sanctions under the court's inherent authority."  No. 13-cv-144-wmc, 2014 U.S. Dist. LEXIS 127802, at *11 (W.D. Wis. Sept. 12, 2014) (Conley, J.).  Indeed, courts have repeatedly found that bad faith is required for a court to impose sanctions according to its inherent authority.  *See e.g., FTC v. Asia Pc. Telecom, Inc.,* 788 F.Supp.2d 779, 790 (N.D. Ill. May 25, 2011) ("A court's inherent power to impose spoliation sanctions arises only if a party destroyed evidence in bad faith."); *also Rodgers v. Lowe's Home Ctrs., Inc.,* No. 05 C 0502, 2007 U.S. Dist. LEXIS 7405, at *35 (N.D. Ill. Jan. 30, 2007) (declining to impose a sanction pursuant to the court's inherent authority, it ruled that "the proof of intentional misconduct essential for the sanction of entry of default judgment simply does not exist in this case."); *Salmeron v. Enter Recovery Sys., Inc.,* 579 F.3d 787, 793 (7th Cir. 2009) ("Sanctions meted out pursuant to the court's inherent power are appropriate where the offender has willfully abused the judicial process or otherwise conducted litigation in bad faith.").

Moreover, in order for sanctions to be imposed pursuant to the court's inherent authority, the moving party must prove such a sanction is warranted by "clear and convincing evidence." *TY Inc. v. Softbelly's, Inc.,* 517 F.3d 494, 498 (7th Cir. 2008); *See also GSI Group, Inc. v. Sukup Mfg. Co.,* No. 05-3011, 2008 U.S. Dist. LEXIS 120792, at *14 (C.D. Ill. Apr. 1, 2008) ("The Seventh Circuit has recently reaffirmed that the imposition of sanctions under a court's inherent authority requires proof by clear and convincing evidence.").

### B.   RULE 37 SANCTIONS SIMILARLY REQUIRE BAD FAITH

"If the destruction of evidence violates a court's discovery order or ruling, sanctions may be imposed under Federal Rule of Civil Procedure 37." *In re Pradaxa Prods. Liab. Litig.,* MDL No. 2385, 2013 U.S. Dist. LEXIS 137235, at *16 (S.D. Ill. Sept. 25, 2013). "The rule's plain language limits its applicability to situations where a court order has been violated." *Brandt v. Vulcan, Inc.,* 30 F.3d 752, 756 (7th Cir. 1994); *see also Larson v. Bank One Corp.,* No. 00 C 2100, 2005 U.S. Dist. LEXIS 42131, at *24-25 (N.D. Ill. Aug. 18, 2005) ("the court may sanction a party pursuant to Rule 37 for discovery violations; however, these sanctions are limited to circumstances in which a party violates a court order or discovery ruling."). Similar to sanctions pursuant to the court's inherent authority, in order to impose sanctions under Rule 37 the failure to comply with a discovery order must result from "willfulness, bad faith or fault." *In re Golant,* 239 F.3d 931, 936 (7th Cir. 2001); *See also Maynard v. Nygren*, 332 F.3d 462, 468 (7th Cir. 2003);

Rule 37 sanctions also require clear and convincing evidence:

> The quantum of proof required for specific sanctions varies depending on the severity of the sanction. For the most severe sanction, default judgment or dismissal with prejudice, and for punitive monetary sanctions, the Seventh Circuit has required clear and convincing evidence.

*Larson v. Bank One Corp.,* No. 00 C 2100, 2005 U.S. Dist. LEXIS 42131, at *28-29 (N.D. Ill.

Aug. 18, 2005); *see Maynard,* 332 F.3d at 468 (requiring "clear and convincing evidence of

willfulness, bad faith or fault" for a sanction of dismissal); *Wade v. Soo Line R.R. Corp.,* 500

F.3d 559, 564 (7th Cir. 2007) ("dismissal is an appropriate sanction for a violation of Rule 37

only when there is clear and convincing evidence of willfulness, bad faith or fault.").

## C.    DEFAULT JUDGMENT IS APPROPRIATE ONLY IN EXTREME CASES

Epic seeks to be relieved of its burden in proving that TCS used its trade secret

information in Med Mantra or other EMR products based solely on alleged discovery failures by

TCS that neither prejudiced it nor prevented it from discovering any information.  This is not

allowed by the Federal Rules or the case law in this Circuit.

Default judgment is "a harsh sanction which should usually be employed only in extreme

situations where there is a clear record of delay or contumacious conduct, or when other less

drastic sanctions prove unavailable."  *Marroco v. General Motors Copr.*, 966 F.2d 220, 224 (7th

Cir. 1992).  "Default judgment is a strong medicine for discovery abuse. It is appropriate only

where there is a clear record of delay or contumacious conduct…"  *Domanus v. Lewicki*, 742

F.3d 290, 301 (7th Cir. 2014).  One district court in Illinois stated the following policy argument

against default judgment as a sanction: "The purposes for sanctions do not support the entry of a

default judgment-which deprives parties of a trial on the merits-when there is at least some

evidence that allows [a party] to prove [its] case and where there are less drastic remedies

available to cure the absence of certain evidence, deter others from similar conduct, and to

punish the wrongdoer for destruction of evidence."  *Danis v. USN Communs., Inc.*, No. 98 C

7432, 2000 U.S. Dist. LEXIS 16900, at *107 (N.D. Ill. Oct. 20, 200).

In *American Family Mut. Ins. Co*., the court found that "the sanction is inappropriate

where the proof of willful and bad faith destruction is wanting…" No. 05 C 3839, 2009 U.S.

Dist. LEXIS 32519, at *14.  Likewise, in *Trask-Morton v. Motel 6 Operating L.P.*, the Seventh Circuit found that a party must have destroyed evidence in bad faith to be sanctioned. 534 F.3d 672, 681 (7th Cir. 2008) ("Morton has made no showing, however, that Motel 6's destruction of any of those materials was done in bad faith. Such a showing is a prerequisite to imposing sanctions for the destruction of evidence."); *see also Rodgers v. Lowe's Home Centers, Inc.,* No. 05 C 0502, 2007 U.S. Dist. LEXIS 7405, at *21 (N.D. Ill. Jan. 30, 2007) ("There must be clear and convincing evidence of an intentional act by the party in possession of the allegedly lost or destroyed evidence…"); *Teague v. Armstead*, 82 F. Supp. 3d 817, 827 (N.D. Ill. 2015) ("Fault can suffice for less harsh sanctions, but bad faith is required for a severe sanction such as dismissal or an adverse inference.").

In determining the appropriate of a default sanction, courts will also look to the amount of prejudice the conduct has caused to the moving party.  In *Cohn v. Taco Bell Corp*., the court found that "given the absence of bad faith or gross negligence and the existence of other sources of proof" an order of default judgment is not warranted. No. 92 C 5852, 1995 U.S. Dist. LEXIS 12645, at *27 (N.D. Ill. Aug. 29, 1995).  In *Wiginton v. CB Richard Ellis*, the court refused to grant a sanction of default judgment, despite the fact that the defendant had destroyed relevant documents according to its retention policy, because the court found that the defendant's "actions do not constitute an extreme situation which would require such a harsh sanction." No. 02 C 6832, 2003 U.S. Dist. LEXIS 19128, at *23 (N.D. Ill. Oct. 27, 2003).  The court stressed that "this case is distinguishable from cases in which the only existing piece of evidence as destroyed" and went on to note that "[j]ustice is best served by hearing cases on their merits except in limited circumstances…This case should be heard on its merits." *Id.* at 20-21.

In *Bryant v. Gardner*, it was discovered that the defendant had continued to use a computer, after the lawsuit has commenced, that he was not supposed to, and had in fact deleted and written over files. 587 F.Supp.2d 951, 968 (N.D. Ill. 2008). "Despite these failings, the court finds insufficient evidence of bad faith to warrant entry of default judgment." *Id.* at 969.  The court found that the defendant had likely made an inadvertent mistake and that the overwriting happened through 'surfing the internet'.  In addition, the computer still did contain some harmful documents to the defendant. *Id.*  In *YCB Intern., Inc. v. UCF Trading Co., Ltd.,* the defendant destroyed damaging internal investigation reports, however, since it was not a case "involving the destruction of the only piece of evidence," the court refused to grant a sanction as harsh as dismissal. No. 09-cv-7221, 2012 U.S. Dist. LEXIS 104887, at *13 (N.D. Ill. June 12, 2012). Similarly, the court in *Rodgers v. Lowe's Home Centers, Inc*., found that where the "destruction or loss could not prevent Mr. Rodgers from proving his case…The loss of such 'evidence' is certainly not a basis for entry of a default judgment."  2007 U.S. Dist. LEXIS 7405, at *26 (N.D. Ill. Jan. 30, 2007).

Epic relies heavily on the Seventh Circuit's decision in *Domanus v. Lewicki*, 742 F.3d 290 (7th Cir. 1996), for its assertion that default judgment is warranted here.  However, as there is no evidence of bad faith or willfulness by TCS, *Domanus* is readily distinguishable.  In *Domanus*, defendants had been previously sanctioned for willfully destroying a hard drive which they had lied to the court about and then later confessed to doing, repeatedly failed to make any attempt to turn over crucial bank documents, disobeyed multiple court ordered production orders, avoided depositions, seemingly created evidence at a deposition and failed to comply with a contempt order. *Id.* at 300-302.  In upholding the district judge's grant of default judgment, the Seventh Circuit held that defendants' discovery abuses "form[ed] a mosaic that convincingly

show[ed] both a clear record of delay or contumacious conduct, and willfulness, bad faith, or fault." *Id.* Likewise, in *Greviskes v. Universities Research Ass'n Inc.*, 417 F.3d 752, 759-60 (7th Cir. 2011), cited by Epic, the Seventh Circuit upheld dismissal where plaintiff "filed multiple motions to quash relevant subpoenas from opposing counsel, filed multiple motions to dismiss the necessary evidentiary hearing, called superfluous witnesses and then engaged in totally immaterial questioning, and refused to stipulate to basic facts so that [defendant's] counsel had to call additional witnesses."

The type of egregious behavior exhibited in *Domanus* and *Greviskes* simply does not exist in this case.[4]  As discussed more fully below, Epic was neither prejudiced by nor "seriously

---

[4]      Nor does TCS's alleged conduct rise to the level demonstrated in the other cases cited by Epic.  *See e.g., Secrease v. W & S Life Ins. Co.*, 800 F.3d 397 (7th Cir. 2015) (upholding dismissal where plaintiff misled the court into granting his request to compel arbitration by submitting the submitting pages of somone else's contract); *Dotson v. Bravo*, 321 F.3d 663 (7th Cir. 2003) (upholding dismissal where party's egregious conduct included (1) filing a federal civil rights claim under a false name, (2) serving unverified answers to interrogatories propounded by the City containing lies about his true identity, date of birth, and complete arrest record; (3) serving verified responses to the same interrogatories (following the issuance of a court order compelling such disclosure) that still did not disclose his correct birth date or arrest record; (4) lying under oath about his true name and birth date in a deposition; (5) lying about his true name to police when arrested to avoid outstanding arrest warrants; and (6) continuing to conceal his true identity from state official throughout the multi-year duration of his three state criminal trials and incarceration); *Profile Gear Corp. v. Foundry Allied Indus., Inc.*, 937 F.2d 351 (7th Cir. 1994) (entering default judgment after the court four times ordered lesser sanctions against plaintiff); *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376 (7th Cir. 1993) (upholding where plaintiff repeatedly did not comply with discovery orders); *Philips Med. Sys. Int'l, B.V. v. Bruetman*, 982 F.2d 211 (7th Cir. 1992) (upholding dismissal where defendant refused to participate further in discovery and left the United States in violation of the court's orders); *Govas v. Chambers*, 965 F.2d 298, 303 (7th Cir. 1992) (upholding the sanction of dismissal here plaintiffs delayed for three years in turning over 9,000 documents and responding to interrogatories and withheld information that might have been harmful to their case); *Newman v. Metro Pier & Expo. Auth.*, 962 F.2d 589 (7th Cir. 1991) (dismissing suit where plaintiff failed to appear at three court ordered depositions and missing deadlines to answer interrogatories); *Powers v. Chicago Transit Auth.*, 890 F.2d 1355 (7th Cir. 1989) (upholding dismissal where plaintiff refused to obey court orders); *Patterson v. Coca-Cola Bottling Co.*, 852 F.2d 280 (7th Cir. 1988) (upholding dismissal where plaintiff, for over three years, failed to meet court deadlines and did not respond to court orders); *Hal Commodity Cycles Mgmt. v. Kirsh*, 825 F.2d 1136 (7th Cir. 1987) (upholding dismissal where, for three years, defendant failed to honor court deadlines, respond to discovery requests, respond to motions, and attend scheduled conferences); *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175 (7th Cir. 1987) (dismissing action where failed to submit complete responses to written discovery and failed to respond to both the defendant's second and third motions to dismiss); *Hindmon v. Nat'l Ben Franklin Ins. Corp.*, 677 F.2d 617 (7th Cir. 1982) (upholding dismissal here plaintiff failed to comply with a court order to produce documents and failed to appear at his own deposition); *Kraemer v. Hoffman*, No. 13-cv-860-WMC, 2014 WL 4978225 (W.D. Wis. Sept. 6, 2014); *US v.*

hampered" in its trial preparation.  Epic cannot blame the fact that no evidence exists to support

Epic's claims regarding Med Mantra on any conduct by TCS, much less any bad faith conduct

warranting default judgment.  Epic's claims simply have no merit.[5]

## II.   TCS'S INVESTIGATION IS NOT A GROUND FOR SANCTIONS

### A.   EPIC'S MOTION FOR SANCTIONS IS IN DIRECT CONTRAVENTION OF THE COURT'S DECEMBER 31 ORDER AND MUST BE DENIED FOR THAT REASON ALONE

---

*Approximately $7,400 in U.S. Currency*, 276 F.R.D. 596 (E.D. Wis. 2011) (entering default judgment where party did not make any attempt to comply with two discovery orders for documents).

[5]     In fact, Epic cites cases in support of its argument that default judgment is appropriate are cases where default judgment was not entered, much less considered and are, therefore, completely irrelevant to Epic's claim for default judgment.  *See e.g., Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857-59 (7th Cir. 1998) (dismissing plaintiff's suit due to want of prosecution); *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661 (7th Cir. 1996) (issuing a sanction barring defendant's expert testimony due to the fact that the defendant failed to disclose the existence of key evidence until two days before trial and noting that defendant's argument that such sanction was tantamount to default judgment is factually inconsistent).



████████████████████████████████████████████████████

███

██████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

      **1.**       **Discovery Reveals that Jenner & Block and Stroz Planned and Executed an *Ex Parte* Deposition on the Merits of the Case Contrary to the Court's December 10 Order**

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████

## 2.      Jenner & Block and Stroz Were, At Best, Indifferent to TCS's Privilege

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

3.      **Jenner & Block and Stroz Did Not Notify TCS Counsel of Changes to their Interviewing Team**

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

4.    **Rubin's Improper Contact with Mr. Menon is the Basis for His Declaration and the Claims in the Sanctions Motion**







Epic's conduct – now violating two separate orders – should not be condoned by this Court, and its motion for Sanctions must be denied as to all the subjects addressed in the Rubin declaration.

**B.   AJIT MENON AND HIS TEAM PROMPTLY INVESTIGATED MR. GUIONNET'S ALLEGATIONS IN THE FACE OF CHALLENGES POSED BY ROGUE AND SELF-INTERESTED EMPLOYEES**

As the Declaration of Ajit Menon dated March 11, 2016 (the "Menon Decl.") submitted herewith demonstrates, TCS's security team conducted a thorough and appropriate investigation under the circumstances.  On July 23, 2014, Ajit Menon, the Global Head, Information Security and Operational Risk Management for TCS,

███████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████

      **1.**       **Mr. Menon's Initial Investigation**

█████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

2.      **Mr. Menon's Investigation Expands the Investigative Team Learns Additional Information, But Faces Challenges from Self-Interested Employees**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



3.      **Despite the Challenges Posed by Some Low Level Employees' Lack of Candor, the Interviews Were the Best Tool the Investigators Had Available**

**4.** **Epic's Reliance On Proxy Logs Ignores The Fact That The Vast Majority Of The Documents At Issue Were Downloaded Over Kaiser's Network**



### C.   TCS'S ACTIONS IN PRESERVING DOCUMENTS ARE NOT SANCTIONABLE

Epic maintains that it is entitled to an inference from this Court or, in the alternative, a jury instruction, ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████ (Motion at 32.)  However, in order for the Court to find that an adverse inference or jury instruction is appropriate, the noncomplying party must have destroyed evidence in bad faith.  *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008); *see also Turner v. Rataczak*, No. 13-cv-48, 2014 U.S. Dist. LEXIS 143434, at *7 (W.D. Wis. Oct. 8, 2014) ("Seventh Circuit law allows a jury to make a negative inference about missing evidence only if bad faith is found").   Epic has again failed to satisfy this burden.

---

9  

### 1.    No Duty To Preserve Arose in April or August 2014



In order for a party to have committed spoliation, it must have had a duty to preserve the evidence at the time that it was altered or destroyed. *Bracey v. Grondin*, 712 F.3d 1012, 1020 (7th Cir. 2013). A duty to preserve evidence arises when a party knew, or should have known, that litigation was imminent. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008).



- 

In *Viramontes v. United States Bancorp,* No. 10 C 761, 2011 U.S. Dist. LEXIS 7850, at *10 (N.D. Ill. Jan. 27, 2011), the court found that the defendant was not on notice that litigation was imminent simply because of a letter it received which described conduct that could be the basis of future litigation. The plaintiff's letter to the defendant "did not assert that Viramontes might assert possible claims against U.S. Bank." *Id.* at *11. Even though certain employees testified that they thought the letter may give rise "to some possible legal ramifications" the court found it was insufficient to trigger the duty to preserve. *Id.* at *12.  *See also Trask-Morton v. Motel 6 Operating L.P.,* 534 F.3d 672, 681 (7th Cir. 2008) (defendant "had no reason to suspect litigation until—at the earliest—Morton's attorney sent Motel 6 a demand letter in May 2005," despite the fact defendant hired an investigator shortly after the incident occurred).





This letter did not put TCS on notice that litigation was imminent. See *Viramontes v. United States Bancorp*, No. 10 C 761, 2011 U.S. Dist. LEXIS 7850, at *10 (N.D. Ill. Jan. 27, 2011) (where letter did not assert possible claims against defendant, the court found defendant was not put on notice); *YCB Intern. Inc. v. UCF Trading Co., Ltd.,* 2012 WL 3069683, at *7 (N.D. Ill. June 12, 2012) (duty to preserve did not arise until the plaintiff sent defendant a letter specifically threatening future litigation); *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (no duty to preserve arose until plaintiff sent letter to defendant outlining legal claims). Simply having knowledge of the underlying conduct does not suffice to trigger the duty to preserve. *Mathur v. Hospitality Props. Trust,* No. 13-cv-7206, 2016 U.S. Dist. LEXIS 16698, at *12 (N.D. Ill. Feb. 10, 2016).

███████████████████████████████████████████

"[c]onscious destruction of documents alone 'does not warrant an inference that the documents, if produced, would have contained information adverse to the [party's] case… Instead, in order to draw an inference that the absent documents contained negative information, the party seeking the inference must show that the documents were intentionally destroyed with bad faith." *See Smithfield Foods v. United States*, No. 13-651, 2015 WL 6965213, at *2 (E.D. Wis. Nov. 10, 2015); *see also Christou v. Beatport*, LLC, No. 10-2912, 2013 WL 248058, at *14 (D. Colo. Jan 23, 2013) ("an adverse jury instruction is too harsh and is unwarranted as a sanction for the negligent 'spoliation' of evidence").  As demonstrated more fully below, there is no evidence that TCS acted in bad faith with regard preservation of relevant evidence.

## 2. TCS's Collection of Forensic Evidence Was Appropriate and Did Not Prejudice Epic

████████████████████████████████████████████████████████ As stated above, in order for a party to have committed spoliation, it must have had a duty to preserve the evidence at the time that it was altered or destroyed. *Bracey v. Grondin*, 712 F.3d 1012, 1020 (7th Cir. 2013). However, the duty to preserve evidence only extends to evidence that is discoverable under Fed. R. Civ. P. 26, which states that evidence is discoverable if it is admissible or "reasonably calculated to lead to the discovery of admissible evidence." *Pillay v. Millard Refrigerated Servs.,* No. 09 C 5725, 2013 U.S. Dist. LEXIS 72350, at *6 (N.D. Ill. May 22, 2013). ███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████



The duty to preserve does not arise until "the party possessing the evidence has notice of its relevance." *Cohn v. Taco Bell Corp.,* No. 92 C 5852, 1995 U.S. Dist. LEXIS 12645, at *14 (N.D. Ill. Aug. 30, 1995). In addition, "a party does not have to go to 'extraordinary measures' to preserve all potential evidence…Nor need it preserve 'every single scrap or paper in its business." *YCB Int'l, Inc. v. UCF Trading Co.,* No. 09-CV-7221, 2012 U.S. Dist. LEXIS 104887, at *18 (N.D. Ill. 2012).



███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████████

██

     █████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ This does not constitute spoliation. Fed. R. Civ. P. 37(e) deals with the failure

to preserve electronically stored information, and provides the following:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(a) presume that the lost information was unfavorable to the party;

(b) instruct the jury that it may or must presume the information was unfavorable to the party; or

(c) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

In order to impose sanctions under Rule 37(e), either an intent to deprive another party of the information, or a finding of prejudice, must be shown. There is no evidence in the record that TCS acted with the intent to deprive another party of the information or that Epic has been prejudiced. ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████ ███████████████████████████████████████████████

██████████ "[W]here a routine document retention policy has been followed… there must be some indication of an intent to destroy the evidence for the purpose of obstructing or suppressing the truth in order to impose the sanction of an adverse inference instruction." *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 747 (8th Cir.  2004). Thus, courts have consistently held that the routine destruction of data does not constitute bad faith. *See Singleton v. Lane*, No. 12-cv-415-wmc, 2015 U.S. Dist. LEXIS 32939, at *2 (W.D. Wis. Mar. 17, 2015); *Bracey v. Grondin*, 712 F.3d 1012 (7th Cir. 2013).



██████████ *See Wiginton v. Ellis*, No. 02-6832, 2003 WL 2249865, at *7 (N.D. Ill. Oct. 27, 2003) (denying plaintiff's motion for sanctions plaintiff failed to demonstrate prejudice).

████████████████████████████████████████████████████

████████████████████████████████████████████████████



A finding of spoliation requires the destruction of evidence. *American Family Mutual Insurance Co. v. Roth,* No. 05 C 3839, 2009 U.S. Dist. LEXIS 32519 (N.D. Ill. Feb. 20, 2009).

then Epic would still need to show that TCS destroyed evidence with bad faith. *Trask-Morton v. Motel 6 Operating L.P.,* 534 F.3d 672, 681 (7th Cir. 2008). However, the routine destruction of documents does not constitute bad faith. *Singleton v. Lane*, No. 12-cv-415-wmc, 2015 U.S. Dist. LEXIS 32939, at *2 (W.D. Wis. Mar. 17, 2015).

### D. THAT TCS TOOK FURTHER ACTIONS DURING THIS LITIGATION TO IDENTIFY ALL EMPLOYEES WHO ACCESSED USERWEB IS NOT A GROUND FOR SANCTIONS

Epic claims that TCS's failure to provide an amended interrogatory response identifying TCS employees who accessed UserWeb warrants sanctions.

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

██████

    1.       **TCS Faced Considerable Challenges in Identifying Employees Who Accessed UserWeb**

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████

    ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

**2.      As TCS Learned the Identities of Witnesses It Disclosed Them To Epic, Who Took their Depositions**

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

12  [REDACTED]

██████████████████████████████████████████████████████████

████████████████████████████████████

Moreover, when directed by the Court to look further into which individuals accessed UserWeb and to "do it quickly" (Dkt. 151), ████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████.

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████



As Epic acknowledges, sanctions for non-compliance can be avoided where the defendant's efforts were extensive and in good faith.

### E.   THE TIMING OF TCS'S PRODUCTION OF INVESTIGATION RELATED DOCUMENTS IS NOT A GROUND FOR SANCTIONS

Epic argues that TCS should be sanctioned because, according to Epic, TCS made misrepresentations to the Court and delayed producing information related to TCS's

While they do find that certain individuals accessed UserWeb, that is not in dispute and Epic has

had ample discovery into that issue.  Put simply, Epic has shown no basis for the extreme relief it

seeks.





<hr />

16   In *Breuer*, the Seventh Circuit upheld the entry of default and stated it was appropriate for the trial court to consider prior settlement negotiations under FRE 408 because the settlement evidence properly rebutted defendants' assertion that they were not aware of the issues until the suit was filed. *Breuer Elec. Mfg. Co. v. Tornado Sys. Of Am.*, 687 F.2d 182, 184 (7th Cir. 1982). In *Eisenberg*, the Tenth Circuit upheld Rule 11 sanctions against plaintiff's counsel after she accused the judge's law clerk of inappropriate ex parte contact with defense counsel. *Eisenberg v. Univ. of New Mexico*, 936 F.2d 1131, 1132 (10th Cir. 1991). Prior to the Rule 11 hearing, plaintiff's counsel submitted a letter requesting the court to conduct a settlement conference and attached an affidavit in which she set forth the alleged remarks by the law clerk. *Id.* at 1133. The appellate court found that the plaintiff's counsel waived any claim to Rule 408 protection by her own submission of the affidavit to the court with the intent that the court rely on the truth and accuracy of her factual assertion and that it was proper for the trial court to consider it. Id. at 1134. In CNA Financial, plaintiff challenged the district court's assessment of Rule 11 sanctions against it where the district court refused to consider defendant's settlement offer as proof that plaintiff's allegations were likely to have evidentiary support. *CNA Fin. Corp. v. Brown*, 162 F.3d 1334, 1338 (11th Cir. 1998). On appeal, the Eleventh Circuit was not persuaded and found that defendant's settlement offer was irrelevant to the allegations and thus inadmissible under FRE 408 and FRE 402. *Id.*

17   Epic's reference to a PowerPoint presentation that the Court already found TCS to have properly withheld on the grounds of work product should be ignored.  (Motion at 35).  This document was subject to a motion to compel filed by Epic, and TCS already responded in full to Epic's claim that the document was not privileged.  (Dkts. 147-149).  ██████████████████████████████████████████

████████████████████████████████████████

██████████████████ The Court determined ultimately that the document was work product and denied Epic's motion to compel.  (Transcript of October 28, 2015 Hearing, Dkt. 155, at 3:23-25, 4:4-5) ("…it is work product. It does fall within the constraints of 26(b)(3)(A)"; "the claim of attorney work product privilege is valid and I will deny the motion to compel on that basis.")  The Court also ordered Epic to destroy any copies of the document.  (Dkt. 151).



████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████ ████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

███████████████████████████████████████

████████████████████████████████████████

---

[18] Epic's claim that TCS is trying to use privilege as a "sword" and a "shield" – merely because TCS references the fact of advice of counsel in its interrogatory response – makes no sense.  TCS is not using this interrogatory response in response to any of Epic's claims, and is not using it to gain "unfair tactical advantage."  *See Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 518 (N.D. Ill. 2005) (rejecting defendants' "sword" and "shield" argument on a motion to compel as "not appropriate" where the plaintiff was not attempting to use attorney work product "as a sword or in order to secure an unfair tactical advantage" in the case); *Robinson v. Morgan Stanley*, No. 06 C 5158, 2010 WL 1050288, at *6 (N.D. Ill. Mar. 17, 2010) (rejecting "sword" and "shield" argument where defendant did not "place[] information protected by [the privilege] in issue through some affirmative act for its own benefit") (citation omitted).

[19] 

57



[20] The mere fact that an attorney's investigation may be used at some point in defense of a lawsuit, at which time privilege as to it will be waived, does not mean that the privilege never attaches.  *See, e.g., Fultz v. Federal Sign*, No. 94 C 1931, 1995 WL 76874, at * 2 (N.D. Ill. Feb. 17, 1995) ("While the investigation, having been conducted by retained counsel, would ordinarily be privileged, that privilege is lost once the claimant of the privilege asserts his right to use the investigation as part of his or her case in the litigation."); *Malin v. Hospira, Inc.*, No. 08 C 4393, 2010 WL 3781284, at *2 (N.D. Ill. Sept. 21, 2010) (the court found privilege intact since the claimant said that it did not intend to use the investigation at trial).



In sum, Epic's purported "concerns" about the Audit Committee, and whether any report ever went to the Audit Committee, is no more than a sideshow about an issue that has no relevance to Epic's claims in this case.

**F.      TCS MANAGEMENT DID NOT "SUPPRESS THE TRUTH" OR DEPRIVE EPIC OF AN OPPORTUNITY TO PREVENT MISUSE OF ITS INFORMATION**

**1.      Mahendra Pandian Illustrates the Challenges TCS Faced in Getting to the Truth**





██████████████████████████████████████████

████████████████████████████████████

██████████████████████████

### 2. TCS Did Not Engage in "Two Years of Silence" At Epic's Expense

The Court's March 2, 2016 Order directed TCS to submit "comment as to whether the court or jury may consider the impact of defendants' almost two year silence on plaintiff's ability (1) to take steps to prevent any misuse of information or documents that were wrongfully accessed or (2) to prevent spoliation of evidence of misuse."  (Dkt. 539).  ████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

███████████████████████████

█████████████████████████████████

████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

███████████████████████████████

█████████████████████████████████████

███████████████████

█████████████████████████████████

███████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████

## III.   TCS'S DISCOVERY CONDUCT DOES NOT MERIT ADDITIONAL SANCTIONS

Epic's claims that TCS "hid" witnesses and was responsible for "dragging out the deposition process" are fabrications.  (Motion at 52).  ████████████████████████

█████████████████████████████████████████████







████████████████████████████████████████████████████

███████

███████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

**Mahendra Pandrian**

████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████  ███████████████████████████

███████████████████████████████████████████████

██████████████████████████████████ ███████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████

---

■   ██████████████████████████████████████████████
████████████

■   ██████████████████████████████████████████████
█████████████████████████████████████████

███████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████.

**DV Prasad**

███████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████





███████████████████████████████████

████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

███████████████

**Dambarudhara Behera**

- ███████████████████████████████

█████████████████████████████

███████████████████████████████

███████████████████████████

███████████████████████████████████

████████████████████████████████████

█████████████████████████████

█████████████████████████████

███████████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████

█████████████████████████

█████████████████████████████████████

█████████████████████████████████

███████████████████████████████

█████████████████████████████████████

**Syama Sundar and Suresh Muthuswami**

**IV.    TCS HAS PRODUCED THE RELEVANT MED MANTRA INFORMATION AND EPIC SHOULD NOT BE ABLE TO AVOID ITS BURDEN TO SHOW THAT TCS ACTUALLY USED THE EPIC MATERIAL IN A COMPETING PRODUCT**

Epic claims that "TCS's repeated violations of the Court orders have significantly impeded Epic's ability to show that its confidential information was used by TCS to develop or improve its competing software." (Motion at 74).  Epic broadly claims that TCS has failed to produce the evidence that would allow TCS to prove its case – that is, that Epic's confidential trade secret information on UserWeb was actually used by TCS to develop or improve its Med Mantra and related products.  However, TCS has provided that information.  Instead of doing the work and using this information to meaningfully compare the two systems at issue, Epic filed this Sanctions motion.

First, Epic, put simply, has left information on the table, preferring instead to rely on a motion for sanctions rather than prove its case to the jury.









## V.   TCS DID NOT ENGAGE IN "ADDITIONAL MISCONDUCT" THAT WARRANTS DEFAULT JUDGMENT

### A.   TCS's MOTION TO DISMISS

Epic's contention that TCS filing a motion to dismiss prejudiced Epic, or delayed discovery, is entirely without merit.  (Motion at 77-79).  At the outset, discovery was not stayed pending TCS's motion to dismiss, and Epic does not point to any prejudice as a result of TCS's motion.  Epic's reference to TCS's initial motion to dismiss is especially suspect, as Epic chose to amend its Complaint in response to that motion – suggesting that Epic was at least concerned that TCS's arguments had merit.

In addition, Epic selectively quotes from TCS's motion to dismiss briefing.  ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████

          █████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

■  ████████████████████████████████████████████████████████████

████████████████████████ TCS had a right under the Federal Rules to file a good

faith motion to dismiss, based on existing law, and should not be sanctioned for doing so.

### B.      TCS's RULE 30(B)(6) DEPOSITIONS

Epic resurrects its claims that TCS's Rule 30(b)(6) witness Mr. Suresh Muthuswami was

unprepared and cites this as a ground for sanctions.  Epic takes issue with Mr. Muthuswami's use

of lists of witnesses and evidence – even though this Court has already ruled that providing Mr.

Muthuswami with these lists– which was to educate Mr. Muthuswami as the rule requires –was

not improper.  (*See* Dkt. 293, at 56:24 – 57:2) ("I have no problem with your providing any

30(b)(6) witness with a summary of information that has been gathered by counsel that he can

speak to.").

During the December 4, 2015 hearing, the Court stated "I don't doubt that both TCS and

its counsel were making efforts to comply with the letter of the law," although the Court could

have doubts about whether TCS "complied with the spirit of it." (Dkt. 293, at 60:22-25). The

Court's observation that TCS did not violate the law (or any court order for that matter) should

stand for several reasons.  First, "Absolute perfection is not required of a Rule 30(b)(6) witness."

*Aldridge v. Lake Cnty. Sheriff's Office*, No. 11 C 3041, 2012 U.S. Dist. LEXIS 102514, at *12

(N.D. Ill. July 24, 2012). The "corporation has a duty to prepare those persons in order that they

can answer fully, completely, unevasively, the questions posed." *Id.* at *12. "Designated Rule

30(b)(6) witnesses need not be the most knowledgeable witnesses, but need only be competent to

testify about information known or reasonably available to the corporation." *Kimberly-Clark*

*Worldwide v. First Quality Baby Products,* No. 09-C-0916, 2011 U.S. Dist. LEXIS 69037, at *8

(E.D. Wis. June 27, 2011).

Second, Interrogatories are more proper in situations (such as here) where it is necessary

to "synthesize information from all of the necessary sources" and present it in a comprehensive

matter." *See SmithKline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 U.S. Dist. LEXIS

667, at *31 (N.D. Ill. Jan. 24, 2000) (holding that interrogatories would have been more efficient

with respect to details of a patent investigation and testing activities). ███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

## **CONCLUSION**

For the reasons set forth above Epic's Motion for Sanctions should be denied in its

entirety, and the jury should determine the facts in this case.

Dated: March 11, 2016

By:  s/Philip D. Robben
Paul F. Doyle
Philip D. Robben
Alison L. MacGregor
Melissa E. Byroade
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Email: pdoyle@kelleydrye.com
Email: probben@kelleydrye.com
Email: amacgregor@kelleydrye.com
Email: mbyroade@kelleydrye.com
Phone: (212) 808-7800
Fax: (212) 808-7897

and

s/Barbara A. Neider
Barbara A. Neider
Meg Vergeront
STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, Wisconsin 53701-1784
Email: bneider@staffordlaw.com
Email: mvergeront@staffordlaw.com
Phone: (608) 256-0226
Fax: (608) 259-2600

*Attorneys for Defendants Tata Consultancy*
*Services Limited and Tata America*
*International Corporation*