IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

EPIC SYSTEMS CORPORATION,

    Plaintiff,                                      OPINION AND ORDER

    v.                                             14-cv-748-wmc

TATA CONSULTANCY SERVICES
LIMITED and TATA AMERICA
INTERNATIONAL CORPORATION d/b/a
TCA America,

    Defendants.
_____

Before the court are the parties' latest dueling motions for discovery sanctions. Plaintiff Epic Systems Corporation ("Epic") moves the court for an order imposing sanctions up to and including entry of default based on a number of discovery violations committed by defendants Tata Consultancy Services Limited and Tata America International Corporation (collectively, "TCS") throughout the course of this litigation. (Dkt. #521.) Not to be outdone, defendants renew their own motion for sanctions, again seeking disqualification of plaintiff's counsel, Jenner & Block, LLP, from further representation in this case. (Dkt. #604.) For the reasons described below, the court will grant Epic's motion in part by giving the jury an adverse inference instruction and will again deny TCS's motion.

BACKGROUND

Discovery disputes in this case, which is now nearly one-and-a-half years old, have taken up an inordinately large amount of the court's, and particularly Judge Crocker's,

time, much of it due to repeated failures by defendants to meet their discovery obligations timely.  Dating as far back as the month after this lawsuit was filed, the parties have been involved in no fewer than a dozen discovery-related hearings with the court.  Blame for this cannot wholly be assigned to defendants, as plaintiff's counsel has had its own missteps and seems increasingly interested in obtaining sanctions givern the absence of any actual proof of damages.

Indeed, the problems concerning discovery in this case have been so dramatic as to prompt the court to comment in an earlier order that:  (1) defendants' "cooperation in discovery in this case has been far below the standard expected by this court and the Rules of Civil Procedure, in terms of timeliness, due diligence and scope of production"; and (2) plaintiff and its counsel managed to "sull[y] their own conduct in discovery in this case" such that they appeared "in an equally bad light" as defendant.  (Order 12/31/15 (dkt. #342) 1, 7.).[1]  To date, among other discovery disputes handled by Judge Crocker, the court has issued orders:

- granting plaintiff's motion to compel discovery related to software TCS developed for DaVita, a health care company located in Denver, Colorado, since discovery had revealed that TCS had used a Med Mantra laboratory module to develop the software for DaVita despite maintaining that "Med Mantra is an India-specific product" (dkt. #252);

---

[1] The court further noted in that same order that given the discovery-related behavior of the parties, it was "far less inclined to entertain further requests by Epic to enter default judgment against TCS on liability issues in this case." (*Id.* at 8 n.3.)

- granting in part and denying in part plaintiff's motion to compel production of documents regarding TCS's investigations surrounding whistleblower Guionnet's allegations after an in-person hearing and a follow-up telephonic hearing (prompted by "TCS's disappointingly incomplete, at times obstructive, approach to written discovery and 30(b)(6) depositions") (dkt. #291);

- finding that TCS had withheld one such report based on a "disingenuous assertion of a privilege that never had a basis in law or fact" and that disclosure of another report was equitable even if somehow subject to privilege, given TCS's general obstruction of other legitimate forms of discovery and the short time period until the close of discovery (dkt. #291);

- granting in part and denying in part defendant's motion for sanctions concerning plaintiff's disregard of the court's order for the parties' technical experts to engage in direct discussion regarding how to best accomplish further, necessary electronic discovery tasks going forward, without the presence of counsel, after Epic engaged former federal prosecutors to question a TCS witness (dkt. #342);

- granting in part and denying in part plaintiff's motion for a protective order, as well as defendants' motion to compel the appearances of certain Epic employees for depositions (dkt. #389); and

- denying defendant's motion to compel additional production of documents related to the development of Epic's software, as well as granting in part and denying in part plaintiff's motion to compel a deposition exploring a limited number of topics (dkt. #446).

In addition, the court resolved several other discovery motions in its order granting partial summary judgment to plaintiff on liability elements of its breach of contract and statutory claims. (Dkt. #538.) Notably, the court precluded defendants from further supplementing an interrogatory response lacking specific examples in support of their argument that a comparative analysis of Epic and Med Mantra software could have been compiled from publicly available information and permitted plaintiff to comment on defendants' failure to offer these specific examples.

OPINION

In its motion, plaintiff identifies six different categories of alleged discovery abuses for which it seeks sanctions against defendant, up to and including default. Defendant renews its earlier motion for sanctions, again seeking disqualification of plaintiff's counsel, Jenner & Block, LLP. The court will address each motion in turn.

I. **Plaintiff's Motion for Sanctions**

In some 87 pages, Epic attempts to sound a "drumbeat of a discovery abuse" by defendants (Pltf. Mem. (dkt. #531) 1) (quoting *Domanus v. Lewicki*, 742 F. 3d 290, 300-01 (7th Cir. 2014). As horrific as defendants' appreciation of its obligations to respond to discovery in this case have been, however, none is sufficient to justify the draconian remedy of entry of default judgment.

This is not to say that defendants' *contractual* failures to give notice of unauthorized access to Epic's proprietary website, or to preserve evidence of that breach,

is not sanctionable.  Indeed, TCS's failures in producing timely records and apparent suppressions of "the truth" are disturbing to the court, as they should be to defendants. The extent to which this misconduct continued during the course of discovery in this case gives the court further pause as to an appropriate remedy.

For now, the court will provide the jury with a closing instruction permitting it to draw adverse inferences, which is being provided to the parties contemporaneously with this opinion.  The court is well aware of defendants' oft repeated concern that Epic plans "to turn this matter into a discovery case for months," expressed most recently in a supporting memorandum to its' late-filed motion *in limine* seeking to exclude testimony with regard to two experts, that will be addressed further at tomorrow's final pretrial conference.  To the extent this is so, defendants have only themselves to blame.  While the court does not intend to allow the trial to turn into a litany of discovery violations during the course of this lawsuit, it will allow Epic to present evidence of TCS's failures to investigate and preserve data, documents and other discoverable information to the extent the jury finds this conduct was intentional and undertaken in bad faith.

In addition, following trial, the court will consider whether further monetary sanctions are appropriate:  (1) for defendants' numerous discovery violations; and (2) to the extent actual damages cannot be proved because defendants' suppression of discovery may have prevented plaintiff from unearthing evidence of improper use of confidential information obtained from Epic's proprietary website.  The court will take up both of those questions while the jury deliberates on damages in this case.

II.         Defendants' Renewed Motion for Sanctions

On December 4, 2015, the court held an in-person hearing on three motions to compel discovery brought by plaintiff, and the court held a follow-up hearing on December 7, 2015 to resolve remaining issues on which it had reserved during the earlier hearing. In light of defendants' obstructive approach to discovery up to that point, as well as the approaching deadlines for the close of discovery established by the scheduling order, among the "extraordinary relief" the court granted to facilitate Epic's timely completion of discovery was the following:

> Plaintiff is to designate an outside expert with no affiliation with Epic to discuss with TCS's Chief Security Officer, Ajit Menon, how best to accomplish electronic searching of TCS's data to identify all TCS employees who accessed Epic's UserWeb without proper authorization, the extent of their access, and whether and which documents were downloaded. Counsel from either side may not participate in, or even listen in on, those direct discussions, although they may obviously discuss the substance of those discussions with their respective representatives after those discussions take place.

(Dkt. #291: 11-12.)

Following those discussions, defendants filed a motion for sanctions seeking fees and disqualification of plaintiff's counsel, Jenner & Block, LLP, and arguing that plaintiff had violated the court's order by engaging two former federal prosecutors from Stroz Friedberg, LLC for *ex parte* discussions with Mr. Menon. In resolving defendants' motion, the court commented that defendants had effectively "paint[ed] opposing counsel in an equally bad light" considering their failure to "appreciate the possible unfairness of [former attorneys] questioning a represented individual without his counsel present, as

well as the need to stick strictly within the parameters of [the] subject as defined by the court."

Still, while the court shared some of defendants' "expressed outrage at the questioning of Menon" in this fashion (dkt. #342), it easily concluded that a sanction of disqualification was wholly disproportional to any prejudice actually caused to defendants after listening to the entirety of those recorded discussions.[2] Moreover, since the need for the court-ordered discussions arose from TCS's obstructive behavior, disqualification for this misstep struck the court at that time (and does still today) a truly ridiculous remedy. Finally, the court pointed out that "except for general characterizations of the questions posed, TCS has wholly failed to offer a single, specific example of information being obtained through this informal interview process that will do any meaningful, much less unfair, prejudice to its clients' defense in this case." (*Id.*) If anything, the discussion appears to have led to the kind of more meaningful, speedy discovery that had until then been largely obstructed by TCS, as the court hoped it would.

Ultimately, the court ordered that Epic and the Jenner law firm destroy all recordings and summaries of the discussions, as well as any outlines or notes prepared with the aid of those materials. The court also allowed defendants to explore the communications between Jenner & Block and Stroz through both paper discovery and

---

[2] These recordings were also not contemplated by the court's order, but appear to have been made in a good faith effort by the Stroz firm to record accurately what TCS had done to that point to search its electronic data. Ultimately, the recording gave the court more comfort as to the amount of injury caused by these unauthorized exchanges, if not as to their tenor.

30(b)(6) depositions. Finally, the court explained that the denial of defendants' motion for sanctions was without prejudice, "should TCS wish to renew its motion with a proffer of *specific* examples of disclosures during the Stroz/Menon discussions that actually unfairly prejudice its case." (*Id.*)

Defendants now renew their motion that disqualification of the Jenner law firm is warranted, contending that Epic's most recent motion for sanctions "is explicitly based on the *ex parte* information improperly gathered by Stroz in its interviews with Mr. Menon. (Br. in Sppt. (dkt. #605) 8.) The facial absurdity of that assertion as grounds to sanction Epic or its counsel further requires no response. Regardless, plaintiff correctly points out that defendants *still* fail to identify any specific, prejudicial disclosures during these discussions.[3]

ORDER

IT IS ORDERED THAT:

(1) Plaintiff's motion for sanctions (dkt. #521) is GRANTED as set forth above; and

(2) Defendants' renewed motion for sanctions (dkt. #604) is DENIED.

Entered this 23rd day of March, 2016.

                                        BY THE COURT:
                                        /s/
                                        WILLIAM M. CONLEY
                                        District Judge

---

[3] The declaration of Julie Shepard (dkt. #672), attached to plaintiff's response is helpful on this point; she identifies where the specific facts supporting plaintiff's spoliation arguments in its motion for sanctions are found in either (1) her depositions of Dr. Mohanty, Mr. Almaraj and Mr. Menon or (2) the documents she marked as exhibits for those depositions or reviewed before those depositions. (*Id.* at ¶ 13: 5-11.)