IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EPIC SYSTEMS CORPORATION,

                      Plaintiff,

    v.

TATA CONSULTANCY SERVICES
LIMITED and TATA AMERICA
INTERNATIONAL CORPORATION d/b/a
TCA America,

                      Defendants.

OPINION AND ORDER

14-cv-748-wmc

The court issues the following opinion to address the issues raised by the parties in their respective supplemental briefing on closing instructions and their responses. (Dkt. ##735, 738, 742, 760, 768).) For the reasons that follow, the court overrules certain objections and sustains others. The court will circulate revised closing instructions which reflect these rulings.

OPINION

I. Defendants' Objections to References to Summary Judgment Rulings

Defendants object to any reference to the court's summary judgment rulings granting judgment to plaintiff on certain claims or elements of claims. There are two places in the closing instructions which reference the court's prior rulings. First, in the adverse inference instruction, the court indicates that it previously found that TCS failed to comply with the notice requirement in the contract between Epic and TCS. The court continues to believe that this reference is necessary for purposes of guiding the jury's determination of whether to find an adverse inference.

The second reference is in the breach of contract claim instruction. Initially, the court believed that such an instruction was necessary in order to avoid jury confusion and also guide the jury's determination of injury, which the court originally thought would be part of the first phase of trial. Now that the injury component will take place in the second phase, and given that the jury will be instructed as to four specific ways in which TCS breached the contract and asked verdict questions as to each of those ways, the court agrees with TCS that it need not reference the summary judgment rulings in this section.

Accordingly, this objection is SUSTAINED with respect to the breach of contract reference, but OVERRULED with respect to the adverse inference instruction.

## II. Objections to Adverse Inference Instruction

### A. Plaintiff's Objections

Epic suggests several changes to the adverse inference instruction. *First*, Epic proposes changing the language that it "contends" that "TCS at one time possessed evidence relating to TCS's alleged wrongful conduct" to "Epic has submitted evidence" to that effect. In the interest of keeping the sentence parallel with the instruction below that "TCS contends that the evidence never existed" and avoiding the risk of undue jury confusion regarding its role in determining whether and, if so, what type of evidence was destroyed, the court OVERRULES Epic's first proposed edit.

*Second*, Epic proposes adding language instructing the jury that it may consider "TCS's conduct as a whole, as well as all the facts surrounding the destruction of

evidence" and "all the circumstances of the case in determining whether TCS acted [in] bad faith." Epic makes a fair point that the jury should be reminded that it can consider circumstantial as well as direct evidence in making the bad faith determination of fact, but the language Epic proposes is broader than necessary for that purpose, especially since the court will instruct the jury at the outset of the case regarding circumstantial evidence and drawing inferences. Accordingly, the court will add the following sentence after the sentence defining bad faith destruction of evidence: "As I instructed you at the beginning of this case, you are permitted to draw, from the facts you find have been proved by either direct or circumstantial evidence, such reasonable conclusions as seem justified in the light of your own experiences and common sense." Plaintiff's second objection is therefore SUSTAINED.

*Third*, Epic seeks removal of the three context-specific examples of reasonable assumptions the jury could make based on the destruction of particular types of evidence. In support of its argument for removal of the examples, Epic notes that the Seventh Circuit pattern instruction for spoliation of evidence does not include similar examples. But while instructive, the pattern instruction merely provides a framework from which the adverse inference instruction can be tailored to the particular facts and legal issues of this case. Indeed, "[i]n charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, . . . provided he makes it clear to the jury that all matters of fact are submitted to their determination." *Quercia v. United States*, 289 U.S. 466, 469 (1933); *see also United States*

3

*v. Hernandez*, 490 F.3d 81, 84 (1st Cir. 2007) ("It is unquestioned that, when instructing a jury, a judge may explain comment upon and incorporate the evidence into the instructions in order to assist the jury to understand it in light of the legal principles.") (internal quotation marks and citation omitted).

Particularly in light of the "prophylactic, punitive and remedial rationales underlying the spoliation doctrine," although the court must give the adverse inference instruction because of defendants' extensive discovery violations in this case, it is appropriate to tailor the instruction with the examples to guard against the jury improperly speculating about the destroyed evidence instead of making reasonable inferences based on the actual evidence plaintiff introduces at trial. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Moreover, the court disagrees with Epic that the examples will invite the jury to ignore evidence not mentioned in the examples, since the instructions make clear multiple times that the examples are no more than that (e.g., "By way of example only"). For that same reason, the court will OVERRULE Epic's suggestion to add additional language regarding the jury's consideration of other evidence.

*Fourth*, Epic proposes to change language in the last paragraph of the adverse inference instruction regarding the notice Kaiser sent to TCS. With respect to these suggested edits, the court agrees that the revisions to the end of the sentence provide added clarity to TCS's obligations to preserve evidence without expanding them, contrary to TCS's assertion. Accordingly, the court will accept Epic's proposed changes to that sentence. On the other hand, the court will not remove the reference to TCS's

4

"contractual" obligation to take reasonable steps to preserve evidence. Plaintiff's fourth objection is SUSTAINED IN PART AND OVERRULED IN PART.

### B. Defendants' objections

TCS proposes several changes to the language of the adverse inference instruction, most of which are stylistic, with the exception of suggested edits to language referencing two findings the court has already made as a matter of law. *First*, TCS proposes to modify language in the instruction that "the court has already determined that TCS breached its contractual obligation to give prompt notice of improper access to Epic's UserWeb by TCS employees" and explaining the relevance of that finding to simply state that "TCS failed to give Epic prompt notice of improper access to Epic's UserWeb by TCS employees." The court agrees with Epic, however, that the current language better describes that the court has already determined an issue that the jury may likely otherwise be inclined to consider and explains why the jury is being instructed about TCS's failure to give notice, and so the court will reject the proposed language. That objection is OVERRULED.

*Second*, TCS suggests removal of "the court has already determined as a matter of law" in the last paragraph of the adverse inference instruction regarding the date on which TCS had notice to preserve evidence. Epic does not respond to this proposed edit, but since the current language again provides clarity to the jury regarding a fact which it need not find, this objections is SUSTAINED IN PART AND OVERRULED IN PART, changing the language only slightly (in line with the language regarding the court's other finding in the adverse inference instruction) to "the court has already determined that."

The court will accept the remainder of TCS's proposed edits to style, with the exception of the addition of "UserWeb" and the italicization of "evidence of use" on page six of the closing instructions.

### III. Defendants' Objections to the Fourth Breach of Contract Theory

TCS seek to amend the description of the fourth breach of contract theory to map against a more specific provision of the contract (¶ 3(c)(iv)), rather than a general provision prohibiting use of confidential information for any other purpose than implementing Epic's software for the client (¶ 3(c)(ii)). Epic opposes this change on the basis that the language is overly complicated and that the jury will have the actual contract language, allowing the parties to argue directly from that. The court agrees with plaintiff, and, furthermore, sees no basis to limit the fourth theory to the more specific provision. Accordingly, this objection is OVERRULED.

### IV. Defendants' Proposed Addition of "Wrongfully and Intentionally" to Unfair Competition Claim

The court previously had bracketed the language "wrongfully and intentionally" in the unfair competition instruction because defendants included it in their proposed instructions but did not provide any basis for it. Now, defendants argue that it should be included because this claim is really a misappropriation claim and those terms are helpful in defining misappropriation. Whether defendants are right that this is really a misappropriation claim is beside the point. All four elements define what "unfair competition" requires. The first element is simply that TCS took the property; the next elements describe TCS using the property for their own gain, etc. Those elements

6

encompass the "wrongful and intentional" action TCS seeks to emphasize. The language is unnecessary. Furthermore, while there is no pattern instruction for this claim, both parties relied on the *Mercury Record Products* case for this instruction, and that case does not contain the "wrongfully and intentionally" language proposed by defendants. Accordingly, this objection is also OVERRULED.

### V. Defendants' Objection to Deprivation of Property Claim

Plaintiff asserts a deprivation of property claim under Wis. Stat. § 943.20 (the criminal statute) and § 895.446 (providing a civil remedy). Defendants did not move for summary judgment on this claim, but now, in objecting to plaintiff's jury instructions, contend that the claim should be dismissed for the same reason the court dismissed plaintiff's conversion claim. (Defs.' Instructions Br. (dkt. #634) 10-11.)

In support, defendants direct the court to certain language in § 943.20, namely "movable property" and "property" and the definitions of each, arguing that the electronic computer files at issue in this case are neither movable nor tangible, and therefore do not fall within the contours of the statute. Defendants' argument, however, is brief and they do not cite to any case law in support of their interpretation. Instead, defendants just rely on the statutory language and a dictionary definition that tangible means capable of being touched.

Section 943.20(1) sets forth certain "acts" which constitute theft. While there are other provision dealing with "property," plaintiff's claim appears to fall within subsection (1)(a):

> **(1) Acts.** Whoever does any of the following may be penalized as provided in sub. (3):
>
> (a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of <u>movable property</u> of another without the other's consent and with intent to deprive the owner permanently of possession of such property.

Subsection (2) sets forth certain definitions, including that for "movable property":

> (ag) "Movable property" is property whose physical location can be changed, without limitation including electricity and gas, documents which represent or embody intangible rights, and things growing on, affixed to or found in land.

Wis. Stat. § 943.20(2)(ag).[1]

In its response, Epic persuasively argues that the electronic documents at issue fall within the definition of "movable property" -- "these documents constitute 'documents which represent or embody intangible rights," and the downloading of them from the UserWeb onto TCS's computers changed their physical location. (Pl.'s Resp. (dkt. #768) 3.) Moreover, unlike in the common law conversion context, the court could not find -- and the parties did not identify -- any cases expressly limiting a civil theft claim to *tangible* movable property. To the contrary, Wisconsin courts have embraced a definition extending beyond defendants' definition of tangible property. *See State v. Steffes*, 2012 WI App 47, ¶ 23, 340 Wis. 2d 576, N.W.2d 529, *affirmed*, 2013 WI 53, ¶ 23, 347 Wis.

---

[1] Defendants rely on the definition of "property" because it references "tangible property," but critically, the definition also encompasses "electricity." See Wis. Stat. § 943.20(2)(b). If the court were to adopt defendants' definition of "tangible" to mean "capable of touch," it is hard to imagine how the definition of "property" is really limited to tangible property. Moreover, the definition of "property" like the definition of "moveable property" contemplates the inclusion of documents that embody other intangible rights.

2d 683, 832 N.W.2d 101 ("Construing the statutory language to give words their ordinary meaning, as we are required to do, we conclude that the term 'electricity' found in Wis. Stat. § 943.20(2)(b) is broad enough to encompass the transmission of electricity over telephone lines." (internal citation omitted)). Accordingly, the court will allow plaintiff to pursue its claim of deprivation of property. Defendants' objection, therefore, is OVERRULED.

    Entered this 1st day of April, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge
