# CLOSING INSTRUCTIONS

## A. Introduction

Ladies and Gentlemen of the Jury:

You are about to hear closing arguments of the parties. Before these arguments, I will instruct you on the law. After closing arguments, I will provide very brief instructions governing your deliberations. After that, the case will be in your hands.

### 1. Questions for Deliberations

As I explained at the outset of this trial, my job is to decide what rules of law apply to this case and to explain those rules to you. It is your job to follow the rules, even if you disagree with them or don't understand the reasons for them. You must follow all of the rules; you may not follow some and ignore others.

The case will be submitted to you in the form of a special verdict consisting of 7 questions. [Read special verdict form.] In answering the questions, you should consider only the evidence that has been received at this trial. Do not concern yourselves with whether your answers will be favorable to one side or another, or with what the final result of this lawsuit may be.

### 2. Burden of Proof

On the questions in the special verdict, the burden of proof is on the party contending that the answer to a question should be "yes." You should base your decision on all of the evidence, regardless of which party presented it.

Depending on the issue you are deciding, you will also see that there are actually two different "burdens of proof" that apply in this case.  When a party has the burden to prove any matter by "a preponderance of the evidence," it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true.  When a party has the burden to prove any matter by "clear and convincing evidence," it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is highly probable or reasonably certain.  When determining your answer to any of the special verdict questions, keep in mind the burden of proof that applies to that question or issue.

3.  **Answers Not Based on Guesswork**

If, after you have discussed the testimony and all other evidence that bears upon a particular question or issue, you find that the evidence is so uncertain or inadequate that you have to guess what the answer should be, then the party having the burden of proof as to that question or issue has not met the required burden of proof.  Your answers are not to be based on guesswork or speculation.  They are to be based upon credible evidence from which you can find the existence of the facts that the party must prove in order to satisfy the burden of proof on the question or issue under consideration.

4.  **Adverse Inference Instruction**

Epic contends that TCS at one time possessed evidence relating to TCS's alleged wrongful conduct, such as data from TCS's kiosk computers or other TCS computers, TCS's network and computer logs, such as web proxy logs, information known by TCS's

2

employee witnesses, investigations relating to TCS's access of Epic's computer systems, and inspections of TCS's software solutions, but that TCS destroyed that evidence. In contrast, TCS contends that some of this evidence never existed, and if it did, that TCS neither intentionally destroyed the evidence, nor caused it to be destroyed, and certainly did not do so in bad faith.

If you find by a preponderance of the evidence that Epic has proven TCS both: (1) intentionally destroyed evidence (*or* intentionally caused evidence to be destroyed) *and* (2) caused the evidence to be destroyed in bad faith, then you may assume that this evidence contained information helpful to Epic and harmful to TCS.

"Bad faith" is more than mere negligence. A person destroys evidence or causes evidence to be destroyed in bad faith when it is done for the purpose of hiding adverse information. As I instructed you at the beginning of this case, you are permitted to draw, from the facts you find have been proved by either direct or circumstantial evidence, such reasonable conclusions as seem justified in the light of your own experiences and common sense.

In addition, the court has already determined that TCS breached its contractual obligation to give prompt notice of improper access to Epic's UserWeb by TCS employees. If you find by a preponderance of the evidence that TCS's failure to do so impeded Epic's ability to identify, preserve and ultimately review evidence, you may assume this evidence contained information helpful to Epic and harmful to TCS as well.

*Any* assumption you make based on this instruction should *not* involve speculation, but rather must be fair and reasonable in light of the preponderance of the

3

evidence as to both the nature of the missing evidence at issue and the evidence in the case as a whole. By way of example only, should you find that TCS's failure to review or preserve web proxy logs that would have revealed which TCS employees accessed Epic's UserWeb *was* intentional and the result of bad faith, you *may, but are not required to,* assume that data from the lost web proxy logs would have shown that additional employees accessed the UserWeb, but at least on that evidence alone, you should not assume that information was necessarily used for an improper purpose by those additional employees. Similarly, should you find that TCS's failure to preserve data on two kiosk computers that may have been used to access Epic's UserWeb *was* intentional and the result of bad faith, you *may, but are not required to,* assume the data lost from those computers would have shown that the kiosks were used to obtain confidential information from Epic's UserWeb, but at least on that evidence alone, you should not assume that it was used for improper purposes. By way of a final example, if you find by a preponderance of the evidence that TCS conducted its investigations in a way that caused evidence of use of Epic's confidential information to be destroyed intentionally and in bad faith, you *may, but are not required to,* assume that this evidence would have shown that information was used for improper purposes.

In addition to any other evidence you may find relevant in arriving at determining an adverse inference, if any, you may consider that it is undisputed that TCS received a letter on August 5, 2014, from Kaiser stating that Kaiser had received a "compliance complaint alleging that [TCS] employees . . . had been inappropriately accessing and misusing data from Epic." As a result, the court has already determined that as of August

4

5, 2014, TCS had notice of its contractual obligation to take reasonable steps to preserve documents or data or electronically stored information that may be relevant to TCS's alleged inappropriate access and misuse of Epic's confidential information.

### 5. All Litigants Equal Under the Law

Moreover, as previously mentioned, defendant Tata Consultancy Services Limited is an Indian corporation. You are not to consider its status as an Indian corporation in rendering your decision. The parties in this case are entitled to a trial free of any prejudice. All parties are equal under the law.

## B. Special Verdict

### 1. Breach of Contract

Epic alleges that TCS breached a contract entered into between Epic and TCS called the Standard Consultant Agreement. Epic alleges four ways that TCS breached the Standard Agreement: (1) by failing to limit access to Epic's UserWeb and to materials obtained from UserWeb to employees who needed access in order to perform testing services for Kaiser; (2) by using Epic's confidential information for purposes other than implementing Epic software on Kaiser's behalf; (3) by failing to maintain Epic's confidential information in confidence and to store copies of Epic's confidential information in a safe place; and (4) by permitting TCS employees with access to Epic's confidential information to consult with other TCS employees concerning the development or enhancement of TCS's Med Mantra software.

To prove a breach of contract under any of those four theories, Epic must prove by a preponderance of the evidence the following:

1. TCS had an obligation under the Standard Consulting Agreement not to engage in the activity alleged; and

2. TCS failed to perform that obligation, which includes defectively performing it, as well as not performing it at all.

Epic alleges that TCS breached the covenant of good faith and fair dealing implied in the Standard Consultant Agreement.  Under Wisconsin law, the contract between TCS and Epic requires that each party act in good faith towards the other party and deal fairly with that party when performing the expressed terms of the contract.  This requirement to act in good faith is a part of the contract just as though the contract stated it.  In this case, you may also find a breach of contract if Epic demonstrates by a preponderance of the evidence that TCS breached the covenant of good faith and fair dealing by failing to (1) limit access to Epic's UserWeb, (2) use Epic's confidential information for only proper purposes, (3) maintain the confidentiality of Epic's confidential information, and (4) permit access to Epic's confidential information by TCS employees developing Med Mantra.

### 2. Trafficking of Passwords

Epic alleges that TCS violated the Computer Fraud and Abuse Act ("CFAA") by "trafficking passwords."  To prove this claim, Epic must prove by a preponderance of the evidence the following:

1. TCS knowingly and without authorization transferred a password to Epic's UserWeb to another;

6

2. TCS acted knowingly with intent to defraud; and

3. TCS's acts transferred the password outside of the state of Wisconsin.

For purposes of this claim, "defraud" means to cheat or trick or to deprive a person of property or any interest or right by fraud, deceit, or artifice.

### 3. Fraudulent Misrepresentation

Epic further alleges that TCS made fraudulent misrepresentations to Epic concerning TCS's authorization to access Epic's computer systems and confidential information. To prove this claim, Epic must prove by clear and convincing evidence the following:

1. TCS made the representation of fact;

2. TCS's representation of fact was untrue;

3. the untrue representation was made by TCS knowing the representation was untrue or recklessly without caring whether it was true or false;

4. TCS made the representation with intent to deceive and induce Epic to act upon it to Epic's pecuniary damage; and

5. Epic believed such representation to be true and relied on it.

Representations of fact do not have to be in writing or by word of mouth, and may be by acts or conduct on the part of TCS. Representations made by a person who is conscious that he or she has no sufficient basis of information to justify them are reckless. Representations are to be tested by their actual influence on the person to whom made, not upon the probable effect of such representation upon some other person.

In determining whether Epic actually relied upon the representations, the test is whether Epic would have acted in the absence of the representation.  It is not necessary that you find that such reliance was the sole and only motive inducing Epic to enter into the transaction.  If the representations were relied upon and constitute a material inducement, that is sufficient.  If you find, however, that Epic knew them to be untrue, then there can be no justifiable reliance as nobody has the right to rely upon representations that he or she knew were untrue.  Nor can there be justifiable reliance if Epic relied on representations that it should have recognized at once as preposterous or that are shown by facts within easy observation and capacity to understand to be so patently and obviously untrue that Epic must have closed its eyes to avoid discovery of the truth.  Finally, Epic is not required to make an independent investigation before relying upon the representation of fact.

### 4. Misappropriation of Trade Secrets

Epic next alleges that TCS misappropriated certain of its trade secrets.  To prove this claim, Epic must demonstrate by a preponderance of the evidence the following:

1. Epic possessed a trade secret;
2. TCS acquired the trade secret:
    a. by using improper means, where "improper means" includes espionage, theft, bribery, misrepresentation and breach or inducement of a breach of duty to maintain secrecy;
    b. through a confidential relationship with Epic; *or*
    c. under other circumstances giving rise to a duty not to use or disclose the trade secret without Epic's permission;

3.  If acquisition was not through improper means, that TCS used or disclosed the trade secret without Epic's permission; *and*

4.  Epic suffered harm as a direct and proximate result of TCS's use or disclosure of Epic's trade secret *or* TCS obtained a benefit as a direct and proximate result from its use or disclosure.

For purposes of this claim, "trade secret" means information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:

1.  The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

2.  The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

There is no precise definition of "reasonable measures." What is reasonable depends on the situation. Factors you may wish to consider in evaluating whether "reasonable measures" were taken could include the following:

1.  Whether Epic made it a practice to inform its employees or others involved with its business that the information was a trade secret and/or was to be kept confidential;

2.  Whether Epic required employees or others involved with its business to sign confidentiality agreements regarding the information or agreements not to compete in areas that could use the information;

3.  Whether Epic restricted access to the information on a "need to know" basis; and

4.  Whether Epic generally maintained tight security to protect the alleged trade secret, and did not voluntarily disclose it to others, except in confidence.

**Please note that the last three claims involve Epic's information that is <u>not</u> trade secrets.**

**5. Unfair Competition**

Epic alleges that TCS engaged in unfair competition with Epic by misappropriating its property, other than trade secrets. To prove this claim, Epic must prove by a preponderance of the evidence the following:

1. TCS took Epic's confidential and proprietary information;

2. TCS used Epic's product, into which Epic put time, skill, and money;

3. TCS used Epic's product or a copy of it in competition with Epic in the United States market for electronic medical records software; and

4. TCS gained an advantage in that competition because Epic, and not TCS, expended the energy to produce the product.

**6. Unjust Enrichment**

Finally, Epic alleges that TCS was unjustly enriched by taking Epic's confidential and proprietary information, once again other than its trade secrets. A claim of unjust enrichment does not arise out of an agreement entered into by the parties, but rather depends on the law that as between two parties, a person who is unjustly enriched by the conduct or efforts of the other, must pay for the benefit conferred or return it. To prove this claim, Epic must prove by a preponderance of the evidence the following:

1. a benefit conferred upon TCS by Epic's confidential non-trade secrets information;

2. knowledge or appreciation of the benefit by TCS; and

3. acceptance and retention by TCS of such benefit under such circumstances that it would be inequitable for TCS to retain it without paying the value thereof.

It is not necessary to prove that the recipient of the benefit was at fault or guilty of wrongdoing in any way, but it must be established that as between the parties it would be unjust and unconscionable for the recipient to retain the benefit without paying the reasonable value of the benefit. A loss to the plaintiff without an actual benefit to the defendant is *not* recoverable as an unjust enrichment.

**7. Deprivation of Property**

Epic alleges that TCS deprived Epic of its property by misappropriating and misusing Epic's proprietary information that did not constitute Epic's trade secrets. To prove this claim, Epic must prove by a preponderance of the evidence the following:

1. that TCS intentionally took Epic's movable property without consent; and
2. TCS took the property with intent to deprive Epic permanently of possession of the property.

"Movable property" is property whose physical location can be changed, including documents which represent or embody intangible rights.