UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EPIC SYSTEMS CORPORATION, a Wisconsin Corporation,<br><br>      Plaintiff,<br><br>      v.<br><br>TATA CONSULTANCY SERVICES LIMITED, an Indian Corporation; and TATA AMERICA INTERNATIONAL CORPORATION (dba TCS AMERICA), a New York Corporation,<br><br>      Defendants. | Case No. 14-CV-748-WMC<br><br>**REDACTED** |

**EPIC'S BRIEF IN SUPPORT OF ITS UNJUST ENRICHMENT DAMAGES THEORY**

Epic provides this brief in support of its unjust enrichment damages theory.

**I.  The focus of unjust enrichment is the benefit conferred on the defendant.**

If successful, several of Epic's claims entitle it to damages under an unjust enrichment theory. *See, e.g.*, Wis. Stat. § 134.90(4)(a). The focus of the principle of unjust enrichment is compensating the plaintiff for the value of the benefit conferred on the defendant. *See, e.g.*, *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 189-90 (Wis. 1996). Moreover, because "one of the broadly stated policies behind trade secret law is the maintenance of standards of commercial ethics," Unif. Trade Secrets Act cmt. § 1 (1984) (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 481 (1974)), "uncertainty should not preclude recovery" and "the plaintiff should be afforded every opportunity to prove damages once the misappropriation is shown." *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535-36 (5th Cir. 1974).

1

2429118

**II.     The jury will be called upon to determine the value ███████████████.**

Here, the jury will be called upon to determine the ████████████████████ ████████████████████████████. *See, e.g.*, *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 896 (E.D. Wis. 2010); *Avery Dennison Corp. v. Four Pillars Enter. Co.*, 45 F. App'x 479, 486 (6th Cir. 2002) ("where plaintiff is unable to prove specific injury, courts measure the value of the secret to the defendant"). This may be done in one of several alternative ways, including (1) the value to the defendant of the information at the time of misappropriation, (2) the value derived from savings because of increased productivity, and (3) the value derived from savings in research costs. *E.g.*, *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 805 F.3d 701, 707-08 (6th Cir. 2015).

Importantly, the jury's task of evaluating the intrinsic *value* of the information that was taken by TCS does not turn on whether TCS was able to ████████████████████ ████████████████████████████████████████████████████████████████████. *Univ. Computing*, 504 F.2d at 536 (recognizing that a plaintiff's recovery should not hinge on whether the defendant obtained a profit or succeeded in its marketing efforts).

The cases referenced by TCS do not undermine this principle. For example, in *Halverson v. River Falls Youth Hockey Association*, the court held that the plaintiff did not meet his burden to prove "the amount of the claimed benefit" that had accrued to the defendant because he failed to present "any basis independent of [his] beliefs" of the fair market value of the purported benefit. 226 Wis. 2d 105, 117-18 (1999). That is not an issue here. Epic is offering evidence and expert opinion demonstrating the value of the benefit obtained by TCS. *Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.* is equally inapposite. There, the damages model failed because it was premised on the *plaintiff's loss* and, thus, did not support an

2

unjust enrichment theory, which is focused on the *benefit* obtained by the defendant. 206 Wis. 2d 158, 190 (1996). Again, this is not a concern here.

### III. Mr. Britven's approach offers an acceptable method for ███████ ███████████████████████.

Numerous courts have recognized that saved development costs are an appropiate method of measuring the benefit obtained by a defendant who has stolen confidential information. For example, the Ninth Circuit affirmed a damages award based on expert testimony valuing misappropriated trade secrets on the basis of saved development time. *Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704, 709-10 (9th Cir. 2003). Similarly, in *Sonoco Products Co. v. Johnson*, the court affirmed an award of "cost of capital damages," *i.e.*, "the amount it would have cost [the defendant] to finance the development of the misappropriated information." 23 P.3d 1287, 1288 (Colo. Ct. App. 2001). Likewise, the Eleventh Circuit affirmed an award premised on the research and development costs incurred by the plaintiff, reasoning that, to obtain the trade secrets legally, the defendant "would have been required to expend approximately the same amount as [the plaintiff] on research and development." *Salsbury Laboratories, Inc. v. Merieux Laboratories, Inc.*, 908 F. 2d 706, 714 (1990) (discounting the total value of R&D costs to reflect the fact that the defendant likely would have to incur some costs even with the advantages of the trade secret). Indeed, the Seventh Circuit affirmed an award from the Western District of Wisconsin where the jury "assessed damages based on what it would have cost the defendants to independently develop the trade secrets at issue." *3M v. Pribyl*, 259 F. 3d 587, 607 (2001).

Here, Mr. Britven's opinion that the "misappropriation of trade secrets and confidential information by another party generally eliminates or reduces the initial investment in research and development and enables it to develop new products, or improve existing products, at a lower expense" comports with the authorities discussed above. Britven Supp. Rep. at 26. As in

3

*Bourns*, *Salsbury*, and *Sonoco*, Mr. Britven ███████████████

███████████████████████████████████████████████████████████████

███ *Id.* at 25.[1]  Similarly, as in *Salsbury*, Mr. Britven explained that ███████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████ *Id.* at 26. ██████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████ *Id.* at 30.

## IV. TCS's position on use is impermissibly narrow.

TCS has repeatedly advocated an impermissibly narrow definition of use, contending that

███████████████████████████████████████████████████████████████

█████████████████████████████████.  But the Restatement of Unfair Competition provides that "*any* exploitation of the trade secret that is likely to result in injury to the trade secret owner *or* enrichment to the defendant is a 'use.'"  Restatement (Third) of Unfair Competition § 40 (emphases added).

For example, the Restatement explains that "relying on the trade secret to assist or accelerate research or development or soliciting customers through the use of information that is a trade secret" constitutes "use."  Courts have also recognized that "'[u]se can include 'activities other than the actual selling of the product,'" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F. 3d 867, 877 (5th Cir. 2013), such as "an attempted sale" or relying on the trade secrets to "assist or accelerate research or development."  *Id.*; *University Computing*, 504 F.2d at 541 ("it seems clear

---

[1] TCS did not provide sufficient information regarding its own R&D costs.  Notably, TCS's expert Brent Bersin cited *The Economist* for his assertion that India development rates would be generally lower than the United States.  Dkt. No. 698 ¶ 116.  Mr. Bersin did not rely on actual R&D hourly rates for his client, which further supports Mr. Britven's use of Epic's costs as a proxy for TCS's costs.

2429118



that any misappropriation, followed by an exercise of control and dominion . . . must constitute a commercial use for which damages can be awarded").

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

Dated: April 13, 2016 /s/ Rick Richmond
Rick Richmond
rrichmond@jenner.com
Nick G. Saros
nsaros@jenner.com
Julie A. Shepard
jshepard@jenner.com
Kelly M. Morrison
kmorrison@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel.: 213-239-5100
Fax: 213-239-5199

Anthony A. Tomaselli
anthony.tomaselli@quarles.com
Kristin G. Noel
kristin.noel@quarles.com
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: 608.251.5000
Fax: 608.251.9166

*Attorneys for Plaintiff Epic Systems Corporation*

2429118