UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EPIC SYSTEMS CORPORATION, a
Wisconsin Corporation,

        Plaintiff,

                                Case No. 14-CV-748

     v.

TATA CONSULTANCY SERVICES
LIMITED, an Indian Corporation; and TATA
AMERICA INTERNATIONAL
CORPORATION (dba TCS AMERICA), a
New York Corporation,

        Defendants.

---

**EPIC'S MEMORANDUM IN SUPPORT OF INJUNCTIVE RELIEF**

---

Epic submits the attached proposed permanent injunction and requests that it be promptly entered by the Court.

As determined by the Court at the summary judgment stage and by the jury after the liability phase of trial, Epic has prevailed on its claims against TCS. Dkt. No. 538 at 65; Dkt. No. 855. Specifically, TCS has been found liable for: misappropriation of trade secrets; trafficking of passwords and obtaining information from a protected computer without authorization in violation of the Computer Fraud and Abuse Act; willfully and knowingly accessing Epic's UserWeb without authorization and sharing of passwords in violation of the Wisconsin Computer Crimes Act; fraudulent misrepresentation; unfair competition; unjust enrichment; and deprivation of property. *Id.* TCS has also been found liable for breaching the parties' Standard Consultant Agreement by (i) failing to limit access to Epic's UserWeb and to materials obtained from UserWeb to employees who needed access to perform testing services

for Kaiser, (ii) using Epic's confidential information for purposes other than implementing Epic's software on Kaiser's behalf, (iii) permitting TCS employees with access to Epic's confidential information to consult with other TCS employees concerning the development or enhancement of TCS's Med Mantra software, (iv) failing to maintain Epic's confidential information in confidence, (v) failing to store copies of Epic's confidential information in a safe place, and (vi) failing to provide prompt written notice of TCS employees' unauthorized access to Epic's UserWeb. *Id.*

Based on these findings of TCS's liability, the Court determined that it would enter a permanent injunction. This is reflected in the instructions provided to the jury at the commencement of the damages phase.  Dkt. No. 872 at 3 ("The court will enter a permanent injunction precluding TCS from using or disclosing Epic's confidential information, including trade secrets, in the future").  And it is consistent with TCS's violation of numerous statutes providing for injunctive relief (Wisconsin Uniform Trade Secrets Act, Wis. Stat. § 134.90(3)(a)(1), Computer Fraud and Abuse Act, 18 U.S.C. § 1030, Wisconsin Computer Crimes Act, Wis. Stat. § 943.70), as well as Section 8.a. of the Standard Consultant Agreement in which TCS acknowledged that a breach of the parties' agreement "may cause Epic irreparable harm for which there is no adequate remedy at law."  Trial Ex. 3 at 3.

Following receipt of the jury's damages verdict on April 15, 2016, the Court indicated that it "will promptly enter an injunction," describing it as "a permanent injunction" and "a worldwide injunction."  Rough Trial Tr. April 15, 2016 PM at 157:2-3, 7, 16-17.  The Court had also indicated earlier that, as part of its "injunctive remedy," it might appoint an "ombudsman" to ensure compliance with the injunction.  Rough Trial Tr. April 8, 2016 PM at 111:17-112:3.  In line with those views, Epic's proposed injunction is permanent, has worldwide application, and

2

provides for the selection of an ombudsman to serve for at least the next four years to help ensure TCS's compliance. The injunction is written in a way that satisfies the requirements of Federal Rule of Civil Procedure 65(d). The scope of the injunction conforms to the findings on liability and reflects the factual situation of this case discussed at length by the Court following receipt of the jury's damages verdict.

For the Court's convenient reference, we set out below some of the law supporting Epic's proposed permanent injunction.

## Standard for Permanent Injunctions

This Court has "broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 132 (1969); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006) (holding "that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts").

Where statutes such as Wisconsin's Uniform Trade Secret Act and Computer Crimes Act and the federal Computer Fraud and Abuse Act have been violated, an injunction may issue without a showing of irreparable harm. *See, e.g.*, *Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979); *Capital Tool & Mfg. Co., Inc. v. Maschinenfabrik Herkules, Hans Thoma GmbH*, 837 F.2d 171, 172 (4th Cir. 1988); *Wisconsin v. Stockbridge-Munsee Cmty.*, 67 F. Supp. 2d 990, 993 (E.D. Wis. 1999) (no showing of irreparable harm required for injunctive relief provided by federal statute); *E.I. duPont de Nemours & Co. v. Kolon Indus., Inc.*, 894 F. Supp. 2d 691, 706 (E.D. Va. 2012) (diversity case holding that, once a party has proven a violation of a state trade secrets act, it need not show irreparable harm or lack

3

of adequate remedy at law to receive an injunction).[1]   Where a statutory violation has been found, an injunction is appropriate so long as there is "some reasonable likelihood of future violations."   *Hunt*, 591 F.2d at 1220 (noting that past misconduct is "highly suggestive of the likelihood of future violations").

## Application of the Injunction Standards

The permanent injunction requested by Epic is fully warranted under all applicable factors as explained below.  *Thompson v. Int'l Union of Elevator Constructors, Local No. 2*, No. 05-2442, 2007 WL 1521247, at *5 (N.D. Ill. May 22, 2007) (*citing eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)) ("A plaintiff seeking a permanent injunction must satisfy a four-factor test before this type of relief is granted. Specifically, plaintiffs must demonstrate: (1) success on the merits of their claim; (2) that remedies available at law are inadequate to compensate for their injury; (3) that the benefits of granting the injunction outweigh the injury to the defendant; and, (4) that the public interest will not be harmed or disserved by the relief requested."); *E.I. duPont*, 894 F. Supp. 2d at 696 (identifying relevant factors).

1.  Epic's Success On The Merits Weighs In Favor Of A Permanent Injunction Where, As Here, A Risk Of Future Misuse by TCS Remains.

TCS unlawfully accessed and acquired Epic's trade secret and confidential information by violating the Computer Fraud and Abuse Act (18 U.S.C. § 1030) and Wisconsin's Computer Crimes Act (Wis. Stat. § 943.70), both of which provide for injunctive relief.  Similarly, as the jury found that TCS misappropriated Epic's trade secrets, the Court may enjoin TCS from using those trade secrets.  *See* Wis. Stat. § 134.90(3)(a)(1).  The injunction against TCS should continue "for a reasonable period of time to eliminate commercial advantage which [TCS]

---

[1]  The provisions of the WUTSA and WCCA providing for injunctive relief are state substantive law that apply in federal court.  *See Erie R.R. Co. v. Tomplins*, 304 U.S. 64 (1938); *E.I. duPont de Nemours & Co. v. Kolon Indus., Inc.*, 894 F. Supp. 2d 691, 706 (E.D. Va. 2012) (applying Virginia Uniform Trade Secrets Act).

4

otherwise would derive from the violation." Wis. Stat. § 134.90(3)(a)(3). A permanent injunction is called for here because the risk of future misconduct and misuse by TCS remains.

Epic's clear success on the merits in conjunction with TCS's significant abuses, both in and out of court, provide strong evidence that a permanent injunction is needed to prevent future harm to Epic. *See Hunt*, 591 F.2d 1220; *E.I. duPont*, 894 F. Supp. 2d at 706. Further, TCS has never explained or accepted responsibility for the indisputable misuse of Epic's information reflected in the comparative analysis. TCS has also failed to date to identify every employee who accessed the UserWeb or obtained documents or information taken from the UserWeb, failed to promptly and thoroughly investigate its employees' unlawful access to the UserWeb, failed to promptly and fully notify Epic of its employees' improper access to the UserWeb, failed to preserve evidence, failed to provide the trail reflecting with whom and how Epic's information was shared, and disturbingly failed to disclose during discovery numerous trade secret and confidential documents remaining in TCS's possession as of 2016. *See, e.g.,* Rough Trial Tr. April 8, 2016 AM at 7:8-38:1 (S. Rubin testimony); Rough Trial Tr. April 7, 2016 AM at 14:21-64:25 (A. Menon testimony); Rough Trial Tr. April 12, 2016 AM at 94:5-106:18, 115:15-130:8 (A. Menon testimony); Dkt. No. 531 (Epic's Mtn. for Sanction); Dkt. Nos. 524-530 (R. Richmond Decl. ISO Epic's Mtn. for Sanctions).

Nevertheless, even though it is not a requirement where the statutes violated provide for injunctive relief, the trial record establishes that Epic would suffer irreparable injury if TCS were to use Epic's trade secret and confidential information in a competing product, and that there is a strong possibility of future misuse of Epic's trade secret and confidential information by TCS, based on TCS's past unlawful conduct and its abuses of the judicial process. *See*, *e.g*., *Hunt*, 591 F.2d at 1220 (holding that, to receive an injunction, plaintiff need only show "there is some

5

reasonable likelihood of future violations" and past unlawful conduct is "highly suggestive of the likelihood of future violations").

Epic will also suffer irreparable harm if TCS is not required to take all reasonably available steps to locate any and all of Epic's confidential and trade secret documents and information that it possesses and to permanently destroy those materials.  These are necessary steps to ensure that TCS will comply with an injunction against the use of Epic's confidential and trade secret information.  They are particularly warranted here, where TCS has failed to date to identify every employee who accessed UserWeb, failed to preserve evidence, failed to provide the paper trail, and where more than 30 trade secret and confidential documents were recently located that TCS had not produced in discovery.  *See generally* Rough Trial Tr. April 8, 2016 AM at 7:8-38:1 (S. Rubin testimony); Rough Trial Tr. April 7, 2016 AM at 14:21-64:25 (A. Menon testimony); Rough Trial Tr. April 12, 2016 AM at 94:5-106:18, 115:15-130:8 (A. Menon testimony); *see also* Dkt. No. 531 (Epic's Motion for Sanctions).  These steps are further warranted under the controlling Standard Consultant Agreement that TCS breached by (i) failing to limit access to Epic's UserWeb and to materials obtained from UserWeb to employees who needed access in order to perform testing services for Kaiser, (ii) using Epic's confidential information for purposes other than implementing Epic's software on Kaiser's behalf, (iii) permitting TCS employees with access to Epic's confidential information to consult with other TCS employees concerning the development or enhancement of TCS's Med Mantra software, (iv) failing to maintain Epic's confidential information in confidence, (v) failing to store copies of Epic's confidential information in a safe place, and (vi) failing to provide prompt written notice of TCS employees' unauthorized access to Epic's UserWeb.[2]

---

[2]  In addition to its statutory violations, TCS's contract breaches support the imposition of a permanent injunction barring TCS from further misuse of Epic's confidential and trade secret information.  *See, e.g.,*

2430566.6

2.   <u>Remedies Available at Law are Inadequate to Compensate Epic</u>

A monetary judgment alone is not adequate to remedy the misappropriation of Epic's trade secrets and other confidential information.  In fact, the jury was specifically instructed not to include in their compensatory award any potential future use of Epic's trade secret and confidential information because the Court would enjoin TCS's future use of Epic's information. Dkt. No. 872 at 3.  Accordingly, the monetary judgment issued against TCS does not include any sum reflecting TCS's future use of the information that it misappropriated from Epic.  A permanent injunction is called for to prevent TCS's future misuse of Epic's confidential and trade secret information.

Indeed, it appears the jury's monetary verdict has had no effect thus far on the position TCS has taken since the case was first filed.  In a statement made the day following the damages verdict, which is being widely reported by news sources around the world, TCS continues to take the position that there is no evidence to support any of Epic's claims.  In TCS's view: "The jury's verdict on liability and damages was unexpected as the company believes they are unsupported by the evidence presented during the trial."[3]

Unless enjoined, it appears that TCS is likely to continue taking the position that it bears no responsibility for anything that has happened in the past and apparently makes no commitment to change its behavior in the future.  *See ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 753-54 (10th Cir. 2011) (rejecting argument plaintiff had an adequate remedy at law because it had "obtain[ed] multimillion dollar awards" against the defendants, and finding an

---

*Harvey Barnett, Inc. v. Shidler*, 200 F. App'x 734, 749 (10th Cir. 2006); *Uniroyal Goodrich Tire Co. v. Hudson*, 97 F.3d 1452, 1996 WL 520789, at *8 (6th Cir. 1996); *Aerospace & Electronics, Inc. v. Taylor*, 295 F. Supp. 2d 1205, 1219 (E.D. Wash. 2003) (entering permanent injunction where defendant breached contract and used plaintiff's confidential information).

[3] *See, e.g., Epic Systems wins $940 mln U.S. jury verdict in Tata trade secret case*, REUTERS NEWS (Apr. 18, 2016 at 11:12am) *available at* http://www.reuters.com/article/tata-epic-verdict-idUSL2N17L0YK.

injunction was warranted because the defendants had been "less than forthcoming" during litigation, had exhibited a "blatant disregard for clear duties" owed to the plaintiff, and because the monetary award did not account for risk of future harm); *E.I. duPont*, 894 F. Supp. 2d at 707 (rejecting argument that $920 million award rendered injunction unnecessary and finding injunction warranted by defendant's "obstructive conduct in this case (spoliation of evidence, refusal to provide its key witnesses for deposition without a lengthy fight, and strenuous resistance to post-judgment discovery)," risk that defendant could use the stolen trade secrets to compete with the plaintiff, and concern that, without a worldwide injunction, "DuPont would reasonably expect to incur great difficulty" and expense in litigating future misappropriation by the defendant); *see also Hunt*, 591 F.2d at 1220 (noting that courts may "look favorably on injunctive relief" where a "violator has continued to maintain that his conduct was blameless").

In short, a permanent injunction is necessary to prevent TCS from continuing to use Epic's trade secrets and other confidential information in the future.

3.  <u>The Balance of Equities Weighs in Favor of Entry of the Requested Permanent Injunction</u>

The balance of equities weighs heavily in favor of injunctive relief.  As this Court recognized in holding that it would issue an injunction to protect Epic from any future misuse of its confidential and trade secret information, "the continued use of a purloined trade secret is a harm of significant measure that warrants injunctive relief."  *E.I. duPont*, 894 F. Supp. 2d at 708.

The jury found that TCS misappropriated Epic's confidential and trade secret information.  TCS used that information to create the comparative analysis between Med Mantra and Epic.  Med Mantra and other TCS products are real and potential competitors to Epic's software, both domestically (DaVita, Quest) and internationally.  *E.I. duPont*, 894 F. Supp. 2d at 708 (the "potential loss of customers" is "certainly a form of harm that is appropriately

considered in balancing the equities"). An injunction would be a step toward restoring Epic and TCS to their respective positions before TCS's theft.

Permanently enjoining TCS from using the information it misappropriated from Epic would not cause any hardship to TCS. To the contrary, it simply prevents TCS from engaging in an activity already prohibited by law and enforces the contractual provisions to which TCS agreed long ago. *See White v. Marshall*, 771 F. Supp. 2d 952, 958 (E.D. Wis. 2011) ("[I]it is not a burden on defendants to follow the law."); *see also Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979) (recognizing in trademark case that a defendant who violates the law "cannot now complain that having to mend its ways will be too expensive"); *Merrill Lynch, Pierce, Fenner & Smith v. Chung,* No. 01-659, 2001 WL 283083, at *6 (C.D. Cal. 2001) (balance of hardships heavily favored injunctive relief where injunction merely prohibited defendants from misappropriating trade secrets and required them to comply with their agreements). Thus, the balance of hardships weighs heavily in favor of granting a permanent injunction against TCS.

4.  The Public's Interest Weighs in Favor of Entry of The Requested Permanent Injunction

The public has a strong interest in preventing unlawful conduct and unfair competition, and in protecting the development and progress of its local businesses. Although these public interests were not part of the jury trial, they are directly relevant here and are best served by a permanent injunction preventing TCS from using Epic's proprietary information. The court in *E.I. duPont* made clear:

> In a global economy where many companies do not accord trade secrets the respect and protection extended by the Uniform Trade Secrets Act (which is broadly in effect in this country), it serves the public interest for those who would violate the protections afforded by these laws to know that, if they steal trade secrets, they will be caught, they will be prosecuted civilly, and they will not be

9

able to profit from that which they have stolen.  And, thus, injunctive relief will help serve as a deterrent to trade secret misappropriation.

894 F. Supp. 2d at 710.

Protection of trade secrets is important "to the subsidization of research and development and to increase economic efficiency within large companies through dispersion of responsibilities for creative developments." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 481 (1974).  Also, "[t]he maintenance of standards of commercial ethics and the encouragement of invention are the broadly stated policies behind trade secret law.  'The necessity of good faith and honest, fair dealing, is the very life and spirit of the commercial world.'" *Id.*

Because the effect of monetary relief does not adequately protect against future misappropriation, because the balance of hardships favors an injunction, because an injunction serves the public interest, and because the Wisconsin trade secrets statute, the Computer Fraud and Abuse Act, and Wisconsin's Computer Crimes Act each permit entry of an injunction upon proof of violation (which the jury and the Court have properly determined), Epic is entitled to injunctive relief.  As discussed below, this relief should take the form of an injunction that permanently prohibits TCS's use of Epic's trade secrets anywhere in the world.

## The Injunction Should Be Permanent Without Durational Limit

With respect to the scope of the injunction, the Court should permanently prohibit TCS from using Epic's trade secrets and other confidential information.  *See F.T.C. v. Think Achievement Corp.*, 144 F. Supp. 2d 1013, 1016-18 (N.D. Ind. 2000), *aff'd*, 312 F.3d 259 (7th Cir. 2002) (explaining that the purpose of an injunction is to prevent future violations and that "[r]easonable fencing-in provisions are appropriate to prevent defendants from engaging in illegal practices" and issuing a nationwide permanent injunction to ensure the defendants would not engage in future violations).

10

"Injunctive relief is the most commonly sought form of relief in trade secret litigation. Indeed, that equity will protect against the unwarranted disclosure or use of a trade secret is 'settled beyond peradventure.'" 4 Roger M. Milgrim, *Milgrim on Trade Secrets* § 15.02[1][a] (2014) (citations and footnotes omitted); *id.* at § 16.01[7][b] ("The traditionally sought remedy [for trade secret misappropriation] is a permanent injunction").   A permanent injunction of indefinite duration against TCS's use of Epic's trade secrets and other confidential information is necessary to ensure that TCS does not pull the potential hard drive off the shelf, which contains Epic's information, and use it to improve Med Mantra or its other healthcare products.   *See ClearOne Commc'ns*, 643 F.3d at 752-53 (rejecting defendants' complaint that the injunction "forever prohibited" them from using information misappropriated from the plaintiff and holding permanent injunction was necessary to eliminate any commercial advantage obtained through the misappropriation); *E.I. duPont*, 894 F. Supp. 2d at 721; *DIRECTV Inc. v. Valenti*, No. 03-1327, 2005 WL 1268721, at *1 (E.D. Wis. May 19, 2005) (permanently enjoining defendants from using or reverse engineering certain products).

Fairness and equity require permanently prohibiting TCS from using Epic's trade secrets and other confidential information. *See, e.g.*, *Mintel Int'l Grp., Ltd. v. Neergheen*, No. 08-3939, 2010 WL 145786, at *15 (N.D. Ill. Jan. 12, 2010) ("permanently enjoining defendant from using any of Plaintiffs' confidential, proprietary, and trade secret information that was the subject of this lawsuit" after defendant breached nondisclosure agreement); *C. Albert Sauter Co. v. Richard S. Sauter Co.*, 368 F. Supp. 501, 518 (E.D. Pa. 1973) (permanently enjoining defendant's use of confidential information or trade secrets of plaintiffs in antitrust case).[4]

---

[4]   *Cf. United States v. Loew's, Inc.*, 371 U.S. 38, 53 (1962) ("Some of the practices which the Government seeks to have enjoined with its requested modifications are acts which may be entirely proper when viewed alone. To ensure, however, that relief is effectual, otherwise permissible practices connected with the acts found to be illegal must sometimes be enjoined."); *F.T.C. v. Think Achievement*

2430566.6

## The Injunction Should Be Worldwide

In trade secret misappropriation cases, preliminary injunctions should not be geographically restricted. *Restatement (Third) of Unfair Competition*, § 44 and cmt. d (1995) ("Geographic limitations are not ordinarily appropriate in trade secret injunctions."); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) (affirming worldwide injunction as necessary to protect secrecy and eliminate head start in trade secrets case); *ClearOne Commc'ns*, 643 F.3d at 752-53 (affirming worldwide permanent injunction prohibiting defendants from using plaintiff's trade secrets and documentation); *DIRECTV*, 2005 WL 1268721, at *1 (issuing worldwide permanent injunction); *Nintendo of Am., Inc. v. NTDEC*, 822 F. Supp. 1462, 1466 (D. Ariz. 1993) (entering "a worldwide permanent injunction to prevent the continued violation of [plaintiff's] intellectual property rights").

As to the Restatement's factors to consider in granting injunctive relief, the nature and extent of Epic's interest in protecting its valuable trade secret and confidential information, as well as the TCS's misappropriation, justify an injunction with global reach. As discussed above, the damages award does not address TCS's future use of Epic's information and a future damages award for continued misuse of Epic's confidential information cannot adequately protect Epic's interest against the competitive use of its own trade secrets against it in the healthcare software marketplace. *See E.I. duPont*, 894 F. Supp. 2d at 712. The trial record establishes that Epic's sales of its EHR product are growing outside of the United States. *See* Rough Trial Tr. Apr. 14, 2016 PM at 68:15-69:6, 76:11-18 (Stirling Martin testified that Epic has customers in Canada, Denmark, the Netherlands, the United Kingdom, Saudi Arabia, the United Arab Emirates, Singapore, Australia, South Africa, and Finland that have signed contract or will

---

*Corp.*, 144 F. Supp. 2d 1013, 1017 (N.D. Ind. 2000) ("Courts in equitable actions may enjoin otherwise lawful conduct to ensure that the final relief ordered is effective."), aff'd, 312 F.3d 259 (7th Cir. 2002).

be signing them imminently, as well as prospective customers in Norway, Sweden, France, Switzerland, Germany, Belgium, and New Zealand). Further, while TCS attempted to disclaim an interest in selling its EHR product outside of India, the record belied TCS's self-serving statements. *See, e.g.*, Rough Trial Tr. Apr. 14, 2016 PM at 122:3-11; Rough Trial Tr. Apr. 15, 2016 at 61:11-63:4; Trial Exs. 245, 717, 2565.

Finally, it is "not at all impractical to frame" an appropriate worldwide injunction that can be enforced through the judicial contempt process. *E.I. duPont*, 894 F. Supp. 2d at 715; *Spallone v. United States*, 493 U.S. 265, 276 (1990) ("[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt") (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).

### The Injunction Should Include an Ombudsman or a Monitor

To ensure TCS's compliance with the permanent injunction, Epic requests the appointment of an ombudsman or monitor, as the Court previously suggested, to help ensure compliance with the injunction. *See* Trial Tr. April 8, 2016 PM at 111:17-112:3; *see also Chemetall GMBh v. ZR Energy, Inc.*, 138 F. Supp. 2d 1079, 1087 (N.D. Ill. 2001). An ombudsman or monitor could help ensure compliance with the injunction in a way that Epic could not. Without an ombudsman or monitor, Epic would be left to look around the world for signs that TCS was using Epic's information in products that, at least on the superficial level of screen reviews, might not easily show the use of Epic's information. *See id.* at 1087-88 (explaining that the "monitoring process [ordered by the court] will be useful in ensuring that if any violation occurs (even if unintentional), it will be detected and corrected promptly").

13

## **Conclusion**

For the reasons stated above, Epic respectfully requests that the Court grant a permanent worldwide injunction, with an ombudsman or monitor to ensure compliance for a minimum of four years, to prevent TCS from using Epic's trade secrets and other confidential information.

2430566.6

Dated:  April 18, 2016

/s/ Rick Richmond

Rick Richmond
rrichmond@jenner.com
Nick G. Saros
nsaros@jenner.com
Julie A. Shepard
jshepard@jenner.com
Kelly M. Morrison
kmorrison@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel:  213-239-5100
Fax:  213-239-5199

Anthony A. Tomaselli
anthony.tomaselli@quarles.com
Kristin G. Noel
kristin.noel@quarles.com
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: 608.251.5000
Fax: 608.251.9166

*Attorneys for Plaintiff Epic Systems Corporation*

15