UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

EPIC SYSTEMS CORPORATION, a
Wisconsin Corporation;

                     Plaintiff,

      v.

TATA CONSULTANCY SERVICES
LIMITED, an Indian Corporation;
and TATA AMERICA INTERNATIONAL
CORPORATION (dba TATA AMERICA), a
New York Corporation;

                     Defendants.

Case No. 14-cv-748-wmc

**DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED INJUNCTION**

Defendants Tata Consultancy Services Limited and Tata America International Corporation (collectively, "TCS" or "Defendants") hereby submit their response to the Proposed Permanent Injunction submitted by Epic Systems Corp. ("Epic") (Dkt. 880) and Epic's Memorandum in Support of Injunctive Relief (Dkt. 879). TCS acknowledges that an injunction will be entered. Therefore, this Response opposes Epic's motion only insofar as Epic's proposed injunction is inappropriately vague, unenforceable or excessive. Attached as Attachment A hereto is TCS's proposed revision of Epic's proposed injunction. Attachment B hereto is a comparison of the two proposed injunctions to aid in identifying the proposed revisions. The rest of this Response explains why TCS's proposed revisions are appropriate.

**Preamble**

The recitation in the preamble of Epic's proposed injunction of all of the causes of action for which TCS was found liable (and even one for which it was not), including those that do not

1

serve as the basis for injunctive relief, is unnecessary and gratuitous. The preamble should be replaced with one reciting only facts relevant to the injunction.

### Provision 1 (Definitions)

The definition of "TCS" should include TCS's affiliates and successors, including the executives, officers, and employees thereof, for greater clarity in the operative provisions of the injunction.

Epic's proposed injunction contains a combined definition of "Trade Secrets and Confidential Information" which is compound, confusing, and inconsistent with the law and the trial record. The two terms, "Trade Secrets" and "Confidential Information," should be defined separately. "Trade Secrets" should be defined in accordance with Epic's allegations and with its legal meaning under the Wisconsin Uniform Trade Secrets Act and the Court's jury instructions in this case (Trial Exhibit No. 1247; Dkt. _). "Confidential Information" should be defined in accordance with Epic's allegations and with the Standard Consulting Agreement between the parties, which served as the basis for Epic's claims. Both definitions should be incorporated within the injunction, rather than by reference to external documents, so that the injunction is self-contained. Epic's characterization in its proposed injunction of all of "the information contained in the 1,687 unique documents TCS downloaded from Epic's UserWeb" as "Trade Secret or Confidential Information" is inconsistent with the trial record, which showed that some of the downloaded documents were neither trade secrets nor confidential information (e.g. Madison restaurant menus, maps of the Epic corporate campus, etc.) and with Epic's contention that less than 40 of the downloaded documents contained trade secrets.

### Provision 2 (No Use of Epic Trade Secrets and Confidential Information)

As noted above, the scope of defendants encompassed by the injunction should be set forth in the definitions rather than in the operative provisions. TCS's substantive change to the definition includes the omission of TCS's "attorneys," who should not be enjoined from possessing the Epic Trade Secrets or Confidential Information. TCS's in-house and outside counsel need to retain and use the trial record and discovery produced in this case for preparing TCS's appeal and for many other legitimate purposes. The Protective Order in this case remains in force to protect Epic Trade Secrets or Confidential Information from inappropriate disclosure to TCS business people.

In Provision 2(a), TCS proposes a more precise definition of "TCS EHR Products."

TCS proposes to break Provision 2(c) into two provisions, 2(c) and 2(d), reflecting the differing degrees of monitoring and enforcement ability that TCS has over its own network as opposed to other networks.

In Provision 2(e) (formerly 2(d)), TCS proposes to delete the phrase "or may have had access." At trial, Epic put forward the theory, unsupported by any evidence, that anyone at TCS may have had access to the Epic Trade Secrets or Confidential Information. Reading this theory into Epic's proposed injunction would mean that no TCS employee, consultant or agent could work on TCS EHR software, i.e., that TCS must cease to develop and market EHR software. To avoid this excessively punitive result, the phrase "or may have had access" must be deleted. The remaining injunction that no TCS employee, consultant or agent who actually had access to any Epic Trade Secret or Confidential Information is sufficient to protect Epic's interests.

To furnish the Court and Epic with additional comfort regarding Provision 2(d), TCS would be amenable to agreeing on a list of TCS employees who, based on the discovery and trial record, appear to have had access to Epic Trade Secrets or Confidential Information, and to list

those individuals in this provision by name as an "including but not limited to" clause as persons not allowed to work on TCS EHR software.

### Provisions 3 and 4 (Ombudsman or Monitor)

TCS opposes the appointment of an ombudsman or monitor as unnecessary given the trial record, which showed no evidence of misuse of any Epic Trade Secrets or Confidential Information beyond the preparation of one comparative analysis. If, however, one is appointed, the revisions proposed by TCS in Attachments A and B hereto should be adopted. Some of these are for clarity, but the following substantive points must be addressed in the injunction:

- The ombudsman or monitor would be appointed and directed by the Court, should be independent and unaffiliated with either party, and would not serve as an agent for Epic.

- TCS believes that it would place an unwarranted burden on the Court for the ombudsman or monitor to investigate TCS continuously over the next four or more years, with associated constant communication with the Court. There should be a date certain by which the ombudsman or monitor should report to the Court as to TCS's compliance with the injunction. In the proposed revisions, TCS proposes that this occur six (6) months following the entry of judgment. The TCS proposal also provides that, beyond the 6-month reporting requirement and for at least two years, if Epic approaches the Court with good cause for the ombudsman or monitor to reopen his or her investigation and report to the Court again.

- Because the ombudsman or monitor would not act as an agent for either party, neither party should be permitted to have *ex parte* communications with the

4

ombudsman or monitor. Any communications should be shared with the other party's outside counsel, subject to the protections of the Amended Protective Order, including the option to designate such communications as for attorneys' eyes only. The ombudsman or monitor must observe and respect the confidentiality of TCS information obtained in the course of his or her duties, and must not disclose such information to Epic.

- Revisions to provisions 3(a) and 3(b) have been made to reflect the fact that neither TCS nor the ombudsman or monitor would be able to confirm whether "contractors and agents" of TCS, who may also be contractors or agents of unrelated entities, may have access to Epic's UserWeb or to Epic's Trade Secret or Confidential Information in capacities outside of their work for TCS, nor would such access violate the Injunction.

**Provision 5 (TCS Report)**

TCS should be granted 90 days, not 20 court days, to report on its compliance. Certain provisions of the proposed injunction, and in particular the appointment of the ombudsman or monitor, are likely to take more than 20 court days to implement.

*   *   *   *   *

Dated: April 25, 2016

By: s/Philip D. Robben
Paul F. Doyle
Philip D. Robben
Alison L. MacGregor
Melissa E. Byroade
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Email: pdoyle@kelleydrye.com
Email: probben@kelleydrye.com

Email: amacgregor@kelleydrye.com
Email: mbyroade@kelleydrye.com
Phone: (212) 808-7800
Fax: (212) 808-7897

and

s/Barbara A. Neider
Barbara A. Neider
Meg Vergeront
STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, Wisconsin 53701-1784
Email: bneider@staffordlaw.com
Email: mvergeront@staffordlaw.com
Phone: (608) 256-0226
Fax: (608) 259-2600

*Attorneys for Defendants Tata Consultancy Services Limited and Tata America International Corporation*