IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EPIC SYSTEMS CORPORATION,

                Plaintiff,

   v.

TATA CONSULTANCY SERVICES
LIMITED and TATA AMERICA
INTERNATIONAL CORPORATION d/b/a
TCA America,

                Defendants.

OPINION AND ORDER

14-cv-748-wmc

---

On April 14, 2016, the jury returned a liability special verdict in favor of plaintiff Epic Systems Corporation on all seven claims. For purposes of ordering injunctive relief specifically, the jury found defendants Tata Consultancy Services Limited and Tata America International Corporation liable for (1) misappropriation under Wisconsin Uniform Trade Secrets, Wis. Stat. § 134.90, and (2) trafficking passwords in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. At summary judgment, the court also entered liability in plaintiff's favor on another CFAA claim, as well as on its claim under Wisconsin Computer Crime Act, Wis. Stat. § 943.70, for which injunctive relief is the only available remedy.

In light of plaintiff's success on the merits and the inadequacy of damages to remedy any future benefit defendants may obtain from their unlawful acts, the balance of equities lean heavily in favor of entry of an injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Moreover, the public's interest in protecting trade secrets and other confidential information further supports entry of a permanent injunction. *See id.* Finally, defendants do not even attempt to argue against the entry of

an injunction in light of the jury's verdict (Defs.' Resp. (dkt. #885) 1 (acknowledging that an injunction "will be entered")), but rather raise specific concerns with respect to plaintiff's proposed injunction.

*First*, defendants oppose the listing of all of the claims for which liability was entered in plaintiff's favor, rather than simply the causes of action that form the basis for entry of injunctive relief. This request is mooted by the court's decision to drop plaintiff's proposed preamble.

*Second*, defendants challenge the combined definition of "Trade Secrets and Confidential Information" in plaintiff's proposed agenda, arguing that there should be two distinct definitions, consistent with the trial record. Once again, given that the court is enjoining the use of both, defendants' request may be unnecessary, but will be granted in keeping with the two, distinct definitions in Epic's original allegations, the statutory text, and the express instructions to the jury at trial. The following permanent injunction, therefore, adopts defendants' proposed language.

*Third*, defendants take issue with some of the prohibited conduct. Specifically, defendants contend that their attorneys should not be enjoined from retaining and using any trade secrets and confidential information to prepare an appeal or for other legitimate, legal purposes. The court agrees, and, therefore, excludes this conduct from the scope of the permanent injunction entered below. Defendants next suggest a modification of the definition of electronic health records, but offer no basis for this change, and the court sees no reason to adopt it. Similarly, defendants suggest a change to some of the provisions prohibiting "TCS employees," rather than TCS more generally.

2

Once again, defendants offer no basis for this proposed change. If anything, the proposed modification could be seen as limiting the scope of the injunction. Because the court rejects the change to "TCS employees," it also need not adopt TCS's proposed changes to address differences in the level of responsibility or control TCS has over its employees beyond that dictated by law. Last, defendants take issue with plaintiff including "or may have had access" to any Epic Trade Secret or Confidential Information in the provision prohibiting TCS employees from working on the design, development, enhancement or marketing of TCS software products. The court agrees with defendants that this phrase is too vague and deleted it. Should plaintiff also wish to list specific individuals, as defendants suggest, the court would also be willing to make that modification and issue an amended permanent injunction.

*Fourth*, defendants oppose the appointment of an ombudsman or monitor as unnecessary, and if appointed, propose several modifications. The court agrees with plaintiff that a monitor *is* necessary to insure compliance with the court's injunction in light of the extent of unauthorized and undocumented access to its trade secrets and confidential information within TCS. As for defendants' specific concerns, a monitor shall be appointed by the court based on the parties' joint submission if they agree or separate submissions if not jointly agreed. **A joint submission or the parties' separate submissions are due on or before May 11, 2016.** While plaintiff will be allowed to direct the monitor's activities, consistent with those outlined in the permanent injunction, plaintiff will not be privy to the outcome of that review, except for disclosure of any evidence of a violation of the permanent injunction itself, and defendants may

3

seek relief from the court if they believe the monitor's activities exceed the parameters of the injunction. Moreover, this provision of the court's permanent injunction will last for *two* years, with the possibility of a two-year extension at the end of that period.[1]

ORDER

IT IS ORDERED that plaintiff Epic Systems Corporation's request for entry of permanent injunction is GRANTED and a Permanent Injunction pursuant to Federal Rule of Civil Procedure 65 is ENTERED as follows:

1. This Permanent Injunction shall remain in full force and effect for four years from its effective date of this order.
2. For purposes of this Permanent Injunction, the following terms apply:
    a. "Epic" shall mean plaintiff Epic Systems Corporation.
    b. "TCS" shall mean Tata Consultancy Services Limited and Tata America International Corporation.
    c. "Trade Secret" shall mean the documents contained in Trial Exhibit No. 1247, limited to those documents (or portions of such documents) that are a trade secret as defined in the Wisconsin Uniform Trade Secrets Act, Wis. Stat. § 134.90(1)(c).
    d. "Confidential Information" shall mean the documents contained in Trial Exhibit Nos. 2100 and 2101 that (i) are not trade secrets; and (ii) are "confidential information" as defined in the parties' Standard Consulting Agreement (Trial Ex. 3).

---

[1] Defendants also sought to increase the time for filing and serving a compliance report from 20 days after issuance of the injunction to 90. The court will provide a bit more lee-way, requiring the report within 60 days of the issuance of the injunction, in other words, by June 25, 2016.

3.  Except as expressly set forth in the opinion above, TCS and their respective affiliates, successors, officers, agents, servants, employees, and attorneys and any and all other persons who are in active concert or participation with any of them (all collectively referred to as "Enjoined Parties"), are permanently enjoined, anywhere in the world, from the following:

    a.  using any Epic Trade Secret or Confidential Information for any reason, including but not limited in the design, development, enhancement, or marketing of any TCS software providing solutions in the areas of electronic health records, electronic medical records, and hospital management systems, or any other healthcare software solutions, including but not limited to Med Mantra (as most broadly defined, including but not limited to, TCS-HIS, Med Mantra in use at Apollo Hospitals in India, British American Hospital in Mauritius, Tata Cancer Hospital in India, Tata Cancer Institute in India, and Med Mantra modules in development at DaVita Healthcare Partners, Inc. and Quest Diagnostics, Inc.) (collectively, "TCS EHR Products");

    b.  possessing or retaining any Epic Trade Secret or Confidential Information in any form, including on any servers or other electronic computer systems of TCS or any other electronic or hard-copy media at TCS;

    c.  accessing or attempting to access any non-public Epic servers or systems, including Epic' internet portal known as UserWeb; and

    d.  permitting any TCS employee or consultant or agent who had access to any Epic Trade Secret or Confidential Information to work on, or assist in, directly or indirectly, the design, development, enhancement, or marketing of any TCS EHR Products.

4. For the next two years, unless extended by the court upon a showing of good cause, TCS shall not resist, hamper, delay, or otherwise interfere with the activities of a monitor to be appointed consistent with the procedure outlined in the above opinion. The monitor shall be paid by Epic and have unfettered access at any time, to monitor TCS's development and implementation of any TCS EHR Products to ensure that TCS does not improperly use any of Epic's Trade Secrets or Confidential Information, as described below. In particular, TCS shall permit the monitor to:

   a. Confirm that TCS employees, consultants, and agents do not have access to Epic's internet portal known as UserWeb or to any of Epic's Trade Secret or Confidential Information.

   b. Confirm that TCS does not possess or retain any Epic Trade Secret or Confidential Information on any of its servers, shared drives, shared domains, or other places of electronic information storage.

   c. Talk with any TCS employee who might be able to assist the monitor in determining whether Epic Trade Secret or Confidential Information was or is being used in the design, development, enhancement, or marketing of any TCS EHR Products. TCS shall provide the ombudsman or monitor with unfettered access to these TCS employees.

   d. Examine, evaluate, and analyze TCS's electronic information, including TCS's proxy logs, domain logs, active directory logs, software, servers, shared drives, and shared domains, to determine whether any Epic Trade Secret or Confidential Information was or is being used or is intended to be used in the design, development, enhancement, or marketing of any TCS EHR Products. TCS shall provide the monitor with unfettered access to this electronic information.

5. Epic shall have the ability to confidentially provide the monitor with the type of information Epic deems necessary to monitor TCS's development and implementation of any TCS EHR Product to ensure that TCS does not improperly use any of Epic's Trade Secret or Confidential Information.

6. Except by leave of court, the monitor shall not disclose the substance or outcome of its ongoing investigation, except for (1) the procedures or tasks undertaken; and (2) any evidence of violations of the permanent injunction.

7. Within 60 court days of the effective date of this Permanent Injunction, TCS shall file and serve a report in writing and under oath setting forth in detail the manner and form with which TCS has complied with the Permanent Injunction.

8. Violation of the Permanent Injunction shall be subject to all applicable penalties, including contempt of court.

9. This court shall retain continuing jurisdiction over Epic, TCS and the Enjoined Parties and the action for the purpose of enforcing the Permanent Injunction.

Entered this 27th day of April, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge