UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EPIC SYSTEMS CORPORATION, a
Wisconsin Corporation,

        Plaintiff,

    v.

TATA CONSULTANCY SERVICES
LIMITED, an Indian Corporation; and TATA
AMERICA INTERNATIONAL
CORPORATION (dba TCS AMERICA), a
New York Corporation,

        Defendants.

Case No. 14-CV-748

---

### REQUEST FOR JUDICIAL NOTICE OF TCS'S RECENT STATEMENTS IN NEWLY ISSUED 2015-2016 ANNUAL REPORT AND JUNE 17, 2016 ANNUAL SHAREHOLDERS MEETING

---

Epic respectfully requests that the Court take judicial notice of statements recently made by TCS. These statements were not (and could not have been) cited during the damages briefing due to their timing. Specifically, TCS has made statements in its recently issued 2015-2016 Annual Report that bear on the damages issues pending before the Court. Also, as widely quoted in media reports, TCS's chairman answered questions from shareholders about those statements during TCS's June 17, 2016 annual shareholders meeting.

The Court is entitled to take judicial notice of TCS's statements in the Annual Report, as well as those made by TCS's chairman during the related shareholders meeting, and should consider those statements in ruling on TCS's motion for judgment as a matter of law as to damages. Epic first sets forth the standard for taking judicial notice of statements like these and then briefly explains why the statements should be considered by the Court.

2448400

## STANDARD FOR TAKING JUDICIAL NOTICE OF TCS'S STATEMENTS

The Court is entitled to take judicial notice of facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also id.* 201(d) (acknowledging that a district court "may take judicial notice at any stage of the proceeding"). Accordingly, federal courts routinely take judicial notice of annual reports to shareholders and other "matters of public record." *See, e.g.*, *CMFG Life Ins. Co. v. RBS Sec. Inc.*, No. 12-37, 2013 WL 4483068, at *1 (W.D. Wis. Aug. 19, 2013) (considering annual reports in deciding motion to dismiss) (Conley, J.); *Brodsky v. Humana Dental Ins. Co.*, No. 10-3233, 2011 WL 529302, at *2 (N.D. Ill. Feb. 8, 2011) (taking judicial notice of annual report in deciding motion to dismiss); *In re Copper Market Antitrust Litig.*, 300 F. Supp. 2d 805, 806-07 (W.D. Wis. 2003) (taking judicial notice of news articles); *In re Spyglass, Inc. Sec. Litig.*, No. 99-512, 1999 WL 543197, at *8 (N.D. Ill. July 21, 1999).

TCS cannot reasonably question the fact that it made the statements contained in its Annual Report: the Annual Report is available on TCS's own website and these statements have been repeated by TCS at its shareholders meeting and in the media.[1] And there have been no indications that TCS disputes that its Chairman made the Epic-related statements at the June 17, 2016 shareholders meeting that have been widely reported in the media. *See* Ex. B at 2; Ex. C at 3; *see also* Ex. D (TCS website confirming meeting was held on June 17, 2016).

---

[1] *See* http://www.tcs.com/investors/Documents/Annual%20Reports/TCS_Annual_Report_2015-2016.pdf (Annual Report, attached hereto as Exhibit A); http://timesofindia.indiatimes.com/tech/tech-news/Epic-Systems-asks-US-court-to-reduce-the-award-it-won-against-TCS-by-220-million/articleshow/52817837.cms (article reporting on TCS's annual meeting, where "chairman Cyrus Mistry" discussed Annual Report and "fielded questions from shareholders") (Attached as Exhibit B); http://www.firstpost.com/business/tcs-shareholders-vent-anger-over-ceos-high-sal-press-for-bonus-shares-invoking-vishal-sikkas-name-2842142.html (same; attached as Exhibit C).

With the exception of the amount of TCS's annual revenues and profits, Epic does not request that the Court take judicial notice of the truth of TCS's statements. Rather, Epic asks the Court to take notice of the fact that TCS has made these statements publicly, including to its shareholders and potential investors, the Security Exchange Board of India,[2] and the media. *Cf. CMFG Life Ins. Co.*, 2013 WL 4483068, at *1 (taking judicial notice of statements in annual report and recognizing, in any event, those statements would likely be admissible as party admissions under Fed. R. Evid. 801(d)(2)).

## REASONS WHY THE COURT SHOULD TAKE JUDICIAL NOTICE

TCS's motion for judgment as a matter of law as to damages contends that the jury should not have been permitted to award punitive damages against TCS (Dkt. No. 914 at 48-49) and that, even if punitive damages were properly considered, the jury's award was excessive (*id.* at 52). Epic's opposition brief explained why TCS was wrong on both counts. Dkt. No. 926 at 65-90. TCS's recent statements further confirm the jury was well within its right to award punitive damages in this case, and that the award is not "so clearly excessive as to indicate passion and prejudice." *Trinity Evangelical Lutheran Church & Sch.-Freistadt v. Tower Ins. Co.*, 661 N.W.2d 789, 801 (Wis. 2003).[3]

**I.    As of March 31, 2016, TCS's 2016 Revenues and Profits Were Higher Than the Revenue and Profit Numbers Conveyed to the Jury.**

Because "it will take a larger punitive damages award to deter [a] wealthy corporation from future misconduct," Wisconsin calls on juries to account for the wealth of a defendant when setting a punitive damages award. *E.E.O.C. v. CEC Entm't, Inc.*, No. 98-698, 2000 WL

---

[2] *See* Securities and Exchange Board of India (Listing Obligations and Disclosure Requirements) Regulations, 2015 at § 34.

[3] As explained in Epic's opposition brief, a reduction under Wisconsin's statutory cap would result in a punitive damages award of $480 million.

1339288, at *19 (W.D. Wis. 2000); Wis. Stat. § 895.043(4)(a); *Kimble Land Concepts, Inc.*, 845 N.W.2d 395, 400 (Wis. 2014); *see also* Dkt. No. 872 at 6. Consistent with Wisconsin law, the jury had before it evidence of TCS's fiscal year 2015 revenues and profits, which were $15.5 billion and $3.5 billion, respectively. Dkt. No. 870. In awarding $700 million in punitive damages, the jury apparently concluded that an award equivalent to approximately 20% of TCS's reported profits (*i.e.*, 20% of $3.5 billion in profits is $700 million) is what it would "take for the TCS executives to finally sit up and take notice and start obeying the code of conduct they talk about." *See* Dkt. No. 898 at 113:7-114:1; Dkt. No. 871 at 2.

The revenue and profit numbers the jury considered were based on the prior year's financial results, not the current year's numbers, because TCS's fiscal year ended just before trial began. As a result, TCS's recently-issued Annual Report, which reports the financial results of TCS's fiscal year ending March 31, 2016, gives the actual revenue and profit numbers that were applicable (but apparently not yet available) 16 days before the jury's damages verdict. *Compare* Ex. A at 151 *with* Dkt. No. 871.

In its Annual Report, TCS reports an increase in annual revenue from $15.5 billion to $16.5 billion, and an increase in profits from $3.5 billion to $3.7 billion. Ex. A. at 151. Accordingly, TCS's financial figures as of March 31, 2016 are higher than those considered by the jury, which were already stale when read into the record. TCS's revenues and profits bear on the excessiveness inquiry raised by TCS's motion for judgment as a matter of law as to punitive damages. *See* Dkt. No. 926 at 79, 82. Obviously, if the jury believed that 20% of TCS's profits was an amount that would cause TCS's leaders to sit up and take notice, the jury's punitive damages figure would been even higher (*i.e.*, 20% of $3.7 billion equals $740 million) if the jury

4

had known that profits as of March 31, 2016 were greater than what had been reported a year earlier (and was read into the record).

## II. TCS's Statements Confirm its Obstinate Refusal to Acknowledge Wrongdoing or Express Remorse.

Despite the jury's findings on liability and damages – and the Court's acknowledgement that there was evidence of wrongdoing – TCS continues to ignore the jury's verdicts and assert that it has done nothing wrong. Indeed, TCS reported to its shareholders that the verdict is "not binding" and is "currently assessed on the low possibility of the event," such that the company has not made a provision for a damages award in this case. Ex. B at 2; Ex. C at 3.

### A. TCS Continues to Insist That it Has Done Nothing Wrong.

The Annual Report asserts that TCS "has a strong legacy of fair, transparent, and ethical governance practices" and that it "has adopted a Code of Conduct for its employees including the Managing Director and the Executive Directors." Ex. A at 106. Just three days after the jury's damages verdict, TCS's CEO, Natarajan Chandrasekaran, represented that he could "confirm that the Company has in respect of the year ended March 31, 2016, received from the Senior Management Team of the Company and the Members of the Board a declaration of compliance with the Code of Conduct." *Id.* at 126. But Mr. Chandrasekaran, who is one of the three members of TCS's ethics and compliance committee, admitted during his deposition that the very committee tasked with ensuring compliance with the Code of Conduct did nothing about the Epic violations, even as late as mid-March 2016 when trial was about to begin. Dkt. No. 612 at 6:22-7:2, 10:25-11:23.[4]

---

[4] The Annual Report reflects that Mr. Chandrasekaran received a significant salary increase in fiscal year 2016. Ex. A at 46; *see also* Ex. C at 2 (reporting that shareholders are frustrated by Mr. Chandrasekaran's 20% salary increase and "one-time special bonus").

2448400

Worse, despite incontrovertible proof to the contrary, TCS insists that it has adhered to its whistleblower policy. TCS asserts in its Annual Report that it "has adopted a Whistle Blower Policy and has established the necessary vigil mechanisms . . . for directors and employees to report concerns about unethical behavior." Ex. A. at 116. TCS goes so far as to proclaim in its Annual Report: "*No person has been denied access to the Chairman of the audit committee*." *Id.* (emphasis added). TCS's assertion ignores Mr. Guionnet's trial testimony that he tried to contact the Audit Committee "about 25 times." Dkt. No. 890 at 57:21-58:13. It also overlooks the admission by TCS's own Head of Human Resources, Narasimhan Srinivasan, that Mr. Guionnet was never provided with the information necessary to send his package to the Chairman of the Audit Committee (a simple phone number, email address, or fax number), despite Mr. Guionnet's numerous requests. Dkt. No. 922-22 at 74:18-25, 83:1-6, 137:5-138:19; Tr. Ex. 555A. TCS's contrary assertion that "no person has ever been denied access to the Chairman of the Audit Committee" is in complete disregard of the truth and the opposite of any acknowledgement of wrongdoing or remorse.

**B. TCS Claims the Verdict is "Not Binding."**

A section of the Consolidated Financial Statements in the Annual Report called "Contingent Liabilities" is defined as "Claims against the Group *not acknowledged as debt*." Ex. A at 185, 227 (emphasis added). The only such claim not acknowledged as debt is the jury's verdict in this case. The Annual Report provides no discussion about why the jury's verdict would not be considered as debt or potential debt, other than TCS's "belie[f] that the claim will not sustain." *Id.* However, "[a]t the company's annual general body meeting, chairman Cyrus Mistry fielded questions from shareholders on the jury award to Epic, especially why the company had not made a provision for the award." Ex. B at 2. Chairman Mistry answered: "In the opinion of the company's legal counsel, the jury award is not binding, and it's currently

6

assessed on the low possibility of the event." *Id.*; Ex. C at 3. He also "reiterated that the company had not misused Epic's software code." Ex. B at 2; *see also* Ex. C at 3 ("Mr. Mistry said TCS believes it has not misused any intellectual property of the American firm and is currently awaiting a judgment").

Again, TCS's positions are the opposite of an acknowledgement of wrongdoing or remorse, a relevant consideration in assessing punitive damages. *See Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 438 (7th Cir. 1997) ("lack of remorse" serves as a factor justifying punitive damages award); *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119, 1143 (7th Cir. 1987) ("[B]ecause the purpose of punitive damages is deterrence, the jury was entitled to consider evidence of post-verdict recalcitrance in determining the punitive damage award."); *Jacque v. Steenberg Homes, Inc.*, 563 N.W.2d 154, 164 (Wis. 1997) (finding that defendants' "arrogant stance" favored a finding of reprehensibility); *Fahrenberg v. Tengel*, 291 N.W.2d 516, 527 (Wis. 1980) (fact that defendant "showed no remorse" counseled in favor of punitive damages award).

*       *       *

In light of the foregoing, Epic respectfully requests that the Court take judicial notice of TCS's 2015-2016 Annual Report and the attached newspaper articles quoting TCS's Chairman's statements during the annual shareholders meeting held on June 17, 2016, and consider these documents in ruling on TCS's motion for judgment as a matter of law as to damages.

2448400

| | |
|---|---|
| Dated: June 30, 2016 | */s/ Rick Richmond* |

                                      Rick Richmond
                                      rrichmond@jenner.com
                                      Nick G. Saros
                                      nsaros@jenner.com
                                      Julie A. Shepard
                                      jshepard@jenner.com
                                      Kelly M. Morrison
                                      kmorrison@jenner.com
                                      JENNER & BLOCK LLP
                                      633 West 5th Street, Suite 3600
                                      Los Angeles, CA 90071
                                      Tel: 213-239-5100
                                      Fax: 213-239-5199

                                      Anthony A. Tomaselli
                                      anthony.tomaselli@quarles.com
                                      Kristin G. Noel
                                      kristin.noel@quarles.com
                                      QUARLES & BRADY LLP
                                      33 East Main Street, Suite 900
                                      Madison, WI 53703
                                      Tel.: 608.251.5000
                                      Fax: 608.251.9166

                                      *Attorneys for Plaintiff Epic Systems Corporation*

8