UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EPIC SYSTEMS CORPORATION, a
Wisconsin Corporation,

      Plaintiff,

  v.

TATA CONSULTANCY SERVICES
LIMITED, an Indian Corporation; and TATA
AMERICA INTERNATIONAL
CORPORATION (dba TCS AMERICA), a
New York Corporation,

      Defendants.

Case No. 14-CV-748

**<u>REDACTED</u>**

---

### EPIC'S RESPONSE TO TCS'S SUBMISSION OF THE DECLARATION OF AJIT MENON REGARDING COMPLIANCE WITH THE INJUNCTION

---

Epic submits this response to TCS's Declaration of Ajit Menon Regarding Compliance with the Injunction. Mr. Menon's declaration raises more questions than it answers. In particular, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The declaration also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Rather than providing any comfort, these revelations prove just how derelict TCS was in fulfilling its discovery duties during the case.

It is surprising how quickly TCS identified and then destroyed enormous amounts of potential evidence once the trial was over. TCS immediately ▮▮▮▮▮▮▮▮▮▮▮▮▮

2449222

████████████████████████████████████████. While TCS struggled to produce relevant information before trial, these two teams had no problem ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████. They did all of this post-verdict identification work ██████████████. Then, without any notice to Epic or the Court about what they had found, ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████. In light of the evidence spoliation by TCS that had already occurred in this case, along with TCS's continuing contractual obligation to notify Epic in writing about the mishandling and misuse of Epic's confidential information, there is no excuse for TCS not informing the Court and Epic about the newly discovered evidence before it was destroyed.

Mr. Menon's declaration does not comfort Epic, but instead raises serious concerns: (1) ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████.

TCS's unorthodox actions beg the question why did TCS take such extreme measures to ████████████████████████████████? While TCS will likely argue its actions were simply to ensure compliance with the Court's injunction, the circumstances surrounding TCS's actions indicate otherwise. TCS's actions contradict its insistence of innocence and the alleged

impossibility of any misuse of Epic information professed throughout discovery, during the trial, and now in post-verdict briefing and in the press. TCS may simply be trying to curry favor with the Court while motions are pending to reduce or eliminate the jury's damages award and to set monetary sanctions. Another possibility is that ███████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████. Or perhaps TCS used the auspice of complying with the injunction to eradicate all evidence of its misdeeds. In any scenario, TCS's actions are difficult to explain or justify.

Accordingly, Epic raises its concerns with the Court through this response and requests that the monitor be immediately appointed (without further consideration of TCS's attempts to delay the appointment) and that the monitor's role be expanded to address TCS's actions as specified below.

I. **TCS Admits that Epic Documents Were Uploaded to TCS's Knowmax Portal And Made Available to the Entire Company**.

TCS assured the Court throughout the litigation that no Epic information went outside of the Kaiser environment. Dkt. No. 214 at 34 ("Nor is there any evidence that TCS disclosed the Alleged Trade Secrets to anyone outside of the TCoE engagement"); Dkt. No. 298 at 17 ("No TCoE employee shared information about Epic software with any members of the Med Mantra team or anyone else not working on Kaiser."); Dkt. No. 619 at ¶ 35 (TCS employees accessed UserWeb information "only in connection with the work they were doing for Kaiser.") TCS also tried to convince the Court that its employees' use of Epic information was solely for purposes of testing. Dkt. No. 615 at 1 ("a discrete group of employees violated TCS rules to simplify or speed up their work for Kaiser."); Dkt. No. 214 at 3 ("the undisputed facts show . . . these

documents were used solely for their testing work in providing services to Kaiser"); Dkt. No. 298 at 1-2 ("all of the access was for the purpose of testing Epic's products at Kaiser.")

Even after the jury found otherwise at trial, TCS remained steadfast in its positions in post-trial briefing and public statements, claiming that it never misused Epic information and owes no damages to Epic. ███████████████████████████████████████

███████████████████████████████████████████████████████████. Dkt. No. 936, Menon Decl., ¶¶ 11-12. ███████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████. The admission also raises numerous other questions.

First, ███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████. *See, e.g.*, Tr. Ex. 3, ¶ 3(c)(vi) ("You understand and agree that Epic's Program Property contains trade secrets of Epic protected by operation of law and this Agreement.  Consistent with that understanding and to protect the rights of Epic, You will . . . Notify Epic promptly and fully in writing of any person, corporation or other entity that You know has copied or obtained possession of or access to any of the Program Property without authorization from Epic.")

4

2449222

██████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
█████████████.

Second, TCS's new admission further confirms that TCS failed miserably in meeting its discovery obligations. TCS should have produced discovery regarding Epic documents available on Knowmax and what was done with those documents. Instead, TCS did not even search Knowmax as part of its discovery obligations. Dkt. No. 437 at 224:17-24 (Menon testimony that TCS did not search "Epic" on the Knowmax portal). ████████████████████ ████████████████████████. TCS knew all along where it should look, but chose instead to argue (and continues to argue) that Epic's claims are completely baseless and lack proof. Obviously, if Epic had known its documents were available for all of TCS to review and use without restriction, the discovery, trial and injunction phases of this case would have proceeded much differently.

What makes this even worse is that TCS witnesses confirmed that content cannot be uploaded to Knowmax inadvertently, but is always intentional because uploads must be approved by a Knowmax "champion" assigned to each group. Dkt. No. 403, Mohanty Dep. at 61; Dkt. No. 131, Badipatla Dep. at 47:11-48:14 ("there will be someone who will actually verify the content and then upload it so that becomes publicly available for anyone in TCS"); Dkt. No. 451, Purushotham Dep. at 39:21-40:4 ("they have to get it approved before

5

uploading"). ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████.

    TCS's actions not only violated its contractual obligations to Epic, but also usurped the duty of the to-be-appointed monitor, who would have reported the violations to the Court and to Epic. It now becomes clear why TCS rejected all of Epic's suggested appointments for the monitor position. The expected resultant delay in appointing the monitor allowed TCS to destroy evidence before it could be preserved. We will never know for sure what was in the information that was destroyed, but we strongly recommend that the monitor be appointed without regard to TCS's objections and sent forth immediately to determine what has happened with Epic's information since the verdicts were reached by the jury.

**II.    TCS Destroyed Hundreds of Computers and Deleted Entire Email Files.**

████████████████████████████████████████

████ Dkt. No. 936 at ¶ 6. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ considering that TCS searched only 16 of those computers during discovery, all the while insisting that only Northwest and National team members were relevant to the case. Dkt. No. 619 at ¶ 37 (TCS limited its investigation to the National and Northwest teams on the ground that "none but the National and Northwest teams actually had a possible

6

reason for the documents or information found on UserWeb"); *id.* at ¶ 68-71 (TCS searched so few computers on the ground that it was an "issue affecting the National and Northwest only" and TCS "had no indication that UserWeb documents had been obtained by . . . other Kaiser project teams.") Indeed, TCS went so far as to destroy "TCS information that TCS was entitled to retain." Dkt. No. 936 at ¶ 23.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████ Dkt. No. 936 at ¶ 25. ███████████████████████

███████████████████████████████████████████ when Epic struggled for months to get TCS to produce emails from a select number of employees. *See* Dkt. No. 318 at 2 (TCS trying to excuse its failure to comply with email discovery because restoring back-up tapes is "time consuming"); Dkt. No. 101 at 2 (same); Dkt. No. 94 (Epic Mot. to Compel); Dkt. No. 316 (Epic Mot. to Compel).

TCS's expedited search-and-destroy mission begs the question: why? If no possibility existed for those computers and email boxes to contain Epic information, as TCS previously professed, ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████.

TCS's likely justification for its nuclear attack on its own computers will be that it was simply complying with the injunction, which is not believable. TCS put minimal effort into complying with discovery obligations during the case, even when under Court order to "turn over every stone." ████████████████████████████████████████

7

2449222

███████████████████████████████████████

███████████████████.[1]

More likely, TCS seeks to impress the Court through its post-verdict actions while important motions are pending that seek to extinguish or lower the damages verdict, and the Court's imposition of monetary sanctions. ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████, or in an attempt to preempt any subsequent discovery by the monitor. Either way, TCS's actions are suspicious, especially considering the extreme measures and cost it took to destroy data — actions that directly contradict its strident positions of innocence.

\* \* \* \*

Due to TCS's highly unusual and inappropriate actions, Epic requests that the Court ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████.

---

[1] ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

2449222

Once this additional investigation is underway and the facts become more clear, Epic will return to the Court for additional guidance and with further suggestions about how to proceed in terms of further work on issues of contract breach and evidence spoliation.

| | |
|---|---|
| Dated: July 1, 2016 | */s/ Rick Richmond* |
| | Rick Richmond |
| | rrichmond@jenner.com |
| | Nick G. Saros |
| | nsaros@jenner.com |
| | Julie A. Shepard |
| | jshepard@jenner.com |
| | Kelly M. Morrison |
| | kmorrison@jenner.com |
| | JENNER & BLOCK LLP |
| | 633 West 5th Street, Suite 3600 |
| | Los Angeles, CA 90071 |
| | Tel: 213-239-5100 |
| | Fax: 213-239-5199 |
| | |
| | Anthony A. Tomaselli |
| | anthony.tomaselli@quarles.com |
| | Kristin G. Noel |
| | kristin.noel@quarles.com |
| | QUARLES & BRADY LLP |
| | 33 East Main Street, Suite 900 |
| | Madison, WI 53703 |
| | Tel.: 608.251.5000 |
| | Fax: 608.251.9166 |
| | |
| | *Attorneys for Plaintiff Epic Systems Corporation* |

2449222