IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EPIC SYSTEMS CORPORATION, a Wisconsin Corporation;<br><br>                                      Plaintiff,<br><br>                  v.<br><br>TATA CONSULTANCY SERVICES LIMITED, an Indian Corporation; and TATA AMERICA INTERNATIONAL CORPORATION (dba TCS America), a New York Corporation;<br><br>                                      Defendants. | Case No. 14-cv-748-wmc |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**

Defendants, Tata America International Corporation and Tata Consultancy Services Limited, submit this memorandum of law in opposition to Epic's request that the Court selectively take judicial notice of TCS's 2015–2016 Annual Report and news reports concerning statements made by the Chairman of TCS's board of directors during TCS's Annual Shareholders Meeting. (Dkt. 938.) As more fully explained below, Epic's request should be denied.

**INTRODUCTION**

Epic has a serious problem. In October 2014, it ran headlong into this lawsuit alleging that TCS took its alleged trade secrets and used them to build Med Mantra. That is what Mr. Guionnet told them, and they went with it. Over the course of more than a year of extensive (and hugely expensive and burdensome) discovery, it became clear that the central premise of Epic's case was false. TCS never used Epic's information for Med Mantra (or any other TCS software product). TCS never

NY01\AbbeM\4294966

used Epic's information for anything other than testing services for Kaiser. Since Epic could not show use of Epic's information other than for TCS's work for Kaiser, the Court ruled that Epic could not present its damage case—which assumed use to develop a competing product—to the jury. (*See* Dkt. 860.) Epic then convinced the Court to allow it to put on a damages case based on a theory it developed over the course of a lunch break. Epic somehow came away from this with a $940,000,000 damages finding. Pending before the Court is TCS's motion for judgment as a matter of law as to damages ("Rule 50(a) motion"). (*See* Dkt. 913–14.) Particularly since Epic now concedes that the damages case it was allowed to put on was *the same* as the damages case the Court ruled out of bounds only hours before, (*see* Dkt. 926, at 6), TCS's Rule 50(a) motion should be granted in all respects.

Enter Epic's June 30 request for judicial notice. Impliedly conceding that evidence must be relevant for the Court to invoke judicial notice, Epic says that TCS's recent Annual Report and statements by its chairman reported in the media are relevant to the Rule 50(a) motion. But, they are not. Evidence not in the record, and therefore not available to the jury, has no probative value in this context.

Epic no doubt realizes as much. As discussed below, Epic's request relies on a selective reading and mischaracterization of TCS's Annual Report, financial statements, and the news reports. Epic's request, although styled as a legal argument, is really nothing more than an ad hominem attack. It is clear that Epic wants the Court to believe that TCS is being "obstinate" or somehow flouting the

2

Court's authority in hopes of influencing the Court as it considers TCS's pending motion. Epic's improper tactics should be rejected.

In any event, TCS has not acted with recalcitrance. Indeed, in compliance with the Court's April 27, 2016, injunction, TCS undertook a massive and expensive effort to rid itself of any Epic information. TCS also took steps to avoid coming into contact with Epic information in the future. TCS even sacrificed its own data and information to meet the compliance deadline and ensure nothing of Epic's was somehow missed. These steps show TCS's respect for the Court and the futility of Epic's effort to suggest otherwise. As is its right, TCS has advanced (and will continue to advance) the arguments available to it under the law and the Court's prior rulings. In doing so, TCS is doing nothing out of the ordinary. Nor is TCS required, particularly on a record that shows no illicit use of Epic's information, to concede such wrongdoing.

**ARGUMENT**

**I.     TCS's Recent Statements, Made After The Close Of Evidence, Are Irrelevant, And The Court Should Not Take Judicial Notice Of Them**

A court may take judicial notice of facts not subject to reasonable dispute. Fed. R. Evid. 201(b). However, the inquiry does not end there. "[F]acts subject to judicial notice are not exempt from analysis under the other rules of evidence." *Sunstar, Inc. v. Alberto-Culver Co. Inc.,* No. 01 C 736, 2006 U.S. Dist. LEXIS 85678, at *9 (N.D. Ill. Nov. 16, 2006). This means, among other requirements, that a fact must be relevant under Rule 401 before a court may take judicial notice of it. *See, e.g., Maurer v. Speedway,* 774 F.3d 1132, 1135-36 (7th Cir. 2014) (court refused to take

3

judicial notice of irrelevant material); *Hennessy v. Penril Datacomm Networks,* 69 F.3d 1344, 1354-55 (7th Cir. 1995) (court refused to take judicial notice of a fact because it concerned irrelevant portions of the defendant's company).

The relevance requirement precludes judicial notice of the materials Epic wants the Court to make part of the record long after the trial ended. These materials and the information in them are irrelevant to TCS's Rule 50(a) motion as to damages, which must be decided based on the evidence available to the jury. Evidence the jury did not have is irrelevant to the Court's analysis of TCS's Rule 50(a) motion.

For example, in *Kimble v. Land Concepts, Inc.,* 2014 WI 21, 353 Wis.2d 377, 845 N.W.2d 395 (2014), the Wisconsin Supreme Court was called upon to assess whether a punitive damages award was excessive. The plaintiff made a motion seeking judicial notice of facts allegedly relevant to the potential damage the defendant's conduct might have caused, one of the factors in assessing a punitive damages award. 2014 WI 21, ¶58 n.22. The court denied the motion because the "supplemental information was not part of the record before the trial court." *Id*. As in *Kimble,* Epic's request to supplement the record post-trial should be denied.[1]

---

[1] A theme in Epic's post-trial briefing, reiterated in its request for judicial notice, is that TCS's revenues and earnings justify punitive damages in the hundreds of millions of dollars because TCS can afford to pay it. However, while a defendant's ability to pay punitive damages is sometimes a factor to consider, the "wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 427 (2003); *see also Kimble,* 2014 WI 21, at ¶70 n.26 (2014). Thus, even if marginally relevant, TCS's financial results cannot sustain the excessive punitive damages award here.

## II. Epic Misinterprets And Misstates The Content and Import Of TCS's Financials And Other Statements

In filling out its narrative that TCS is a recalcitrant company, Epic has put a spin on TCS's Annual Report and other statements that is misleading. At the very least, Epic does not appear to understand TCS's financial statements and terribly misreads them. Either way, the conclusions Epic draws from the material are erroneous.

First, Epic expresses outrage with the way TCS has accounted for the jury's damages finding. Epic argues that TCS "provides no discussion about why the jury's verdict would not be considered debt *or potential debt* other than TCS's 'belief that the claim will not sustain.'" (Dkt. 938, at 6) (emphasis added).[2]

TCS's financial statements are audited by Deloitte, well known to all as one of the "Big Four" auditing firms. Deloitte's opinion states that TCS's 2015–2016 financial statements "give a true and fair view in conformity with the accounting principles generally accepted in India, of the consolidated state of affairs of the Group as at March 31, 2016." (Dkt. 938-1, at 146.) Thus, whatever Epic's opinion of TCS's accounting treatment, that treatment has been reviewed by TCS's auditor and found to be compliant with the applicable standards.[3]

---

[2] Epic is not, of course, a TCS shareholder or a securities regulator. So, it is unclear why Epic believes itself to be in a position to critique TCS's accounting treatment. Similarly, Epic is also without standing to make an issue of TCS's executive compensation, or the statements in the Annual Report concerning the TCS Code of Conduct and the TCS Whistleblower Policy. (Dkt. 938, at 5-6 & n.4.) Also, none of these issues or statements are relevant to any issue before the Court.

[3] Epic also ignores the fact that TCS's financial statements are for the fiscal year ended March 31, 2016, which is prior to the date of the jury's damages finding that has not, in any event, been reduced to a judgment.

Second, Epic's interpretation is simply wrong. This case appears in the notes to TCS's financial statements under the heading "Contingent Liabilities"—*i.e.*, "potential debt", to use Epic's phrasing. Although Epic says that TCS provides "no discussion" about why the jury verdict has been treated as such, TCS did provide an explanation. The notes specifically refer to the Court's statement that it likely will reduce the damages amount and to TCS's intent to continue to exercise its legal remedies—*i.e.,* the case is not over yet:

> In October 2014, Epic Systems Corporation ('Epic') filed a legal claim against the Company in the Court of Western District Madison, Wisconsin for alleged unauthorised download and misuse of Epic's confidential information and trade secrets. In April 2016, the Company received an unfavorable jury verdict awarding damages totalling ₹ 6227.03 crores (US$940 million) to Epic which the trial judge has indicated his intent to reduce. On the basis of legal opinion and legal precedence, the Company expects to defend itself against the claim and believes that the claim will not sustain.

(Note 38(a) to TCS's 2015–2016 financials, Dkt. 938-1, at 185.)[4]

Finally, the notion that TCS is required to acknowledge wrongdoing in the manner Epic would like it to or make a public showing of remorse in order to avoid a windfall punitive damages award to Epic is simply incorrect.[5]

---

[4] Epic's reference to the media reports about statements by TCS's Chairman at TCS's shareholder's meeting similarly misconstrue the facts. Those statements accurately state the present posture of the case: TCS did not misuse Epic's property, there is no judgment in place, and the damages award is under review by the Court with the amount of damages, if any, yet to be determined.

[5] Epic tries to use the jury's large verdict as a validation of its assertion that TCS used Epic information to develop competing software products. It is not. Epic's counsel acknowledged in open court that it had no evidence that TCS did so.

As Epic notes, albeit only in a parenthetical to one of its case cites, deterrence is the goal of an award of punitive damages. Here, however, even if punitive damages were properly considered by the jury, a deterrence motive in no way justifies a punitive damages award of $700,000,000 (nor the $480,000,000 Epic is now trying to justify). The Court entered an injunction that required TCS to rid itself of all Epic information and take other steps to prevent any use of Epic's information. TCS has complied with the injunction at high cost in terms of money and time spent. (*See* Declaration of Ajit Menon, June 24, 2016, Dkt. 936.) This is not the behavior of a company that is being recalcitrant or that it is in need of deterrence.

Moreover, TCS's conduct at issue in this case lacked the maliciousness and reprehensibility that are a prerequisite to a jury's consideration and award of punitive damages. (*See* TCS's Rule 50(a) Motion, Dkt. 914, at 48.) The lack of reprehensibility in this record, along with the improbability of a recurrence, distinguishes this case from those that Epic cites. In those cases, the conduct at issue was patently egregious and, in some of the cases, an indicator of a high likelihood of future bad conduct. Those factors are not present here.[6]

---

[6] *See Fahrenberg v. Tengel*, 96 Wis.2d 211, 291 N.W. 2d 516 (1980) (defendant planned and orchestrated a burglary-for-hire); *Jacque v. Steenberg Homes, Inc.*, 209 Wis.2d 605, 563 N.W. 2d 154 (1997) (defendant intentionally trespassed over plaintiff's land to deliver a mobile home); *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436 (7th Cir. 1997) (school permitted principal to sexually harass female employees and a female student over a course of many years despite repeated notice of his conduct). In *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119 (7th Cir. 1987), the court indeed observed that "post-verdict recalcitrance" can be a factor in assessing punitive damages. But, in that case, the jury considered the defendant's statement that he would not hesitate to repeat the libelous conduct, before making its award. In any event, the conduct there was sufficient to justify an award of punitive damages. *Id.,* at 1142.

Also, the Wisconsin and other cases that Epic relies on predate the U.S. Supreme Court's *State Farm* decision. *State Farm* sets out a multiple-factor test for determining reprehensibility that looks to the nature of the conduct, not the defendant's subjective expressions or remorse or culpability, to determine reprehensibility. The *State Farm* factors are those Wisconsin courts now use to determine whether conduct is egregious enough to justify an award of punitive damages. *See, e.g.*, *Kimble*, 2014 WI 21, ¶46-47.

Finally, the trial is over. What matters is the record Epic made before the jury, not the record it wants to have based on a highly-jaundiced interpretation of TCS's Annual Report, accounting methodology, or statements reported in the press.

## CONCLUSION

For the reasons stated above, TCS respectfully requests that the Court deny Epic's request for judicial notice and award TCS such other and further relief as the Court deems to be just and proper.

**Dated:** July 18, 2016

By: /s Philip D. Robben
Paul F. Doyle
Philip D. Robben
Alison L. MacGregor
Kristina M. Allen
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
pdoyle@kelleydrye.com
probben@kelleydrye.com
amacgregor@kelleydrye.com
kallen@kelleydrye.com

Telephone: (212) 808-7800
Fax: (212) 808-7897

NY01\AbbeM\4294966

and

By: /s Barbara A. Neider
Barbara A. Neider
Meg Vergeront
STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, Wisconsin 53701-1784
bneider@staffordlaw.com
mvergeront@staffordlaw.com

Telephone: (608) 256-0226
Fax: (608) 259-2600

*Attorneys for Defendants Tata Consultancy Services Limited and Tata America International Corporation*