IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EPIC SYSTEMS CORPORATION,

                             Plaintiff,                        OPINION AND ORDER

    v.

                                                  14-cv-748-wmc

TATA CONSULTANCY SERVICES
LIMITED and TATA AMERICA
INTERNATIONAL CORPORATION d/b/a
TCA America,

                             Defendants.

---

There are a number of post-trial motions pending. In this opinion and order, the court addresses those motions concerning the court's entry of a permanent injunction (dkt. #888). Specifically, the court addresses: (1) plaintiff Epic Systems Corporation's motion to amend the injunction (dkt. #909); (2) the appointment of a monitor; and (3) the parties' recent filings concerning defendants' compliance, or lack thereof, with the injunction.

OPINION

I. Plaintiff's Motion to Amend Injunction

Plaintiff requests several changes to the permanent injunction, providing the court with a redlined version reflecting the proposed changes. The court will address each in turn. *First*, plaintiff seeks to include the jury's finding of breach of the Standard Consultant Agreement as an additional basis for ordering injunctive relief -- in addition to the two other bases already listed for misappropriation of trade secrets and the CAFA violation. Curiously, this proposed change is in the court's order explaining the breadth

and conditions of the permanent injunction, rather than in the language of the injunction itself. The court previously considered plaintiff's request but rejected it because of the lack of support of the availability of injunctive relief as part of the breach of contract claim. While the contract states that a violation of the Agreement may cause "irreparable harm," this serves as an insufficient basis to order injunctive relief, especially where the statutory claims provide expressly for that remedy. Moreover, plaintiff utterly fails to describe how it is prejudiced from the preamble to the injunction not listing the breach of contract claim as a basis for ordering injunctive relief. The inclusion of that claim does not substantively change the reach or requirements of the injunction. As such, that specific request is denied at this time as moot.

*Second*, Epic takes issue with the injunction remaining in effect for four years, seeking deletion of that reference. The court will maintain the four-year timeline, however, finding that any value of the confidential information, which was obtained in 2014, would be limited value by the end of the four-year period in 2020, or at least plaintiff has failed to demonstrate otherwise. Relatedly, and to be fair to Epic, the court will not impose the proposed two-year limit added by Epic to the redlined version at § 3.d.

*Third*, Epic seeks to amend the description of "Confidential Information" in § 2.d to include "any other Epic confidential information as defined in the parties' Standard Consultant Agreement (Trial Ex. 3) [that] TCS acquired from Epic personnel or by accessing UserWeb or Kaiser Permanente." Epic contends that this change is necessary because "TCS employees did not access and view only the documents that were actually

2

downloaded; rather, TCS employees viewed materials directly on the UserWeb and would also copy and paste into emails and word documents the contents of documents accessed through the UserWeb." (Pl.'s Br. (dkt. #910) 5.) The court understands plaintiff's concern, but instead of adopting Epic's proposed language, will simply add "including the content of the documents" after "the documents" in the definition. This specific request is, therefore, granted in part and denied in part.[1]

*Fourth*, Epic responds to the court's invitation to specify individuals who are not permitted to work on software development for TCS in § 3.d. The court will adopt plaintiff's proposal, finding the language sufficiently clear and narrow. To address TCS's concern about it being overbroad, the court, however, will insert "directly" before "supervised or managed." As such, this request is granted with a minor modification.

*Fifth*, Epic seeks to include a requirement that TCS provide written notice to all TCS employees about the permanent injunction. TCS did not oppose this change. As such, the court will adopt it as unopposed.

*Sixth*, Epic seeks to include language indicating that the costs of the monitor -- which the court placed on Epic -- could be shifted to TCS if TCS were to violate the injunction. The possibility of cost-shifting need not be spelled out in the injunction, since the court retains the authority to impose such payment as part of remedial relief should it find TCS in contempt. Nonetheless, the court sees no reason not to state

---

[1] The court will also correct the name of the Agreement from "Standard Consult<u>ing</u> Agreement" to "Standard Consult<u>ant</u> Agreement."

expressly the possibility of cost-shifting. Accordingly, the court will make that change, with the understanding that any shift in costs still rests within this court's discretion.

*Seventh*, as a minor request, Epic seeks to include language that the court retains jurisdiction to modify the injunction (in addition to enforcing it). TCS does not oppose this change. As such, the court will adopt it as well.

Consistent with the court's rulings, the amended permanent injunction appears below.

**II. Appointment of Monitor**

The permanent injunction includes the appointment of a monitor. Not surprisingly, the parties could not agree on a monitor. Epic submitted four possible monitors, including as its first pick, Samuel Rubin of Stroz Friedberg, LLC, who also served as an expert in this case. (Pl.'s Submission (dkt. #925).) For their part, defendants submitted Navigant Consulting, Inc. (Defs.' Submission (dkt. #923).) All of the proposed monitors appear qualified to fill the role. Rubin and his firm Stroz Freidberg have the advantage, of course, of already being familiar with the facts of this case, the technology involved, and TCS's system and practices for data management. TCS opposed Rubin's appointment on the basis of bias, arguing that he would "step into the monitoring role not as an objective third party but as Epic's expert." (Defs.' Submission (dkt. #923) 4.) The court does not agree that Rubin's prior experience with this case somehow biases him in a way that he would now exploit in the position of monitor to benefit Epic. Instead, his knowledge and prior experience will provide him with a significant head-start in providing the services contemplated by the permanent

4

injunction. Moreover, given that Epic will be directing the monitor's work and paying for the monitor's expenses, Rubin's selection is certainly the most efficient. As such, the court will appoint Samuel Rubin of Stroz Friedberg, LLC, as monitor, subject to the understanding that both he and his firm may not act as Epic's retained expert in any capacity going forward in this lawsuit.

### III. Defendants' Compliance with Injunction

Finally, TCS's Chief Security Officer Ajit Menon submitted a detailed declaration describing TCS's efforts to date to comply with the injunction as required by § 8 of the Permanent Injunction. (Dkt. #936.) In response, plaintiff complains that Menon's account further illustrates TCS's failings to conduct a timely investigation and take the necessary steps to assess the actual dispersion of Epic confidential information and the reach of the unlawful access. (Dkt. #939.) This concern, while legitimate, is beside the point. Stated another way, Epic's concern was addressed at trial and reflected in the jury's significant damages award. There is nothing further to be gained in its argument that TCS's steps taken post-trial, highlight its earlier failings. As for the report itself, the court is satisfied that TCS has taken the initial steps required by the injunction, and leaves to Mr. Rubin the job of confirming compliance.

ORDER

IT IS ORDERED that:

1) Plaintiff Epic System Corporation's motion to modify the permanent injunction (dkt. #911) is GRANTED IN PART AND DENIED IN PART.

2) The parties' joint motion for extension of time regarding their submission regarding appointment of a monitor (dkt. #915) is GRANTED.

3) The court appoints Samuel Rubin of Stroz Friedberg, LLC as the monitor as described in § 4 of the Amended Permanent Injunction detailed below.

AMENDED PERMANENT INJUNCTION

IT IS FURTHER ORDERED that plaintiff Epic Systems Corporation's request for entry of permanent injunction is GRANTED and an Amended Permanent Injunction pursuant to Federal Rule of Civil Procedure 65 is ENTERED as follows:

1. This Permanent Injunction shall remain in full force and effect for four years from its effective date of this order.
2. For purposes of this Permanent Injunction, the following terms apply:
   a. "Epic" shall mean plaintiff Epic Systems Corporation.
   b. "TCS" shall mean Tata Consultancy Services Limited and Tata America International Corporation.
   c. "Trade Secret" shall mean the documents contained in Trial Exhibit No. 1247, limited to those documents (or portions of such documents) that are a trade secret as defined in the Wisconsin Uniform Trade Secrets Act, Wis. Stat. § 134.90(1)(c).
   d. "Confidential Information" shall mean the documents, including the content of the documents, contained in Trial Exhibit Nos. 2100 and 2101 that (i) are not trade secrets; and (ii) are "confidential information" as defined in the parties' Standard Consultant Agreement (Trial Ex. 3).
3. Except as expressly set forth in the opinion above, TCS and their respective affiliates, successors, officers, agents, servants, employees, and attorneys and any and all other persons who are in active concert or participation with any of

them (all collectively referred to as "Enjoined Parties"), are permanently enjoined, anywhere in the world, from the following:

a. using any Epic Trade Secret or Confidential Information for any reason, including but not limited in the design, development, enhancement, or marketing of any TCS software providing solutions in the areas of electronic health records, electronic medical records, and hospital management systems, or any other healthcare software solutions, including but not limited to Med Mantra (as most broadly defined, including but not limited to, TCS-HIS, Med Mantra in use at Apollo Hospitals in India, British American Hospital in Mauritius, Tata Cancer Hospital in India, Tata Cancer Institute in India, and Med Mantra modules in development at DaVita Healthcare Partners, Inc. and Quest Diagnostics, Inc.) (collectively, "TCS EHR Products");

b. possessing or retaining any Epic Trade Secret or Confidential Information in any form, including on any servers or other electronic computer systems of TCS or any other electronic or hard-copy media at TCS;

c. accessing or attempting to access any non-public Epic servers or systems, including Epic' internet portal known as UserWeb; and

d. permitting any TCS employee or consultant or agent who performed software testing on Epic's software in connection with TCS's work for Kaiser, directly supervised or managed such testing, or otherwise had access to any Epic Trade Secret or Confidential Information, including, but not limited to Naresh Yallapragada, Venugopal Reddy, and Madhavi Mukerji, to work on, or assist in, directly or indirectly, the design, development, enhancement, or marketing of any TCS EHR Products.

4. For the next two years, unless extended by the court upon a showing of good cause, TCS shall not resist, hamper, delay, or otherwise interfere with the activities of a monitor to be appointed consistent with the procedure outlined in the above opinion. The monitor shall be paid by Epic and have unfettered access at any time, to monitor TCS's development and implementation of any TCS EHR Products to ensure that TCS does not improperly use any of Epic's Trade Secrets or Confidential Information, as described below. In particular, TCS shall permit the monitor to:

   a. Confirm that TCS employees, consultants, and agents do not have access to Epic's internet portal known as UserWeb or to any of Epic's Trade Secret or Confidential Information.

   b. Confirm that TCS does not possess or retain any Epic Trade Secret or Confidential Information on any of its servers, shared drives, shared domains, or other places of electronic information storage.

   c. Talk with any TCS employee who might be able to assist the monitor in determining whether Epic Trade Secret or Confidential Information was or is being used in the design, development, enhancement, or marketing of any TCS EHR Products. TCS shall provide the ombudsman or monitor with unfettered access to these TCS employees.

   d. Examine, evaluate, and analyze TCS's electronic information, including TCS's proxy logs, domain logs, active directory logs, software, servers, shared drives, and shared domains, to determine whether any Epic Trade Secret or Confidential Information was or is being used or is intended to be used in the design, development, enhancement, or marketing of any TCS EHR Products. TCS shall provide the monitor with unfettered access to this electronic information.

5. Epic shall have the ability to confidentially provide the monitor with the type of information Epic deems necessary to monitor TCS's development and implementation of any TCS EHR Product to ensure that TCS does not improperly use any of Epic's Trade Secret or Confidential Information.

6. Except by leave of court, the monitor shall not disclose the substance or outcome of its ongoing investigation, except for (1) the procedures or tasks undertaken; and (2) any evidence of violations of the permanent injunction.

7. TCS shall provide written notice to all TCS employees who performed work for Kaiser Permanente and all employees who work (or worked during the relevant time period) on the design, development, enhancement, or marketing of any TCS EHR Products, that the Permanent Injunction has been issued and its terms.

8. Within 60 court days of the effective date of this Permanent Injunction, TCS shall file and serve a report in writing and under oath setting forth in detail the manner and form with which TCS has complied with the Permanent Injunction.

9. Violation of the Permanent Injunction shall be subject to all applicable penalties, including contempt of court and shifting the reasonable expenses that Epic has paid for the monitor to TCS.

10. This court shall retain continuing jurisdiction over Epic, TCS and the Enjoined Parties and the action for the purpose of enforcing or modifying the Permanent Injunction.

Entered this 2nd day of November, 2016.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge