IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EPIC SYSTEMS CORPORATION,

                           Plaintiff,                     OPINION AND ORDER

v.

                                                    14-cv-748-wmc

TATA CONSULTANCY SERVICES
LIMITED and TATA AMERICA
INTERNATIONAL CORPORATION d/b/a
TCA America,

                           Defendants.

---

After summary judgment, a 10-day trial, an order entering an injunction, and an extensive opinion addressing remaining post-trial motions, the court entered judgment in favor of plaintiff Epic Systems Corporation in the amount of $420 million. In response, defendants Tata Consultancy Services Limited and Tata America International Corporation (collectively "TCS"), filed a sweeping motion pursuant to Federal Rules of Civil Procedure 50(b) and 59, largely repeating the same arguments previously raised in its Rule 50(a) motion and previously rejected by the court. (Dkt. #996.) In more cursory fashion, defendants also move for reconsideration of the court's order granting plaintiff's motion to dismiss defendants' counterclaims. For the reasons that follow, the court will deny both motions.

OPINION

I. Challenges to Liability Findings

Under Rule 50, judgment may be granted as a matter of law where there is no "legally sufficient evidentiary basis" to uphold the jury's verdict on that issue. Fed. R. Civ.

P. 50(a). More specifically, the court is to "examine the evidence presented, combined with any reasonably drawn inferences, and determine whether that evidence sufficiently supports the verdict when viewed in the light most favorable to the non-moving party." *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 835 (7th Cir. 2013). In doing so, the court is not to make credibility determinations or weigh the evidence. Rather, the court must assure that more than "a mere scintilla of evidence" supports the verdict, *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007), reversing "only if no rational jury could have found for the prevailing party," *AutoZone, Inc.*, 707 F.3d at 835. Moreover, "[b]ecause the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion." *Wallace v. McGlothan*, 606 F.3d 410, 418 (7th Cir. 2010); *see also Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 407 (7th Cir. 2010) (refusing to consider the defendant's argument that plaintiff failed to demonstrate that he suffered an adverse employment action, in part, because the defendant did not raise argument in Rule 50(a) motion); Fed. R. Civ. P. 50 cmt. 1991 Amendments ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion.").

Defendants also move for a new trial under Rule 59, which "may be granted only if the jury's verdict is against the manifest weight of the evidence." *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006) (citing *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 545 (7th Cir. 2003)). To meet this standard, defendants must demonstrate that no rational jury could have rendered a verdict against them. *See King*, 447 F.3d at 534 (citing *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 926 (7th Cir. 2004)). Here, again,

the court must view the evidence in a light most favorable to plaintiff, leaving issues of credibility and weight of evidence to the jury. *King*, 447 F.3d at 534. "The court must sustain the verdict where a 'reasonable basis' exists in the record to support the outcome." *Id.* (quoting *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004)).

As further context, during the course of this bifurcated trial, defendants moved for judgment as a matter of law under Rule 50(a). The court implicitly denied these motions by allowing both the liability and the damages phases to go to the jury. After the verdict, the parties extensively briefed defendants' arguments, with full knowledge of the jury's verdicts, and the court ruled on that motion before entering judgment. As such, it is odd for defendants to file another motion, largely repeating verbatim their prior arguments, without, for the most part, acknowledging the court's prior rulings. Rather than repeat its prior explanation for rejecting defendants' arguments, the court, for the most part, will simply refer to its Rule 50(a) opinion and order.

### A. Proof of "Actual Damages"

Defendants argue that the court should enter judgment in their favor on any claims that require a showing that Epic suffered "actual damages" in the form of "losses or other comparable harm." (Defs.' Opening Br. (dkt. #997) 18.) Defendants contend that plaintiff's sole ground for compensatory damages was a disgorgement of benefit theory in connection with its unjust enrichment claim. As such, defendants argue, plaintiff failed to present evidence of actual damages to support its breach of contract, fraudulent misrepresentation, unfair competition, Computer Fraud and Abuse Act ("CFAA") and deprivation of property / civil theft claims.

As an initial matter, defendants continue to blur the distinction between a finding of injury, required for some but not all of the claims, and a finding and measurement of damages. *See United States v. Sapoznik*, 161 F.3d 1117, 1119 (7th Cir. 1998) ("But the question of causation is different, in criminal as in civil law, from the question of quantification. (In tort law the difference is between the fact of injury and the amount of damages.)"). For example, to prove a breach of contract claim under Wisconsin law, the plaintiff need not prove any injury, as this court previously explained. (*See* 3/2/16 Op. & Order (dkt. #538) 46 n.36.) The fact that the jury found defendants *liable* as to all of these claims does not mean the jury was obligated to award damages on all claims. Indeed, the actual damages award more likely reflects the finding of liability on the unjust enrichment claim, and, specifically, plaintiff's disgorgement of benefit theory. Regardless, as plaintiff points out in its response, none of these claims required proof of the *type* of damages defendants contend is necessary for a finding of liability.

As for proof of damages specifically, while defendants are correct that a plaintiff may recover out-of-pocket losses for its fraudulent misrepresentation and unfair competition claims, that is the not the *sole* available basis of recovery. Instead, a plaintiff may seek damages in the form of the value of the benefit received through the commission of the tort, which is essentially the same as the unjust enrichment disgorgement of benefits theory. *See Pro-Pac Inc. v. WOW Logistics Co.*, 721 F.3d 781, 786 (7th Cir. 2013) (damages for the "value of the benefit" unjustly received are available for tort claims regardless of whether the plaintiff formally alleged an unjust enrichment claim). Similarly, plaintiff's deprivation of property / civil theft claim under Wis. Stat. § 895.446 requires that a person

suffer "damage or loss," but the statute provides that "actual damages" can include the retail value of stolen property, which is analogous with a damages claim premised on the value of the trade secrets and confidential information taken by defendants.

Defendants' challenge to an award on plaintiff's CFAA claim fails for an additional reason. While the CFAA requires that a civil plaintiff suffer "damage or loss," 18 U.S.C.A. § 1030(g), the term "loss" includes:

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

*Id.* at § 1030(e)(1). Here, defendants stipulated to plaintiff's evidence of a $9,277 loss. (Pl.'s Opp'n (dkt. #1007) 26 (citing Trial Tr. (dkt. #896) 89 (counsel for defendants stating that they are going to "drop the whole matter of . . . the loss" under CFAA claim and the court responding that it will delete the instruction)).) Having stipulated to this loss, defendants cannot now challenge plaintiff's failure to prove "actual damages."

**B. Failure to Instruct on "Actual Damages" Element**

Closely related to the first challenge, defendants further argue that the court should grant judgment in their favor on the above-mentioned claims because the jury was never asked to find, and never found, that Epic suffered "actual damages." Because the court has rejected defendants' argument that such a finding was required as to each of these claims, however, the court similarly rejects any argument based on the court's failure to instruct the jury or the lack of a jury finding. Critically, with respect to the damages award, the

5

jury was instructed properly that they could award damages for "the value of the benefits obtained by TCS because of TCS's wrongful conduct." (Damages Instr. (dkt. #872) 3.)

**C. Misappropriation of Trade Secrets Claim**

Next, defendants again challenge the jury's finding of liability as to the misappropriation of trade secrets claim, Wis. Stat. § 134.90, on the basis that plaintiff failed to demonstrate that it protected the secrecy of these alleged trade secrets. The court previously considered and rejected this argument, and defendants offer no meritorious basis for revisiting it. (*See* 9/29/17 Op. & Order (dkt. #976) 4-5.)

**D. Unfair Competition and Unjust Enrichment Claims**

Defendants offer three bases for judgment in their favor as to these claims. *First*, defendants contend that plaintiff's unjust enrichment claim fails as a matter of law because the contract between TCS and Epic bars such a claim. Plaintiff contends that this challenge has been waived, having failed to raise it in their original Rule 50(a) motion. However, where the challenge is purely a legal challenge -- not a sufficiency of the evidence or a jury instruction challenge -- the court agrees with defendants that it need not be raised in a Rule 50(a) motion. *See Havco Wood Prod., LLC v. Indus. Hardwood Prod., Inc.*, No. 10-CV-566-WMC, 2013 WL 1497429, at *3 (W.D. Wis. Apr. 11, 2013) (explaining that where a matter of law is raised as a basis for relief, there is no prejudice to the nonmovant) (citing *Warlick v. Cross*, 969 F.2d 303, 308 (7th Cir. 1992)).

Even so, this first challenge fails on its merits. The parties' contract did not govern TCS's impermissible access through the Epic UserWeb portal. Indeed, the record

demonstrates that TCS was denied direct access to the UserWeb *despite* its repeated requests. (Trial Ex. 296 at 3 (TCS presentation explaining that because "TCS is not an Epic partner . . . they are not allowed to access Epic Systems Userweb Portal"); Trial Ex. 303 at 6 (TCS acknowledging that because it "could not reach an agreement with EPIC," TCS associates are not "allowed to connect to the EPIC User Web").) Because of this, not only did the contract not cover TCS's impermissible use, but there was no reason for Epic to negotiate away a contractual remedy for unjust enrichments arising out of a fundamental breach of that contract. Regardless, even if recovery were only available as a breach of contract damage, the jury found just such a breach and was entitled to find the benefit conferred on defendants as a result of that breach was the best measure of damages. (*See* Damages Instr. (dkt. #872) 3 (instructing the jury that they may award Epic "the value of the benefits obtained by TCS because of TCS's wrongful conduct," and specifically instructing them that "the appropriate remedy may be the benefits, profits, cost savings, or other advantages gained by TCS because of its use of Epic's confidential information or trade secrets").)

*Second*, defendants argue that there was insufficient evidence from which a reasonable jury could find a benefit conferred on defendants, namely that defendants used the information obtained to "develop competing software." (Defs.' Opening Br. (dkt. #997) 29.) In its prior order, the court extensively addressed both the evidence supporting a finding of improper use and what kind of use was required to support a finding of liability as to unjust enrichment and an award of damages on this claim or breach of contract. (9/29/17 Op. & Order (dkt. #976) 4-5 (detailing evidence to support a finding of improper

7

use); 9-10 (explaining evidentiary basis for jury's award of compensatory damages based on the competitive analysis).) Defendants have advanced no reason for the court to revisit this analysis.

*Third*, with respect to the unfair competition claim, defendants argue that plaintiff failed to put forth any evidence of a competitive use to sustain the jury verdict on that claim. Here, too, as the court explained previously, there was ample evidence to support the jury's award of compensatory damages based on TCS's development of its comparative product analysis, which gave it a leg up in developing both an entry strategy into the U.S. health software market and improving the competitiveness of its Med Mantra software product. (*Id.* at 9-10.)

### E. Fraud, CFAA and Deprivation of Property Claims

Defendants also raise various challenges to the jury's finding of liability on plaintiff's fraud, CFAA and deprivation of property claims. *First*, defendants challenge plaintiff's deprivation of property claims under Wis. Stat. § 895.446 because there was no "movable property" involved. The court previously considered this argument and rejected it, and again sees no grounds for revisiting it. (9/29/17 Op. & Order (dkt. #976) 6 (citing 4/1/16 Op. & Order (dkt. #776) 7-9).)

*Second*, with respect to the fraudulent misrepresentation claim, defendants argue that judgment should be entered in their favor because plaintiff failed to present evidence of their intent to induce Epic to do something that would cause it economic harm. In particular, defendants argue that the only evidence introduced was their intent to obtain information to help their customer Kaiser. The court previously addressed this argument

as well, explaining that the test is whether Epic relied on the misrepresentation and whether its reliance was reasonable. Having already rejected defendants' framing of the legal requirements, defendants offer no further basis to challenge the jury's finding with respect to this claim. (*See* 9/29/17 Op. & Order (dkt. #976) 6-7 (rejecting same argument in Rule 50(a) motion).)

*Third*, and weakest of all, defendants argue that there is no evidence to support the jury's finding that TCS employees shared passwords with an intent to deceive in violation of the CFAA. Again, this is a well-worn ground, and defendants offer no new basis to challenge the court's previous finding of more than sufficient evidence to conclude that TCS employees were "specifically motivated to improperly use other's passwords for an improper purpose (*i.e.*, that TCS access UserWeb documents for a purpose other than to enable TCS employees to do their jobs for their mutual customer Kaiser)." (*Id.* at 7; *see also id.* at 18 (describing TCS employees' widespread, improper use).)

### F. Adverse Inference Instruction

Next, defendants seek judgment as a matter of law on the basis that the court's adverse inference instruction was too broad.[1] Specifically, defendants argue that the adverse inference instruction was a "kind of wild card," invoked to "fill complete holes in the plaintiff's proof." (Defs.' Opening Br. (dkt. #997) 34.) There are several problems

---

[1] Defendants also challenge the court's decision permitting an adverse inference instruction and allowing Sam Rubin to testify, since his testimony was premised on the adverse inference instruction. For the reasons previously provided, there were good grounds to provide the adverse inference instruction. (3/23/16 Op. & Order (dkt. #709).) Defendants' briefing provides no basis for reconsidering that decision.

9

with defendants' argument. Initially, as the court previously explained, plaintiff submitted ample evidence to support the jury's findings even without the benefit of the adverse inference instruction. (9/29/17 Op. & Order (dkt. #977) 4-6 (describing evidence to support a jury finding as to the various claims).) More importantly, the jury was properly instructed as to the requirements before making any adverse inference, as well as the reasonable inference the jury may make based on that finding. (*See* Closing Instr. (dkt. #858) 3-4.) Third, plaintiff submitted an evidentiary basis for the jury to conclude that an adverse inference was appropriate (namely, evidence that defendants failed to timely preserve web proxy logs and other electronic data, coupled with evidence of defendants' own, deliberate failure to conduct its own timely investigation) after being put on notice of possible breaches and acts of fraud by its client, Kaiser.

**G. Impact on Liability of $100 Million Reduction in Damages Verdict**

In its prior opinion and order, the court reduced the compensatory damages award by $100 million, finding that there was not a sufficient evidentiary basis to support the category of damages for defendants' use of "other information." (9/29/17 Op. & Order (dkt. #976) 10-12.) From this decision, defendants now argue that "if the jury found liability on the conduct that was insufficient to support the $100 million award, the underlying liability finding is invalid." (Defs.' Opening Br. (dkt. #997) 37.) This argument is frivolous. This case was bifurcated, with the jury determining liability *before* hearing any evidence or argument or being instructed on damages. As such, those liability findings stand alone, separate and apart from the subsequent determination to award Epic $140 million for use of the competitive analysis and $100 million for use of "other

information." The court sees no basis for reconsidering the jury's liability determinations, simply because there was an insufficient basis to assess substantial monetary damages for use of "other information" wrongfully taken by the defendants.

### H. New Trial

Alternatively, defendants seek a new trial on liability in a cursory fashion under Federal Rule of Evidence 59. Having found no merit to their arguments in support of judgment as a matter of law in defendants' favor, the court similarly finds no reason to grant a new trial.

## II. Challenges to Damages Verdict[2]

### A. Evidence of Use of Trade Secrets to Create Comparative Analysis

Defendants argue that to the extent the trade secrets claim was the basis for the jury's damages award, Epic failed to offer any evidence to support a finding that stolen trade secrets were used in making the comparative analysis. Specifically, defendants contend that the testimony of Epic's officer, Stirling Martin, and expert, Wes Rishel, was insufficient to establish a link between the downloaded UserWeb documents containing trade secrets and defendants' development of their comparative product analysis. The court disagrees. Martin testified credibly about the substantial value and importance of the Foundations documents, and in particular the configuration component of

---

[2] Defendants renew their argument that the damages case as a whole was unfair in light of the court's original decision to strike the damages phase of the case. The court already rejected this argument for reasons laid out in its prior opinion and order and will not revisit it again. (*See* 9/29/17 Op. & Order (dkt. #976) 8-9.)

11

Foundations. This formed a sufficient basis for the jury to conclude that defendants used Epic trade secrets in developing their comparative analysis. (Trial Tr. (dkt. #907) 70-71; *see also* Trial Tr. (dkt. #900) 14-15, 27-28; Trial Tr. (dkt. #889) 140.)

While the Seventh Circuit in *IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581 (7th Cir. 2002), rejected the plaintiff's attempt to label its software *in its entirety* a trade secret, here, Epic identified specific documents containing closely guarded trade secrets that cost hundreds of millions to develop and protect, *and* it adequately tied defendants' unauthorized access to those documents to the development of an arguably valuable comparative analysis. Nothing more was required. Moreover, as this court has repeatedly explained, the compensatory damages award could extend beyond the value of the trade secrets to encompass the value of other confidential information obtained improperly. (9/29/17 Op. & Order (dkt. #976) 14.)[3]

### B. Britven's R&D Theory

Defendants also challenge the jury's compensatory damages award, arguing that plaintiff's expert Thomas Britven's testimony relied on an assumption not borne out by the evidence -- that defendants "actually used Epic's confidential information for competitive advantage." (Defs.' Opening Br. (dkt. #997) 49.) The court already addressed this argument above, as well as in prior opinions, and found an ample evidentiary basis for

---

[3] Defendants again challenge the court's decision to prevent defendants' last-minute introduction of evidence supposedly showing that the comparative analysis could have been compiled by publicly-available information. Having amply explained its reasoning for that decision, based primarily on defendants' repeated discovery violations, the court sees no reason to expound on this challenge further. (9/29/17 Op. & Order (dkt. #976) 13-14 (citing 3/23/16 Op. & Order (dkt. #703) 7-8).)

the jury to conclude that defendants used plaintiff's trade secrets and other confidential information to develop the comparative analysis, in addition to informing defendants' U.S. entry strategy and improving its Med Mantra product. (*See supra* Opinion § I.D (citing 9/29/17 Op. & Order (dkt. #976) 4-5, 9-10, 12)).

Nevertheless, defendants persist in arguing that Britven's testimony did not establish that the jury's award actually reflects defendants' cost savings in using plaintiff's confidential information. To the contrary, as explained in the court's prior opinion and order, plaintiff provided an adequate evidentiary basis for the jury to award $140 million in compensatory damages under plaintiff's avoided R&D theory. (9/29/17 Op. & Order (dkt. #976) 9 (setting forth evidence that "the cost of developing this information was roughly $200 million, but crediting lower costs for IT work in India would still cost $130 to $140 million").) As this court has further, repeatedly explained, defendants need not have been successful or profitable in their use of Epic's confidential information to allow for this award. (*Id.* at 12-13 (citing Restatement (Third) of Restitution and Unjust Enrichment § 51 (2011); *Cosgrove v. Bartolotta*, 150 F.3d 729, 734 (7th Cir. 1998)).)

### C. Curative Instruction

Next, defendants challenge the court's failure to give a curative instruction as requested by defendants after the closing arguments on liability. Defendants had requested that the court instruct the jury based on a reference made by plaintiff's counsel during the closing argument to the effect that defendants now had Epic trade secrets "just sitting . . . somewhere on a shelf" to be used in the future in developing products. (Defs.' Opening Br. (dkt. #997) 56 (citing Trial Tr. (dkt. #905 at 34); *see also id.* at 98 ("Why would TCS

think it's okay to hide Epic's information until this case is over and then take it off the shelf and aggressively pursue the U.S. market?").) Specifically, defendants proposed the following instruction:

> As you may recall, to prove its unjust enrichment claim, Epic must prove by a preponderance of the evidence that, among other things, it conferred a benefit upon TCS. If the thing that a plaintiff claims is a benefit in fact has no value until it is actually used by the defendant, then the defendant has not been unjustly enriched by mere possession of that thing.

(Defs.' Opening Br. (dkt. #997) 57 (citing Defs.' Request (dkt. #844) 2-3).)

In contrast, the liability instruction for the unjust enrichment claim correctly informed the jury that it had to find a "benefit conferred upon TCS by Epic's confidential non-trade secret information" and that "[a] loss to the plaintiff without an actual benefit to the defendant is *not* recoverable as an unjust enrichment." (Liability Closing Instr. (dkt. #858) 10-11.) As such, defendants' proposed curative instruction was not necessary. More critically -- since this challenge really concerns the jury's award of *damages* -- the jury was further and properly instructed in that phase of the trial that "the value or threat of *future* use, including future sales, does not serve as a basis for an award of compensatory damages, but is rather addressed by the court's injunction." (Suppl. Damages Instr. (dkt. #873) 1.) As such, the jury was appropriately instructed, and defendants were in no way prejudiced by the court's refusal to give the specific curative instruction they requested.

### D. New Trial

Finally, as they did in challenging the liability verdict, defendants move in a cursory fashion for a new trial on compensatory damages. Having rejected the specific bases described above, the court similarly will deny that motion.

## III. Challenges to Punitive Damages Award

### A. No Waiver

With respect to the jury's punitive damages award, defendants initially contend that they did not waive any challenge because they objected to the punitive damages instruction in their pre-trial submissions, while acknowledging that they never moved for judgment as a matter of law. The court agrees that this early objection would preserve a general challenge to a punitive damages award, although any challenge specific to plaintiff's failure to meet its evidentiary burden would be waived by defendants' failure to bring a timely Rule 50(a) motion. Regardless, defendants' challenges have no merit, as the court explained in its prior opinion and order, and briefly summarizes below.

### B. Availability of Punitive Damages

Defendants argue that punitive damages are not available because there are no "actual damages," essentially repeating the argument made at the beginning of their brief. For the reasons explained above, the court finds no merit in this argument (*see supra* Opinion § I.A) and, therefore, rejects it as a basis for challenging the punitive damages award.

Defendants also argue that a punitive damages award was only available if the compensatory damages award was premised on plaintiff's misappropriation of trade secrets,

15

fraudulent misrepresentations and unfair competition claims because only those claims permit an award of punitive damages under Wisconsin law. As plaintiff explains in its opposition brief, Wisconsin law also allows for the possibility of an award of punitive damages in cases, such as here, where the *compensatory* damages award is restitutionary in nature, and a defendant's conduct merits such an award. (Pls.' Opp'n (dkt. #1007) 81 (discussing *Pro-Pac, Inc. v. WOW Logistics Co.*, 721 F.3d 781, 788 (7th Cir. 2013) ("Regardless of whether the bankruptcy court awards damages premised on gain to WOW (i.e., restitutionary damages) or loss to Pro–Pac (i.e., compensatory damages), punitive damages are also available, if otherwise appropriate.")).)

### C. Legally Sufficient Basis

Defendants next argues that plaintiff failed to put forth evidence that their conduct was "willful and malicious," a necessary finding for any punitive damages award premised on misappropriation of trade secrets, or that they acted with an intentional disregard for Epic's rights, as required to support a finding of punitive damages under plaintiffs' common law claims.

Because defendants failed to raise either a challenge to the jury instruction or to the sufficiency of the evidence in a proper pre-verdict Rule 50(a) motion, however, the court agrees with plaintiff that this challenge has been waived. (*See* 9/29/17 Op. & Order (dkt. #976) 15.) For the reasons previously provided, there was nevertheless ample evidence for the jury to conclude that defendants acted with an intentional disregard of Epic's rights. (*Id.* at 16-17.)

**D. Impact of Vacating $100 Million Award**

Defendants further argue that the punitive damages award must be vacated because of the court's reduction of the compensatory damages award, reasoning that "we know that when the jury determined that punitive damages were warranted, it clearly had in mind a broader range of uses than that which was legally sustainable. And we cannot now know whether these additional (speculative) uses of the information were material to the jury's determination to award punitive damages or to the amount of those damages." (Defs.' Opening Br. (dkt. #997) 67.) Nonsense. The court's decision vacating a portion of the compensatory damages award does not undermine the jury's award of punitive damages, because the jury was not instructed to tie punitive damages to a particular type of use of Epic's trade secrets and confidential information, nor to defendants' use more generally. Moreover, the court previously applied the cap under Wis. Stat. § 134.09(4)(b) and § 893.043(6) to limit the punitive damages award to no more than two times the compensatory damages award. (9/29/17 Op. & Order (dkt. #976) 17.)

**E. Grossly Excessive and Due Process Challenge**

Finally, defendants contend that the punitive damages award is grossly excessive and in violation of federal and state law requirements. The court has already considered and rejected these concerns in depth in its prior opinion and order. (9/29/17 Op. & Order (dkt. #976) 17-22.)[4]

---

[4] For these same reasons, the court also rejects defendants' request for remittitur.

**IV. Motion for Reconsideration of Order Dismissing Counterclaim**

In addition to challenging the jury's verdict and entry of judgment on plaintiff's clams, defendants seek relief from the court's dismissal of defendants' counterclaims, arguing that "[a]t a minimum, TCS should have been permitted to seek discovery on its counterclaims and put in evidence in support of them." (Defs.' Original Br. (dkt. #997) 83.) As set forth in its opinion and order on plaintiff's motion to dismiss defendants' counterclaims, the jury's finding of liability and defendants' own representations made during the trial on plaintiff's claims undermine defendants' ability to allege in good faith necessary elements of their counterclaims. (9/29/17 Op. & Order (dkt. #977) 12-14.) As such, the decision to dismiss these counterclaims was not based on any evidentiary failing -- which would be an improper consideration at the pleading stage -- but rather a defect in the pleadings themselves, as described in detail in that decision. (*Id*.) Defendants offer no reason to reconsider that ruling here.

ORDER

IT IS ORDERED that defendants Tata Consultancy Services Limited and Tata America International Corporation's motions for judgment as a matter of law pursuant to Fed. R. Civ. Proc. 50(b), for a new trial pursuant to Fed. R. Civ. Proc. 59 and for reconsideration of dismissal of counterclaims pursuant to Fed. R. Civ. Proc. 60 (dkt. #996) are DENIED.

Entered this 22nd day of March, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge