IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EPIC SYSTEMS CORPORATION,

                Plaintiff,

v.

TATA CONSULTANCY SERVICES
LIMITED and TATA AMERICA
INTERNATIONAL CORPORATION d/b/a
TCA America,

                Defendants.

OPINION AND ORDER

14-cv-748-wmc

---

      Following a multi-week, bifurcated jury trial, defendants Tata Consultancy Services Limited and Tata America International Corporation ("Tata") appealed this court's original entry of final judgment in plaintiff Epic System Corporation's favor in the amount of $420 million -- consisting of $140 million in compensatory damages and $280 million in punitive damages -- along with other forms of injunctive relief.  (Judgment (dkt. #978).) On appeal, the Seventh Circuit affirmed that judgment in all respects except for the amount of punitive damages awarded, concluding that the amount of $280 million was "constitutionally excessive," even though reduced by 60% from the jury's award of $700 million to comport with the 2:1 monetary cap on a punitive award related to a compensatory damages award under Wisconsin law, Wis. Stat. § 895.043(6).  *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1124 (7th Cir. 2020), *cert. denied*, 142 S. Ct. 1400 (2022).  Instead, after applying the evidence of record to "guideposts" articulated by the Supreme Court in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 539, 575 (1996), the Seventh Circuit found that "the ratio relative to the $140 million

compensatory award should not exceed 1:1" and remanded the case to this court to "amend its judgment and reduce punitive damages to, at most, $140 million." *Id.* at 1145.

Accordingly, on remand, this court directed the parties to brief "why the court should not award $140 million in punitive damages." (Dkt. #1036.)  In their submissions, defendants present an exhaustive challenge, while largely ignoring that:  (1) a civil jury awarded punitive damages in this case in the amount of $700 million; (2) this court already imposed a statutory cap of $240 million for punitive damages; (3) this court also considered TCS's multiple challenges to the jury award, *including* the punitive damages award in post-trial briefs; *and* (4) the Seventh Circuit similarly considered these same arguments, reversing only as to the court's consideration of Tata's constitutional challenge and even then, finding most of its arguments unpersuasive.  For its part, plaintiff maintains that the Seventh Circuit effectively remanded for entry of punitive damages in the amount of $140 million, but opted not to amend the judgment itself given the complicated nature of that judgment as a whole, including an award of injunctive relief.

For these reasons, neither side's submissions are very helpful.  The Seventh Circuit plainly charged this court to exercise its discretion on remand and enter an award up to a constitutional maximum of $140 million *in light of* the record in the case as a whole.  Regardless, the court remains unconvinced by the great bulk of defendants' various arguments to reduce the punitive award further, and for the reasons that follow, will award plaintiff $140 million in punitive damages and enter an amended final judgment consistent with that award.

OPINION

After considering and rejecting defendants' arguments with respect to the availability of punitive damages in this case, as well as their statutory and common law challenges to this court's $280 million award, the Seventh Circuit turned to defendants' constitutional challenge to that award.  Reviewing the *Gore* "guideposts," the Seventh Circuit concluded that "[t]he facts and circumstances of this case do not justify awarding $280 million in punitive damages," largely relying on the fact that (1) the "compensatory damages here are high," and (2) while "TCS's conduct was reprehensible," it was "not to an extreme degree."  *Epic*, 980 F.3d at 1144.  Based on this analysis, the court concluded that "the maximum permissible award of punitive damages in this case is $140 million – a 1:1 ratio relative to the compensatory damages award." *Id.* at 1145.

In their response to the court's order directing briefing on remand, defendants rehash the same arguments made previously to this court:  Epic only suffered "uncertain, minor economic harm"; a $140 million punitive damages award would make this case an outlier in Wisconsin and other jurisdictions; and the court should consider the significant injunctive relief awarded in crafting a punitive damages award.  (Defs.' Opening Br. (dkt. #1040).)   Finally, ignoring altogether the ceiling suggested by the Seventh Circuit, defendants contend that an award of between $10 and $25 million would be appropriate.

As Epic points out in response, "TCS acts as if it is writing on a clean slate, and invites the Court to do the same." (Pl.'s Opp'n (dkt. #1041) 7.)  Both this court and the Seventh Circuit considered and rejected defendants' arguments against an award of any punitive damages, as well as their arguments for significantly reducing the award to the

3

amount of defendants' proposed range of $10 to $25 million. Specifically, this court concluded that: punitive damages were available; there was a legally sufficient basis for the jury's punitive damages award, albeit reducing it to reflect a reduction of the jury's compensatory damages award and to bring it into line with Wisconsin's 2:1 statutory cap and the *Gore* guideposts. (9/29/17 Op. & Order (dkt. #976) 15-22; 3/22/19 Op. & Order (dkt. #1022) 15-17.) While the Seventh Circuit reversed as to the court's constitutional analysis under *Gore* and *Rainey v. Taylor*, 941 F.3d 243 (7th Cir. 2019), it did not upset the remainder of this court's reasoning.

Even as to this last constitutional safeguard, the Seventh Circuit agreed that Epic had met its burden of proof under the first and most important *Gore* guidepost: establishing the reprehensibility of Tata's conduct. *Epic*, 980 F.3d at 1141. In particular, viewing the evidence as the jury obviously did, the Seventh Circuit found that: Tata knew it lacked authority to access much of Epic's confidential information; multiple Tata employees undertook a deliberate subterfuge to gain repeated, unauthorized access to, download and use extensive confidential information to shortcut years of Epic's painstaking testing and development of software to bring a product to the health care market that could effectively compete with Epic's suite of features; when one of Tata's own, senior officials became concerned that its sudden leap forward in healthcare software design and competitiveness was likely explained by a massive, cynical breach of safeguards established by Epic, he was told to stand down, ignored and ultimately disciplined; when Tata's and Epic's joint customer, Kaiser, as well as Epic. also began to question signs of this breach, Tata's employees lied repeatedly about what they had done and Tata

4

repeatedly refused to investigate; and, even after Tata's misconduct had begun to come to light, it failed to preserve documents, allowed others to be destroyed, and continued to proffer employees who doubled down by continuing to lie about their actions under oath. The Seventh Circuit also credited that wholly apart from the jury's award of disgorgement, Epic had itself been injured by Tata's conduct, albeit by an amount difficult to quantify. *Epic*, 971 F.3d at 1141.

While the Seventh Circuit considered other factors that softened the reprehensibility of Tata's conduct -- the fact that Epic suffered no "physical harm," that Tata's conduct was purely profit driven, rather than by "an indifference to or reckless disregard of" the safety of others, and that Epic was not financially vulnerable (albeit dwarfed by the size of Tata) -- which justified a reduction of an award of 2:1 punitive to compensatory damages allowed by Wisconsin law down to a 1:1 ratio as capped by the Seventh Circuit's opinion, the court rejected an abandonment of *any* proportionality between the massive windfall Tata was required to disgorge of $140 million and the need to send a message to one of the largest company's in the world that its repeated, deliberate and cynical conduct, as well as repeated attempts to keep it from coming to light, will not be tolerated. As Epic rightly points out, "[w]ithout a substantial punitive damage award, the lesson of this case for [Tata] will be that even after "its wrongdoing [was] discovered," the only consequence is "merely [being] required to give back what it took." (Pl.'s Br. (dkt. #1041) 19.)

Said another way, without a meaningful punitive damages award relative to the massive gain Tata almost got away with, the message in this case is that the risk/reward

calculation favors continuing that conduct. Having witnessed Tata's repeated efforts to stall discovery and the detailed record to Tata's actual breach of any semblance of business ethics and institutional safeguards in favor of ill-gotten gains at other's expense, this court readily understands the desire by the jury to try to send a message to Tata and other companies tempted to do the same about staying within the ethical lines of competition. To ignore that desire and reduce the punitive damages award down to 3 to 3.5% of the jury's original punitive damages award as Tata suggests would be a disservice to the lay persons that we regularly ask to play a key role in judging credibility and applying common sense in support of our system of justice, as well as undermine the deference due a civil jury under our Constitution. *See Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 486 (7th Cir. 2003) ("Reflecting our general deference to jury verdicts, we have never required the district court to adjust a jury's punitive damages verdict so that it is proportional, in the court's view, to the defendant's wickedness. Such proportional adjustments are left to the jury itself.") (quoting *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000)).

As for the second *Gore* guidepost, "harm or potential harm" inflicted on Epic, the Seventh Circuit's ruling that Tata has "waived any argument that the compensatory award is the incorrect denominator in the ratio analysis" is now law of the case, *Epic*, 971 F.3d at 1143, and Tata's late effort to suggest some other denominator based on a less quantifiable direct harm to Epic, rather than the $140 million disgorgement is too little, too late. Still, even working with that award, the Seventh Circuit acknowledged that "the compensatory damages here are high." *Id.* However, this court is again left with little to no principled

6

basis to reduce the jury's original punitive damage award below the 1:1 ratio recognized as constitutionally sound by the Seventh Circuit.

The Seventh Circuit also held that Tata "waived any argument that [the final and least weighty guidepost] points toward the award being unconstitutional" by looking for comparison of punitive awards to "civil penalties imposed in comparable cases." *Epic*, 971 F.3d at 1145. Nevertheless, Tata cherry-picks Wisconsin cases not at all comparable to this one. Indeed, all of Tata's remaining arguments for a reduction below the constitutional cap established by the Seventh Circuit amount to arguments one might make to a jury, rather to a court only being asked to decide on remand whether a twice reduced award of $140 million is still constitutionally infirm. Since Tata's arguments are largely unmoored from the constitutional considerations articulated by the Supreme Court in *Gore* and already applied by the Seventh Circuit as outlined above, the court can find no principled, constitutional basis for a further reduction, and defendant has offered neither additional reasons on remand for this court to reconsider the jury's findings nor its own analysis that defendants acted willfully and reprehensibly with the expectation and determination that they would not be caught. Thus, Epic is entitled to a significant award of punitive damages commensurate with that conduct and proportional to the unlawful windfall it almost got away with keeping.

For all these reasons, the court concludes that the facts and circumstances of this case as a whole justify an award of $140 million in punitive damages, admittedly large as that amount may be.

ORDER

IT IS ORDERED that:

(1) The jury's award of punitive damages is reduced to $140 million.

(2) The clerk of court is directed to file an amended final judgment, replacing the fourth paragraph of the original judgment with the following language:

> IT IS FURTHER ORDERED AND ADJUDGED that judgment is entered in favor of plaintiff Epic Systems Corporation against Tata Consultancy Services Limited and Tata America International Corporation in the amount of $280,000,000.00.

(3) In all other respects, the court's original, final judgment remains unchanged.

Entered this 30th day of June, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge