

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 24-2882

EPIC SYSTEMS CORPORATION,

                                                                  *Plaintiff-Appellant*,

v.

TATA CONSULTANCY SERVICES LIMITED and TATA AMERICA INTERNATIONAL CORPORATION,

                                                                  *Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 14-cv-748-wmc — **William M. Conley**, *Judge*.

_____

ARGUED MAY 29, 2025 — DECIDED JUNE 4, 2025

_____

Before EASTERBROOK, BRENNAN, and SCUDDER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. A jury concluded that Tata Consultancy Services must pay Epic Systems $940 million: $240 million as compensation for the unauthorized use of confidential information and $700 million as punitive damages. After reducing the compensatory award to $140 million and the punitive award to $280 million, the district court entered

Case: 3:14-cv-00748-wmc Document #: 1068-2 Filed: 06/26/25 Page 2 of 6
Case: 24-2882 Document: 00714582057 Filed: 06/26/2025 Pages: 6

2 No. 24-2882

judgment on October 3, 2017. We affirmed the compensatory damages but held that the Constitution limits the punitive award to $140 million. 980 F.3d 1117 (7th Cir. 2020). On remand the district court denied Tata's request to reduce punitive damages below $140 million. It entered a new judgment for a total of $280 million on July 12, 2022. We affirmed, concluding that Tata's brazen and outrageous misconduct—stealing commercially valuable information and trying to prevent the theft's discovery—justifies punitive damages of $140 million. No. 22-2420 (7th Cir. July 14, 2023) (nonprecedential disposition).

That did not end the dispute, however. Tata agreed to pay postjudgment interest on the compensatory damages from the 2017 judgment but insisted that postjudgment interest on punitive damages should run only from the 2022 judgment. About $6 million turns on the difference. The district court sided with Tata, 2024 U.S. Dist. Lexis 171708 (W.D. Wis. Sept. 23, 2024), and Epic appealed.

The controlling statute is 28 U.S.C. §1961(a), which provides: "Interest shall be allowed on any money judgment in a civil case recovered in a district court." The time at which postjudgment interest begins to run thus depends on the date of a "money judgment … recovered in a district court." What happens when multiple judgments are recovered in the same case? Here there are two, one in 2017 and the other in 2022. The statute does not choose. An amount provided in the first judgment and removed from the second cannot be the basis of interest. So the Supreme Court held in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 836 (1990). But both the 2017 judgment and the 2022 judgment award $140 million

No. 24-2882 3

in compensatory damages plus at least $140 million in punitive damages.

Our 2020 opinion vacated the judgment and remanded, but we did not disapprove either the compensatory damages or the first $140 million of the punitive award. Long ago the Supreme Court said, when interpreting a predecessor to §1961(a), that "[t]he rights of parties are not to be sacrificed to the mere letter, and whether the language used was reversed, modified, or affirmed in part and reversed in part, is immaterial. Equity looks beyond these words of description to see what was in fact ordered to be done." *Kneeland v. American Loan & Trust Co.*, 138 U.S. 509, 512 (1891). None of the modest changes to what is now §1961(a) produced by its recodification in 1948, and later amendments to alter the rate of interest, calls *Kneeland*'s approach into question. "[W]hat was in fact … done" in 2020 was to block any punitive award in excess of $140 million. The difference between vacatur and reentry, on the one hand, and modifying the 2017 judgment, on the other, is not material to the parties' entitlements.

Still, our 2020 opinion did not hold that a punitive award of $140 million is compulsory. It was possible that the district judge would reduce it on remand.

Possible yes, probable no. The jury awarded Epic $700 million in punitive damages. The reason the judge cut the award to $280 million was a state law in Wisconsin that caps punitive damages at double the compensatory award. Wis. Stat. §895.043(6). (Epic's claims rest on state law.) Setting the judgment at the statutory maximum is inconsistent with a belief by the district judge that the award should be lower, let alone that the award should be less than half of the statutory cap. It was no surprise, therefore, when the district judge on remand

fixed punitive damages at $140 million, the maximum amount that this court held to be constitutionally permissible, just as the judge had earlier set the award at exactly the statutory maximum.

The Supreme Court stated in *Kaiser Aluminum* that, once a judgment has been entered, the statutory requirement for postjudgment interest has been satisfied, and, if the award changes after the initial judgment, a court should determine when the damages became "ascertain[able] in any meaningful way" (494 U.S. at 836; cleaned up). We conclude that an award of $140 million in punitive damages was "ascertainable" from the entry of the first judgment in 2017. Neither the district court nor this court has ever held that $140 million is too high. Punitive damages have gone from $700 million to $280 million to $140 million, but that final figure has been ascertainable since 2017.

Decisions in other circuits since *Kaiser Aluminum* have approached the subject the same way. For example, *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1339 (11th Cir. 1999), held that, when "an original judgment is not completely vacated, the date from which post-judgment interest runs turns on the degree to which the original judgment is upheld or invalidated." The original judgment in *Johansen* was for $15 million, later reduced to $4.35 million. The Eleventh Circuit held that postjudgment interest on the final number ran from the date of the first judgment. Similarly, *In re Exxon Valdez*, 568 F.3d 1077, 1080–81 (9th Cir. 2009), held that the reduced amount of a punitive award draws interest from the date of the original judgment. Following the oil spill in Prince William Sound, a district court awarded (and the Ninth Circuit affirmed) $2.5 billion in punitive damages, which the

Supreme Court later reduced to $507.5 million after adopting a rule that punitive awards in maritime cases may not exceed compensatory awards (in other words, a cap of double damages). The Supreme Court's decision could not have been anticipated at the time of the original judgment, but the final award of $507.5 million in punitive damages had been part of the judgment from the outset and earned postjudgment interest the whole time.

Tata insists that this court held otherwise in *Harris v. Chicago Great Western Ry.*, 197 F.2d 829 (7th Cir. 1952), and *Divane v. Krull Electric Co.*, 319 F.3d 307 (7th Cir. 2003). *Harris* predates *Kaiser Aluminum* and cannot be considered authoritative; at all events *Harris* found the original judgment to be infected with both factual and legal errors, so it lacked an ascertainable number. *Divane* was decided after *Kaiser Aluminum* but confronted a different kind of problem. A district court awarded attorneys' fees to a prevailing party using a method that we held to be improper. On remand the district court made a new award using a different approach. We concluded that postjudgment interest ran from the district court's second award. See 319 F.3d at 322. That was appropriate because the first award was not cut down according to a rule but was superseded, using a different method of calculation. Not until the replacement award was announced could the sum be called ascertained. And *Divane* reduced even the second award, without suggesting that this reset the date for interest. This court has never suggested that application of a common law, statutory, or constitutional limit, while leaving in place a sum that was present in the original judgment, defers the start date for postjudgment interest.

Case: 3:14-cv-00748-wmc    Document #: 1068-2    Filed: 06/26/25    Page 6 of 6
Case: 24-2882    Document: 00714582057    Filed: 06/26/2025    Pages: 6

6        No. 24-2882

The district court's decision is reversed, and the case is remanded with instructions to award postjudgment interest on the $140 million punitive award starting October 3, 2017.